IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| DARYL GREG SMITH, | § | Lead Case No. 21-60162-rbk |
| | § | |
| CANADIAN RIVER RANCH, LLC | § | Second Case No. 21-60163-rbk |
| | § | |
| Jointly Administered Debtors. | § | (Jointly Administered Under |
| | § | Case No. 21-60162-rbk) |

**ORDER GRANTING DEBTORS' APPLICATION FOR
ENTRY OF AN ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF LAND DOCTORS, INC. AS THE DEBTORS'
REAL ESTATE BROKER EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

CAME ON FOR CONSIDERATION the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Land Doctors, Inc. as the Debtors' Real Estate Broker Effective* Nunc Pro Tunc *to the Petition Date* (the "Application")[1] filed by the

---

[1] Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Application.

1

above-captioned debtors and debtors in possession (collectively, the "Debtors") by which the Debtors seek to retain and employ Land Doctors, Inc. ("Land Doctors") as the Debtors' real estate broker effective *nunc pro tunc* to the Petition Date with respect to approximately 11,084 acres located in McIntosh County, Oklahoma (the "Property") on the terms described in the *Listing Agreement – Exclusive Right to Sell*, dated August 18, 2020, attached hereto as Exhibit 1 (the "Listing Agreement"). Having considered the Application, finding that service and notice thereof was sufficient and appropriate, finding that Land Doctors is disinterested, and otherwise finding that the relief requested in the Application is lawful and appropriate, it is hereby:

ORDERED that the Application is APPROVED; it is further

ORDERED that the Debtors are authorized to retain and employ Land Doctors as their real estate broker, effective as of April 9, 2021, pursuant to the terms of the Listing Agreement, including any extension thereof, at the Debtors' sole discretion; it is further

ORDERED that Land Doctors shall be compensated for its services and reimbursed for its expenses upon the filing and approval in these bankruptcy cases of such interim and final applications as may be appropriate; it is further

ORDERED that Land Doctors shall not disburse any settlement funds received without prior court approval.

# # #

Prepared and submitted by:

**MUNSCH HARDT KOPF & HARR, P.C.**
500 North Akard St., Ste. 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

*Counsel to the Debtors
and Debtors in Possession*

# <u>Exhibit 1</u>

Listing Agreement

## LISTING AGREEMENT - EXCLUSIVE RIGHT TO SELL

In consideration of the services to be rendered by the undersigned Land Doctors Inc ("Broker"), the undersigned ("Sellers") hereby exclusively lists with Broker the Property described as:

11,084 acres located in Sections 3, 4, 5, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 27, 28, 29, 33, 34, 35 and 36 of Township 10N, 14E in McIntosh County, OK,

together with all fixtures and improvements, and all appurtenances, subject to existing zoning ordinances, plat or deed restrictions, utility easements serving the Property, if any, all of which may be described in any property data form attached to and by this reference made a part of this Agreement (collectively referred to as "the Property".), and grants to Broker the exclusive right to sell the Property, within the term of this listing, at a price of $23,165,560 and on the terms herein stated, or at such other price and terms as shall be acceptable to Seller.

This listing shall be subject to the following:

1. By appointing Broker as exclusive Broker, Seller agrees to work through Broker for the sale, option or exchange (collectively "Sale") of the Property and to refer to Broker all inquiries received in any form from other real estate Brokers, agents, associated broker associates, sales associates, or provisional sales associates, sales persons, prospective buyers or tenants, or any other source during the time this Listing Agreement is in effect. In addition, any compensation, which is conditioned upon the Sale of Property, shall be earned by Broker as set forth herein without any discount or allowance for any efforts made by Seller or by any representative of Seller in connection with the sale of the Property.

2. This Agreement begins on August 17th, 2020 and terminates (except for the provisions of Paragraph 3) at midnight on August 16, 2021.

3. Sellers agree to pay a commission equal to 4% of the total sales price of the property to Land Doctors, Inc upon the sale or exchange of the Property during the term of this Agreement:

   a. Whether procured by Broker, Sellers, or a third person.

   b. The sale or exchange of the Property within 30 days after the termination of this Agreement, if with anyone to whom Broker has shown the Property, or with whom the Broker has negotiated concerning the Property prior to the termination of this Agreement.

   c. If Broker, Sellers or a third person procures a Buyer who is ready, willing, and able to purchase the Property, at the price and on the terms set forth herein, or at another price and terms as shall be acceptable to Seller.

   d. The sale or exchange of the Property during, or after, the term of this Agreement to any party to whom the Property is rented or leased during the term of this Agreement, or within 30 days thereafter.

e. If Darren Keith Reed procures the Buyer, Land Doctors, Inc agrees to divide the 4% commission documented in paragraph 3, with Darren Keith Reed earning 2.5% and Land Doctors, Inc earning 1.5% of the total sales price, respectively.

f. If an outside broker procures and negotiates on behalf of the Buyer, Land Doctors, Inc agrees to divide the 4% commission documented in paragraph 3, with the outside broker earning 1.5%, Darren Keith Reed 1% and Land Doctors Inc 1.5% of the sales price of the property.

4. In the event a Contract for Sale or Exchange (a "Contract") is entered into with a Buyer, Seller agrees that:

a. Unless the Contract provides otherwise, Broker shall direct any earnest money deposit to the title company specified in accordance with the terms of the Contract, applicable law, rules, and regulations governing those funds;

b. Prior to the "Closing Date," Seller, at Seller's expense, agrees to furnish Buyer or Buyer's lender a current Uniform Commercial Code Search Certificate (and, if the Property is a condominium, to furnish a copy of the Declaration of Unit Ownership Estates of the Project, Bylaws of the Project's Owners Association). Seller, at Seller's expense shall also furnish an abstract of title certified to date showing marketable title in Seller, subject only to utility easements serving the Property and building restrictions of record, and other exceptions specified in the Contract and, if Property is a condominium, subject to all terms, provisions, restrictions, and covenants contained in the Declaration of Unit Ownership Estates and Bylaws of the Owner's Association of the "Project," and, if required by lender, a "Mortgage Inspection Report" prepared by a licensed surveyor, certified to a date at least within 180 days of the "Closing Date";

c. Seller has sole ownership, full authority to sell property, and will cause any conveyance to be executed and joined by all necessary parties to convey marketable title by General Warranty Deed to Buyer, free and clear of all liens and encumbrances, except those specifically reserved in the Contract. This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission. OREC LISTING AGREEMENT (11-2019) Page 2 of 4

d. Unless otherwise provided in the Contract, all ad valorem taxes, interest, rents, and other continuing items shall be prorated through the date of closing, except personal property taxes for the entire year, if any, shall be paid by Seller;

5. In accordance with the Oklahoma Residential Property Condition Disclosure Act:

a. Seller shall complete the Oklahoma Residential Property Disclosure Statement ("Disclosure Statement") or, if the Seller has never lived in the Property AND has NO knowledge of any defect concerning the Property, the Oklahoma Residential Property Disclaimer Statement ("Disclaimer Statement") if applicable, a copy of which is attached to and by this reference made a part of this Agreement.

b. Broker shall provide a copy of the Seller's Disclosure Statement or Disclaimer Statement (whichever is applicable) to potential Buyers or their Brokers.

c. Broker shall disclose to a potential purchaser any defects in the Property actually known to the Broker, which are not included in the Seller's Disclosure Statement or Seller's Disclaimer Statement.

6. In accordance with the HUD/EPA Lead-Based Paint Regulations, if the Property was built before 1978:

a. Seller shall complete a Disclosure and Acknowledgment of Lead-Based Paint.

b. Broker shall provide a copy of the Seller's Disclosure and Acknowledgment of Lead-Based Paint to potential Buyers or their Brokers along with a copy of the pamphlet Protect Your Family from Lead in Your Home.

7. All of the information provided herewith, or which may be provided to Broker, shall be true and Seller agrees to hold Broker, Broker's sales associates, employees, and agents harmless from any cost, expense, or damage due to any information which is withheld by Seller from Broker, or which is incorrect.

8. In connection with this Listing Agreement, Seller authorizes Broker:

a. To place a "For Sale" sign on the Property and to remove all other similar signs;

b. To enter Property information on the Internet, and advertise the Property by any means and methods as Broker determines in its sole judgment and discretion, including the making and using of photographs or other electronic images of the Property;

c. At Seller's expense, to turn on, or leave on, all utilities, and to authorize service technicians to do so, in order to show the Property to its best advantage or to permit inspection thereof. Seller further agrees to pay any necessary cost for uncovering and limited operation of any swimming pool/spa, sprinkler system, and security system, if applicable.

d. To obtain all information pertaining to any present mortgage on the Property from any mortgage or mortgage service company and to furnish information pertaining to the Property to any prospective lender;

e. To obtain a key to the Property and furnish keys to others necessary to show the Property or to carry out the objectives of this Agreement;

f. To have access to the Property for the purpose of showing it to prospects at any reasonable hour;

g. Unless the Contract provides otherwise, Broker and Seller agree that Broker shall be authorized to accept delivery of Contract documents, title evidence documents, inspection reports, and other notices provided in the Contract on behalf of the Seller and to accept a similar appointment by Buyers and prospective Buyers.

9. Broker duties and responsibilities.

A. A broker shall have the following duties to all parties in a transaction, which are mandatory and may not be abrogated or waived by a broker: This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission. OREC LISTING AGREEMENT (11-2019) Page 3 of 4

1. Treat all parties with honesty and exercise reasonable skill and care;

2. Unless specifically waived in writing by a party to the transaction: a) receive all written offers and counteroffers b) reduce offers or counteroffers to a written form upon request of any party to a transaction, and c) present timely such written offers and counteroffers;

3. Timely account for all money and property received by the broker;

4. Keep confidential information received from a party or prospective party confidential. The confidential information shall not be disclosed by a firm without the consent of the party disclosing the information unless consent to the disclosure is granted in writing by the party or prospective party disclosing the information, the disclosure is required by law, or the information is made public or becomes public as the result of actions from a source other than the firm. The following information shall be considered confidential and shall be the only information considered confidential in a transaction: a) that a party or prospective party is willing to pay more or accept less than what is being offered; b) that a party or prospective party is willing to agree to financing terms that are different from those offered; c) the motivating factors of the party or prospective party purchasing, selling, leasing, optioning, or exchanging the property; and d) information specifically designated as confidential by a party unless such information is public.

5. Disclose information pertaining to the property as required by the Residential Property Condition Disclosure Act; and

6. Comply with all requirements of The Oklahoma Real Estate License Code and all applicable statutes and rules. A broker shall have the following duties and responsibilities only to a party for whom the broker is providing brokerage services in a transaction which are mandatory and may not be abrogated or waived by a broker:

1. Inform the party in writing when an offer is made that the party will be expected to pay certain costs, brokerage service costs and approximate amount of costs; and

2. Keep the party informed regarding the transaction.

When working with both parties to a transaction, the duties and responsibilities set forth in this section shall remain in place for both parties.

10. Neither the Buyer nor the Seller may be held liable for the actions or words of the Broker or licensees affiliated with the Broker's firm.

11. Broker shall use Broker's best efforts to effect a sale of the Property during the term of this Agreement. a. Broker shall not be charged with the custody of the Property, its management, maintenance, or repair.

12. Forfeited earnest money, if any, shall be divided equally between Seller and Broker, except that Broker's portion shall, in no event, exceed the agreed commission; provided, however, that no release of a Buyer or waiver of a forfeiture of earnest money after a Contract is executed shall relieve Seller of any obligation to pay a commission.

13. The term "Broker" herein shall include any sales associate whose signature appears on this Agreement.

14. This Property is offered without regard to race, color, religion, sex, handicap, familial status, or national origin.

15. Seller and Broker agree to the terms herein set forth and understand that this is a binding agreement and that it cannot be canceled or terminated except upon their mutual written consent.

16. Seller acknowledges that Seller has read and received a copy of this Agreement and that a copy of the Oklahoma Real Estate Commission Uniform Contract of Sale Information Booklet has been made available to the Seller in print, or at www.orec.ok.gov.

17. Upon the execution of an earnest money contract (Contract) by both Seller and Buyer, the Broker shall have no duty thereafter to submit subsequent offers for the purchase of the Property, unless the Contract specifically provides otherwise or this sale does not close.

18. Seller acknowledges that said Broker has recommended that all valuables such as coins, jewelry, furs, silver, guns, cameras, paintings, antiques, and the like, be removed from the Property for safekeeping during the period of the listing. In addition, Seller has been fully advised that the Broker does not assume any responsibility for the acts of any other persons for any loss that may be sustained by Seller through entry by any manner. Seller hereby assumes the risk of loss.

20. The Seller and Broker agree that Broker, in response to inquiries from Buyers or cooperating brokers shall disclose, with the Sellers' approval, the existence of offers on the property. Where disclosure is authorized, Brokers shall also disclose whether offers were obtained by the listing licensee, another licensee in the listing firm, or by a cooperating Broker. Seller does not authorize Broker to disclose the existence of offers on the property without prior approval of Seller.

21. By signing this Agreement, Seller acknowledges and gives the Listing Broker the right to utilize the services of a title escrow company for the closing process after a Contract of Sale on this Property. Fees to a Seller for these type services are estimated to be $750 plus abstracts, fees and taxes. Seller agrees to pay this amount to a closing escrow company or directly to the

Listing Broker. Seller understands said fee is in addition the agreed commission amount and that no fee for closing escrow is due until the actual closing is conducted.

22. Has the Seller been notified by any city or county governmental agency, or is the Seller aware, that the Property is in a flood hazard area? Yes No

24. OTHER CONDITIONS: _____
_____
_____
_____

ACCEPTED THIS 18th day of August, 2020

By Land Doctors, Inc _____Kelley Hunt_____
                           Signature

By Daryl G Smith and/or Canadian River Ranch LLC ___[signature]___
                                                      Signature

By Daren Keith Reed ___Daren Keith Reed_____
                        Signature

By Julie Ann Reed ___Julie Ann Reed_____
                      Signature