UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| DARYL GREG SMITH, | § | Case No. 21-60162-rbk |
| | § | |
| CANADIAN RIVER RANCH, LLC | § | Case No. 21-60163-rbk |
| | § | |
| Debtors. | § | (Jointly Administered Under |
| | § | Case No. 21-60162-rbk) |

**NOTICE OF FILING OF REDLINED ORDER**

**PLEASE TAKE NOTICE** that on July 12, 2021 Gregory S. Milligan, chapter 11 trustee in the above-captioned bankruptcy cases (the "**Trustee**"), filed the *Trustee's Expedited Motion for Entry of Order: (I) Authorizing Assumption of Solar Lease; (II) Authorizing Entry into Lease Amendment; (III) Providing Protections for Lessee; and (IV) Authorizing the Chapter 11 Trustee to Execute Certain Documents Pursuant to Federal Rule of Civil Procedure 70, Made Applicable to this Proceeding through Federal Rule of Bankruptcy Procedure 7070* [Doc. 116] (the "**Motion**"), which included a proposed order (the "**Order**"). The exhibits referenced in the Order were not attached at the time of the filing of the Motion. The parties to the Motion have continued negotiating the terms of the Order (the "**Revised Order**"), as well as the exhibits thereto. As of the filing of the Revised Order, this form has been approved by the Trustee, Angus and Reed and is in the process of being reviewed by the remaining parties.

The Revised Order, including the exhibits, is attached hereto as **Exhibit A**. A redlined copy comparing the Order to the Revised Order is attached hereto as **Exhibit B**.

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

By: ____/s/ Morris D. Weiss_____
  Morris D. Weiss
  Texas Bar No. 21110850
  William R. "Trip" Nix, III
  Texas Bar No. 24092902
  100 Congress Ave., Suite 1800
  Austin, Texas 78701
  Telephone: (512) 685-6400
  Facsimile: (512) 685-6417
  morris.weiss@wallerlaw.com
  trip.nix@wallerlaw.com

PROPOSED COUNSEL TO GREGORY S. MILLIGAN, CHAPTER 11 TRUSTEE

## CERTIFICATE OF SERVICE

The foregoing was served on the parties listed below electronically via the Court's ECF system and/or via email, and on all parties on the attached service list via ECF on July 12, 2021.

**Proposed Counsel to Debtors**
Munsch Hardt Kopf & Harr, P.C.
Davor Rukavina, Esq.
Thomas D. Berghman, Esq.
500 North Akard St., Ste. 3800
Dallas, Texas 75201
Email: drukavina@munsch.com
Email: tberghman@munsch.com

**Counsel for Karen Annette Smith**
E. P. Keiffer
Kevin McCullough
Zach Levick
Rochelle McCullough, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
pkeiffer@romclaw.com
kdm@romclaw.com
zlevick@romclaw.com

**Counsel to Darren Keith Reed**
Rene Escobedo
6800 Park Ten Blvd, Suite 135-E
San Antonio, TX 78213
rene.escobedo@rre-law.com

**Counsel to Angus Solar**
Timothy A. Million
Husch Blackwell LLP
600 Travis Street, Suite 2350
Houston, TX 77002-2629
Tim.Million@huschblackwell.com

**Counsel to Stanley W. Wright, former Receiver in Divorce Proceeding**
Christopher Arisco
Padfield & Stout
420 Throckmorton St. Suite 1210
Fort Worth, Texas 76102
carisco@PadfieldStout.com

*/s/ Morris D. Weiss*
Morris D. Weiss

## SERVICE LIST

**Counsel to Debtors (via ECF)**
Thomas Daniel Berghman
Davor Rukavina
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Ste. 3800
Dallas, TX 75201

**United States Trustee (via ECF)**
Shane P. Tobin
Office of the United States Trustee
903 San Jacinto Blvd., Room 230
Austin, TX 78701

**Chapter 11 Trustee (via ECF)**
Gregory S. Milligan
3800 N. Lamar Blvd., Suite 200
Austin, Texas 78756

**Parties Requesting Service (via ECF)**
Eboney Cobb
Perdue, Brandon, Fielder, Collins & Mott
500 E. Border Street, Suite 640
Arlington, TX 76010

Mark Cochran
c/o Mark B. French
1901 Central Drive, Ste. 704
Bedford, TX 76021

Edwin Paul Keiffer
Rochelle McCullough, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201

Jason M. Rudd and Scott Lawrence
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 500
Dallas, TX 75204

Tara LeDay
McCreary, Veselka, Bragg & Allen, P.C.
P. O. Box 1269
Round Rock, TX 78680

Griffith, Jay & Michel, LLP
c/o Mark J. Petrocchi
2200 Forest Park Blvd.
Fort Worth, TX 76110

Steve Stasio
Stasio & Stasio, P.C.
303 Main Street, Suite 302
Fort Worth, Texas 76102

Marc W. Taubenfeld
McGuire, Craddock & Strother, P.C.
500 N. Akard Street, Suite 2200
Dallas, TX 75201

David G. Tekell
Tekell & Tekell, LLP
400 Austin Avenue, Suite 1000
Waco, TX 76701

**<u>EXHIBIT A</u>**

**<u>Revised Order</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| DARYL GREG SMITH, | § | Case No. 21-60162-rbk |
| | § | |
| CANADIAN RIVER RANCH, LLC | § | Case No. 21-60163-rbk |
| | § | |
| Debtors. | § | (Jointly Administered Under |
| | § | Case No. 21-60162-rbk) |

**ORDER: (I) APPROVING ASSUMPTION OF SOLAR LEASE;
(II) AUTHORIZING ENTRY INTO LEASE AMENDMENT;
(III) PROVIDING PROTECTIONS FOR LESSEE; AND (IV) AUTHORIZING THE
CHAPTER 11 TRUSTEE TO EXECUTE CERTAIN DOCUMENTS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 70, MADE APPLICABLE TO THIS
PROCEEDING THROUGH FEDERAL RULE OF BANKRUPTCY PROCEDURE 7070**

CAME ON FOR HEARING the *Trustee's Expedited Motion for Entry of Order:
(i) Authorizing Assumption of Solar Lease; (ii) Authorizing Entry into Lease Amendment;
(iii) Providing Protections for Lessee; and (iv) Authorizing the Chapter 11 Trustee to Execute
Certain Documents Pursuant to Federal Rule of Civil Procedure 70, Made Applicable to this
Proceeding through Federal Rule of Bankruptcy Procedure 7070* (the "**Motion**"), filed in the

above styled and numbered jointly administered Chapter 11 case (the "**Bankruptcy Cases**") by Gregory S. Milligan, in his capacity as Chapter 11 Trustee for the estates of Daryl Greg Smith ("**Smith**") and Canadian River Ranch, LLC ("**CCR**", with Smith, the "**Debtors**"), the debtors and Plaintiffs herein.

Based upon the evidence at said hearing, the Court makes the following findings of fact and conclusions of law[1]:

1.      On April 9, 2021, the Debtors filed their voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), thereby creating their respective bankruptcy estates and initiating the Bankruptcy Cases.  Smith's bankruptcy estate is defined hereby as the "**Smith Estate**" and CCR's bankruptcy estate is defined as the "**CCR Estate**". The Smith Estate and the CCR Estate are collectively referred to as the "**Estates**".

2.      On June 29, 2021, an order was entered approving the appointment of Gregory S. Milligan as Chapter 11 Trustee (the "**Trustee**") for the Estates. The Trustee has the duties set forth in sections 1106 and 1108 of the Bankruptcy Code.

3.      Caddoa Creek Ranch, LLC ("**Caddoa**") is a Colorado limited liability company, 90% owned by Smith and 10% owned by Darren Keith Reed ("**Reed**").

4.      On or about October 31, 2017, Caddoa, as landlord, and Angus Solar, LLC ("**Angus**"), as tenant, entered into that certain *Ground Lease Agreement* (the "**Lease**"), as amended by the First Amendment to Ground Lease Agreement dated July 22, 2020.  The Lease relates to a proposed solar energy farm to be built and owned by Angus, or its affiliates, on certain land then owned by Caddoa, specifically: up to 1,300 acres, plus or minus, of real property located

---

[1] The findings and conclusions set forth herein and in the record of the Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

approximately 1 mile west of County Road 2490 and near the City of Valley Mills, Bosque County, Texas, within Property ID Number R07041, R25530, R06132, R25531, R25559, R06131, R35349, R35348, R06101, R25533, R05181, R06113, R25532, and R35350 (collectively, the "**Subject Property**").

5.      On June 28, 2019, Caddoa and Angus executed that certain *Memorandum of Lease*, which Angus caused to be filed with Bosque County (the "**County**") and recorded against title to the Subject Property as instrument number 2019-02195 (the "**Lease Memorandum**").

6.      The Subject Property is more fully described on Exhibit "A" to the Lease and on Exhibits "A" and "B" to the Lease Memorandum and, in all events, the Subject Property as defined and identified in the Lease and the Lease Memorandum will control. The legal description of the Subject Property is attached hereto as **Exhibit 5**.

7.      The recording of the Lease Memorandum against title to the Subject Property gives Angus an encumbrance, enforceable against the world, against the Subject Property, as well as easement interests in and to the Subject Property. Pursuant to Texas law and the terms of the Lease, any transfer by Caddoa of its interests in the Subject Property or the Lease shall remain subject to the Lease.

8.      Separately, and after extensive divorce proceedings between Smith and his ex-wife, Karen Annette Smith ("**K. Smith**"), on November 27, 2019, the 325th Judicial District Court for Tarrant County, Texas (the "**State Court**") entered that certain *Final Decree of Divorce* (the "**Judgment**") in Cause No. 325-584465-15 (the "**State Court Proceeding**"). The Judgment has not been stayed, although it remains subject to potential appeals and discretionary review, none of which are prejudiced by anything contained in this Order except that, notwithstanding anything that may occur in connection with the Judgment or the State Court Proceeding, in no event shall

any right, title, or interest of Angus in and to the Subject Property and recognized in or conferred by this Order be prejudiced.

9.     Among other things, the Judgment ordered Smith to (a) vote his interest in Caddoa to dissolve Caddoa, and (b) cause Caddoa to transfer the Subject Property to Smith and to Reed individually, with Smith holding a 90% undivided interest in the Subject Property and Reed holding the remaining 10% undivided interest in the Subject Property.  The Judgment orders that such transfers and the 90% interest that Smith held in the Subject Property would be subject to a lien in favor of K. Smith to secure the Judgment.

10.     Smith did not comply with the Judgment's order to effectuate the foregoing transfers.  Accordingly, through subsequent proceedings in the State Court Proceeding, the State Court appointed Stanley W. Wright ("**Wright**" or the "**Receiver**") as a receiver for Smith for the limited purposes of (a) effectuating the transfers of certain properties (the "**Properties**"), including the Subject Property, to Smith and to Reed and (b) recording deed of trust liens against such Properties, including the Subject Property, in favor of K. Smith to secure the Judgment (the "**K. Smith Liens**").

11.     Thereafter, on or about February 7, 2020, Wright, acting on the instructions of the State Court and in the stead of Smith, executed and caused to be recorded that certain *Special Warranty Deed* (the "**Transfer Deed**") to effectuate the transfer of the Subject Property to Smith and to Reed.  Upon the execution and recording of the Transfer Deed, the State Court discharged Wright as Receiver, which terminated his authority to act as a receiver granted to him by the State Court.

12.     The Transfer Deed provides that the "grantee" is "Stanley W. Wright, not in his individual capacity, but solely in his capacity as court-appointed receiver . . . for and on behalf of

Daryl Greg Smith." The Transfer Deed also transferred an undivided ten percent (10%) interests in the Subject Properties to Reed.

13.     The splitting of legal title and equitable title on account of the requirement that Wright execute the Transfer Deed led to confusion and concern as to the Estates' ability, absent the resolutions hereinafter provided, to provide clean title to and thus monetize the Subject Property.

14.     Prior to the appointment of the Trustee, the Debtors requested that Wright file a corrected Transfer Deed pursuant to the Judgment; however, Wright lacks the authority to do so because he has already been discharged as Receiver pursuant to the order that appointed him. As a result, Wright, in his capacity as Receiver (the capacity in which he executed the Transfer Deed), is legally incapable of executing and filing a corrected Transfer Deed and therefore cannot effectuate a corrected Transfer Deed.

15.     Nothing in this Order shall constitute any finding or conclusion with respect to any heretofore made assertions by the Debtors as to the appropriateness or lawfulness of the State Court's actions, orders, or Judgment, and all rights regarding the same, including on any appeal or ancillary litigation for discretionary review, are preserved; except that, notwithstanding anything that may occur in connection with the Judgment or the State Court Proceeding, in no event shall any right, title, or interest of Angus, and its successors and assigns, in and to the Subject Property and recognized in or conferred by this Order, the Lease or the Lease Amendment be prejudiced.

16.     All interests of Smith in Caddoa and in the Subject Property are property of the Smith Estate.

17.     All rights of Smith as the 90% owner of the Subject Property under the Lease are property of the Smith Estate and all obligations under the Lease are obligations of the Smith Estate,

pursuant to the terms of the Lease, the recording of the Lease Memorandum, and section 102(2) of the Bankruptcy Code. The transfer of the Subject Property to Smith and Reed, and the granting of the K. Smith Liens, are all subject to the Lease, and all rights under the Lease are superior to the rights of K. Smith under the K. Smith Liens because the Lease Memorandum is recorded and is prior in time.

18.     The Lease is an unexpired lease or executory contract of the Smith Estate, since it is a pre-existing charge and encumbrance against the Subject Property, and since the transfer of the Subject Property from Caddoa to Smith was expressly subject to the Lease pursuant to the terms of the Lease and the Lease Memorandum. As such, and even though Smith is not a party to the Lease, the Lease is a "lease of the debtor" within the meaning of section 365 of the Bankruptcy Code.

19.     The assumption of the Lease is a proper exercise by the Trustee of his business judgment, and such assumption is in the best interests of the Smith Estate.

20.     The Trustee, Smith, Reed, and Angus have prepared that certain *Second Amendment to Ground Lease* (the "**Lease Amendment**") to clarify the ownership of the Subject Property, the identity of the lessor, and the rights of Angus. Entering into the Lease Amendment is a proper exercise by the Trustee of his business judgment and entering into the same is in the best interests of the Smith Estate. The Trustee and Angus have also prepared that certain Tenant Estoppel Certificate (the "**Estoppel Certificate**") to be executed in connection with the Lease Amendment.

21.     All prerequisites and conditions to the assumption of the Lease and to the entry into the Lease Amendment have been satisfied. The Lease, as amended by the Lease Amendment, shall be referred to herein as the "**Amended Lease**". Subject to the rights of Angus, Smith and

Reed under this Order, the Amended Lease shall remain assignable by Smith and the Smith Estate to Caddoa, and the Subject Property shall remain subject to potential transfer by Smith and the Smith Estate to Caddoa, subject to the rights of K. Smith under the K. Smith Liens.

22.    Angus is leasing property of the Smith Estate under the Amended Lease and this Order in good faith, for reasonably equivalent value, and without any collusion, bad faith, or secret agreement.   Accordingly, Angus is entitled to the full protections of section 363(m) of the Bankruptcy Code.

23.    The Court has jurisdiction over the Motion and all matters in this Order under 28 U.S.C. § 1334.  Such jurisdiction is core under 28 U.S.C. § 157(b)(2).  Venue of the Bankruptcy Cases before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

24.    Due, sufficient, and proper notice of the Motion and of the hearing thereon was provided by the Trustee to all parties with an interest in the Motion and this Order, including, but not limited to, Smith, K. Smith, Reed, Caddoa, Angus, and Wright.  Cause exists to grant all relief provided for in this Order, and such relief is in the best interests of the Estates.  Any factual predicates for granting any such relief have been satisfied.

25.    Notwithstanding the potential retention of legal title in and to the Subject Property by Wright, the Court has exclusive *in rem* jurisdiction over the whole of the Subject Property under 28 U.S.C. § 1334(e), including to make all findings of fact and conclusions of law, and to cause this Order to be recorded against the Subject Property and to be enforceable against the same both *in rem* and *in personam* as against all parties.  The Court has the authority to enter this Order pursuant to 11 U.S.C. §§ 105(a), 363, 365, and 543, and Rule 70 of the Federal Rules of Civil Procedure made applicable by Bankruptcy Rule 7070.

ACCORDINGLY, it is hereby ORDERED, ADJUDGED, DECREED, and DETERMINED :

That the Motion is GRANTED as set forth herein;

**I.     Matters Regarding the Lease**

A.     The Amended Lease is ASSUMED by the Smith Estate and shall be binding on the Smith Estate according to its terms;

B.     The Lease Amendment is APPROVED and the Trustee is authorized and directed to execute and deliver the Lease Amendment in the form attached hereto as **Exhibit 1**, whereafter the same or a memorandum thereof may be recorded against the Subject Property by either the Trustee or Angus.  In connection with the delivery by Angus of the Lease Amendment, Angus shall also provide the Estoppel Certificate to the Trustee in the form attached hereto as **Exhibit 2**;

C.     With the assumption of the Amended Lease, all rights, powers, interests, title, and obligations of Angus and its successors and assigns under the Amended Lease shall be fully enforceable as against the world, including, without limitation, against Smith, the Estates, Reed, Wright and K. Smith, and fully enforceable against the Subject Property *in rem*, notwithstanding any absence by them of any approval of any transaction provided for herein or in the Amended Lease, such approval not being required given the Court's exclusive *in rem* jurisdiction over the Subject Property;

D.     The Trustee is authorized to execute and deliver any additional amendments, estoppels, affidavits or other documents as may be reasonably required for Angus to obtain financing for the construction and operation of the solar facility to be located on the Subject Property, including any such documents as may be required for Angus' title company (the "**Title**

**Company**") to issue a title policy insuring Angus' leasehold interest in the Subject Property and insuring the lien of Angus' construction lender against such leasehold interest;

E.       To the extent that the Amended Lease requires further modification or amendment in order to effectuate the economic terms set forth therein, for so long as the Trustee is authorized to act on behalf of the Debtors, the Trustee shall be authorized to take all actions as Landlord pursuant to the Amended Lease (and as defined therein).  From and after the date the Trustee is no longer authorized to act on behalf of the Debtors, then Smith (or his legal successor) shall be authorized to take all actions as Landlord pursuant to the Amended Lease.

F.       Smith, Reed, Caddoa, Wright and K. Smith, and all transferees and assigns thereof, and all agents, attorneys, and representatives thereof, are **PERMANENTLY ENJOINED** and **PROHIBITED** from contesting, questioning, or challenging -  whether by legal process (except through appealing this Order), by recording any instrument against the Subject Property, by taking any action before any governmental authority, or by making any public statement - any and all rights, interests, and title of Angus and its successors and assigns under the Amended Lease, and any and all rights, title, and interest of Angus and its successors and assigns in and to the Subject Property.

## II.    Seniority of Amended Lease

G.       The rights of Angus and its successors and assigns shall in all respects be superior to the rights of K. Smith or any other purported lienholders in respect of the Subject Property.  The Trustee, K. Smith and Angus are hereby authorized and directed to deliver and execute the Subordination Agreement attached hereto as **Exhibit 3**.

H.       Smith, Reed, Caddoa, Wright and K. Smith, and all transferees and assigns thereof, and all agents, attorneys, and representatives thereof are **PERMANENTLY ENJOINED** and

**PROHIBITED** from exercising in any way any legal title that any such party may have in the Subject Property to contest, challenge, question, seek to limit, or seek to take away any and all rights of Angus and its successors and assigns under the Lease or Lease Amendment, or in and to the Subject Property;

       I.      Nothing herein prejudices any and all rights of K. Smith on account of the K. Smith Liens, subject to the automatic stay, and nothing herein enjoins K. Smith from exercising all rights under the K. Smith Liens, subject to the automatic stay, except that, for the avoidance of any doubt, any foreclosure by K. Smith of any lien against the Subject Property shall be subject to all rights, interests, and title of Angus and its successors and assigns in and to the Subject Property;

       J.      Nothing in this Order recognizes or calls into question the validity, extent, and priority of the K. Smith Liens, or prejudices any and all issues, arguments, and rights regarding the same, including any and all rights of the Trustee to challenge the same as may be otherwise appropriate.

   **III.**    **Reservation of Rights**

       K.      Without necessarily deciding that any proceeds of the Lease and Lease Amendment are "cash collateral" under section 363(a) of the Bankruptcy Code, to the extent that the Trustee receives such proceeds, all rights under section 363 of the Bankruptcy Code with respect to any holder of an interest in cash collateral are preserved, and the Trustee shall not use any such proceeds pending the entry of further order of the Court;

       L.      In light of Reed having consented to the entry of this Order and to the Lease Amendment, no further proceeding with respect to Reed's interest in the Subject Property is necessary, and Reed retains any and all rights he has with respect to any proceeds of the Lease and Lease Amendment, which rights shall not constitute cash collateral with respect to his 10%

undivided interest (the "**Reed Percentage**"), provided that in no event shall Reed have any rights or claims against Angus or its successors and assigns for any proceeds of the Lease or Lease Amendment if Angus performs thereunder by sending any applicable payments to the Trustee, or if the Trustee is no longer authorized to act on behalf of the Debtors, to Daryl Greg Smith.  The Amended Lease contemplates that the lease payments by Angus to the Trustee will include the Reed Percentage. The Reed Percentage shall be held in trust for the benefit of Reed and shall not constitute property of the estate of the Debtors.  The Trustee shall promptly remit the Reed Percentage to Reed upon receipt. The remittance by the Trustee of the Reed Percentage shall not be considered a disbursement of the Estates for any purpose.  The obligations of the Trustee in this paragraph with respect to the Reed Percentage (including the obligation to promptly remit payment) shall be binding upon any successors or assigns of the Trustee;

M.    Smith reserves the right to seek to convey his interest in the Subject Property to Caddoa under a potential Chapter 11 plan or otherwise, and nothing in this Order prejudices or prevents any issue with respect to the same;

N.    This Order may be recorded against the Subject Property, and the County is directed and ordered to accept the same for recording, whereafter this Order shall govern and control as to all issues expressly provided for herein, and shall be binding on the world.

## IV.    Corrective Transfer Deed

O.    The Trustee, pursuant to Rule 70 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7070, is authorized and directed to deliver and execute the corrected Transfer Deed (the "**Corrected Transfer Deed**") attached hereto as **Exhibit 4**.

### V. Miscellaneous

P. **Effectiveness of All Actions.** All actions contemplated by this Order are hereby authorized to be taken without further application to or order of the Court.

Q. **Approval of Payment Satisfaction Documents**. The Bankruptcy Court approves the Lease Amendment, the Subordination Agreement and the Corrected Transfer Deed (collectively, the "**Approved Documents**"). The Trustee shall have no personal liability for executing the Approved Documents. The Trustee is authorized to execute and deliver such other documents as Angus, its successors or assigns, or the Title Company may deem necessary to implement the transactions contemplated by the Lease Amendment, and shall perform, execute, and deliver or cause to be delivered and undertake any and all further acts, deeds, and assurances as may reasonably be required to consummate the transactions contemplated in the Lease Amendment.

R. **Effect of Conflict**. The provisions of the Lease Amendment and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, that if there is determined to be any inconsistency between any provision of the Lease Amendment and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern and any provision of this Order shall be deemed a modification of the Lease Amendment and shall control and take precedence. The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

S. The order authorizes the use, sale or lease of property and this order shall be immediately effective upon entry and shall not be stayed pursuant to Bankruptcy Rule 6004(h).

T.      This Court shall retain jurisdiction to the maximum extent possible to interpret and to enforce this Order.

###

APPROVED AS TO FORM AND CONTENT, AND ENTRY REQUESTED BY:

WALLER LANSDEN DORTCH & DAVIS, LLP

By: /s/ *Morris D. Weiss*

Morris D. Weiss
Texas Bar No. 21110850
William R. "Trip" Nix, III
Texas Bar No. 24092902
100 Congress Ave., Suite 1800
Austin, Texas 78701
Telephone: (512) 685-6400
Facsimile: (512) 685-6417
Email: morris.weiss@wallerlaw.com
        trip.nix@wallerlaw.com

PROPOSED ATTORNEYS FOR GREGORY S. MILLIGAN,
CHAPTER 11 TRUSTEE


MUNSCH HARDT KOPF & HARR, P.C.

By: /s/

Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
500 North Akard St., Ste. 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 978-4375
drukavina@munsch.com
tberghman@munsch.com

PROPOSED COUNSEL TO THE DEBTORS


By: /s/

E. P. Keiffer (SBN 11181700)
Kevin McCullough (SBN 00788005)
Zach Levick (SBN 24119380)
ROCHELLE MCCULLOUGH, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Facsimile: (214) 953-0185

pkeiffer@romclaw.com
kdm@romclaw.com
zlevick@romclaw.com

COUNSEL FOR KAREN ANNETTE SMITH


By: /s/
TIMOTHY A. MILLION
Texas Bar No. 24051055
Husch Blackwell LLP
600 Travis St Ste 2350
Houston, TX 77002-2629
Telephone: (713) 525-6221
Facsimile: (713) 647-6884
Tim.Million@huschblackwell.com

COUNSEL TO ANGUS SOLAR, LLC


By: /s/
Rene Escobedo
State Bar No. 00785849
6800 Park Ten Blvd, Suite 135-E
San Antonio, TX 78213
Telephone: (210) 349-2224
Facsimile: (210) 223-3815
rene.escobedo@rre-law.com

COUNSEL TO DARREN KEITH REED

## <u>EXHIBIT 1</u>

**Lease Amendment**

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**Drawn by and after recording return to:**
Angus Solar, LLC
c/o Cypress Creek Renewables, LLC
3402 Pico Blvd.
Santa Monica, CA 90405

**STATE OF TEXAS**

**COUNTY OF BOSQUE**

**SECOND AMENDMENT**
**TO GROUND LEASE AGREEMENT**

      **THIS SECOND AMENDMENT TO GROUND LEASE AGREEMENT** (this "Amendment") is entered into as of the last date of execution below (the "Effective Date"), by and between Angus Solar, LLC, a Texas limited liability company ("Tenant") and Daryl Greg Smith ("Daryl") and Darren K. Reed ("Reed," together with Daryl, "Landlord"); Landlord and Tenant, collectively, are hereinafter referred to as the "Parties".

**WITNESSETH:**

      A.    WHEREAS, Caddoa Creek Ranch, LLC ("Original Landlord") and Tenant entered into that certain Ground Lease Agreement dated October 31, 2017, as evidenced by that certain Memorandum of Lease dated May 22, 2019 and recorded on June 28, 2019 in the Bosque County Clerk's Office, Instrument No. 2019-02195 (the "Memorandum"), as amended by that certain First Amendment to Ground Lease Agreement dated July 22, 2020 (collectively, the "Lease"), pursuant to which Original Landlord leased to Tenant certain real property located 1 mile, more or less, West of County Road 2490 and near the City of Valley Mills, Bosque County, Texas, as more particularly described in the Lease;

      B.    WHEREAS, on April 9, 2021, Daryl, who owned 90% of the aggregate equity interests in Original Landlord, and Canadian River Ranch, LLC ("CRR," together with Daryl, the "Debtors") filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code with the United States Bankruptcy Court for the Western District of Texas, Waco Division (the "Bankruptcy Court"), Jointly Administered Under Case No. 21-60162-rbk (the "Bankruptcy Case");

C.      WHEREAS, on June 23, 2021, the Bankruptcy Court entered that certain *Order Regarding Motion to Appoint a Chapter 11 Trustee* authorizing the United States Trustee to appoint a Chapter 11 Trustee for the Debtors;

D.      WHEREAS, on June 29, 2021, the Bankruptcy Court entered that certain *Order Approving Appointment of Gregory S. Milligan as Chapter 11 Trustee* approving the appointment of a Chapter 11 Trustee and appointing Gregory S. Milligan as Chapter 11 trustee for the Bankruptcy Case (the "Chapter 11 Trustee") for the Debtors;

E.      WHEREAS, on July [●], 2021, and in order to correct a previous transfer of the right, title and interest in the Land made by Stanley W. Wright via a Special Warranty Deed dated February 7, 2020, the Bankruptcy Court entered that certain **[Order]** (the "July Bankruptcy Order") authorizing the Chapter 11 Trustee to transfer to Daryl a 90% undivided interest in and to the Land (as defined in the Lease), including, without limitation, all right, title and interest in and to the Lease and, accordingly, pursuant to that certain Special Warranty Deed, dated on or before the date hereof, and executed by the Chapter 11 Trustee, the Chapter 11 Trustee conveyed a 90% undivided interest in and to the Land to Daryl;

F.      WHEREAS, pursuant to the July Bankruptcy Order, the Bankruptcy Court authorized and directed the Chapter 11 Trustee to deliver and execute this Amendment; and

G.      WHEREAS, Landlord and Tenant desire to amend the Lease as more particularly set forth below.  All of the capitalized terms used in this Amendment, unless otherwise defined herein, shall have the same meaning as assigned to such terms in the Lease.

## <u>AMENDMENT</u>

NOW, THEREFORE, for and in consideration of the mutual covenants of the Parties hereto, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      <u>Landlord</u>.  The Landlord under the Lease is hereby amended to be: "Daryl Greg Smith, as to an undivided 90% interest, and Darren K. Reed, as to an undivided 10% interest".  Notwithstanding anything to the contrary in the Lease, Landlord has all rights of "Landlord" under the Lease, including, without limitation, any and all rights that require the consent of Landlord, and this Amendment shall in no way terminate, remove or otherwise alter any such rights even though such rights might otherwise have been personal to Original Landlord under the terms of the Lease.

2.      <u>Notice</u>.  The notice address for the Landlord set forth in the "Basic Lease Terms Summary" is hereby amended to be as follows:

| Landlord's Notice Address (Section 19) | Daryl Greg Smith<br>5826 Cooksey Ln.<br>Waco, TX  76706<br><br>With a Copy to:<br><br>c/o Gregory S. Milligan<br>Chapter 11 Trustee for Daryl Greg Smith<br>3800 N. Lamar Boulevard, Suite 200<br>Austin, TX  78756 |
| --- | --- |



3.    Rent Payment.  Section 7 of the Lease is hereby amended to add the following subsection "(f)  For so long as Gregory S. Milligan continues to serve as the Chapter 11 Trustee ("Chapter 11 Trustee") over Daryl Greg Smith's bankruptcy estate in the Chapter 11 case pending in United States Bankruptcy Court for the Western District of Texas, Waco Division and jointly administered under Case No. 21-60162-rbk (the "Smith Bankruptcy"), Tenant shall make payments of Rent by delivering said payments to Gregory S. Milligan, Chapter 11 Trustee as detailed in the Landlord's Notice Address (as amended by paragraph 2 of the Second Amendment to Ground Lease Agreement).  From and after the date the Chapter 11 Trustee has been discharged, Tenant shall make payments of Rent by delivering said payments to Daryl Greg Smith as detailed in the Landlord's Notice Address (with Daryl Greg Smith remitting ten percent (10%) of such Rent to Darren K. Reed and, in connection with such payment of Rent, Darren K. Reed agrees that in no event shall he have any claim against Tenant for Daryl Greg Smith's failure to comply with his obligation to remit such ten percent (10%) to Darren K. Reed)."

4.    Assignment; Transfers.  Section 26(b) of the Lease is modified to provide that either Daryl Greg Smith or Darren K. Reed may Transfer his respective interests in the Lease in a manner consistent with such section, including without limitation, the requirement that Landlord give Tenant at least thirty (30) days' prior notice of any Transfer by Landlord.  For so long as the Chapter 11 Trustee continues to serve in such capacity, he will have the right to take actions on behalf of Smith.

5.    Ratification.  The Lease, as amended by this Amendment, is hereby ratified by Landlord and Tenant.  Except as expressly amended by this Amendment, all terms and conditions of the Lease shall remain unchanged and in full force and effect.  In the event of any inconsistency between the terms and conditions of the Lease and this Amendment, the terms and conditions of this Amendment shall control. This Amendment and the Lease cannot be modified in any manner other than by written modification executed by Landlord and Tenant.  The Lease, as hereby amended, contains all of the terms agreed upon between Landlord and Tenant with respect to the subject matter hereof.  Landlord acknowledges and agrees that the Lease is in full force and effect and that to Landlord's knowledge, Tenant, as of the date of this Amendment, is not in default in performance of any covenant, agreement or condition contained therein, and that no event has occurred that, after the passage of time or giving of notice, would constitute a default.  Tenant acknowledges and agrees that the Lease is in full force and effect, that to Tenant's knowledge, as of the date of execution of this Amendment, and except for defaults related to the Smith Bankruptcy or the previous transfer of the right, title and interest in the Land made by Stanley W. Wright via a Special Warranty Deed dated February 7, 2020, each of which are hereby waived by Tenant, Landlord is not in default in performance of any covenant, agreement or condition contained therein, and that no event has occurred that, after the passage of time or giving of notice, would constitute a default.

6.    Memorandum.  This Amendment shall also amend the Memorandum and give updated record notice of the Lease and of the rights created hereby.

7.    Counterparts.  This Amendment may be executed in any number of counterparts, each of which shall be deemed to be an original, and all such counterparts shall constitute one agreement.  To facilitate execution of this Amendment, the Parties may execute and exchange by email counterparts of

the signature pages, which email counterpart shall be binding as if they were originals.  No originals shall be required.

8. <u>Miscellaneous</u>.  The Parties have read this Amendment and on the advice of counsel they have freely and voluntarily entered into this Amendment.  This Amendment shall be binding on and inure to the benefit of the parties and their successors.

*[signature pages follow]*

IN WITNESS WHEREOF, the parties have executed and delivered this Amendment as of the Effective Date.

**LANDLORD**:

By: _____
      Gregory S. Milligan Chapter 11 Trustee for Daryl Greg Smith
      In Case No. 21-60162 before the United States Bankruptcy
      Court for the Western District of Texas, Waco Division

Date:_____

STATE OF    _____    §
                           §
COUNTY OF _____    §

The foregoing instrument was acknowledged before me on this _____ day of _____, 2021, by _____.

_____
Notary Public in and for the State of _____

*[signatures continue on next page]*

By:_____

     Darren Keith Reed

Date:_____

STATE OF   _____   §

                          §

COUNTY OF _____   §

      The foregoing instrument was acknowledged before me on this _____ day of _____, 2021, by _____.

_____

Notary Public in and for the State of _____

**SPOUSE OF DARREN KEITH REED**:

By:_____

_____

Date:_____

STATE OF   _____   §

                          §

COUNTY OF _____   §

      The foregoing instrument was acknowledged before me on this _____ day of _____, 2021, by _____.

_____

Notary Public in and for the State of _____

*[signatures continue on next page]*

**TENANT**:

Angus Solar, LLC

By: _____
Name: _____
Title: Authorized Person
Date: _____

**<u>ORIGINAL LANDLORD:</u>**

Caddoa Creek Ranch, LLC,

By: _____
Name:
Title:
Date: _____


STATE OF    _____    §
                                      §
COUNTY OF _____    §


        The foregoing instrument was acknowledged before me on this _____ day of _____, 2021, by _____.


_____
Notary Public in and for the State of _____

## **EXHIBIT 2**

**Estoppel Certificate**

## TENANT ESTOPPEL CERTIFICATE

| | |
|---|---|
| Tenant: | Angus Solar, LLC |
| Premises: | Up to approximately 1,300 acres of that certain real property located approximately 1 mile, West of County Road 2490 and near the City of Valley Mills, Bosque County, Texas, within Property ID Number R07041, R25530, R06132, R25531, R25529, R06131, R35349, R35348, R06101, R25533, R05181, R06113, R25532 and R35350 |
| Lease: | Ground Lease Agreement, dated as of October 31, 2017, by and between Caddoa Creek Ranch, LLC, as original landlord (the "Original Landlord"), and Tenant, as amended by that certain First Amendment to Ground Lease Agreement, dated as of July 22, 2020 |

Ladies and Gentlemen:

We are the Tenant under the Lease. We give this Certificate to Gregory S. Milligan, as Chapter 11 Trustee ("Trustee"), for that voluntary petition for relief under Chapter 11 of Title 11, United States Code with the United States Bankruptcy Court for the Western District of Texas, Waco Division, Jointly Administered Under Case No. 21-60162-rbk. All of the capitalized terms used in this Certificate, unless otherwise defined herein, shall have the meaning as assigned to such term in the Lease. We certify to Trustee as follows:

1.      The Lease, a complete and accurate copy of which is attached hereto as Exhibit A and incorporated herein by this reference, is in full force and effect and constitutes the valid, binding and enforceable obligation of Tenant. There are no amendments, assignments or modifications of any kind to the Lease except as stated in this Certificate and included in Exhibit A. There are no promises, agreements, understandings or commitments between Landlord and Tenant relating to the Premises which are not set forth in the Lease. Tenant acknowledges that all of the interest of the Original Landlord in the Lease has been, or will be on or around the date hereof, transferred to Daryl Greg Smith, as to an undivided 90% interest, and Darren K. Reed, as to an undivided 10% interest.

2.      Tenant is the owner and holder of all right, title and interest in the leasehold estate created by the Lease. Tenant has not subleased all or any part of the Premises or assigned the Lease, or otherwise transferred any of its interest in the Lease or the Premises. Tenant leases the entire 1,300 Acres of the Premises. Tenant is occupying the Premises and operating on the Premises for the use permitted under the Lease.

3.      The initial term of the Lease shall commence on the date that Tenant begins construction of the System on the Premises and shall continue as set forth in the Lease, subject to its terms and conditions. The Lease contains four (4) successive renewal terms of five (5) years each.

4.      The Rent as of the first Rent Payment Date will be Four Hundred Fifty and 00/100 Dollars ($450) per Acre per year.

5.      Tenant has not prepaid any Rent or other amounts to Landlord.

6.      Tenant has paid an Initial Diligence Period Fee in the amount of $4,000 to Original Landlord. Tenant has also paid Extended Diligence Period Fees to Original Landlord in the aggregate amount of $33,000.

7.      Other than the first refusal to lease set forth in Section 39 of the Lease, Tenant has not been granted and has not exercised any options or rights of expansion, purchase or first refusal concerning the Lease or the Premises.

8.      Tenant has not entered into any property management, service contracts, maintenance contracts or other contracts that are binding upon the owner of the Premises.

9.      No voluntary actions or, to the best of Tenant's knowledge, involuntary actions, are pending against Tenant under the bankruptcy laws of the United States or any state thereof.

10.      The person signing this Certificate on behalf of Tenant is duly authorized to execute and deliver this Certificate for and on behalf of the Tenant.

[Signature Page Follows]

<u>TENANT</u>

ANGUS SOLAR, LLC


By:_____
Name:
Title:

EXHIBIT A
LEASE

[See Attached]

## **EXHIBIT 3**

**Subordination Agreement**

## SUBORDINATION AGREEMENT

This Subordination Agreement (this "Subordination") is entered into as of July [●], 2021 (the "Effective Date"), among **ANGUS SOLAR, LLC**, a Texas limited liability company ("Lessee"), **KAREN ANNETTE SMITH**, an individual resident of the State of Texas ("Creditor"), and **DARYL GREG SMITH**, an individual resident of the State of Texas ("Daryl"), and **DARREN KEITH REED**, an individual resident of the State of Texas ("Darren," together with Daryl, "Owner").

## Recitals

A.        Owner is the owner of that certain real property and improvements located at 1 mile, more or less, West of County Road 2490 and near the City of Valley Mills, Bosque County, Texas (the "Property").

B.        Caddoa Creek Ranch, LLC entered into that certain Ground Lease Agreement, dated as of October 31, 2017, as amended by that certain First Amendment to Ground Lease Agreement, dated as of July 22, 2020, as further amended by that certain Second Amendment to Ground Lease Agreement, dated as of the date hereof, by and between Owner and Lessee (collectively, the "Lease"), with Lessee with respect to a portion of the Property comprising approximately 1,300 acres, as more particularly described in the Lease.

C.        Pursuant to an order of the Court *In The Matter of the Marriage of Karen Annette Smith and Daryl Greg Smith and In the Interest of Chloe Nicole Smith and Christopher Carson Smith, Minor Children*, bearing Cause No. 325-584465-15 in the 325th Judicial District Court of Tarrant County, Texas, Daryl, in order to satisfy certain obligations and liabilities (collectively, the "Obligations") owed to Creditor, delivered to Creditor that certain Promissory Note, dated as of February 7, 2020 (the "Note"), in the original amount of $8,500,000, and payable to the order of Creditor, which Note is secured by (i) an Owelty lien in favor of Creditor on the full fee simple title to the Property; (ii) a Deed of Trust, Security Agreement, Assignment of Rents, and Financing Statement on Daryl's 90% undivided interest in the Property, with Stanley W. Wright, for and on behalf of Daryl Greg Smith, as Grantor, Jeremy R. Pruett as Trustee, and Karen Annette Smith, as Lender, recorded as Instrument No. 2020-00456 in the Real Property Records of Bosque County, Texas; and (iii) a vendor's lien retained as to said 90% undivided interest.

D.        On April 9, 2021, Daryl and Canadian River Ranch, LLC ("CRR," together with Daryl, the "Debtors") filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code with the United States Bankruptcy Court for the Western District of Texas, Waco Division (the "Bankruptcy Court"), Jointly Administered Under Case No. 21-60162-rbk (the "Bankruptcy Case").

E.        On June 23, 2021, the Bankruptcy Court entered that certain *Order Regarding Motion to Appoint a Chapter 11 Trustee* authorizing the United States Trustee to appoint a Chapter 11 Trustee for the Debtors.

F.        On June 29, 2021, the Bankruptcy Court entered that certain *Order Approving Appointment of Gregory S. Milligan as Chapter 11 Trustee* approving the appointment of a Chapter 11 Trustee appointing Gregory S. Milligan as Chapter 11 trustee for the Bankruptcy Case (the "Chapter 11 Trustee") for the Debtors.

G.        On July [●], 2021, and in order to correct a previous transfer of the right, title and interest in the Land made by Stanley W. Wright via a Special Warranty Deed dated February 7, 2020, the Bankruptcy Court entered that certain **[Order]** (the "July Bankruptcy Order") authorizing the Chapter 11 Trustee to transfer to Daryl a 90% undivided interest in and to the Property and, accordingly, pursuant to that certain Special Warranty Deed, dated on or before the date hereof, and executed by the Chapter 11 Trustee, the Chapter 11 Trustee conveyed a 90% undivided interest in and to the Property to Daryl.

H.        Pursuant to the July Bankruptcy Order, the Bankruptcy Court authorized and directed the Chapter 11 Trustee to deliver and execute this Subordination.

I.        Lessee, Creditor and Owner desire to enter into this Subordination to memorialize the priority of the liens and interests of Creditor, Lessee and Owner in the Property.

## Agreement

**NOW, THEREFORE**, for and in consideration of Ten Dollars and other good and valuable consideration, the receipt and sufficiency of which is acknowledge by the parties, Creditor, Lessee, and Owner hereby agree and covenant as follows:

1.     **Subordination**.  Until such time as the Obligations of Daryl to Creditor are indefeasibly paid in full, Creditor hereby subordinates any interest in the Property, including, without limitation, any rights of Lessee under the Lease, to the rights, interest and title of Owner and Lessee in the Property and the Lease, as applicable.

2.     **Enforcement Action**.  During the term of this Subordination, Creditor will not commence any action or proceeding against Daryl that would affect the rights of either Owner or Lessee under the Lease or Lessee's use and enjoyment of the Property.

3.     **Relationship of Parties; No Third Party Beneficiaries**.  Neither party hereto assumes any responsibility to the other to advise such other party of information regarding the financial condition of any party hereto, matters pertaining to the Property or the Lease, or any other circumstances bearing upon the risk of nonpayment of the Obligations. This Subordination has been entered into solely for the benefit of the parties hereto and not for the benefit of any other person or entity.

4.     **Further Assurances**.  Each party agrees to execute and deliver to the other party such other and further instruments and agrees to take such further action as the other party may at any time or times reasonably request in order more completely to carry out the provisions' intent of this Subordination.

5.     **Notices**.  All notices hereunder shall be in writing and sent by certified mail (return receipt requested) or overnight mail to the other party at the address set forth on the signature page hereto or at such other address as such other party shall otherwise designate in accordance with this paragraph.

6.     **Termination**.  This Subordination shall continue in full force and effect until the indefeasible payment in full of all Obligations, at which time this Subordination shall automatically terminate with no further action or notice required by any party.

7.     **Governing Law**.  This Subordination is governed by the laws of the State where the Property is located, without regard to the conflict of laws provisions.

8.     **Miscellaneous**.  This Subordination shall be binding upon, and shall inure to the benefit of, the successors and assigns of Owner, Lessee and Creditor, as applicable; <u>provided</u> that Creditor shall not transfer or assign any lien that it may have in any of the Property to any other person or entity unless the transferee or assignee thereof shall first agree in writing to be bound by the terms of this Subordination the same as if an original signatory hereto.  This Subordination may be executed in counterparts, each of which, when taken together, shall constitute one and the same agreement.  Signature pages exchanged by .pdf or other electronic format shall be fully binding.

*[Signature page follows]*

2

**IN WITNESS WHEREOF**, the parties have executed this Subordination as of the Effective Date.

<u>**OWNER:**</u>

_____
Gregory S. Milligan Chapter 11 Trustee for Daryl
Greg Smith In Case No. 21-60162 before the United
States Bankruptcy Court for the Western District of
Texas, Waco Division

_____
**DARREN K. REED**

Notice Address:
5826 Cooksey Lane
Waco, Texas 76706
Email:

<u>**CREDITOR:**</u>

_____
**KAREN ANNETTE SMITH**

Notice Address:
_____
_____
_____
Email:

<u>**LESSEE:**</u>

**ANGUS SOLAR, LLC**, a Texas limited liability
company

By: _____
Name:
Title:

Notice Address:
c/o Cypress Creek Renewables, LLC
3250 Ocean Park Boulevard, Suite 355
Santa Monica, California 90405
Attention:  Asset Management Department
Email:  assetmanagement@ccrenew.com

## **EXHIBIT 4**

**Corrected Transfer Deed**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## SPECIAL WARRANTY DEED

**Effective Date:** _____, 2021

**Grantor:** GREGORY S. MILLIGAN, CHAPTER 11 TRUSTEE FOR DARYL GREG SMITH IN CASE NO. 21-60162 BEFORE THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TEXAS, WACO DIVISION

**Grantor's Address:** 3800 N. Lamar Boulevard, Suite 200
Austin, Texas 78756

**Grantee:** DARYL GREG SMITH

**Grantee's Address:** 5826 Cooksey Lane
Waco, Texas 76706

**Consideration:**

Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and in compliance with the terms of that certain [**Order**] dated July [●], 2021.

**Property (including any improvements):**

A ninety percent (90%) undivided interest in and to those certain tracts of land located in Bosque County, Texas, being more particularly described on Exhibit "A", Exhibit "B" and "Exhibit "C" attached hereto and incorporated herein by reference.

**Reservations from and Exceptions to Conveyance and Warranty:**

The conveyance of the Property is subject to (a) all validly existing restrictions, easements, liens, encumbrances, rights-of-way, prescriptive rights, reservations, covenants, conditions, mineral leases, mineral interests, and other instruments, other than conveyances of the surface fee estate, that affect the Property, including but not limited to (i) that certain Ground Lease Agreement, dated as of October 31, 2017, by and between Caddoa Creek Ranch, LLC ("Original Landlord") and Angus Solar, LLC ("Tenant") as amended by that certain First Amendment to Ground Lease Agreement, dated as of July 22, 2020, as further amended by that certain Second Amendment to Ground Lease Agreement, dated as of the date hereof, by and between Daryl Greg Smith and Darren Keith Reed and Tenant and (ii) the Deed of Trust, Security Agreement, Assignment of Rents and Financing Statement in the original principal sum of $8,500,000 with Stanley W. Wright, for and on behalf of Daryl Greg Smith, as Grantor, Jeremy R. Pruett as Trustee, and Karen Annette Smith, as Lender, recorded as Instrument No. 2020-00456 in the Real Property Records of Bosque County, Texas; (b) all zoning laws, regulations and ordinances of municipal and other governmental authorities, if any; and (c) all taxes for 2019 and subsequent years, which Grantee assumes.

Grantor, for the Consideration and subject to the Reservations from and Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee, in the undivided interests specified herein, the Property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, successors, and assigns to warrant and forever

defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from and Exceptions to Conveyance and Warranty, when the claim is by, through, or under Grantor's but not otherwise.

When the context requires, singular nouns and pronouns include the plural.

The parties hereto acknowledge that this Special Warranty Deed constitutes a partition of the Property pursuant to Article XVI, Section 50, (a), (3) of the Texas Constitution, and Section 41.001, (b) (4) of the Texas Property Code.

**GRANTOR:**

_____

GREGORY S. MILLIGAN, CHAPTER 11 TRUSTEE FOR DARYL GREG SMITH IN CASE NO. 21-60162 BEFORE THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TEXAS, WACO DIVISION

STATE OF TEXAS                    §
                                  §
COUNTY OF TRAVIS                  §

  This instrument was acknowledged before me on the _____ day of _____, 2021, by GREGORY S. MILLIGAN, CHAPTER 11 TRUSTEE FOR DARYL GREG SMITH IN CASE NO. 21-60162 BEFORE THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TEXAS, WACO DIVISION.

_____

Notary Public, State of Texas

_This instrument was prepared based on information furnished by the parties, and no independent title search has been made._

**AFTER RECORDING RETURN TO:**
DARYL GREG SMITH
5826 Cooksey Lane
Waco, Texas 76706

## EXHIBIT A

### LEGAL DESCRIPTION

**TRACT ONE:**

FIELD NOTES for a lot, tract, or parcel of land containing 146.440 acres lying and situated in the Walter W. Daws Survey A-226 and the Wm. W. Alsberry Survey A-20 in Bosque County, Texas. Said land is all of that certain 146.440 acre Tract One described in a deed from Jean G. Hix, etal, to Willow Creek Group, LLC. recorded as Instrument Number 2011-00003397 of the Official Public Records of Bosque County, and is more particularly described as follows:

BEGINNING at a 3 inch pipe post at a fence corner in the west line of 66.88 acres described in a deed to Robert Woodrow Edwards recorded in Volume 520, Page 195 of the Official Public Records of Bosque County, for the most easterly southeast corner of said this tract;

THENCE: S 58 deg 50 min 53 sec W 2881.76 feet generally along a fence to a 3/4 inch iron pipe found at a fence corner;

THENCE: S 58 deg 41 min 46 sec W 1514.01 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence corner, for a inside corner of this tract;

THENCE: S 30 deg 49 min 10 sec E 1351.62 feet generally along a fence to a 3/8 inch iron rod found at a fence corner in the north line of 3.11 acres described in a deed to David Charles Prause et ux, recorded in Volume 457, Page 692 of the Official Public Records of Bosque County, for the most southerly southeast corner of this tract;

THENCE: S 58 deg 26 min 45 sec W 907.13 feet generally along a fence to a 3/8 inch iron rod found in the east line of C.R. 3545, for the northwest corner of said Prause tract;

THENCE: S 58 deg 47 min 20 sec W 11.28 feet to a point in the center of C.R. 3545, for the southeast corner of a 795.560 acre Tract Two described in same deed to Willow Creek and southwest corner of this tract;

THENCE: Along the center of said county road along the east line of said 795.560 acres the following bearings and distances to 60-D nails found: N 46 deg 30 min 12 sec W 115.51 feet, N 52 deg 37 min 28 sec W 170.59 feet, N 48 deg 07 min 22 sec W 324.47 feet, N 50 deg 22 min 08 sec W 623.97 feet, N 37 deg 24 min 08 sec W 310.49 feet, N 49 deg 21 min 19 sec W 309.65 feet and N 34 deg 28 min 31 sec W 418.02 feet to a 60-D nail set, for the existing southwest corner of the remainder of a Second Tract of Parcel One described in a deed to Walter T. Hix, IV recorded in Volume 408, Page 813 of the Official Public Records of Bosque County tract and northwest corner of this tract;

THENCE: N 58 deg 50 min 53 sec E at 20.0 feet pass a 1/2 inch iron rod found (capped 5695) on the east line of said county road, in all 5872.40 feet across pasture to a 1/2 inch iron rod found (capped 5695) in the west line of said Edwards tract, for the southeast corner of said Hix tract and northeast corner of this tract;

THENCE: S 30 deg 58 min 39 sec E (827.78 feet generally along a fence and west line of said Edwards tract to the point of beginning.

**TRACT TWO:**

FIELD NOTES for a lot, tract, or parcel of land containing 795.560 acres lying and situated in the Wm. W. Alsberry Survey A-20, James Skinner Survey A-783, Wm.W. Alsberry Survey A-21. K.D. Turner Survey A-817, John Demoss Survey A-206 and the A. Frazier Survey A-282 in Bosque County, Texas. Said land is all of that certain 795.560 acre Tract Two described in a deed from Jean G. Hix, et al, to Willow Creek, LLC. recorded as Instrument Number 2011-00003397 the Official Public Records of Bosque County, and is more particularly described as follows:

BEGINNING at a 1/2 inch iron rod found (capped 5695) at a fence corner, for the northwest corner of this tract;

THENCE: N 58 deg 41 min 38 sec E 4296.96 feet generally along a fence to a 60-D nail found in a 6 inch wood post on the west side of a creek;

THENCE: N 36 deg 20 min 35 sec E 1306.08 feet generally along a fence to a 8 inch pipe post at a fence angle;

THENCE: N 71 deg 07 min 02 sec E 92.54 feet generally along a fence to a 8 inch pipe post at a fence corner, for the northeast corner of this tract;

THENCE: S 16 deg 38 min 56 sec E 1846.90 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence angle;

THENCE: S 31 deg 07 min 04 sec E 2199.85 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence corner, for a inside corner of this tract;

THENCE: N 59 deg 26 min 40 sec E 222.22 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence corner, for the northwest corner of 150 acres described in a deed to Willow Creek Group, LLC. recorded as Instrument Number 2012-00001665 of the Official Public Records of Bosque County and a outside corner of this tract;

THENCE: S 30 deg 33 min 14 sec E 2022.99 feet generally along a fence, to a 1/2 inch iron rod found (capped 5695) at a fence corner in an old fence line, for the southwest corner of said 150 acres and a inside corner of this tract;

THENCE: N 59 deg 22 min 29 sec E 1108.47 feet, generally along an old fence, and the extension thereof and south line of said 150 acres to a 60-D nail found in the center of C.R. 3545, for a northwest corner of the remainder of a Second Tract of Parcel One described in a deed to Walter T. Hix, IV recorded in Volume 408, Page 813 of the Official Public Records of Bosque County and the most easterly northeast corner of this tract;

THENCE: Along the center of said county road to 60-D nails found, west line of said Hix tract and west line of a 146.440 acre Tract One described in same deed to Willow Creek: S 28 deg 55 min 18 sec E 204.01 feet, S 36 deg 32 min 40 sec E 455.62 feet, S 34 deg 28 min 31 sec E 523.00 feet, S 49 deg 21 min 19 sec E 309.65 feet, S 37 deg 24 min 08 sec E 310.49 feet, S 50 deg 22 min 08 sec E 623.97 feet, S 48 deg 07 min 22 sec E 324.47 feet, S 52 deg 37 min 28 sec E 170.59 feet, S 46 deg 30 min 12 sec E 115.51 feet to a point, for the southwest corner of said 146.440 acres, said point being S 58 deg 47 min 20 sec W 11.28 feet from a 3/8 inch iron rod found on the east side of said county road being the northwest corner of 3.11 acres described in a deed to David Charles Prause et ux, recorded in Volume 457, Page 692 of the Official Public Records of Bosque County and the southeast corner of this tract;

THENCE: S 58 deg 47 min 20 sec W 801.04 feet generally along a fence to a 1/2 inch iron rod found, for the northeast corner of a tract of land described in a deed to Michael Lucas et ux, Alicia Lucas recorded as Instrument No. 2011-00002241 of the Official Public Records of Bosque County;

THENCE: S 58 deg 33 min 15 sec W 2411.09 feet generally along a fence and north line of said Lucas tract to a 1/2 inch iron rod set at a fence corner on the west side of Willow Creek, for a inside corner of this tract;

THENCE: S 41 deg 45 min 50 sec E 267.42 feet generally along a fence on the west side of Willow Creek to a 1/2 inch iron rod found (capped 5695) at a fence angle;

THENCE: S 22 deg 43 min 55 sec E 60.06 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence intersection, for a outside corner of this tract;

THENCE: S 59 deg 58 min 00 sec W 841.82 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence angle;

THENCE: S 57 deg 48 min 33 sec W 901.17 feet generally along a fence, and the extension thereof, to a 1/2 inch iron rod found (capped 5695), for the southwest corner of this tract;

THENCE: N 30 deg 49 min 09 sec W 4694.37 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence corner, for a inside corner of this tract;

THENCE: S 66 deg 33 min 18 sec W 267.02 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence corner, for the southwest corner of this tract;

THENCE: N 30 deg 57 min 46 sec W 2948.57 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence corner, for a inside corner of this tract;

THENCE: S 59 deg 24 min 05 sec W 1900.11 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence corner, for a outside corner of this tract;

THENCE: N 30 deg 27 min 55 sec W 1121.92 feet generally along a fence to the point of beginning.

**TRACT THREE:**

FIELD NOTES for a lot, tract, or parcel of land containing 150.119 acres lying and situated in the Alexander Frazier Survey A-282 and the Walter W. Daws Survey A-226 in Bosque County, Texas. Said land is all of that certain tract described in a deed from Capital Farm Credit, FLCA to Willow Creek Group, LLC. recorded as Instrument Number 2012-00001665 of the Official Public Records of Bosque County, and is more particularly described as follows:

BEGINNING at a 1/2 inch iron rod found (capped 5695) at a fence corner in a south line of a 7687.75 acre First Tract described in a deed to Roberta Marchman et al, recorded in Volume 232, Page 744 of the Official Public Records of Bosque County, outside corner of a 795.560 acre Tract Two described in a deed to Willow Creek Group, LLC. recorded as Instrument Number 2011-00003397 of the Official Public Records of Bosque County and northwest corner of this tract;

THENCE: N 59 deg 26 min 40 sec E 2604.02 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence corner, for a inside corner of said Marchman tract and most northerly northeast corner of this tract;

THENCE: S 31 deg 06 min 45 sec E 1274.72 feet generally along a fence to a 1/2 inch iron rod found (capped 5695) at a fence corner, for a outside corner of said Marchman tract and a inside corner of this tract;

THENCE: N 59 deg 06 min 53 sec E 1677.78 feet generally along a fence and south line of said Marchman tract to a 1/2 inch iron rod found (capped 5695) at a fence corner, for a outside corner of a Second Tract of Parcel One described in a deed to Walter T. Hix, IV recorded in Volume 408, Page 813 of the Official Public Records of Bosque County, and the most easterly northeast corner of this tract;

THENCE: S 30 deg 53 min 07 sec E 752.78 feet generally along a fence to a 1/2 inch iron rod found (capped 5695), for a inside corner of said Hix tract and southeast corner of this tract;

THENCE: S 59 deg 22 min 29 sec W 4298.54 feet partially along a fence, north line of said Second Tract to a 1/2 inch iron rod found (capped 5695) at a fence corner, for a inside corner of said 795.560 acres and southwest corner of this tract;

THENCE: N 30 deg 33 min 14 sec W 2022.99 feet generally along a fence and a east line of said 795.560 acres to the point of beginning.

## EXHIBIT B

### LEGAL DESCRIPTION

FIELD NOTES for a lot, tract, or parcel of land containing 147.214 acres lying and situated in the Walter W. Daws Survey A-226, Wm. W. Alsberry Survey A-20 and A. Frazier Survey A-282 in Bosque County, Texas. Said land is part of that certain Second Tract of Parcel One described in a deed from Jean G. Hix and Heather G. Hix, as Independent Co-Executors for the Estate of Walter T. Hix, IV to Jean G. Hix, Heather G. Hix and Walter G. Hix, V as Co-Trustees for the Walter T. Hix, IV Revocable Trust recorded in Volume 471, Page 835 of the Official Public Records of Bosque County, and is more particularly described as follows:

BEGINNING at a 1/2 inch iron rod found (capped 5695) at a fence corner in the west line of a tract of land described in a deed to E.S. Dorman, Jr. recorded in Volume 315, Page 930 of the Deed Records of Bosque County, a southeast corner of 768.75 acre First Tract described in a deed to Roberta Harchman recorded in Volume 232, Page 744 of the Deed Records of Bosque County, for the northeast corner of said Second Tract and northeast corner of this tract;

THENCE: S 31 deg 16 min 57 sec E 814.27 feet generally along a fence and east line of said Second Tract to a 3/8 inch iron rod found (capped) at a fence corner, for the existing southwest corner of said Dorman tract and northwest corner of 66.88 acres described in a deed to Robert Woodrow Edwards recorded in Volume 520, Page 195 of the Official Public Records of Bosque County;

THENCE: S 30 deg 58 min 39 sec E (base bearing per Edwards deed) 664.59 feet generally along a fence, west line of said Edwards tract and east line of said Second Tract to a 1/2 inch iron rod found (capped 5695), for the northeast corner of a 146.440 acre Tract One described in a deed to Caddoa Creek Ranch, LLC. recorded as Instrument Number 2014-00002412 of the Official Public Records of Bosque County and southeast corner of this tract;

THENCE: S 58 deg 50 min 53 sec W across pasture at 5852.40 feet pass a 1/2 inch iron rod found (capped 5695) on the east side of C.R. 3545, in all 5872.40 feet to a 60-D nail found in the center of said county road and in the east line of a 795.560 acre Tract Two described in same deed to Caddoa, for the northwest corner of said 146.440 acres and southwest corner of this tract;

THENCE: N 34 deg 28 min 31 sec W 104.98 feet generally along the center of said county road and east line of said 795.560 acres to a 60-D nail found;

THENCE: N 36 deg 32 min 40 sec W 455.62 feet generally along the center of said county road and east line of said 795.560 acres to a 60-D nail found;

THENCE: N 28 deg 55 min 18 sec W 204.01 feet generally along the center of said county road to a 60-D nail found in a cattle guard, and in the south line of a 150.119 acre Tract Three described in same deed to Caddoa, and in the north line of said Second Tract, for the most easterly northeast corner of said 795.560 acres and most westerly northwest corner of this tract;

THENCE: N 59 deg 22 min 29 sec E 3190.07 feet partially along a fence, south line of said 150.119 acres and north line of said Second Tract to a 1/2 inch iron rod found (capped 5695) at a fence corner, for the southeast corner of said 150.119 acres, inside corner of said Second Tract and inside corner of this tract;

THENCE: N 30 deg 53 min 07 sec W 752.78 feet generally along a fence to a 1/2 inch iron rod found at a fence corner in the south line of said Harchman tract, for the most easterly northeast corner of said 150.119 acres, most northerly northwest corner of said Second Tract and most northerly northwest corner of this tract;

THENCE: N 58 deg 59 min 33 sec E 2720.10 feet generally along a fence, south line of said Harchman tract and north line of said Second Tract to the point of beginning.

## EXHIBIT C

### LEGAL DESCRIPTION

FIELD NOTES for a lot, tract, or parcel of land containing 913.325 acres lying and situated in the Jose Morillo Survey A-549, Henry Elfe Survey A-250, L.W. Chase Survey A-1089, B.B.B. & C.R.R. Survey A-931, Wm. Lennox Survey A-479 and M.S. Sprague Survey A-756 in Bosque County, Texas. Said land is a part of that certain 212.79 acre Tract One and part of that certain 635.38 acre Tract Two described in a deed from Sarah Jane Smith Patton to Jerry D. Bates et ux, Rebecca A. Bates recorded in Volume 349, Page 265 of the Official Public Records of Bosque County, all of that certain 45.18 acres described in a deed from Thomas L. Lacy et ux, Lisa M. Lacy to Jerry D. Bates et ux, recorded in Volume 358, Page 233 of the Official Public Records of Bosque County and all of that certain 231.95 acres described in a deed from Arno Dittrich to Jerry Don Bates et ux, recorded in Volume 376, Page 361 of the Official Public Records of Bosque County, and is more particularly described as follows:

BEGINNING at a 3 inch pipe post at a fence corner in the east line of 180 acres described in a deed to Arthur E. Willmann et ux, Alice Willmann recorded in Volume 179, Page 444 of the Deed Records of Bosque County and in the south line of C.R. 3370 at its end, northwest corner of said 231.95 acres and most northerly northwest corner of this tract;

THENCE: N 59 deg 30 min 26 sec E 1008.68 feet along the south line of said county road, north line of said 231.95 acres and generally along a fence to a 4 inch pipe post;

THENCE: N 60 deg 01 min 54 sec E 1390.81 feet along the south line of said county road, north line of said 231.95 acres and generally along a fence to a 2 inch pipe post in the south line of C.R. 3365;

THENCE: N 60 deg 01 min 29 sec E 1756.39 feet along the south line of said county road, north line of said 231.95 acres and generally along a fence to a 4 inch pipe post at a fence angle, for the northeast corner of said 231.95 acres and northeast corner of this tract;

THENCE: S 74 deg 31 min 55 sec E 62.00 feet along the east line of said 231.95 acres, west line of said county road and generally along a fence to a 4 inch pipe post at a fence angle;

THENCE: S 40 deg 29 min 49 sec E 925.50 feet along the east line of said 231.95 acres, west line of said county road and generally along a fence to a 4 inch pipe post at a fence angle;

THENCE: S 24 deg 52 min 54 sec E 68.63 feet along the east line of said 231.95 acres, west line of said county road and generally along a fence to a 4 inch pipe post at a fence angle;

THENCE: S 22 deg 55 min 53 sec E 864.69 feet along the east line of said 231.95 acres and west line of said county road to a 4 inch pipe post at a fence corner, for the southeast corner of said 231.95 acres and northeast corner of said 45.18 acres;

THENCE: S 20 deg 35 min 44 sec E 963.42 feet along the east line of said 45.18 acres, west line of said county road and generally along a fence to a 4 inch pipe post at a fence angle in the east line of said 635.38 acres;

THENCE: S 20 deg 36 min 00 sec E 902.87 feet along the east line of said 635.38 acres, west line of said county road and generally along a fence to a 4 inch pipe post at a fence angle;

THENCE: S 21 deg 00 min 39 sec E 1487.40 feet along the east line of said 635.38 acres, west line of said county road and generally along a fence to a 4 inch pipe post at a fence angle;

THENCE: S 24 deg 52 min 26 sec E 665.23 feet along the east line of said 635.38 acres, west line of said county road and generally along a fence to a 4 inch pipe post at a fence angle;

THENCE: S 30 deg 27 min 00 sec E 788.79 feet along the east line of said 635.38 acres, west line of said county road and generally along a fence to a 4 inch pipe post to a 4 inch pipe post at a fence angle;

THENCE: S 62 deg 48 min 02 sec E 757.44 feet along the east line of said 635.38 acres, west line of said county road and generally along a fence to a 4 inch pipe post at a fence corner;

THENCE: S 40 deg 31 min 38 sec E 148.83 feet along the east line of said 635.38 acres and west line of said county road to a 4 inch pipe post at a fence corner;

THENCE: S 56 deg 05 min 04 sec E 82.28 feet along the east line of said 635.38 acres, west line of said county road and generally along a fence to a 2 inch pipe post;

THENCE: S 56 deg 27 min 55 sec E 82.04 feet along the east line of said 635.38 acres, west line of said county road and generally along a fence to a 4 inch pipe post at a fence corner, for the northeast corner of 211.77 acres surveyed by James T. Conner, R.P.L.S. No. 2139 January 24, 2013 and southeast corner of this tract;

THENCE: S 50 deg 41 min 21 sec W 900.17 feet along the north line of said 211.77 acres and generally along a fence to a 4 inch pipe post at a fence corner, for a inside corner of said 211.77 acres and outside corner of this tract;

THENCE: N 53 deg 55 min 56 sec W 343.19 feet along the east line of said 211.77 acres and generally along a fence to a 4 inch pipe post at a fence corner, for a outside corner of said 211.77 acres and inside corner of this tract;

THENCE: S 33 deg 52 min 14 sec W 164.04 feet along the north line of said 211.77 acres and generally along a fence to a 12 inch Elm trunk on the east side of a creek;

THENCE: S 44 deg 22 min 02 sec W 216.79 feet, crossing said creek and along the north line of said 211.77 acres to a 8 inch cedar post in the south line of said 635.38 acres and in the north line of said 212.79 acres;

THENCE: S 60 deg 27 min 56 sec W 3194.50 feet along the north line of said 212.79 acres, north line of said 211.77 acres, south line of said 635.38 acres and generally along a fence to a 6 inch pipe post at a fence angle in the north line of a tract of land described in a deed to Norma Ficklin Chaney recorded as Instrument Number 2012-00002997 of the Official Public Records of Bosque County;

THENCE: S 88 deg 38 min 16 sec W 2376.76 feet generally along a fence to a 4 inch pipe post at a fence corner in the east line of 53.33 acres described in a deed to Neil A. Gates et al, recorded as Instrument Number 2008-00002350 of the Official Public Records of Bosque County, northwest corner of said Chaney tract, southwest corner of said 635.38 acres and southwest corner of this tract;

THENCE: N 30 deg 42 min 42 sec W 1679.29 feet along the east line of said 53.33 acres and east line of a 15 acre Tract Three described in a deed to Paul Putman and Michele Sexton recorded as Instrument Number 2013-00000786 of the Official Public Records of Bosque County, generally along a fence and west line of said 635.38 acres to a 1/2 inch iron rod found, for the northeast corner of said 15 acres and southeast corner of a 39.95 acre Tract Two described in same deed to Putman;

THENCE: N 30 deg 57 min 01 sec W 1147.58 feet generally along a fence to a 6 inch pipe post at a fence corner in the south line of a tract of land described in a deed to Kenneth Kruse recorded in Volume 567, Page 646 of the Official Public Records of Bosque County, for the northeast corner of said 39.95 acres, northwest corner of said 635.38 acres and most westerly northwest corner of this tract;

THENCE: N 45 deg 29 min 34 sec E 2569.92 feet along the south line of said Kruse tract, south line of said Willmann tract, north line of said 635.38 acres and generally along a fence to a 3 inch pipe post at fence corner, for the southeast corner of said Willmann tract, southwest corner of said 231.95 acres and inside corner of this tract;

THENCE: N 29 deg 11 min 34 sec W (base bearing per west line 231.95 acres) 2893.03 feet along the east line of said Willmann tract, west line of said 231.95 acres and generally along a fence to the point of beginning.

## EXHIBIT 5

**Legal Description of Subject Property**

## EXHIBIT A

### Description of the Property

Real property in the County of Bosque, State of Texas, described as follows:

Tract 1:

FIELD NOTES for a lot, tract, or parcel of land containing 146.440 acres lying and situated in the Walter W. Daws Survey A-226 and the Wm. W. Alsberry Survey A-20 in Bosque County, Texas. Said land is all of that certain 146.440 acre Tract One described in a deed from Jean G. Hix, etal, to Willow Creek Group, LLC. recorded as Instrument No. 2011-00003397 of the Official Public Records of Bosque County, and is more particularly described as follows:

BEGINNING at a 3 inch pipe post at a fence corner in the west line of 66.88 acres described in a deed to Robert Woodrow Edwards recorded in Volume 520, Page 195 of the Official Public Records of Bosque County, for the most easterly southeast corner of said this tract;

THENCE S 58 deg 50 min 53 sec W 2881.76 feet generally along a fence to a ¾ inch iron pipe found at a fence corner;

THENCE S 58 deg 41 min 46 sec W 1514.01 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence corner, for a inside corner of this tract;

THENCE S 30 deg 49 min 10 sec E 1351.62 feet generally along a fence to a 3/8 inch iron rod found at a fence corner in the north line of 3.11 acres described in a deed to David Charles Prause et ux, recorded in Volume 457, Page 692 of the Official Public Records of Bosque County, for the most southerly southeast corner of this tract;

THENCE S 58 deg 26 min 45 sec W 907.13 feet generally along a fence to a 3/8 inch iron rod found in the east line of C.R. 3545, for the northwest corner of said Prause tract;

THENCE : S 58 deg 47 min 20 sec W 11.28 feet to a point in the center of C.R. 3545, for the southeast corner of a 795.560 acre Tract Two described in same deed to Willow Creek and southwest corner of this tract:

THENCE: Along the center of said county road along the east line of said 795.560 acres the following bearings and distances to 60-D nails found: N 46 deg 30 min 12 sec W 115.51 feet, N 52 deg 37 min 28 sec W 170.59 feet, N 48 deg 07 min 22 sec W 324.47 feet, N 50 deg 22 min 08 sect W 623.97 feet, N 37 deg 24 min 08 sec W 310.49 feet, N 49 deg 21 min 19 sec W 309.65 feet and N 34 deg 28 min 31 sec W 418.02 feet to a 60-D nail set, for the existing southwest corner of the remainder of a Second Tract of Parcel One described in a deed to Walter T. Hix, IV recorded in Volume 408, Page 813 of the Official Public Records of Bosque County tract and northwest corner of this tract;

THENCE: N 58 deg 50 min 53 sec E at 20.0 feet pass a ½ inch iron rod found (capped 5695) on the east line of said county road, in all 5872.40 feet across pasture to a ½ inch iron rod found (capped 5695) in the west line of said Edwards tract, for the southeast corner of said Hix tract and northeast corner of this tract;

THENCE: S 30 deg 58 min 39 sec E (827.78 feet generally along a fence and west line of said Edwards tract to the point of beginning.

Tract 2:

**TRUSTEE EXHIBIT 4**
**Page 5 of 11**

FIELD NOTES for a lot, tract, or parcel of land containing 795.560 acres lying and situated in the Wm. W. Alsberry Survey A-20, James Skinner Survey A-783, Wm. W. Alsberry Survey A-21. K.D. Turner Survey A-817, John Demoss Survey A-206 and the A. Frazier Survey A-282 in Bosque County, Texas. Said land is all of that certain 795.560 acre Tract Two, described in a deed from Jean G. Hix, et al, to Willow Creek, LLC. recorded as <u>Instrument No. 2011-00003397</u> the Official Public Records of Bosque County, and is more particularly described as follows:

BEGINNING at a ½ inch iron rod found (capped 5695) at a fence corner, for the northwest corner of this tract;

THENCE: N 58 deg 41 min 38 sec E 4296.96 feet generally along a fence to a 60-D nail found in a 6 inch wood post on the west side of creek;

THENCE: N 36 deg 20 min 35 sec E 1306.08 feet generally along a fence to a 8 inch pipe post at a fence angle;

THENCE: N 71 deg 07 min 02 sec E 92.54 feet generally along a fence to a 8 inch pipe post at a fence corner, for the northeast corner of this tract;

THENCE: S 16 deg 38 min 56 sec E 1846.90 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence angle;

THENCE: S 31 deg 07 min 04 sec E 2199.85 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence corner, for a inside corner of this tract;

THENCE: S 59 deg 26 min 40 sec E 222.22 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence corner, for the northwest corner of 150 acres described in a deed to Willow Creek Group, LLC. recorded as <u>Instrument No. 2012-00001665</u> of the Official Public Records of Bosque County and a outside corner of this tract;

THENCE: S 30 deg 33 min 14 sec E 2022.99 feet generally along a fence, to a ½ inch iron rod found (capped 5695) at a fence corner in an old fence line, for the southwest corner of said 150 acres and a inside corner of this tract;

THENCE: N 59 deg 22 min 29 sec E 1108.47 feet, generally along an old fence, and the extension thereof and south line of said 150 acres to a 60-D nail found in the center of C.R. 3545, for a northwest corner of the remainder of a Second Tract of Parcel One described in a deed to Walter T. Hix, IV recorded in <u>Volume 408, Page 813</u> of the Official Public Records of Bosque County and the most easterly northeast corner of this tract;

THENCE Along the center of said county road to 60-D nails found, west line of said Hix tract and west line of a 146.440 acre Tract One described in same deed to Willow Creek: S 28 deg 55 min 18 sec E 204.01 feet, S 36 deg 32 min 40 sec E 455.62 feet, S 34 deg 28 min 31 sec E 523.00 feet, S 49 deg 21 min 19 sec E 309.65 feet, S 37 deg 24 min 08 sec E 310.49 feet, S 50 deg 22 min 08 sec E 623.97 feet, S 48 deg 07 min 22 sec E 324.47 feet, S 52 deg 37 min 28 sec E 170.59 feet, S 46 deg 30 min 12 sec E 115.51 feet to a point for the southwest corner of said 146.440 acres, said point being S 58 deg 47 min 20 sec W 11.28 feet from a 3/8 inch iron rod found on the east side of said county road being the northwest corner of 3.11 acres described in a deed to David Charles Prause et ux, recorded in <u>Volume 457, Page 692</u> of the Official Public Records of Bosque County and the southeast corner of this tract;

THENCE: S 58 deg 47 min 20 sec W 801.04 feet generally along a fence to a ½ inch iron rod found, for the northeast corner of a tract of land described in a deed to Michael Lucas et ux, Alicia Lucas recorded as <u>Instrument No. 2011-00002241</u> of the Official Public Records of Bosque County;

THENCE: S 58 deg 33 min 15 sec W 2411.09 feet generally along a fence and north line of said

6

**TRUSTEE EXHIBIT 4**
**Page 6 of 11**

Lucas tract to a ½ inch iron rod set at a fence corner on the west side of Willow Creek, for a inside corner of this tract;

THENCE: S 41 deg 45 min 50 sec E 267.42 feet generally along a fence on the west side of Willow Creek to a ½ inch iron rod found (capped 5695) at a fence angle;

THENCE: S 22 deg 43 min 55 sec E 60.06 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence intersection, for outside corner of this tract;

THENCE: S 59 deg 58 min 00 sec W 841.82 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence angle;

THENCE: S 57 deg 48 min 33 sec W 901.17 feet generally along a fence, and the extension thereof, to a ½ inch iron rod found (capped 5695), for the southwest corner of this tract;

THENCE: N 30 deg 49 min 09 sec W 4694.37 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence corner, for a inside corner of this tract;

THENCE: S 66 deg 33 min 18 sec W 267.02 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence corner, for the southwest corner of this tract;

THENCE: N 30 deg 57 min 46 sec W 2948.57 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence corner, for a inside corner of this tract;

THENCE: S 59 deg 24 min 05 sec W 1900.11 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence corner, for a outside corner of this tract;

THENCE: N 30 deg 27 min 55 sec W 1121.92 feet generally along a fence to the point of beginning.

Tract 3:

FIELD NOTES for a lot, tract, or parcel of land containing 150.119 acres lying and situated in the Alexander Frazier Survey A-282 and the Walter W. Daws Survey A-226 in Bosque County, Texas. Said land is all of that certain tract described in a deed from Capital Farm Credit, FLCA to Willow Creek Group, LLC. recorded as Instrument No. 2012-00001665 of the Official Public Records of Bosque County, and is more particularly describe as follows:

BEGINNING at a ½ inch iron rod found (capped 5695) at a fence corner in a south line of a 7687.75 acre First Tract described in a deed to Roberta Marchman et al, recorded in Volume 232, Page 744 of the Official Public Records of Bosque County, outside corner of a 795.560 acre Tract Two described in a deed to Willow Creek Group, LLC. recorded as Instrument No. 2011-00003397 of the Official Public Records of Bosque County and northwest corner of this tract;

THENCE: S 59 deg 26 min 40 sec E 2604.02 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence corner, for a inside corner of said Marchman tract and most northerly northeast corner of this tract;

THENCE: S 31 deg 06 min 45 sec E 1274.72 feet generally along a fence to a ½ inch iron rod found (capped 5695) at a fence corner, for a outside corner of said Marchman tract and a inside corner of this tract;

THENCE: N 59 deg 06 min 53 sec E 1677.78 feet generally along a fence and south line of said Marchman tract to a ½ inch iron rod found (capped 5695) at a fence corner, for a outside corner of a Second Tract of Parcel One described in a deed to Walter T. Hix, IV recorded in Volume 408, Page 813 of the Official Public Records of Bosque County, and the most easterly northeast corner of this tract;

7

**TRUSTEE EXHIBIT 4**
**Page 7 of 11**

THENCE: S 30 deg 53 min 07 sec E 752.78 feet generally along a fence to a ½ inch iron rod found (capped 5695), for a inside corner of said Hix tract and southeast corner of this tract;

THENCE: S 59 deg 22 min 29 sec W 4298.54 feet partially along a fence, north line of said Second Tract to a ½ inch iron rod found (capped 5695) at a fence corner, for a inside corner of said 795.560 acres and southwest corner of this tract;

THENCE: N 30 deg 33 min 14 sec W 2022.99 feet generally along a fence and a east line of said 795.560 acres to the point of beginning.

Tract 4:

FIELD NOTES for a lot, tract, or parcel of land containing 147.214 acres lying and situated in the Walter W. Daws Survey A-226, Wm. W. Alsberry Survey A-20 and A. Frazier Survey A-282 in Bosque County, Texas. Said land is part of that certain Second Tract of Parcel One described in a deed from Jean G. Hix and Heather G. Hix, as Independent Co-Executors for the Estate of Walter T. Hix, IV to Jean G. Hix, Heather G. Hix and Walter G. Hix, V as Co-Trustees, for the Walter T. Hix, IV Revocable Trust recorded in Volume 471, Page 835 of the Official Public Records of Bosque County, and is more particularly described as follows:

BEGINNING at a ½ inch iron rod found (capped 5695) at a fence corner in the west line of a tract of land described in a deed to E. S. Dorman, Jr. recorded in Volume 315, Page 930 of the Deed Records of Bosque County, a southeast corner of 7687.75 acre First Tract described in a deed to Roberta Marchman recorded in Volume 232, Page 744 of the Deed Records of Bosque County, for the northeast corner of said Second Tract and northeast corner of this tract;

THENCE: S 31 deg 16 min 57 sec E 814.27 feet generally along a fence and east line of said Second Tract to a 3/8 inch iron rod found (capped) at a fence corner, for the existing southwest corner of said Dorman tract and northwest corner of 66.88 acres described in a deed to Robert Woodrow Edwards recorded in Volume 520, Page 195 of the Official Public Records of Bosque County;

THENCE: S 30 deg 58 min 39 sec E (base bearing per Edwards deed) 664.59 feet generally along a fence, west line of said Edwards tract and east line of said Second Tract to a ½ inch iron rod found (capped 5695), for the northeast corner of a 146.440 acre Tract One described in a deed to Caddoa Creek Ranch, LLC. recorded as Instrument No. 2014-00002412 of the Official Public Records of Bosque County and southeast corner of this tract;

THENCE: S 58 deg 50 min 53 sec W across pasture at 5852.40 feet pass a ½ inch iron rod found (capped 5695) on the east side of C.R. 3545, in all 5872.40 feet to a 60-D nail found in the center of said county road and in the east line of a 795.560 acre Tract Two described in same deed to Caddoa, for the northwest corner of said 146.440 acres and southwest corner of this tract;

THENCE: N 34 deg 28 min 31 sec W 104.98 feet generally along the center of said county road and east line of said 795.560 acres to a 60-D nail found;

THENCE: N 36 deg 32 min 40 sec W 455.62 feet generally along the center of said county road and east line of said 795.560 acres to a 60-D nail found;

THENCE: N 28 deg 55 min 18 sec W 204.01 feet generally along the center of said county road to a 60-D nail found in a cattle guard, and in the south line of a 150.119 acre Tract Three described in same deed to Caddoa, and in the north line of said Second Tract, for the most easterly northeast corner of said 795.560 acres and most westerly northwest corner of this tract;

THENCE: N 59 deg 22 min 29 sec E 3190.07 feet partially along a fence, south line of said 150.119 acres and north line of said Second Tract to a ½ inch iron rod found (capped 5695) at a fence corner, for the southeast corner of said 150.119 acres, inside corner of said Second Tract and inside corner of this tract;

**TRUSTEE EXHIBIT 4**
**Page 8 of 11**

THENCE: N 30 deg 53 min 07 sec W 752.78 feet generally along a fence to a ½ inch iron rod found at a fence corner in the south line of said Marchman tract, for the most easterly northeast corner of said 150.119 acres, most northerly northwest corner of said Second Tract and most northerly northwest corner of this tract;

THENCE: N 58 deg 59 min 33 sec E 2720.10 feet generally along a fence, south line of said Marchman tract and north line of said Second Tract to the point of beginning.

TRUSTEE EXHIBIT 4
Page 9 of 11

<u>EXHIBIT B</u>

<u>Depiction of the Premises</u>

Real property in the County of Bosque, State of Texas, depicted as follows:

**Depiction of the Land Up to 1300 acres, plus or minus, of the real property located 1 mile, more or less, West of County Road 2490 and near the City of Valley Mills, Bosque County, Texas, within Property ID Number R07041, R25530, R06132, R25531, R25529, R06131, R35349, R35348, R06101, R25533, R05181, R06113, R25532, and R35350**



together with, and including, (i) the non-exclusive right to use all of Landlord's easement rights and rights appurtenant to the Property where reasonably necessary for Tenant's conduct of its business on the Premises; (ii) an easement for light, solar energy resources, ingress, egress, and utility access over, under and across the Property as reasonably necessary for Tenant's conduct of its business on the Premises; and (iii) all other easements and rights set forth in the Lease.

10

**TRUSTEE EXHIBIT 4**
**Page 10 of 11**

Filed for Record in:
STATE OF TEXAS, BOSQUE COUNTY TEXAS
I hereby certify that this instrument was filed on the
date and time stamped hereon by me and was duly
recorded in the records of:

BOSQUE COUNTY TEXAS
Tabatha Ferguson, COUNTY CLERK

Instr.: 2019-02195
June 28, 2019 at 1:02 PM
Stamps: 11 Page(s)

By: _____
      Deputy Clerk

# **EXHIBIT B**

## **Redlined Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| DARYL GREG SMITH, | § | Case No. 21-60162-rbk |
| | § | |
| CANADIAN RIVER RANCH, LLC | § | Case No. 21-60163-rbk |
| | § | |
| Debtors. | § | (Jointly Administered Under |
| | § | Case No. 21-60162-rbk) |

<u>**ORDER: (I) APPROVING ASSUMPTION OF SOLAR LEASE;**</u>
<u>**(II) AUTHORIZING ENTRY INTO LEASE AMENDMENT;**</u>
<u>**(III) PROVIDING PROTECTIONS FOR LESSEE; AND (IV) AUTHORIZING THE**</u>
<u>**CHAPTER 11 TRUSTEE TO EXECUTE CERTAIN DOCUMENTS PURSUANT TO**</u>
<u>**FEDERAL RULE OF CIVIL PROCEDURE 70, MADE APPLICABLE TO THIS**</u>
<u>**PROCEEDING THROUGH FEDERAL RULE OF BANKRUPTCY PROCEDURE 7070**</u>

CAME ON FOR HEARING the *Trustee's Expedited Motion for Entry of Order: (i) Authorizing Assumption of Solar Lease; (ii) Authorizing Entry into Lease Amendment; (iii) Providing Protections for Lessee; and (iv) Authorizing the Chapter 11 Trustee to Execute Certain Documents Pursuant to Federal Rule of Civil Procedure 70, Made Applicable to this Proceeding through Federal Rule of Bankruptcy Procedure 7070* (the "**Motion**"), filed in the

ORDER: (I) APPROVING ASSUMPTION OF SOLAR LEASE; (II) AUTHORIZING ENTRY INTO LEASE AMENDMENT; AND (III) PROVIDING PROTECTIONS FOR LESSEE—Page 1
040122-15051/4833-0917-5537.6

above styled and numbered jointly administered Chapter 11 case (the "**Bankruptcy Cases**") by ~~Greg~~Gregory S. Milligan, in his capacity as Chapter 11 Trustee for the estates of Daryl Greg Smith ("**Smith**") and Canadian River Ranch, LLC ("**CCR**", with Smith, the "**Debtors**"), the debtors and Plaintiffs herein.

Based upon the evidence at said hearing, the Court makes the following findings of fact and conclusions of law[1]:

1.    On April 9, 2021, the Debtors filed their voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), thereby creating their respective bankruptcy estates and initiating the Bankruptcy Cases.  Smith's bankruptcy estate is defined hereby as the "**Smith Estate**" and CCR's bankruptcy estate is defined as the "**CCR Estate**". The Smith Estate and the CCR Estate are collectively referred to as the "**Estates**".

2.    On June 29, 2021, an order was entered approving the appointment of Gregory S. Milligan as Chapter 11 Trustee (the "**Trustee**") for the Estates. The Trustee has the duties set forth in sections 1106 and 1108 of the Bankruptcy Code.

3.    Caddoa Creek Ranch, LLC ("**Caddoa**") is a Colorado limited liability company, 90% owned by Smith and 10% owned by Darren Keith Reed ("**Reed**").

4.    On or about October 31, 2017, Caddoa, as landlord, and Angus Solar, LLC ("**Angus**"), as tenant, entered into that certain *Ground Lease Agreement* (the "**Lease**"), as amended by the First Amendment to Ground Lease Agreement dated July 22, 2020.  The Lease relates to a proposed solar energy farm to be built and owned by Angus, or its affiliates, on certain land then owned by Caddoa, specifically: up to 1,300 acres, plus or minus, of real property located

---

[1] The findings and conclusions set forth herein and in the record of the Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

approximately 1 mile west of County Road 2490 and near the City of Valley Mills, Bosque County, Texas, within Property ID Number R07041, R25530, R06132, R25531, R25559, R06131, R35349, R35348, R06101, R25533, R05181, R06113, R25532, and R35350 (collectively, the "**Subject Property**").

5.      On June 28, 2019, Caddoa and Angus executed that certain *Memorandum of Lease*, which Angus caused to be filed with Bosque County (the "**County**") and recorded against title to the Subject Property as instrument number 2019-02195 (the "**Lease Memorandum**").

6.      The Subject Property is more fully described on Exhibit "A" to the Lease and on Exhibits "A" and "B" to the Lease Memorandum and, in all events, the Subject Property as defined and identified in the Lease and the Lease Memorandum will control.  The legal description of the Subject Property is attached hereto as **Exhibit 5.**

7.      The recording of the Lease Memorandum against title to the Subject Property gives Angus an encumbrance, enforceable against the world, against the Subject Property, as well as easement interests in and to the Subject Property.  Pursuant to Texas law and the terms of the Lease, any transfer by Caddoa of its interests in the Subject Property or the Lease shall remain subject to the Lease.

8.      Separately, and after extensive divorce proceedings between Smith and his ex-wife, Karen Annette Smith ("**K. Smith**"), on November 27, 2019, the 325th Judicial District Court for Tarrant County, Texas (the "**State Court**") entered that certain *Final Decree of Divorce* (the "**Judgment**") in Cause No. 325-584465-15 (the "**State Court Proceeding**").  The Judgment has not been stayed, although it remains subject to potential appeals and discretionary review, none of which are prejudiced by anything contained in this Order except that, notwithstanding anything that may occur in connection with the Judgment or the State Court Proceeding, in no event shall

any right, title, or interest of Angus in and to the Subject Property and recognized in or conferred by this Order be prejudiced.

9.      Among other things, the Judgment ordered Smith to (a) vote his interest in Caddoa to dissolve Caddoa, and (b) cause Caddoa to transfer the Subject Property to Smith and to Reed individually, with Smith holding a 90% undivided interest in the Subject Property and Reed holding the remaining 10% undivided interest in the Subject Property.  The Judgment orders that such transfers and the 90% interest that Smith held in the Subject Property would be subject to a lien in favor of K. Smith to secure the Judgment.

10.     Smith did not comply with the Judgment's order to effectuate the foregoing transfers.  Accordingly, through subsequent proceedings in the State Court Proceeding, the State Court appointed Stanley W. Wright ("**Wright**" or the "**Receiver**") as a receiver for Smith for the limited purposes of (a) effectuating the transfers of certain properties (the "**Properties**"), including the Subject Property, to Smith and to Reed and (b) recording deed of trust liens against such Properties, including the Subject Property, in favor of K. Smith to secure the Judgment (the "**K. Smith Liens**").

11.     Thereafter, on or about February 7, 2020, Wright, acting on the instructions of the State Court and in the stead of Smith, executed and caused to be recorded that certain *Special Warranty Deed* (the "**Transfer Deed**") to effectuate the transfer of the Subject Property to Smith and to Reed.  Upon the execution and recording of the Transfer Deed, the State Court discharged Wright as Receiver, which terminated his authority to act as a receiver granted to him by the State Court.

12.     The Transfer Deed provides that the "grantee" is "Stanley W. Wright, not in his individual capacity, but solely in his capacity as court-appointed receiver . . . for and on behalf of

Daryl Greg Smith." The Transfer Deed also transferred an undivided ten percent (10%) interests in the Subject Properties to Reed.

13. The splitting of legal title and equitable title on account of the requirement that Wright execute the Transfer Deed led to confusion and concern as to the Estates' ability, absent the resolutions hereinafter provided, to provide clean title to and thus monetize the Subject Property.

14. Prior to the appointment of the Trustee, the Debtors requested that Wright file a corrected Transfer Deed pursuant to the Judgment; however, Wright lacks the authority to do so because he has already been discharged as Receiver pursuant to the order that appointed him. As a result, Wright, in his capacity as Receiver (the capacity in which he executed the Transfer Deed), is legally incapable of executing and filing a corrected Transfer Deed and therefore cannot effectuate a corrected Transfer Deed.

15. Nothing in this Order shall constitute any finding or conclusion with respect to any heretofore made assertions by the Debtors as to the appropriateness or lawfulness of the State Court's actions, orders, or Judgment, and all rights regarding the same, including on any appeal or ancillary litigation for discretionary review, are preserved; except that, notwithstanding anything that may occur in connection with the Judgment or the State Court Proceeding, in no event shall any right, title, or interest of Angus, and its successors and assigns, in and to the Subject Property and recognized in or conferred by this Order, the Lease or the Lease Amendment be prejudiced.

16. All interests of Smith in Caddoa and in the Subject Property are property of the Smith Estate.

17. All rights of Smith as the 90% owner of the Subject Property under the Lease are property of the Smith Estate and all obligations under the Lease are obligations of the Smith Estate,

pursuant to the terms of the Lease, the recording of the Lease Memorandum, and section 102(2) of the Bankruptcy Code.  The transfer of the Subject Property to Smith and Reed, and the granting of the K. Smith Liens, are all subject to the Lease, and all rights under the Lease are superior to the rights of K. Smith under the K. Smith Liens because the Lease Memorandum is recorded and is prior in time.

18.     The Lease is an unexpired lease or executory contract of the Smith Estate, since it is a pre-existing charge and encumbrance against the Subject Property, and since the transfer of the Subject Property from Caddoa to Smith was expressly subject to the Lease pursuant to the terms of the Lease and the Lease Memorandum.  As such, and even though Smith is not a party to the Lease, the Lease is a "lease of the debtor" within the meaning of section 365 of the Bankruptcy Code.

19.     The assumption of the Lease is a proper exercise by the Trustee of his business judgment, and such assumption is in the best interests of the Smith Estate.

20.     The Trustee, Smith, Reed, and Angus have prepared that certain *Second Amendment to Ground Lease* (the "**Lease Amendment**") to clarify the ownership of the Subject Property, the identity of the lessor, and the rights of Angus.  Entering into the Lease Amendment is a proper exercise by the Trustee of his business judgment and entering into the same is in the best interests of the Smith Estate.  The Trustee and Angus have also prepared that certain Tenant Estoppel Certificate (the "**Estoppel Certificate**") to be executed in connection with the Lease Amendment.

21.     All prerequisites and conditions to the assumption of the Lease and to the entry into the Lease Amendment have been satisfied.  The Lease, as amended by the Lease Amendment, shall be referred to herein as the "**Amended Lease**". Subject to the rights of Angus, Smith and

Reed under this Order, the Amended Lease shall remain assignable by Smith and the Smith Estate to Caddoa, and the Subject Property shall remain subject to potential transfer by Smith and the Smith Estate to Caddoa, subject to the rights of K. Smith under the K. Smith Liens.

22.     Angus is leasing property of the Smith Estate under the Amended Lease and this Order in good faith, for reasonably equivalent value, and without any collusion, bad faith, or secret agreement.   Accordingly, Angus is entitled to the full protections of section 363(m) of the Bankruptcy Code.

23.     The Court has jurisdiction over the Motion and all matters in this Order under 28 U.S.C. § 1334.  Such jurisdiction is core under 28 U.S.C. § 157(b)(2).  Venue of the Bankruptcy Cases before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

24.     Due, sufficient, and proper notice of the Motion and of the hearing thereon was provided by the Trustee to all parties with an interest in the Motion and this Order, including, but not limited to, Smith, K. Smith, Reed, Caddoa, Angus, and Wright.  Cause exists to grant all relief provided for in this Order, and such relief is in the best interests of the Estates.  Any factual predicates for granting any such relief have been satisfied.

25.     Notwithstanding the potential retention of legal title in and to the Subject Property by Wright, the Court has exclusive *in rem* jurisdiction over the whole of the Subject Property under 28 U.S.C. § 1334(e), including to make all findings of fact and conclusions of law, and to cause this Order to be recorded against the Subject Property and to be enforceable against the same both *in rem* and *in personam* as against all parties.  The Court has the authority to enter this Order pursuant to 11 U.S.C. §§ 105(a), 363, 365, and 543, and Rule 70 of the Federal Rules of Civil Procedure made applicable by Bankruptcy Rule 7070.

ACCORDINGLY, it is hereby ORDERED, ADJUDGED, DECREED, and DETERMINED :

That the Motion is GRANTED as set forth herein;

**I.    Matters Regarding the Lease**

A.    The Amended Lease is ASSUMED by the Smith Estate and shall be binding on the Smith Estate according to its terms;

B.    The Lease Amendment is APPROVED and the Trustee is authorized and directed to execute and deliver the Lease Amendment in the form attached hereto as **Exhibit 1**, whereafter the same or a memorandum thereof may be recorded against the Subject Property by either the Trustee or Angus.  In connection with the delivery by Angus of the Lease Amendment, Angus shall also provide the Estoppel Certificate to the Trustee in the form attached hereto as **Exhibit 2**;

C.    With the assumption of the Amended Lease, all rights, powers, interests, title, and obligations of Angus and its successors and assigns under the Amended Lease shall be fully enforceable as against the world, including, without limitation, against Smith, the Estates, Reed, Wright and K. Smith, and fully enforceable against the Subject Property *in rem*, notwithstanding any absence by them of any approval of any transaction provided for herein or in the Amended Lease, such approval not being required given the Court's exclusive *in rem* jurisdiction over the Subject Property;

D.    The Trustee is authorized to execute and deliver any additional amendments, estoppels, affidavits or other documents as may be reasonably required for Angus to obtain financing for the construction and operation of the solar facility to be located on the Subject Property, including any such documents as may be required for Angus' title company (the "**Title**

**Company**") to issue a title policy insuring Angus' leasehold interest in the Subject Property and insuring the lien of Angus' construction lender against such leasehold interest;

E.      To the extent that the Amended Lease requires further modification or amendment in order to effectuate the economic terms set forth therein, for so long as the Trustee is authorized to act on behalf of the Debtors, the Trustee shall be authorized to take all actions as Landlord pursuant to the Amended Lease (and as defined therein).  From and after the date the Trustee is no longer authorized to act on behalf of the Debtors, then Smith (or his legal successor) shall be authorized to take all actions as Landlord pursuant to the Amended Lease.

F.      Smith, Reed, Caddoa, Wright and K. Smith, and all transferees and assigns thereof, and all agents, attorneys, and representatives thereof, are **PERMANENTLY ENJOINED** and **PROHIBITED** from contesting, questioning, or challenging -  whether by legal process (except through appealing this Order), by recording any instrument against the Subject Property, by taking any action before any governmental authority, or by making any public statement - any and all rights, interests, and title of Angus and its successors and assigns under the Amended Lease, and any and all rights, title, and interest of Angus and its successors and assigns in and to the Subject Property.

## II.      Seniority of Amended Lease

G.      The rights of Angus and its successors and assigns shall in all respects be superior to the rights of K. Smith or any other purported lienholders in respect of the Subject Property.  The Trustee, K. Smith and Angus are hereby authorized and directed to deliver and execute the Subordination Agreement attached hereto as **Exhibit 2̶3**.

H.      Smith, Reed, Caddoa, Wright and K. Smith, and all transferees and assigns thereof, and all agents, attorneys, and representatives thereof are **PERMANENTLY ENJOINED** and

**PROHIBITED** from exercising in any way any legal title that any such party may have in the Subject Property to contest, challenge, question, seek to limit, or seek to take away any and all rights of Angus and its successors and assigns under the Lease or Lease Amendment, or in and to the Subject Property;

I.      Nothing herein prejudices any and all rights of K. Smith on account of the K. Smith Liens, subject to the automatic stay, and nothing herein enjoins K. Smith from exercising all rights under the K. Smith Liens, subject to the automatic stay, except that, for the avoidance of any doubt, any foreclosure by K. Smith of any lien against the Subject Property shall be subject to all rights, interests, and title of Angus and its successors and assigns in and to the Subject Property;

J.      Nothing in this Order recognizes or calls into question the validity, extent, and priority of the K. Smith Liens, or prejudices any and all issues, arguments, and rights regarding the same, including any and all rights of the Trustee to challenge the same as may be otherwise appropriate.

### III.    Reservation of Rights

K.      Without necessarily deciding that any proceeds of the Lease and Lease Amendment are "cash collateral" under section 363(a) of the Bankruptcy Code, to the extent that the Trustee receives such proceeds, all rights under section 363 of the Bankruptcy Code with respect to any holder of an interest in cash collateral are preserved, and the Trustee shall not use any such proceeds pending the entry of further order of the Court;

L.      In light of Reed having consented to the entry of this Order and to the Lease Amendment, no further proceeding with respect to Reed's interest in the Subject Property is necessary, and Reed retains any and all rights he has with respect to any proceeds of the Lease and Lease Amendment, which rights shall not constitute cash collateral with respect to his 10%

undivided interest, (the "**Reed Percentage**"), provided that in no event shall Reed have any rights or claims against Angus or its successors and assigns for any proceeds of the Lease or Lease Amendment if Angus performs thereunder by sending any applicable payments to the Trustee, or if the Trustee is no longer authorized to act on behalf of the Debtors, to Daryl Greg Smith; The Amended Lease contemplates that the lease payments by Angus to the Trustee will include the Reed Percentage. The Reed Percentage shall be held in trust for the benefit of Reed and shall not constitute property of the estate of the Debtors. The Trustee shall promptly remit the Reed Percentage to Reed upon receipt. The remittance by the Trustee of the Reed Percentage shall not be considered a disbursement of the Estates for any purpose. The obligations of the Trustee in this paragraph with respect to the Reed Percentage (including the obligation to promptly remit payment) shall be binding upon any successors or assigns of the Trustee;

M.     Smith reserves the right to seek to convey his interest in the Subject Property to Caddoa under a potential Chapter 11 plan or otherwise, and nothing in this Order prejudices or prevents any issue with respect to the same;

N.     This Order may be recorded against the Subject Property, and the County is directed and ordered to accept the same for recording, whereafter this Order shall govern and control as to all issues expressly provided for herein, and shall be binding on the world.

**IV.     Corrective Transfer Deed**

O.     The Trustee, pursuant to Rule 70 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7070, is authorized and directed to deliver and execute the corrected Transfer Deed (the "**Corrected Transfer Deed**") attached hereto as **Exhibit 34**.

## V.   Miscellaneous

P.   **Effectiveness of All Actions.** All actions contemplated by this Order are hereby authorized to be taken without further application to or order of the Court.

Q.   **Approval of Payment Satisfaction Documents**. The Bankruptcy Court approves the Lease Amendment, the Subordination Agreement and the Corrected Transfer Deed (collectively, the "**Approved Documents**"). The Trustee shall have no personal liability for executing the Approved Documents. The Trustee is authorized to execute and deliver such other documents as Angus, its successors or assigns, or the Title Company may deem necessary to implement the transactions contemplated by the Lease Amendment, and shall perform, execute, and deliver or cause to be delivered and undertake any and all further acts, deeds, and assurances as may reasonably be required to consummate the transactions contemplated in the Lease Amendment.

R.   **Effect of Conflict**. The provisions of the Lease Amendment and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, that if there is determined to be any inconsistency between any provision of the Lease Amendment and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern and any provision of this Order shall be deemed a modification of the Lease Amendment and shall control and take precedence. The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

S.   The order authorizes the use, sale or lease of property and this order shall be immediately effective upon entry and shall not be stayed pursuant to Bankruptcy Rule 6004(h).

---

T.    This Court shall retain jurisdiction to the maximum extent possible to interpret and to enforce this Order.

###

APPROVED AS TO FORM AND CONTENT, AND ENTRY REQUESTED BY:

WALLER LANSDEN DORTCH & DAVIS, LLP

By: /s/ *Morris D. Weiss*
Morris D. Weiss
Texas Bar No. 21110850
William R. "Trip" Nix, III
Texas Bar No. 24092902
100 Congress Ave., Suite 1800
Austin, Texas 78701
Telephone: (512) 685-6400
Facsimile: (512) 685-6417
Email: morris.weiss@wallerlaw.com
        trip.nix@wallerlaw.com

PROPOSED ATTORNEYS FOR GREGORY S. MILLIGAN,
CHAPTER 11 TRUSTEE


MUNSCH HARDT KOPF & HARR, P.C.

By: /s/
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
500 North Akard St., Ste. 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 978-4375
drukavina@munsch.com
tberghman@munsch.com

PROPOSED COUNSEL TO THE DEBTORS


By: /s/
E. P. Keiffer (SBN 11181700)
Kevin McCullough (SBN 00788005)
Zach Levick (SBN 24119380)
ROCHELLE MCCULLOUGH, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Facsimile: (214) 953-0185

pkeiffer@romclaw.com
kdm@romclaw.com
zlevick@romclaw.com

COUNSEL FOR KAREN ANNETTE SMITH


By: /s/

TIMOTHY A. MILLION
Texas Bar No. 24051055
Husch Blackwell LLP
600 Travis St Ste 2350
Houston, TX 77002-2629
Telephone: (713) 525-6221
Facsimile: (713) 647-6884
Tim.Million@huschblackwell.com

COUNSEL TO ANGUS SOLAR, LLC


By: /s/

Rene Escobedo
State Bar No. 00785849
6800 Park Ten Blvd, Suite 135-E
San Antonio, TX 78213
Telephone: (210) 349-2224
Facsimile: (210) 223-3815
rene.escobedo@rre-law.com

COUNSEL TO DARREN KEITH REED

## EXHIBIT 1

## Lease Amendment

ORDER: (I) APPROVING ASSUMPTION OF SOLAR LEASE; (II) AUTHORIZING ENTRY INTO LEASE AMENDMENT; AND (III) PROVIDING PROTECTIONS FOR LESSEE – Page 2

040122 15051/4833-0917-5537.1

# EXHIBIT 2

## Estoppel Certificate

ORDER: (I) APPROVING ASSUMPTION OF SOLAR LEASE; (II) AUTHORIZING ENTRY INTO LEASE AMENDMENT; AND (III) PROVIDING PROTECTIONS FOR LESSEE - Page 2

040122 15051/4833-0917-5537.1

## EXHIBIT 3

### Subordination Agreement

# EXHIBIT 4

## Corrected Transfer Deed

ORDER: (I) APPROVING ASSUMPTION OF SOLAR LEASE; (II) AUTHORIZING ENTRY INTO LEASE AMENDMENT; AND (III) PROVIDING PROTECTIONS FOR LESSEE – Page 2

040122 15051/4833-0917-5537.1

## EXHIBIT 5

### Legal Description of Subject Property

ORDER: (I) APPROVING ASSUMPTION OF SOLAR LEASE; (II) AUTHORIZING ENTRY INTO LEASE AMENDMENT; AND (III) PROVIDING PROTECTIONS FOR LESSEE - Page 2

040122 15051/4833-0917-5537.1