IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Lead Case No. 21-60162-rbk |
| DARYL GREG SMITH, and | § | |
| | § | Second Case No. 21-60163-rbk |
| CANADIAN RIVER RANCH, LLC, | § | |
| | § | (Jointly Administered Under |
| *Debtors* | § | Case No. 21-60162-rbk) |

### KAREN ANNETTE SMITH'S REPLY TO
### DEBTOR'S REPSONSE TO LIMITED OBJECTION
### TO DEBTOR-SMITH'S CLAIMED OBJECTIONS

COMES NOW, Karen Annette Smith ("**K. Smith**") who files this her *Reply to Debtor's Response to Limited Objection to Debtor-Smith's Claimed Objections* (the "**Reply**"), by which she replies to the assertions made by Daryl Greg Smith ("**Debtor-Smith**") in his *Debtor's Response to Limited Objection to Debtor-Smith's Claimed Objections* (the "**Response**") [Docket No. 93] as to K. Smith's *Limited Objection to Debtor-Smith's Claimed Exemption*, (the "**Objection**") [Docket No. 51] and in support thereof would respectfully show the following.

### BACKGROUND

1. K. Smith objected to the improper exemption claimed by Debtor-Smith of a purported interest in Caddoa Creek Ranch, LLC ("**Caddoa**"), a Colorado limited liability company, owned 90% by Debtor-Smith and owned 10% by Darren Keith Reed ("**Reed**") on two principal basis: a) there was functionally no Caddoa entity remaining; and b) that the value of the interest in Caddoa, were it not actually dissolved, was significantly higher than the 90₵ referenced in Debtor-Smith's Schedule C filed in this case and that the 90% membership interest, were

Caddoa to in fact exist, had to be valued significantly higher than the $13,900 "Wildcard Exemption.[1]"

2. In the Response, Debtor-Smith takes the position that Caddoa was never in fact dissolved as April 9, 2021, the Petition Date, noting that it remained in good standing as an entity per Colorado law, and that the 90% interest, per the Fifth Circuit's "snapshot" rule, had to be valued as of said date and thus said interest in Caddoa could be exempted. Debtor-Smith made sure to note that the real property holdings of Caddoa had been transferred to Debtor-Smith and Reed per the requirements of the Divorce Decree and that they no longer remain in Caddoa.[2] Nothing was noted about any other assets of Caddoa.

3. Thereafter, Gregory S. Milligan ("**Trustee**"), Chapter 11 Trustee of the Estates of Debtor-Smith and Canadian River Ranch, LLC filed his *Motion of Gregory S. Milligan, Chapter 11 Trustee to Intervene in Objection to Exemptions* [Docket No. 179] (the "**Intervention**"), wherein the Trustee details, among other things, that Caddoa had asserted five claims for relief in Caddoa's now removed litigation that started in Colorado state court, where four of those claims detailed therein seek damages and further notes that a declaration is sought that the transfer of

---

[1] $13,900 is the sum of $1,325, plus unused portion of homestead exemption of up to $12,575, since Debtor-Smith claimed no Federal homestead exemption. *See* Section 522(d)(5).

[2] The Divorce Court's Decree ordered Debtor-Smith, as the named owner of the marital community property's ninety percent (90%) interest in Caddoa and the holder of a super majority interest in Caddoa to take necessary steps consistent with Caddoa's then existing operating agreement (the prior attempt by Debtor-Smith and Reed during the Divorce proceedings to amend Caddoa's operating agreement was determined to be void and in violation of the Divorce Court's Temporary Orders, as noted in that Court's Order of October 30, 2018 introduced into evidence in this matter at the hearing on The Motion to Appoint Trustee as Exhibit 6 [Docket No. 56-6]), to convey all of Caddoa's assets, including its interests in its real property portfolio (subject as they may be to interests of any lessee or prior lien holder) to its members in proportion to their membership interests so that owelty liens awarded to Movant (inclusive of deeds of trust to further effectuate the validity of such lien as to third parties) could attach to Debtor-Smith's resulting 90% interest (to be held as tenants in common with its 10% owner Reed) and to thereafter dissolve Caddoa as an entity.

properties was void and thus clearly valuable parcels of real property should be returned to Caddoa. The Trustee noted that the value of those asserted rights were potentially of a value well in excess of the Wildcard Exemption amount. K. Smith supports that position as well as all of the other noted rationales detailed in the Intervention as to why the 90% membership interest in Caddoa is more valuable than the $13,900 Wildcard Exemption.

**REPLY**

4.  Insofar as Debtor-Smith's assertion that the snapshot rule controls and that Caddoa in fact existed on the Petition Date, Debtor-Smith will have to rebut and disprove facts detailed herein, consistent with K. Smith's objection and the Trustee's likely intervention in K. Smith's Objection, that the value of the 90% interest in Caddoa is worth more than $13,900 and that the interest in Caddoa has to remain in the Debtor-Smith's Chapter 11 Estate.

5.  Debtor-Smith placed a value of the 90₵ on 90% membership interest in Caddoa. This assertion that Caddoa's membership interests and thus Caddoa itself is worth $1.00 is made despite compelling evidence, that Debtor-Smith is estopped to deny, that Caddoa asserts causes of action in multiple forums, against multiple defendants that had accru0ed or were in fact filed as of the Petition Date and that on or about the Petition Date, Caddoa was worth more than $15,445 (90% of which equals $13,901.35).

6.  Addressing first the causes of action, Caddoa asserts, in its Cover Sheet attached to its *Complaint for Damages and Declaratory Relief* (see Exhibit "A" pp. 3-4) that its lawsuit seeking monetary damages against another party for more than $100,000 as supported by a certification of Caddoa's counsel under Colorado Rule of Civil Procedure Rule 11 *Signing of Pleadings* (similar to FRCP Rule 11). This value assertion is clearly, on its own, greater than the

$15,445 Wildcard Exemption threshold[3]. While K. Smith denies that the lawsuit has such a value, there is always a potential settlement value to resolve such litigation at a minimum.

7. Then there are the causes of action detailed in Cause No 2020-2691-4 *Tekell & Tekell, L.L.P. (Plaintiff) v. C2S /Property Holdings, LLC, Canadian River Ranch, LLC, et al (Defendants) v. Caddoa Creek Ranch, LLC, Daryl Greg Smith and Darren Keith Reed (Intervenors-Defendants)* in the 170th Judicial District Court of McClellan County, Texas, Caddoa or in the alternative Debtor-Smith on May 7, 2021, made the following assertions in the *First Amended Petition in Intervention* relative to assertions of breach of contract, negligent misrepresentation and breach of fiduciary duty malpractice made against Tekell & Tekell, L.L.P.:

"**V. DAMAGES**

Intervenors seek multiple millions of dollars in damages sustained as a result of the loss of their property and the loss of the lucrative solar contract related to that property.

**VI. ATTORNEY'S FEES**

Intervenors-Defendants seeks attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 38.00 as a result of Plaintiff's breach of contract."

(*See* attached Exhibit B, p. 6).

---

[3] In Debtor-Smith's schedules [Docket No. 39 filed on June 4, 2021] at p. 19 in response to query number 33, there is listed "potential claims, counterclaims regarding transactions related to divorce proceedings". Whatever these claims may be of Debtor-Smith, there is no documentation, as of the Petition Date, conveying any of the claims asserted by Caddoa referenced herein to both Debtor-Smith and Reed. The documentation relative to Caddoa required by the Divorce Court and executed by Stanley Wright, Receiver, was the Consent to Action Taken Without Special Meeting of the Members of Caddoa Creek Ranch, LLC which authorized transfers consistent with the requirements of the Divorce Decree and the Special Warranty Deed which specifically conveyed three tracts of land in Bosque County, Texas and any improvements. The Special Warranty Deed (See Exhibit "C") did not cause a transfer of personalty of any sort to either Debtor-Smith or to Reed. Though intended to be transferred to them, as of the Petition Date there is no known documentation that actually transfers any assets out of Caddoa, other than the properties and improvements detailed in Special Warranty Deed.

Clearly, both Caddoa and Debtor-Smith[4] assert they are entitled to extensive damage claims from Tekell & Tekell, LLC well in excess of $15,445 and Debtor-Smith is estopped to deny that valuation in this context. As with the prior referenced litigation, there is a potential settlement value to resolve such litigation at a minimum.

8. Furthermore, Caddoa, in April of 2020, advanced $20,000 to Jeffery Dorrell of Hanzen Laporte regarding appellate and mandamus issues relative to the entered Divorce Decree as they affected Caddoa's interests. A cause of action exists to Caddoa's benefit because Caddoa's counsel did not appeal the Divorce Decree and thus waived all of its objections to the decree. Nonetheless, Caddoa's counsel filed mandamus petitions attacking the Divorce Decree even though it was final as to Caddoa. As noted by K. Smith's counsel regarding the folly of the mandamus action filed by Caddoa when that party had not appealed the underlying Divorce Decree: "It is an elementary principle of mandamus practice that before you can assert you have no adequate remedy by appeal, you must have taken steps to assert your right of appeal. *State v. Naylor*, 466 S.W.3d 783, 794 (Tex. 2015) ('Equally unpersuasive is the State's argument that extraordinary relief is warranted because it has no remedy at law. The State would have had an adequate remedy if, at any point in its observation of this dispute, it had timely intervened and secured its right to direct appeal'). CCR failed to appeal the divorce decree. As a result, its motion for emergency relief and its petition for writ of mandamus should be summarily denied." If K. Smith succeeds on her claim for sanctions against Caddoa for filing a frivolous mandamus

---

[4] In Debtor-Smith's schedules [Docket No. 39] at p. 19 filed on June 4, 2021, in response to query number 33, there is listed "Counterclaims against Tekell & Tekell LLP in the lawsuit pending in the McLennan County District Court, Tekell & Tekell LLP v. C2S Property Holdings LLC, et al., Cause No. 2020-2691-4 Malpractice, negligence." Whatever these claims may be of Debtor-Smith, there is no documentation, as of the Petition Date, conveying any of the claims asserted by Caddoa referenced herein to both Debtor-Smith and Reed. See footnote 3 *infra*.

action, then Caddoa will have a reasonable position to assert that those damages are also due to Caddoa in addition to the refund of the retainer paid. (*See* Exhibit "D" **Transcript of July 24, 2020, hearing in Divorce Case**).

9. Also of import, is the FRBP Rule 2015.3 Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest (the "**FRBP 2015.3 Report** attached hereto as Exhibit "E") [Docket No. 14 filed May 4, 2021]. Per the FRBP 2015.3 Report, signed by the Debtor under penalty of perjury, at page 8, Debtor-Smith stated that Caddoa had a net worth as of May 4, 2021, of $59,360, consisting of $1,050 of cash and $58,310 in accounts and notes receivable. Looking further in the FRBP 2015.3 Report, to Schedule C, the accounts and notes receivable due within one year, notes that of the original $69,310 due on various hunting and grazing leases that $58,310 was still due on May 4, 2021, to Caddoa and that those sums would not be fully due by July through November of this year[5].

10. Finally, this Court must note that the Divorce Decree had no reason nor any information presented to it that the causes of action previously referenced were asserted to exist or were possibly in existence. For these assets to have passed to Smith-Debtor and Reed, it would have to have been by a specific separate instrument of conveyance by Caddoa to Debtor-Smith and Reed as part of the completed dissolution of Caddoa. Since Smith-Debtor argues the dissolution was never completed and since there are no known documents of conveyance or

---

[5] Of note is the fact that Caddoa executed a lease as to Bosque County realty for hunting purposes. See the attached Exhibit "F" a Hunting Lease between Caddo and Susan Reno, Chris Reno, Greg Reno, Josh Reno, Dr. Susan Reno, Ryan Henderson and Terry Kenney as tenants for $13,710 for 2021-2022.

assignment to Smith-Debtor and Reed, then these assets have to be seen as remaining in Caddoa, thus affecting the value of the membership interests in Caddoa.

## CONCLUSION

11. The assertion that the designation of a 90₵ value on 90% membership interest in Caddoa passes the snapshot rule that the Fifth Circuit has set forth to address how to value exemptions taken by individual debtors wholly fails because there are more than sufficient asserted values made by Caddoa and/or Debtor-Smith relative to the assets that Caddoa had not transferred to its members as of the Petition Date, to bust the $13,900 wildcard exemption cap. The asserted exemption of the 90% membership interest in Caddoa should be denied as being of a greater value than allowed under the Wildcard Exemption.

**WHEREFORE**, **PREMISES CONSIDERED**, K. Smith respectfully prays that the Court enter an order, substantially in the form of the Proposed Order attached to the Objection, denying the asserted exemption of the 90% interest and for such other and further relief as maybe necessary.

Dated: September 13, 2021                    Respectfully submitted,

                                            /s/ E. P. Keiffer
                                            E. P. Keiffer (SBN 11181700)
                                            Zach Levick (SBN 24119380)
                                            **ROCHELLE MCCULLOUGH, LLP**
                                            325 N. St. Paul Street, Suite 4500
                                            Dallas, Texas 75201
                                            Telephone: (214) 580-2525
                                            Facsimile: (888) 467-5979
                                            pkeiffer@romclaw.com
                                            zlevick@romclaw.com

                                            COUNSEL FOR KAREN ANNETTE SMITH

## CERTIFICATE OF SERVICE

    I hereby certify that on September 13, 2021, a true and correct copy of the foregoing document was served *via* electronic means pursuant to the Court's ECF noticing system on the parties set forth in the Service List attached hereto.

                                    */s/ E. P. Keiffer*
                                      E. P. Keiffer