**The relief described hereinbelow is SO ORDERED.**

**Signed April 26, 2022.**

Ronald B. King
**Ronald B. King**
**United States Bankruptcy Judge**

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| DARYL GREG SMITH and, | § | CASE NO. 21-60162-RBK-11 |
| CANADIAN RIVER RANCH, LLC | § | CASE NO. 21-60163-RBK-11 |
| | § | Jointly Administered Under |
| | § | Case No. 21-60162-rbk |
| Debtors. | § | |

### ORDER (A) APPROVING THE SALE OF REAL ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(B), (F), (H) AND (M), 365, AND 503; AND (B) GRANTING RELATED RELIEF

Came on for consideration the motion (the "***Motion***")[1] of Gregory S. Milligan, chapter 11

trustee in the above-captioned bankruptcy cases (the "***Trustee***") pursuant to sections 105, 363,

365 and 503 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002 and

6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and the Local

Rules of the United States Bankruptcy Court for the Western District of Texas (the "***Local***

***Rules***") for (i) an order approving (a) bid procedures for the sale of certain real estate (the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in Sales Contract (as defined herein).

"*Property*") owned by Debtor Daryl Greg Smith ("*Smith*") and Darren Keith Reed[2] ("*Reed*"; and together with the Trustee, the "*Sellers*"), including the approval of a Stalking Horse Bidder, (b) establishing a date for an auction if the Trustee receives one or more timely and acceptable Qualified Bids (the "*Auction*") and a final hearing (the "*Sale Hearing*") to approve the sale of the Property (the "*Sale Transaction*"), (c) approving the form and manner of notice of the Auction and Sale Hearing, and (d) granting related relief and (ii) an order (a) approving the sale of the Property free and clear of all liens, claims, encumbrances, and other interests pursuant to sections 105 and 363 of the Bankruptcy Code, and (b) granting related relief, all as more fully described in the Motion; and this Court having entered an order on March 4, 2022 (Doc. 341) (the "*Bid Procedures Order*" and Exhibit 1 attached thereto, the "*Bid Procedures*"); and the Auction having been set for April 25, 2022 in accordance with the Bid Procedures Order; and only the Purchaser (as defined herein) having been deemed a Qualified Bidder and having submitted a Qualified Bid for the Property; and on April 19, 2022, the Trustee having filed a notice of cancellation of the Auction (Doc. 405); and a final hearing (the "*Sale Hearing*") to approve the sale of the Property (the "*Sale Transaction*") having been held on April 25, 2022 to consider approval of the Sales Contract (as defined herein); and the Court having determined that notice of the Motion was adequate and sufficient; and all such parties having been afforded due process and an opportunity to be heard with respect to the Motion and all relief requested therein; and the Court having reviewed and considered: (i) the Motion; (ii) the objections and responsive pleadings filed in connection with the Motion, if any; and (iii) the representations of counsel made, and the evidence proffered, at the Sale Hearing; and the Sale Hearing having been held, and after due deliberation and sufficient cause appearing therefor, hereby finds and determines that:

---

[2] The Smith estate holds an undivided 90% interest in the Property. The remaining 10% interest is held by Reed.

A.    **Jurisdiction and Venue**. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Western District of Texas*, the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.    **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004.

D.    **Notice**. The service of the Motion on the Sale Notice Parties (as defined in the Bid Procedures Order) and the Sale Notice and the proposed entry of this Order to the Sale Notice Parties was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Bid Procedures Order. With respect to entities whose identities were not reasonably ascertained by the Trustee, notice was sufficient and reasonably calculated under the circumstances to reach such entities. Accordingly, no further notice of, or hearing on, the Motion, the Sale Hearing, the Sales Contract, the Sale Transaction, or this Order is necessary or required.

E.    **Compliance with Bid Procedures Order**. As demonstrated by (i) evidence adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee has conducted a fair and open sale process in a manner reasonably calculated to produce the highest and otherwise best offer for the Property in compliance with the Bid Procedures Order. The Bid Procedures were substantively and procedurally fair to all

parties. The sale process, Bid Procedures and Auction were non-collusive, duly noticed, and afforded a full, fair, and reasonable opportunity for any Person to make a higher and otherwise better offer to purchase the Property. The bidding and related procedures established by the Bid Procedures Order have been complied with in all material respects by the Trustee and the Purchaser.

F.     **Successful Bidder**. The Purchaser offered and the Trustee accepted the highest and best Qualified Bid (as defined in the Bid Procedures), which is a cash bid in the amount of $4,899,425.30 (the "*Purchase Price*"), subject to adjustment as set forth in that certain Sales Contract, dated as of March 1, 2022 (as amended, supplemented, or otherwise modified from time to time, including all Exhibits, Schedules, and Appendices thereto (the "*Sales Contract*," attached hereto as **Exhibit 1**) by and among the Trustee and Tango Lima Land, LP (the "*Purchaser*"). The Purchaser is approved as the Successful Bidder, as such term is defined in the Bid Procedures, for the Property on the terms set forth in the Sales Contract by and among the Purchaser and the Trustee.

G.     **Due Authority**. The Trustee and Reed have each approved the Sales Contract and the consummation of the Sale Transaction on behalf of the Sellers and the Sellers' sale of the Property to the Purchaser has been duly and validly authorized by all necessary corporate or other entity action. The Sellers have full power and authority to execute the Sales Contract and all other documents contemplated thereby and to consummate the Sale Transaction. No consents or approvals, other than those expressly provided for in the Sales Contract, are required for the Sellers to consummate the Sale Transaction.

H.     **Business Justification**. Approval of the Sales Contract and consummation of the Sale Transaction is in the best interests of the Debtors, their estates, creditors, and other parties in

interest. The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Purchaser pursuant to section 363(b) of the Bankruptcy Code. Such business purposes and justifications include, but are not limited to, that the Sales Contract and the closing thereon will present the best opportunity to realize the value of the Property and avoid decline and devaluation of the Property.

I. The consideration to be provided by the Purchaser pursuant to the Sales Contract: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Property; (iii) will provide a greater recovery for Smith's creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration. In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Smith estate and the indirect benefits of the Sale Transaction for the Debtors' creditors. The Trustee's determination that the Sales Contract constitutes the highest and otherwise best offer for the Property is a result of due deliberation by the Trustee and constitutes a valid and sound exercise of the Trustee's business judgment. Entry of an order approving the Sale Motion, Sales Contract and the Sale Transaction is a necessary condition precedent to the Purchaser consummating the Sale Transaction.

J. **Arm's-Length Sale**. The Sales Contract was negotiated, proposed, and entered into by the Trustee and the Purchaser without collusion, in good faith, and was the result of arm's-length bargaining between the parties represented by independent counsel. The Trustee and the Purchaser have not engaged in any conduct that would cause or permit the Sales Contract to be avoided under section 363(n) of the Bankruptcy Code. The Purchaser is not an "insider" or "Affiliate" of the Trustee or Debtors, as such terms are defined in the Bankruptcy Code.

K.    **Good Faith Purchaser**. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction. The Purchaser has proceeded in good faith in all respects in that, *inter alia*: (i) the Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Property; (ii) the Purchaser complied with the provisions of the Bid Procedures Order; (iii) the Purchaser's bid was subjected to the competitive bid procedures set forth in the Bid Procedures Order; (iv) no common identity of directors or officers exists among the Purchaser, Sellers, and the Debtors, and (v) all payments to be made by the Purchaser and all other material agreements or arrangements entered into by the Purchaser and the Sellers in connection with the Sale Transaction have been disclosed.

L.    **Legal, Valid and Binding Transfer**. The Sellers are the sole and lawful owners of the Property, or otherwise have a valid, enforceable property interest in such, and title to (i) an undivided 90% interest in the Property is vested in the Debtor Smith's estate within the meaning of section 541(a) of the Bankruptcy Code and (ii) the remaining 10% interest is held by Reed. The Sellers have all right, title, and interest in the Property required to transfer and convey the Property to the Purchaser. The transfer of the Property to the Purchaser will be a legal, valid, and effective transfer of the Property and, except as provided in the Sales Contract, will vest the Purchaser with all right, title, and interest of the Sellers to the Property free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including liens, claims, encumbrances, and other interests of any Governmental Authority, as defined in the Sales Contract) other than those liens, claims, encumbrances, and other interests specifically assumed by the Purchaser pursuant to the Sales Contract. The sale of the Property shall also be

free and clear of those liens, claims, encumbrances, and other interests that purport to give to any party a right or option to effectuate any forfeiture, modification, or termination of the Sellers' interests in the Property, or any similar rights.

M.      The Sales Contract is a valid and binding contract between the Sellers and the Purchaser, which is and shall be enforceable according to its terms.

N.      **Free and Clear**. The Purchaser would not have entered into the Sales Contract and would not consummate the Sale Transaction, thus adversely affecting the Smith estate and its creditors, if the transfer of the Property to the Purchaser was not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any such lien, claim, encumbrance, or other interest. A sale of the Property other than one free and clear of any liens, claims, encumbrances, and other interests, would adversely impact Smith's estate and would yield substantially less value for the Smith estate.

O.      Subject to the provisions of this Order and except as may be specifically provided in the Sales Contract, the Sellers may sell the Property free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied. Each entity with a lien, claim, encumbrance, or other interest in the Property to be transferred on the date the Sale Transaction is consummated (the "*Closing Date*"): (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance, or other interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of liens, claims,

encumbrances, and other interests who did not object to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

P.      **Not a Sub Rosa Plan**. The Sales Contract and Sale Transaction do not constitute an impermissible *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sales Contract and the Sale Transaction neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a plan for the Debtors.

Q.      **No Fraudulent Transfer**. The Sales Contract was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, territory, or possession thereof, or the District of Columbia.  The Sellers and the Purchaser are not entering into the Sale Transaction fraudulently.

R.      **No Successor Liability**. The Purchaser (i) is not, and shall not be, considered a successor in interest to the Debtors, (ii) has not, *de facto* or otherwise, merged with or into the Debtors, (iii) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and (iv) is not holding themselves out to the public as a continuation of the Debtors. Except as otherwise specifically provided in the Sales Contract, the transfer of the Property to the Purchaser does not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' businesses before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of antitrust, successor, transferee, or assignee liability.

S.     **Prompt Consummation**. The Sale Transaction must be approved and consummated promptly because the Stalking Horse Bidder is seeking to purchase the Property via a section 1031 exchange. Time is of the essence in consummating the Sale Transaction.

T.     The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the Sales Contract, including, without limitation, the Sale Transaction.

U.     **Good and Sufficient Cause**. There is other good and sufficient cause to grant the relief requested in the Motion and approve the Sales Contract and the Sale Transaction.

V.     **Legal and Factual Bases**. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

### NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

### General Provisions

1.     The notice of the Sale Motion and Sale Hearing are approved as being fair, reasonable, and adequate under the circumstances, and any additional notice as may otherwise be required under state and federal law is hereby deemed satisfied.

2.     The Motion is **GRANTED** to the extent set forth herein.

3.      All objections to the relief requested in the Motion or the entry of this Order, if any, that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing are denied and overruled in their entirety on the merits, with prejudice.

### Approval of Free and Clear Sale of the Property

4.      The Sales Contract, all exhibits and schedules thereto, and all of the terms and conditions thereof are hereby approved. The Trustee shall file final versions of the Sales Contract and all other ancillary documents with the Court upon closing the Sale Transaction.

5.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Trustee is authorized to (i) execute, deliver, and perform under, consummate, and implement the Sales Contract and the Sale Transaction together with all additional instruments and documents that are requested by the Purchaser and may be reasonably necessary or desirable to implement the Sales Contract and the Sale Transaction and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Sales Contract and the Sale Transaction, including, without limitation, any and all actions reasonably requested by the Purchaser which are consistent with the Sales Contract and the Sale Transaction.

6.      Pursuant to sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing Date: (i) the transfer of the Property to the Purchaser pursuant to the Sales Contract shall constitute a legal, valid, and effective transfer of the Property and shall vest the Purchaser with all right, title, and interest in and to the Property; (ii) the Property shall be transferred to the Purchaser free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority, any claims or assertions based on any theory of

successor or transferee liability, and any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Property) other than those liens, claims, encumbrances, and other interests specifically assumed by the Purchaser pursuant to the Sales Contract; and (iii) all Persons are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, against Purchaser with respect to any such liens, claims, encumbrances, and other interests (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority (as defined in the Sales Contract), any claims or assertions based on any theory of successor or transferee liability, and any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Property).

7.      All liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale with the same nature, validity, and priority as such liens, claims, encumbrances, or other interests encumbered the Property prior to the proposed sale and shall be distributed pursuant to further order of the Court.

8.      On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Sellers' interest in the Property or a bill of sale transferring good and marketable title in the Property.

9.      Pursuant to the Sales Contract and this Order, the transfer and assignment of the Property shall be effectuated on the terms set forth therein and herein, and shall not be restricted or prohibited, notwithstanding any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights with respect to the Sellers' transfer, sale, vesting, assumption, and/or assignment of the Property.

10. This Order is and shall be effective as a determination that all liens, claims, encumbrances, and other interests shall be and are, without further action by any Person, unconditionally released, discharged, and terminated with respect to the Property as of the Closing Date, except as may otherwise be set forth in the Sales Contract.

11. Except as otherwise provided herein or in the Sales Contract, on the Closing Date, Smith's creditors are authorized and directed to execute such documents and instruments and to take all other actions as may be reasonably necessary to document and effectuate the release of their liens, claims, encumbrances, and other interests in the Property, if any, as such liens, claims, encumbrances, and other interests may have been recorded or may otherwise exist. If any such creditor fails to execute any such documents or instruments or take any such actions, the Trustee is authorized to execute such documents and instruments and to take such actions on behalf of the creditor so as to document the release of such liens, claims, encumbrances, and other interests.

**No Successor Liability**

12. The Purchaser and its affiliates, successors, and assigns shall not be deemed, as a result of any action taken in connection with the transfer of the Property, to (i) be a successor to the Debtors or the estates, (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or the estates, or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and the Purchaser shall have no successor, transferee or vicarious liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with

respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes or other Governmental Authority fees, contributions, or surcharges arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Property prior to the Closing Date. Except as otherwise provided herein or in the Sales Contract, the transfer of the Property to the Purchaser pursuant to the Sales Contract shall not result in the Purchaser or its affiliates, members, or shareholders, or the Property, having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff or otherwise, directly or indirectly, (i) any claim against the Debtors or against any insider of the Debtors, or (ii) any lien, claim, encumbrance, or other interest.

13. Upon the Closing, and except as otherwise expressly provided in the Sales Contract, the Purchaser shall not be liable for any claims against, and liabilities of, the Debtors or any of the Debtors' predecessors or affiliates.

14. The Purchaser has given substantial consideration under the Sales Contract to the Smith estate. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of liens, claims, encumbrances, and other interests against the Debtors or the Property.

**No Fraudulent Transfer**

15. The consideration provided by the Purchaser under the Sales Contract constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory, or possession thereof, or the District of Columbia. The consideration

provided by the Purchaser for the Property under the Sales Contract is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

### Good Faith

16.    The Sales Contract and the Sale Transaction are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sales Contract and the Sale Transaction shall not affect the validity of the sale of the Property to the Purchaser, unless this Order is duly stayed pending such appeal. The Purchaser is a good faith purchaser of the Property and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

### Rejection of Unexpired Leases

17.    The Hunting Lease is rejected pursuant to section 365 of the Bankruptcy Code as of the Closing Date. The tenant shall have thirty (30) days from the date of this Order to file a rejection damages claim, if any.

### Additional Provisions

18.    This Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Property free and clear of all liens, claims, encumbrances, and other interests (all such entities being referred to as "*Recording Officers*"). All Recording Officers are authorized and specifically directed to strike recorded Liens, claims,

encumbrances, and interests against the Property recorded prior to the date of this Order unless the Sales Contract expressly provides that the Purchaser is acquiring the Property subject to such claims, Liens, and interests.

19.     Following the Closing Date, no holder of any lien, claim, encumbrance, or other interest on the Property or other party in interest may interfere with the Purchaser's use and enjoyment of the Property based on or related to such lien, claim, encumbrance, or other interest, or any actions that the Trustee or Debtors may take in their chapter 11 cases, and no party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale Transaction.

20.     Except as expressly permitted or otherwise specifically provided by the Sales Contract or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Property, the ownership or operation of the Property prior to the closing of the sale, or the sale of the Property are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or  assigns, its property, or the Property, such persons' or entities' interests.

21.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Sales Contract and the Sale Transaction.

22.     The terms and provisions of the Sales Contract, the ancillary agreements, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Purchaser, and its respective affiliates, successors, and assigns, the Debtors' estates, all creditors of (whether known or unknown), and any affected third parties, notwithstanding the dismissal of the Debtors' cases or conversion of the Debtors' cases to cases under chapter 7, as to which trustee such terms and provisions likewise shall be binding and not subject to rejection or avoidance.  The Sales Contract, the Sale Transaction and this Order shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 trustee appointed in the Chapter 11 Cases.  Further, nothing contained in any plan confirmed in these Chapter 11 Cases or any order confirming any plan or any other order entered in these cases shall conflict with or derogate from the provisions of the Sales Contract or the terms of this Order.

23.     The Sales Contract and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that any such amendment does not have a material adverse effect on the Debtors or the Debtors' estates.

24.     The failure to include specifically any particular provision of the Sales Contract in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sales Contract be authorized and approved in its entirety.

25.     To the extent of any inconsistency between the provisions of this Order, the Sales Contract, and any documents executed in connection therewith, the provisions contained in this Order, the Sales Contract, and any documents executed in connection therewith shall govern, in that order.

26.     Nothing in this Order, the Sales Contract or any document executed in connection with the consummation thereof shall authorize or constitute a transfer of title to property which is excluded from the property of the Debtors' estates pursuant to section 541(b)(4) of the Bankruptcy Code.

27.     The provisions of this Order are non-severable and mutually dependent. Headings are included in this Order for ease of reference only.

28.     The provisions of this Order authorizing the sale and assignment of the Property free and clear of all liens, claims, encumbrances, and other interests shall be self-executing, and notwithstanding the failure of the Sellers, the Purchaser, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Purchaser or permitted to survive under the Sales Contract) on or against such Property, if any, shall be deemed released, discharged, and terminated.

29.     From time to time, as and when requested by any Party, each Party to the Sales Contract shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Purchaser its right, title, and interest in and to the Property.

30.     Notwithstanding the provisions of Bankruptcy Rule 6004(h) and 6006(d), this Order shall be effective and enforceable immediately and shall not be stayed. Time is of the essence in closing the Sale Transaction and the Trustee and the Purchaser intend to close the Sale

Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

31.     The Trustee is authorized to pay the closing costs set forth on **Exhibit 2** attached hereto at the closing of the Sale Transaction.

32.     In the event this Order is subject to Appeal, and as a result of such Appeal, the Sale Transaction is thereafter unwound and title to the Property is divested from Purchaser and/or re-vested in the Sellers (such resulting divestiture, a "*Divestiture*"), Purchaser shall be entitled to a full and immediate refund of the Purchase Price from Sellers in cash, in proportionate share to their respective ownership interests (Smith's 90% refund obligation, the "*Smith Refund Obligation*"; Reed's 10% refund obligation, the "*Reed Refund Obligation*," and together with the Smith Refund Obligation, the "*Refund Obligations*"). The Smith Refund Obligation shall be fully secured by a priming, first priority lien on the Smith estate's interest in the Property, which shall be deemed to automatically arise upon the triggering of the Smith Refund Obligation. The Reed Refund Obligation shall be secured by a priming, first priority lien on Reed's interest in the Property, which shall be deemed to automatically arise upon the triggering of the Reed Refund Obligation. Sellers shall discharge the Refund Obligations fully and finally within 60 days following the entry of a final, non-appealable order providing for the Divestiture of the Property. Should the Sellers not timely, fully and finally discharge the Refund Obligations, then the Purchaser may seek an order of this Court judicially foreclosing their priming liens, and/or pursue a non-judicial foreclosure in accordance with the terms of the then current Texas State Bar form of deed of trust, which will be deemed incorporated into this Order to govern the priming liens (with the right of the Purchaser to appoint substitute trustees). A copy of this Order shall be recorded in the real property records of the County in which the Property is

located; if an Appeal is filed, but the Appeal (including any subsequent Appeals of the same subject matter) is dismissed or denied or the sale authorized by this Order is affirmed or otherwise unaffected by said Appeal(s) on account of paragraph 16 of this Order and the Property is thus not subject to Divestiture, then the Sellers may record an affidavit so stating. Nothing in this Order or as to this specific provision of this Order shall be considered to affect paragraph 16 of this Order nor be in any way be considered with regard to any determination of what is required to secure a stay pending appeal, if a stay pending appeal is sought by any objecting party.

33.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Sales Contract, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Property to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order and the Sales Contract; (iii) adjudicate, if necessary, any and all disputes arising out of, concerning, or otherwise relating in any way to the Sale Transaction; and (iv) protect the Purchaser against any Liens, encumbrances, claims, and interests in the Property of any kind or nature whatsoever.

# # #

ORDER SUBMITTED BY:
Waller Lansden Dortch & Davis LLP
Morris D. Weiss
State Bar No. 21110850
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)
morris.weiss@wallerlaw.com
COUNSEL FOR TRUSTEE

## EXHIBIT A

**Sales Contract**



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    11-08-2021

# FARM AND RANCH CONTRACT

**1. PARTIES:** The parties to this contract are <u>Gregory S. Milligan, in his capacity as Chapter 11 Trustee for the estate of Daryl Greg Smith, an owner of a 90% undivided interest, and Darren K. Reed, owner of a 10% undivided interest</u> (Seller) and <u>Tango Lima Land, LP</u> (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the Property (Property).

   A. LAND: The land situated in the County of <u>Bosque</u>_____, Texas, described as follows: <u>913.32 +/- located on County Road 3365, as more particularly described on Exhibit A.</u>
      <u>The exact legal description and boundaries to be defined by the survey to be obtained as set forth in the Addendum.</u>
      or as described on attached exhibit, also known as <u>County Road 3365, Bosque County, Texas</u>
      (address/zip code), together with all rights, privileges, and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships.

   B. IMPROVEMENTS:
      (1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
      (2) RESIDENTIAL IMPROVEMENTS: The house, garage, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above-described real property.

   C. ACCESSORIES:
      (1) FARM and RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☐ portable buildings ☐ hunting blinds ☐ game feeders ☑ livestock feeders and troughs ☑ irrigation equipment ☐ fuel tanks ☑ submersible pumps ☑ pressure tanks ☑ corrals ☑ gates ☑ chutes ☐ other:_____

      (2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

   D. CROPS: Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.

   E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: <u>See Schedule 2.E. attached hereto.</u>

   F. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ................. $<u>       4,900,000.00</u>
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum,
      ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum .. $_____
   C. Sales Price (Sum of A and B) ................................................. $<u>       4,900,000.00</u>
   D. The Sales Price ☑ will ☐ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be calculated on the basis of $<u>  5,365.00</u> per acre. If the Sales Price is adjusted by more than 10%, either party may terminate this contract by providing written notice to the other party within _____ days after the terminating party receives the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to the amount in ☐ 3A ☐ 3B ☐ proportionately to 3A and 3B.

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)

☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.

☐ B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.

☐ C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, water, wind, or other natural resource lease affecting the Property to which Seller is a party.

Initialed for identification by Buyer_____ _____ and Seller _____ _____    TREC NO. 25-14

Contract Concerning _____ 913.32 +/- located on County Road 3365. _____ Page 2 of 11   11-08-2021
(Address of Property)

❑ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.

❑ (2) *Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.*

## 5. EARNEST MONEY AND TERMINATION OPTION:

A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to Thomas Title & Escrow _____, as escrow agent, at _____ 1800 West Loop South, Suite 750, Houston, TX 77027 (address): $ 500,000.00 as earnest money and $_____ as the Option Fee. The earnest money and Option Fee shall be made payable to escrow agent and may be paid separately or combined in a single payment.

(1) Buyer shall deliver additional earnest money of $_____ 0.00 to escrow agent within 0 days after the Effective Date of this contract.

(2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

(3) The amount(s) escrow agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

(4) Buyer authorizes escrow agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases escrow agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

B. ~~TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and escrow agent shall release any Option Fee remaining with escrow agent to Seller; and (ii) any earnest money will be refunded to Buyer.~~

C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

D. ~~FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this Paragraph 5.~~

E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

## 6. TITLE POLICY AND SURVEY:

A. TITLE POLICY: Seller shall furnish to Buyer at ❑ Seller's ☑ Buyer's expense an owner policy of title insurance (Title Policy) issued by: _____ Thomas Title & Escrow _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

(1) The standard printed exception for standby fees, taxes and assessments.

(2) Liens created as part of the financing described in Paragraph 3.

(3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

(4) The standard printed exception as to marital rights.

(5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

(6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:

❑ (i) will not be amended or deleted from the title policy; or
☑ (ii) will be amended to read, "shortages in area" at the expense of ☑ Buyer ❑ Seller.

(7) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for Identification by Buyer _____ _____ and Seller _____ _____   TREC NO. 25-14

Contract Concerning _____ 913.32 +/- located on County Road 3365, _____ Page 3 of 11   11-08-2021
(Address of Property)

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only):
☐ (1) Within _____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** The existing survey ☐ will ☐ will not be recertified to a date subsequent to the Effective Date of this contract at the expense of ☐ Buyer ☐ Seller. If the existing survey is not approved by the Title Company or Buyer's lender(s), a new survey will be obtained at the expense of ☐ Buyer ☐ Seller no later than 3 days prior to Closing Date.
☐ (2) Within _____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
☐ (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.
☐ (4) No survey is required.
D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (7) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency  map; or (iii) any exceptions which prohibit the following use or activity: None _____
_____.
Buyer must object the earlier of (i) the Closing Date or (ii) __3__ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections.  If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.
E. EXCEPTION DOCUMENTS:  Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
|---|---|---|
| See attached current Title Commitment on Exhibit B. | | |
| | | |
| | | |

F. SURFACE LEASES: Prior to the execution of the contract, Seller has provided Buyer with copies of written leases and given notice of oral leases (Leases) listed below or on the attached exhibit. The following Leases will be permitted exceptions  in the  Title  Policy and will not be a basis for objection to title:_____
_____.

G. TITLE NOTICES:
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy.  If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
(2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
(3) TIDE WATERS:  If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract.  An addendum containing the notice promulgated by TREC or required by the parties must be used.
(4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in

Initialed for identification by Buyer_____ _____ and Seller _____ _____          TREC NO. 25-14

Contract Concerning _____ 913.32 +/- located on County Road 3365. _____ Page 4 of 11    11-08-2021
(Address of Property)

the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code:  The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☑ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows:  The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA:  If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code.  An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7. PROPERTY CONDITION:**
   A. ACCESS, INSPECTIONS AND UTILITIES:  Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect .
   **NOTICE**: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.
   B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):
   (Check one box only)
   ☐ (1) Buyer has received the Notice
   ☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer.  If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
   ☑ (3) The Texas Property Code does not require this Seller to furnish the Notice.
   C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.
   D. ACCEPTANCE OF PROPERTY CONDITION:  "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D (1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
   (Check one box only)
   ☑ (1) Buyer accepts the Property As Is.
   ☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____
   _____
   (Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)
   E. COMPLETION OF REPAIRS:  Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense.

Initialed for identification by Buyer_____  _____ and Seller _____  _____          TREC NO. 25-14

Contract Concerning _____913.32 +/- located on County Road 3365._____ Page 5 of 11   11-08-2021
(Address of Property)

    If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.

F. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. SELLER'S DISCLOSURES:   Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
  (1)any flooding of the Property which has had a material adverse effect on the use of the Property;
  (2)any pending or threatened litigation, condemnation, or special assessment affecting the Property;
  (3)any environmental hazards that materially and adversely affect the Property;
  (4)any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
  (5)any wetlands, as defined by federal or state law or regulation, affecting the Property; or
  (6)any threatened or endangered species or their habitat affecting the Property.

I. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company. If Buyer purchases a residential service contract, Seller may reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $_____0. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. GOVERNMENT PROGRAMS: The Property is subject to the government programs listed below or on the attached exhibit: None_____

Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

**8. BROKERS AND SALES AGENTS:**

A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale.  Disclose if applicable: N/A_____

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**

A. The closing of the sale will be on or before  See Par. 11, Special Provisions , 20_____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
  (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
  (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
  (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
  (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

**10. POSSESSION:**

A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

Initialed for Identification by Buyer_____ _____ and Seller _____ _____          TREC NO. 25-14

Contract Concerning _____ 913.32 +/- located on County Road 3365. _____ Page 6 of 11   11-08-2021
(Address of Property)

B. SMART DEVICES: "Smart Device" means a device that connects to the Internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
    (1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
    (2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)

A. The terms and conditions set forth in the Addendum for the Stalking Horse Bidder Terms and Conditions to be attached hereto are hereby incorporated in this Contract in their entirety, which Addendum may not become part of this Contract until the Bid Procedure Order (as defined in such Addendum) has been issued by the Bankruptcy Court.

B. Seller to convey 100% of owned minerals and executive rights.

C. Buyer and Sellers agree that either Seller may elect to effectuate a tax deferred exchange in accordance with the Internal Revenue Service Code, Section 1031. Buyer agrees to cooperate with such Seller in effectuating said tax deferred exchange. In cooperating with such Seller, Buyer shall incur no additional expense, obligation or liability.

**12. SETTLEMENT AND OTHER EXPENSES:**
A. The following expenses must be paid at or prior to closing:
    (1) Expenses payable by Seller (Seller's Expenses):
        (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
        (b) Seller shall also pay an amount not to exceed $ _____ 0.00 to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying for FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
    (2) Expenses payable by Buyer (Buyer's Expenses) Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**
A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.
B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

Initialed for identification by Buyer_____ _____ and Seller _____ _____      TREC NO. 25-14

Contract Concerning _____ 913.32 +/- located on County Road 3365. _____ Page 7 of 11   11-08-2021
(Address of Property)

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. Escrow agent may require any disbursement made in connection with this contract to be conditioned on escrow agent's collection of good funds acceptable to escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by escrow agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

Contract Concerning _____ 913.32 +/- located on County Road 3365. _____ Page 8 of 11  11-08-2021
(Address of Property)

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| | |
|---|---|
| **To Buyer at:** P.O. Box 470852 | **To Seller at:** P.O. Box 90099 |
| Fort Worth, TX 76147 | Austin, TX 78709 |
| Phone: ( ) | Phone: ( ) |
| E-mail/Fax: tll@tangolimalp.com | E-mail/Fax: |
| E-mail/Fax: w/copy to agent hray@briggsfreeman.com and bkurilecz@briggsfreeman.com | E-mail/Fax: |

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

❑ Third Party Financing Addendum

❑ Seller Financing Addendum

❑ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

❑ Buyer's Temporary Residential Lease

❑ Loan Assumption Addendum

❑ Addendum for Sale of Other Property by Buyer

❑ Addendum for "Back-Up" Contract

❑ Addendum for Coastal Area Property

❑ Addendum for Authorizing Hydrostatic Testing

❑ Addendum Concerning Right to Terminate Due to Lender's Appraisal

❑ Addendum for Reservation of Oil, Gas and Other Minerals

❑ Addendum containing Notice of Obligation to Pay Improvement District Assessment

❑ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

❑ Seller's Temporary Residential Lease

❑ Short Sale Addendum

❑ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

❑ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

❑ Addendum for Property in a Propane Gas System Service Area

❑ Addendum Regarding Residential Leases

❑ Addendum Regarding Fixture Leases

☑ Other (list): Exhibit A - Legal Description Exhibit B - Copy of Current Title Commitment Addendum for Stalking Horse Bidder Terms and Conditions

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

| | |
|---|---|
| Buyer's Attorney is: | Seller's Attorney is: |
| Phone: ( ) | Phone: ( ) |
| Fax: ( ) | Fax: ( ) |
| E-mail: | E-mail: |

Initialed for identification by Buyer_____ _____ and Seller _____ _____          TREC NO. 25-14

Contract Concerning _____913.32 +/- located on County Road 3365._____ Page 9 of 11    11-08-2021
(Address of Property)

**EXECUTED the** _____ **day of** _____, 20_____ **(Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**



Buyer Tango Lima Land, LP
_____

Tango Lima Land, LP
   By: TL Permian, LLC, its general partner
   By: Thomas L. Lacy, Jr., Manager

Seller Gregory S. Milligan, Chapter 11 Trustee for
   Daryl Greg Smith In Case No. 21-60162
   before the United States Bankruptcy Court
   for the Western District of Texas, Waco
   Division, owner of a 90% undivided interest
   in the Property

_____
Buyer

Seller Darren K. Reed and Julie Reed, owner of a
   10% undivided interest in the Property

The form of this contract has been approved by the Texas Real Estate Commission.  TREC forms are intended for use only
by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any
specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin,
TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-14. This form replaces TREC NO. 25-13.

TREC NO. 25-14

Contract Concerning _____913.32 +/- located on County Road 3365_____  Page 9 of 11    11-06-2021
(Address of Property)

**EXECUTED the _____ day of _____, 20_____ (Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

*/s/ Gregory S. Milligan*

Buyer Tango Lima Land, LP

Seller Gregory S. Milligan, Chapter 11 Trustee for
Daryl Greg Smith In Case No. 21-60162
before the United States Bankruptcy Court
for the Western District of Texas, Waco
Division, owner of a 90% undivided interest
in the Property

Buyer

Seller Darren K. Reed and Julie Reed, owner of a
10% undivided interest in the Property



The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-14. This form replaces TREC NO. 25-13.

TREC NO. 25-14

| Contract Concerning | 913 32 +/- located on County Road 3365. | Page 10 of 11 | 11-08-2021 |
|---|---|---|---|
| | (Address of Property) | | |

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ 3% _____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker:                                    Listing Broker:

By: _____    By: _____

### BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| | | | | |
|---|---|---|---|---|
| Briggs Freeman Sotheby's Int'l Realty | 287843 | Riley-McLean Land | | 9004156 |
| Other Broker | License No. | Listing or Principal Broker | | License No. |
| Harlan Ray/David Burgher | 5952999 | Carlotta McLean | | 437483 |
| Associate's Name | License No. | Listing Associate's Name | | License No. |
| Burgher Ray Ranch Group | | | | |
| Team Name | | Team Name | | |
| hray@briggsfreeman.com | (214) 908-7770 | CCM@rileymclean.com | | (512) 960-4676 |
| Associate's Email Address | Phone | Listing Associate's Email Address | | Phone |
| Jessica Smith | 0587574 | | | |
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | | License No. |
| 3131 Turtle Creek Blvd #400 | (212) 502-8464 | 505 Walsh Street | | |
| Other Broker's Office Address | Phone | Listing Broker's Office Address | | Phone |
| Dallas          TX | 75210 | Austin          TX | | 78703 |
| City          State | Zip | City          State | | Zip |

represents  ☑ Buyer only as Buyer's agent
                  ☐ Seller as Listing Broker's subagent

| | |
|---|---|
| Selling Associate | License No. |
| Team Name | |
| Selling Associate's Email Address | Phone |
| Licensed Supervisor of Selling Associate | License No. |
| Selling Associate's Office Address | |
| City          State | Zip |

represents  ☑ Seller only
                  ☐ Buyer only
                  ☐ Seller and Buyer as an intermediary

~~Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☐ Seller ☐ Buyer will pay Listing/Principal Broker ☐ a cash fee of $_____ or ☐ _____ % of the total Sales Price; and (b) ☐ Seller ☐ Buyer will pay Other Broker ☐ a cash fee of $_____ or ☐ _____ % of the total Sales Price. Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.~~

~~**Brokers' fees are negotiable. Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.**~~

/s/ Gregory S. Milligan
Seller _____    Buyer _____

Seller _____    Buyer _____

Do not sign if there is a separate written agreement for payment of Brokers' fees.

TREC NO. 25-14

Contract Concerning _____ 913.32 +/- located on County Road 3365. _____ Page 10 of 11  11-08-2021
                              (Address of Property)

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ 3% _____ of the total Sales
Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from
Listing Broker's fee at closing.

Other Broker:                                       Listing Broker:

By: _____                 By: _____

## BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| Briggs Freeman Sotheby's Int'l Realty | 287843 | Riley-McLean Land | 9004156 |
|---|---|---|---|
| Other Broker | License No. | Listing or Principal Broker | License No. |
| Harlan Ray/David Burgher | 5952999 | Carlotta McLean | 437483 |
| Associate's Name | License No. | Listing Associate's Name | License No. |
| Burgher Ray Ranch Group | | | |
| Team Name | | Team Name | |
| hray@briggsfreeman.com | (214) 908-7770 | CCM@rileymclean.com | (512) 960-4676 |
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |
| Jessica Smith | 0587574 | | |
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |
| 3131 Turtle Creek Blvd #400 | (212) 502-8464 | 505 Walsh Street | |
| Other Broker's Office Address | Phone | Listing Broker's Office Address | Phone |
| Dallas | TX | 75210 | Austin | TX | 78703 |
| City | State | Zip | City | State | Zip |

represents ☑ Buyer only as Buyer's agent
            ☐ Seller as Listing Broker's subagent

Selling Associate _____ License No. _____

Team Name _____

Selling Associate's Email Address _____ Phone

Licensed Supervisor of Selling Associate _____ License No.

Selling Associate's Office Address _____

City _____ State _____ Zip

represents ☑ Seller only
            ☐ Buyer only
            ☐ Seller and Buyer as an intermediary

~~Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☐Seller ☐ Buyer will pay Listing/Principal Broker ☐a cash fee of $_____ or ☐ _____%of the total Sales Price; and (b) ☐Seller ☐ Buyer will pay Other Broker ☐a cash fee of $_____ or ☐ _____% of the total Sales Price. Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.~~

**Brokers' fees are negotiable. Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.**

_____                    _____
Seller                                     Buyer
                                           Tango Lima Land, LP
                                           By: TL Permian, LLC, its general partner
                                           By: Thomas L. Lacy, Jr., Manager

_____                    _____
Seller                                     Buyer
                Do not sign if there is a separate written agreement for payment of Brokers' fees.

TREC NO. 25-14

Contract Concerning _____913.32 +/- located on County Road 3365._____ Page 11 of 11   11-08-2021
(Address of Property)

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

_____          _____
Escrow Agent                                                                                        Date

## EARNEST MONEY RECEIPT

Receipt of $_____ Earnest Money in the form of _____
is acknowledged.

_____          _____
Escrow Agent                          Received by      Email Address                              Date/Time

_____          _____
Address                                                                                            Phone

_____          _____
City                                      State                      Zip                            Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

_____          _____
Escrow Agent                          Received by      Email Address                              Date

_____          _____
Address                                                                                            Phone

_____          _____
City                                      State                      Zip                            Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $_____ additional Earnest Money in the form of _____
is acknowledged.

_____          _____
Escrow Agent                          Received by      Email Address                              Date/Time

_____          _____
Address                                                                                            Phone

_____          _____
City                                      State                      Zip                            Fax

TREC NO. 25-14

**Schedule 2.E.**

2.E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession:

-Cattle lease items such as: squeeze chute, tractor, and panels.

-Hunting lease items such as: (This not an inclusive list of all of our possessions at the Caddoa Creek Ranch, however it does cover all of the large items and most of the smaller ones).

**Outside pole barn on Southside (open end of barn):**

- (3) RV trailers
- Propane gas grill
- Propane cooktop
- Multiple propane bottles
- (6) tables
- Picnic table
- (2) large fans on stands
- (2) large heaters
- Multiple small propane heaters
- 200+ gallon water tank
- Wooden shooting bench
- (5) 20ft. hog panels
- (2-3 dozen) duck decoys
- Ladders
- Multiple office chairs
- Multiple camp chairs and stands
- Multiple steel targets
- Multiple extension cords
- (2) washer pits
- Multiple t-posts
- (2) deer decoys
- (2) bow target blocks
- Tool boxes
- Multiple small storage containers/shelving
- Multiple rods and reels
- Pole pruners
- White gun rack
- RV black/grey water sled
- Push brooms
- Rakes/shovels
- Longhorn steer skulls
- Solar panel powered electric fence / t-posts
- Interstate battery in electric gate
- Multiple combination locks on all gates except gate at the working pens

**Inside the barn (all on the South end):**

- (4) gas generators
- (3) ATV 4 wheelers
- (3) trailers
- John Deere riding lawn mower and trailer
- D.R. gas trimmer
- (2) work lights
- Tripod hoist
- Trailer hitch hoist
- Multiple gas cans
- (2) long handled clippers
- Multiple steel targets and stands
- (3) horse panels
- Stack of lumber
- Multiple t-posts/barrels/feeder legs

**Hunting blinds/stands/feeders in various locations:**

- (10) feeders
- (8) tripod / ladder bow stands
- (7) gun blinds
- Multiple t-posts and horse panels around feeders

## ADDENDUM FOR STALKING HORSE BIDDER TERMS AND CONDITIONS

THIS ADDENDUM FOR STALKING HORSE BIDDER (this "**Addendum**") is made a part of that certain Farm and Ranch Contract (the "**Contract**") by and between Gregory S. Milligan, in his capacity as Chapter 11 Trustee (the "**Trustee**") for the estate of Daryl Greg Smith, an owner of a 90% undivided interest in the real property described therein ("**Smith**"), and Darren Keith Reed, an owner of a 10% undivided interest in the real property described therein ("**Reed**," together with the Trustee, "**Sellers**"), and Tango Lima Land, LP ("**Buyer**"). In addition to the obligations of Sellers and Buyer contained in the Contract, Sellers and Buyer hereby agree as follows:

Reference is hereby made to that certain (i) Trustee's Motion for (I) Order Approving: (A) Bid Procedures, Including Approval of Stalking Horse Bidder; (B) Notice of Auction and Sale Hearing; and (C) Related Relief, and (II) Order: (A) Approving the Sale of Real Estate Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f), (h) And (m), 365, and 503; and (B) Granting Related Relief filed by the Trustee (the "**Bid Procedures Motion**") [D.E. filed on February [__], 2022 in the United States Bankruptcy Court for the Western District of Texas, Waco Division (the "**Bankruptcy Court**"), and (ii) Order Granting the Bid Procedures Motion (the "**Bid Procedures Order**") [D.E. __]. The Bid Procedures Motion also sought to establish (i) an auction (the "**Auction**"), (ii) a hearing (the "**Stalking Horse Hearing**") to approve Sellers' selection of a stalking horse purchaser ("**Stalking Horse Purchaser**") and provision of bid protections thereto, if any, and (iii) a final hearing (the "**Sale Hearing**") to approve the sale of the real property, as more particularly described in the Contract (the "**Property**"). All capitalized terms used herein and not otherwise defined shall have the same meaning as ascribed to them in the Bid Procedures Motion and Bid Procedures Order.

Upon both (i) the full execution of the Contract, and (ii) the Bankruptcy Court's entry of an order ("**Stalking Horse Approval Order**") (a) approving the Contract and (b) unconditionally establishing Buyer as the Stalking Horse Purchaser (whether or not Buyer is the actual eventual purchaser of the Property, or is entitled, instead, to the "Break Up Fee" (as defined below)) and a Qualified Bidder, a valid and binding contract shall exist.

1.     TERM; CONTRACT APPROVAL; BID PROTECTIONS:

(a)     The "**Effective Date**" of the Contract shall be the first business day after the entry of the Stalking Horse Approval Order. The parties hereto understand, acknowledge and agree that upon entry of the Stalking Horse Approval Order the parties shall abide by the "Bid Protections" (as defined below).

(b)     As used herein, "**Bid Protections**" means that if Buyer is designated as the Stalking Horse Purchaser and thereafter, as a result of the Auction process whereby other potential buyers are permitted to bid to purchase the Property, a person other than Buyer is selected to purchase the Property (such person, the "**Successful Bidder**") pursuant to an order entered by the Bankruptcy Court (the "**Sale Order**"), then Buyer shall receive a fee (the "**Break Up Fee**") equal to the sum of (i) an amount equal to two and one-half percent (2.5%) of the Purchase Price (as defined in the Contract), plus (ii) the amount of actual, out-of-pocket expenses incurred by Buyer in the negotiation of the Contract, up to a maximum amount of Twenty-Five Thousand and 00/100 Dollars ($25,000.00) for reimbursement of actual expenses incurred in connection with Buyer's pursuit of the purchase of the Property, which Break Up Fee shall be payable from the sale proceeds at the closing of the sale to the Successful Bidder.

2.     PROPERTY: Sellers agree to sell to Buyer and Buyer agrees to purchase from Sellers the Property. Sellers and Buyer acknowledge and agree that the legal description for the Property technically may be legally insufficient for the purpose of supporting an action for enforcement of the Contract. Because the parties desire to execute the Contract to provide for the right of enforcement, Sellers and Buyer agree that:

(i) they are experienced in transactions of this nature; (ii) they are familiar with the location of the Property; (iii) each party waives any and all claims of an insufficient legal description, including, but not limited to, any and all claims under the Statute of Frauds; and (iv) upon completion of the Survey as contemplated by paragraph 6 hereof, the Contract will be amended to incorporate the legal description of the Property on Exhibit "A" attached to the Survey.

3.      TITLE: The title to the Property shall be free and clear of liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363(f) of the United States Bankruptcy Code, subject only to (i) the exceptions to title set forth in Section 6.E. of the Contract, and (ii) an exception in the event that the Closing occurs before the Sale Order has become a Final Order, as such terms are defined herein.

4.      PURCHASE PRICE: The total purchase price for the Property shall be as set forth in Section 3 of the Contract (as may be adjusted upward following the Auction, the "**Purchase Price**"). Buyer shall deposit with the escrow agent the earnest money as more particularly set forth in Section 5.A. of the Contract (the "**Earnest Money**").

5.      CLOSING DATE: The closing of the Contract ("**Closing**") shall take place remotely on the earlier of (i) May 10, 2022, and (ii) no later than three (3) calendar days after the Sale Order becomes a Final Order (as defined below). For the avoidance of doubt, if Buyer is not the Successful Bidder at the Auction, the provisions of Section 10 herein will control the disposition of the Earnest Money and obligation under this Section 5. For purposes hereof, "**Final Order**" shall mean with respect to the Sale Order that (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing (collectively, "**Appeal**") has expired and no Appeal has been timely filed, or (b) any Appeal that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further Appeal has been or can be taken or granted.

6.      SURVEY: An existing survey was previously provided by the Sellers to the Buyer. The Sellers have ordered a new or updated topographic and boundary survey to be prepared (the "**Survey**"). Upon receipt of the Survey, the Sellers shall promptly provide the Survey to the Buyer.

7.      INSPECTION: Buyer may not perform any intrusive testing of the Property. Buyer shall indemnify Sellers against all losses, damages, expenses, and claims that may arise by reason of any entry by Buyer or any agent, employee or contractor of Buyer into and upon and testing of the Property pursuant to this Section and shall repair any damage to the Property caused by such entry.

8.      INSPECTIONS/AS-IS, WHERE-IS. Buyer has previously inspected the Property and, by executing the Contract, affirms that it has approved all aspects of the Property. It is understood that Buyer will be relying solely on its independent inspections and evaluations of the Property in determining the Property's fitness for Buyer's intended use. The Contract is an arms-length contract between the parties hereto. THE PURCHASE PRICE WAS BARGAINED FOR ON THE BASIS OF AN "AS-IS, WHERE-IS, WITH ALL FAULTS" TRANSACTION AND REFLECTS THE CONTRACT OF THE PARTIES THAT THERE ARE NO REPRESENTATIONS, DISCLOSURES, OR EXPRESS OR IMPLIED WARRANTIES, EXCEPT THOSE IN THE CONTRACT AND THE CLOSING DOCUMENTS. AT CLOSING, BUYER WILL ACCEPT THE PROPERTY IN ITS THEN CURRENT CONDITION AT CLOSING. BUYER IS NOT RELYING ON ANY REPRESENTATIONS, DISCLOSURES, OR EXPRESS OR IMPLIED WARRANTIES OTHER THAN THOSE EXPRESSLY CONTAINED IN THE CONTRACT AND THE CLOSING DOCUMENTS. BUYER IS NOT RELYING ON ANY INFORMATION REGARDING THE PROPERTY PROVIDED BY ANY PERSON, OTHER THAN BUYER'S OWN INSPECTION AND THE REPRESENTATIONS AND WARRANTIES CONTAINED IN THE CONTRACT AND THE CLOSING DOCUMENTS. IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT BUYER ACCEPTS THE CONDITION OF THE PROPERTY WITHOUT ANY

IMPLIED REPRESENTATION, WARRANTY OR GUARANTEE AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE AS TO THE CONDITION, SIZE OR VALUE OF THE PROPERTY, EXCEPT ONLY AS MAY BE OTHERWISE EXPRESSLY PROVIDED IN THE CONTRACT, AND SELLERS HEREBY EXPRESSLY DISCLAIM ANY AND ALL SUCH IMPLIED REPRESENTATIONS, WARRANTIES OR GUARANTEES, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY, OR CONDITION OF THE PROPERTY BEING SOLD, (B) THE SUITABILITY OF THE PROPERTY FOR ANY ACTIVITIES THAT BUYER MAY CONDUCT THEREON, (C) THE COMPLIANCE OF THE PROPERTY WITH ANY LAWS, ORDINANCES, OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL ENTITY, (D) COMPLIANCE OF THE PROPERTY WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION, OR LAND USE LAWS, RULES, REGULATIONS, ORDERS, OR REQUIREMENTS, INCLUDING THE EXISTENCE IN OR THE PROPERTY OF HAZARDOUS MATERIALS, OR (E) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, EXCEPT AS SET FORTH IN THE CONTRACT.

9.    REPRESENTATIONS: Buyer acknowledges that neither Sellers nor any party on Sellers' behalf have made, nor do they hereby make, any representations as to the past, present or future condition, income, expenses, operation or any other matter or thing affecting or relating to the Property except as expressly set forth in the Contract.

10.    DEFAULT AND REMEDIES: Sellers or Buyer shall be in default under the Contract if either fails to comply with any material covenant, agreement or obligation within any time limits required by the Contract (a "**Default**" or "**Defaults**"). In the event of any purported default by Sellers, Buyer must deliver a notice in writing to Sellers specifying the default and affording the Sellers five (5) Business Days (as defined below) to cure (the "**Cure Period**"). Following Default by either Sellers or Buyer under the Contract and the expiration of the Cure Period as it relates to Sellers, the other party shall have the following remedies:

(a)    If Sellers Default, Buyer may either (i) cancel and terminate the Contract, and receive a full refund of the Earnest Money, or (ii) seek to enforce the order approving sale through the Bankruptcy Court.

(b)    If Buyer Defaults, Sellers may terminate the Contract by written notice to Buyer and retain the Earnest Money as liquidated damages as Sellers' sole remedy. The parties hereby acknowledge that it would be extremely difficult to ascertain the extent of actual damages caused by Buyer's Default and that the Earnest Money represents as fair an approximation of such actual damages as the parties can now determine.

(c)    If, as a result of an alleged Default under the Contract, either Sellers or Buyer employ an attorney to enforce their rights, the non-prevailing party in the dispute shall, unless prohibited by law, reimburse the prevailing party for all reasonable attorney's fees, court costs and other legal expenses incurred by the prevailing party in connection with the Default.

11.    DISPOSITION OF EARNEST MONEY AND OTHER FUNDS AND DOCUMENTS: The Earnest Money shall be non-refundable upon entry of the Stalking Horse Approval Order and shall be paid to Sellers in the event of any termination of the Contract except as expressly set forth (i) in Section 10(a) hereof or (ii) this Section 11 as follows:

(a)    The Earnest Money shall be held in a segregated account by the Title Company until no later than ten (10) days after the Sale Hearing.

(b)    If the Buyer is not the Successful Bidder or the Back-Up Bidder, the Earnest Money shall be refundable and shall be returned to the Buyer no later than ten (10) days after the Sale Hearing.

(c)    If the Buyer is the Successful Bidder, upon delivery of the special warranty deed, as more particularly described in Section 9.B. of the Contract (the "**Deed**"), at Closing, the Earnest Money shall be credited against the Purchase Price.

(d)    If the Buyer is the Back-Up Bidder, the Earnest Money shall continue to be held by the Sellers until the first to occur of (i) sixty (60) days after completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Sellers of the release by Sellers of the Back-Up Bidder's obligations, at which time the Earnest Money shall be returned to the Buyer.  Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on part of such Successful Bidder or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Sellers will be authorized to consummate the sale with the Back-Up Bidder, at which time, upon delivery of the Deed at Closing, the Earnest Money shall be credited against the Purchase Price. Additionally, the Earnest Money will become immediately non-refundable upon the Buyer becoming the new Successful Bidder.

12.    REVERSAL ON APPEAL. If the Buyer is the Successful Bidder and pays the Purchase Price and if the Sale Order is reversed on Appeal and such reversal affects the validity of the sale to Buyer, then the Buyer shall be entitled to a refund of the Purchase Price from the Sellers in proportion to their ownership interests as set forth in the recitals hereto.

13.    NOTICES: All notices required under the Contract shall be deemed to be properly served if reduced to writing and sent by (i) certified or registered mail; (ii) Federal Express or similar overnight courier; (iii) facsimile transmission; or (iv) personal delivery and the date of such notice will be deemed to have been the date on which such notice is delivered or attempted to be delivered as shown by the certified mail return receipt or a commercial delivery service record, or in the case of facsimile on the date of receipt of the transmission as shown on a successful transmission confirmation receipt; provided, however, if the date for the performance of any action or obligation, or any time period specified hereunder occurs on a day other than a Business Day, then such date or time period shall be extended until the next Business Day. All notices shall be addressed as follows, unless otherwise specified in writing:

SELLERS:                                                    BUYER:

Daryl Greg Smith                                      Tango Lima Land, LP
5826 Cooksey Lane                                  P. O. Box 470852,
Waco, Texas 76706                                 Fort Worth, Texas 76147

With a Copy to:                                        With a Copy to:

c/o Gregory S. Milligan                           Langley & Banack, Inc.
Chapter 11 Trustee for Daryl Greg Smith      c/o William R. Davis, Jr. (Dick)
P.O. Box 90099                                       745 E Mulberry Avenue, Suite 700
Austin, TX  78709                                   San Antonio, Texas 78212
Email: gmilligan@harneypartners.com      Email: wrdavis@langleybanack.com

and

4

Waller Lansden Dortch & Davis, LLP
c/o Morris Weiss
100 Congress Ave., Suite 1800
Austin, Texas 78701
Fax: (512) 685-6417
Email: Morris.Weiss@Wallerlaw.com


Darren Keith Reed
611 S. Llano
Whitney, Texas 76692
Email: dkeithreed@yahoo.com

With a Copy to:

R. Rene Escobedo
6800 Park Ten Blvd., Suite 135-E
San Antonio, Texas 78213
Fax: (210) 223-3815
Email: rene.escobedo@rre-law.com


14.    TIME AND EXACT PERFORMANCE ARE OF THE ESSENCE UNDER THE CONTRACT.
Buyer and Sellers hereby agree to perform each and every obligation hereunder in a prompt and timely
manner; provided, however, if the date for the performance of any action or obligation, or any time period
specified hereunder occurs on a day other than a Business Day, then the date or time period shall be
extended until the next Business Day.  As used herein "**Business Day**" shall mean any calendar day other
than a Saturday, Sunday, or Texas or Federal legal holiday.

15.    ADDITIONAL TERMS:

    (a)    Permits and Approvals.  Sellers shall reasonably cooperate with Buyer in verifying any
existing governmental approvals and in seeking and making any inquiries related to the Property, as
reasonably determined necessary by Buyer, provided such cooperation is at no cost or expense to Sellers.
Sellers make no representations or warranties about the existence of or effectiveness of any governmental
approvals.

    (b)    Assignment.  Buyer may assign the Contract to any entity formed by Buyer for the purpose
of taking title to the Property, provided the assignee assumes, in writing, all obligations and liabilities of
Buyer under the Contract and has the same beneficial ownership as the Buyer, and with approval of the
Bankruptcy Court.  Unless agreed to by Sellers, Buyer shall not be relieved of any liability hereunder upon
such an assignment.

    (c)    Miscellaneous.  This Addendum shall be governed by, and construed and interpreted under,
the laws and judicial decisions of the State of Texas.  This Addendum and all covenants, terms, conditions,
warranties, and undertakings contained herein, and all amendments, modifications and extensions hereof,
as applicable, shall be binding upon and shall inure to the benefit of the parties hereto and their respective
heirs, executors, administrators, personal representatives, successors and permitted assigns.    This
Addendum may be executed in multiple counterparts, each of which shall be deemed an original, but taken
together shall constitute one instrument. Sole and exclusive jurisdiction over any disputes related to this

Addendum and the Contract shall be in the United States Bankruptcy Court for the Western District of Texas, Waco Division.

(d)    CONFLICTS OF PROVISIONS. SELLERS AND BUYER HEREBY ACKNOWLEDGE AND AGREE THAT THE TERMS AND CONDITIONS OF THIS ADDENDUM SUPERSEDE ANY DIFFERENT OR INCONSISTENT PROVISIONS IN THE CONTRACT AND, AS A RESULT, IN THE EVENT OF ANY CONFLICT BETWEEN THE TERMS AND CONDITIONS OF THE CONTRACT AND THE TERMS AND CONDITIONS OF THIS ADDENDUM, THE TERMS AND CONDITIONS OF THIS ADDENDUM SHALL CONTROL.

16.    ENTIRE AGREEMENT AND MANNER OF MODIFICATION:    The Contract, and any attachments or addenda thereto, constitutes the complete agreement of the parties concerning the Property, and supersedes all other agreements and may be modified only by both parties initialing changes in the Contract or by written agreement. However, in the event of any conflict between the Contract and the Sale Order, the terms of the Sale Order shall prevail.

17.    NO RULE OF STRICT CONSTRUCTION:  Each party and its counsel has reviewed and jointly participated in the establishment of the Contract and the attachments or addenda thereto.  No rule of strict construction or presumption that ambiguities will be construed against any drafter will apply, and no presumptions will be made or inferences drawn because of the final inclusion of a term not contained in a prior draft or the final deletion of a term contained in a prior draft.

[Signatures on Following Page]

6

IN WITNESS WHEREOF, Sellers and Buyer execute this Addendum on the date(s) indicated below their respective signatures.

**SELLERS**:

/s/ Gregory S. Milligan

GREGORY S. MILLIGAN, Chapter 11 Trustee
for Daryl Greg Smith In Case No. 21-60162
before the United States Bankruptcy for the
Western District of Texas, Waco Division

Date:_____

**BUYER**:

TANGO LIMA LAND, LP

By:_____
Name: Tango Lima Land, LP
Title: By: TL Permian, LLC, its general partner
By: Thomas L. Lacy, Jr., Manager
Date: 3/1/2022

DARREN KEITH REED and JULIE REED

Date: 3-1-22

# EXHIBIT B

**Settlement Statement**

| American Land Title Association | Settlement Statement - Combined Adopted 05-01-2015 |
|---|---|

| File No. | 181728TTX | **Thomas Title & Escrow** |  |
|---|---|---|---|
| Version: | 3 | **1800 West Loop South, Suite 750 Houston, TX 77027** | |

**Project Reference:**

**Property Address:** 913.22 acres, more or less, of Real Property in Bosque County, Texas

**Seller:** Gregory S. Milligan, Chapter 11 Trustee for Daryl Greg Smith In Case No. 21-60162 before the United States Bankruptcy Court for the Western District of Texas, Waco Division, owner of a 90% undivided interest

_____, as Qualified Intermediary for Darren Keith Reed, owner of a 10% undivided interest

**Buyer:** Tango Lima Land, LP
PO Box 470852
Fort Worth, TX 76147

**Settlement Date:** 5/10/2022

| Seller | | Description | Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| | | **Financial** | | |
| | $4,899,425.30 | Purchase Price | $4,899,425.30 | |
| | | | | |
| | | **Prorations/Adjustments** | | |
| | | Earnest Money | | $500,000.00 |
| | | | | |
| | | **Prorations/Adjustments - Property Taxes** | | |
| | | Bosque County Property Tax Values | | |
| $21.76 | | R05401 (01/01/2022 - 05/10/2022) @ $61.09 | | $21.76 |
| $91.85 | | R06632 (01/01/2022 - 05/10/2022) @ $257.88 | | $91.85 |
| $3.81 | | R06769 (01/01/2022 - 05/10/2022) @ $10.69 | | $3.81 |
| $173.63 | | R07034 (01/01/2022 - 05/10/2022) @ $487.51 | | $173.63 |
| $120.21 | | R25493 (01/01/2022 - 05/10/2022) @ $337.52 | | $120.21 |
| $194.78 | | R25849 (01/01/2022 - 05/10/2022) @ $546.88 | | $194.78 |
| $261.68 | | R37251 (01/01/2022 - 05/10/2022) @ $734.71 | | $261.68 |
| $0.52 | | R37253 (01/01/2022 - 05/10/2022) @ $1.46 | | $0.52 |
| $0.84 | | R37257 (01/01/2022 - 05/10/2022) @ $2.37 | | $0.84 |

Copyright 2015 American Land Title Association. All rights reserved.

File #181728TTX
3:09 PM4/22/2022

| | | | | |
|---|---|---|---|---|
| | | **Government Recording and Transfer Charges** | | |
| $300.00 | | Recording Fees to County Clerk (estimate) | $100.00 | |
| $140.00 | | Lis Pendens Recording Fees to County Clerk | | |
| | | | | |
| | | **Title Charges & Escrow/Settlement Charges** | | |
| | | Owner's Policy of Title Insurance (T-1) | $22,460.00 | |
| | | Owner's Policy Endorsement(s) | | |
| | | Exception to Area and Boundaries | $3,369.00 | |
| | | | | |
| $500.00 | | Escrow/Settlement Fee | $500.00 | |
| | | State of Texas Policy Guaranty Fee | $2.00 | |
| $100.00 | | Tax Certificate Fee (estimate) | | |
| $800.00 | | Document Copies and Exam Fees (estimate) | | |
| | | | | |
| | | **Miscellaneous** | | |
| $146,982.76 | | Commission to Riley-McLean Land | | |
| $146,982.76 | | Commission to Briggs Freeman Sotheby's Int'l Realty | | |
| | | | | |
| | | **Payoff(s)** | | |
| | | | | |
| | | **Taxes** | | |
| $67.80 | | 2021 Taxes (Prop ID R05401) to Bosque County A/C | | |
| $286.25 | | 2021 Taxes (Prop ID R06632) to Bosque County A/C | | |
| $11.86 | | 2021 Taxes (Prop ID R06769) to Bosque County A/C | | |
| $541.13 | | 2021 Taxes (Prop ID R07034) to Bosque County A/C | | |
| $374.64 | | 2021 Taxes (Prop ID R25493) to Bosque County A/C | | |
| $607.04 | | 2021 Taxes (Prop ID R25849) to Bosque County A/C | | |
| $815.54 | | 2021 Taxes (Prop ID R37251) to Bosque County A/C | | |
| $1.62 | | 2021 Taxes (Prop ID R37253) to Bosque County A/C | | |
| $2.63 | | 2021 Taxes (Prop ID R37257) to Bosque County A/C | | |
| | | | | |

| Seller | | | Borrower/Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| $299,383.11 | $4,899,425.30 | Subtotals | $4,925,856.30 | $500,869.08 |
| | | Due From/To Borrower | $4,424,987.22 | $0.00 |
| $0.00 | $4,600,042.19 | Due From/To Seller | | |
| | | Totals | | |

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGANTURE PAGE FOLLOWS]**

Copyright 2015 American Land Title Association.
All rights reserved.

File #181728TTX
3:09 PM 4/22/2022