## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| DARYL GREG SMITH and, | § | CASE NO. 21-60162-RBK-11 |
| CANADIAN RIVER RANCH, LLC | § | CASE NO. 21-60163-RBK-11 |
| | § | Jointly Administered Under |
| | § | Case No. 21-60162-rbk |
| Debtors. | § | |

## MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SETTLEMENT AGREEMENT AMONG THE TRUSTEE ON BEHALF OF THE DEBTORS, CADDOA CREEK RANCH, LLC, AND KAREN ANNETTE SMITH PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019, AND (II) AUTHORIZING THE TRUSTEE TO ENTER INTO A RESTRUCTURING SUPPORT AGREEMENT

TO THE HONORABLE RONALD B. KING,
UNITED STATES BANKRUPTCY JUDGE:

Gregory S. Milligan, chapter 11 trustee in the above-captioned bankruptcy cases (the "**Trustee**") files this *Motion for Entry of an Order (I) Approving the Settlement Agreement Among the Trustee, Caddoa Creek Ranch, LLC, and Karen Annette Smith Pursuant to Federal Rule of Bankruptcy Procedure 9019 and (II) Authorizing the Trustee to Enter into a Restructuring Support Agreement* (the "**Motion**"). In further support of this Motion, the Trustee respectfully represents as follows:

### SUMMARY OF REQUESTED RELIEF

1.      The Trustee has negotiated the Settlement Agreement and Restructuring Support Agreement with K. Smith, the largest secured creditor of the Debtors.  The settlement was reached following months of negotiation, culminating in a lengthy mediation conducted by Judge Gargotta on May 24, 2022.  The Settlement Agreement successfully resolves a number of potentially disputed aspects of the claims filed by K. Smith and provides for her support for a chapter 11 plan

that should pave the way to an exit from these chapter 11 cases. For all of the reasons set forth herein, the Trustee requests that the proposed compromise be approved.

## RELIEF REQUESTED

2. The Trustee seeks approval of the settlement agreement (the "**Settlement Agreement**"), a true and correct copy of which is attached hereto as **Exhibit A**, by and among (a) Gregory S. Milligan, in his capacities as (i) Trustee for the estates of Daryl Greg Smith ("**D. Smith**") and Canadian River Ranch, LLC ("**CRR**" and together with Smith, the "**Debtors**"), and (ii) Manager of Caddoa Creek Ranch, LLC ("**Caddoa**"), and (b) Karen Annette Smith ("**K. Smith**"; and together with the Trustee and Caddoa, the "**Parties**").

3. The Settlement Agreement is the product of a successful mediation amongst the Parties conducted by the Bankruptcy Court Chief Judge Craig Gargotta on May 24, 2022 (the "**Mediation**"). The Settlement Agreement resolves, among other things, the allowed amount of K. Smith's asserted claims in these cases, the timing and amount of distributions of proceeds from court-approved sales of estate assets, and the consensual use of cash collateral, and provides for entry into a Restructuring Support Agreement that will ensure the continued support of K. Smith, the largest secured creditor in these cases, thus paving the way for successful plan confirmation.

4. The Trustee seeks entry of an order, substantially in the form submitted herewith (the "**Order**"), approving the Settlement Agreement, including authorizing the Trustee to enter into the Restructuring Support Agreement attached to the Settlement Agreement as Exhibit A.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The bases for the relief requested herein are section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9019 of the Local Court Rules of the United States Bankruptcy Court for the Western District of Texas (the "**Local Rules**").

7.      The Trustee confirms his consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the Parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

<div align="center">

**BACKGROUND**

</div>

**A.  The Bankruptcy Cases**

8.      The Debtors each filed a voluntary petition for relief under the Bankruptcy Code on April 9, 2021 (the "**Petition Date**").

9.      On May 18, 2021, the Court ordered that the Debtors' cases (the "**Bankruptcy Cases**") be jointly administered. *See* Order Granting Debtors' Motion for Joint Administration [Doc. 29].

10.     On May 7, 2021, K. Smith filed her *Motion to Appoint a Chapter 11 Trustee* [Doc. 15]*,* and on June 23, 2021, the Bankruptcy Court granted such motion. *See* Order Regarding Motion to Appoint a Chapter 11 Trustee [Doc. 82].

11.     On June 29, 2021, the United States Trustee requested appointment of the Trustee in this matter, and the Court approved such appointment. *See* Order Approving Appointment of Gregory S. Milligan as Chapter 11 Trustee [Doc. 91].

**B.  Pre-Petition Divorce Suit and Related State Court Matters**

12.     On October 5, 2015, K. Smith sued D. Smith for divorce in the 325th Judicial District Court of Tarrant County, Texas (the "**Divorce Court**") commencing Cause No. 325-

584465-15 (the "**Divorce Suit**"), and on April 8, 2016, D. Smith counter-sued K. Smith for divorce.

13.     On November 27, 2019, the Divorce Court entered the Final Decree of Divorce (the "**Decree**"), providing for, among other things, the allocation and means of distribution of the D. Smith and K. Smith marital estate, including a judgment against D. Smith in the amount of $8,500,000 (the "**Judgment**").

14.     Pursuant to the Decree and subsequent further Divorce Court orders, Stanley Wright ("**Wright**") was appointed as receiver for D. Smith and ordered to, among other things, transfer certain real property out of Caddoa and into the personal names of D. Smith and his business partner Darren Keith Reed ("**Reed**"), as well as execute certain deeds of trust and mortgages in favor of K. Smith to secure payment of the Judgment.

15.     D. Smith appealed the Decree, which appeal was dismissed at the Court of Appeals, and D. Smith thereafter filed a Petition for Review with the Texas Supreme Court which remains pending (the "**State Court Appeal**" and together with the Divorce Suit, the "**State Court Matters**").

16.     The Judgment is secured by substantially all of the estates' material assets including (a) a certain 1,200-acre parcel in Bosque County, Texas, which is subject to a solar lease (the "**Solar Property**"), (b) a certain 913-acre parcel in Bosque County, Texas, that was sold for approximately $4.9 million on May 12, 2022 [Docs. 417 and 428] (the "**Bosque Property**"), (c) approximately 11,000 acres of real property located in McIntosh County, Oklahoma (the "**OK Property**") that the Trustee is currently marketing for sale, and (d) certain mineral interests located in Bent County, Colorado (the "**CO Property**").

### C. K. Smith's Asserted Claims

17.     On August 6, 2021, K. Smith filed Proofs of Claim Nos. 15 and 4 in the D. Smith and CRR Bankruptcy Cases, respectively (together, as amended, the "**Asserted Claims**"). The Asserted Claims assert a secured claim in the amount of $9,424,590.41[1] owing as of the Petition Date on account of the Judgment, pre-petition interest, and related support obligations and fees, plus certain unliquidated amounts. The Asserted Claims further assert entitlement to post-petition interest and recovery of attorney's fees pursuant to section 506(b) of the Bankruptcy Code.

### D. The Adversary Proceedings

18.     **Oklahoma Litigation**.  On August 26, 2020, the Debtors and Reed brought suit against K. Smith and Wright in the District Court of McIntosh County, Oklahoma, to, among other things, quiet title to property of the marital estate that had been transferred by Wright, as court-appointed receiver for D. Smith, pursuant to the Decree, commencing Case No. CV-2020-83 (the "**OK Litigation**").

19.     **Colorado Litigation**.  On December 17, 2020, Caddoa brought suit against K. Smith and Wright in the District Court of Bent County, Colorado, to, among other things, quiet title to certain mineral interests that had been transferred by Wright, as court-appointed receiver for D. Smith, pursuant to the Decree, commencing Case No. 2020-CV-30014 (the "**CO Litigation**").

20.     **Turnover Litigation**.  On June 9 2021, the Debtors filed their *Original Complaint for Turnover, Avoidance, and Declaratory Relief* against K. Smith and Wright in the Bankruptcy Court, commencing Adversary Proceeding No. 21-06007 (the "**Turnover Litigation**"), demanding, among other things, declaratory relief and turnover related to title defects in property

---

[1] K. Smith's claim filed in the CRR case is in the amount of $9,096,719.64 and does not include support or related obligations.

of the estates caused by certain transfers made by Wright, as court-appointed receiver for D. Smith, pursuant to the Decree.

21.     Following removal of the OK Litigation by K. Smith, to the United States Bankruptcy Court for the Eastern District of Oklahoma on October 6, 2021, the OK Litigation was transferred to the Bankruptcy Court, commencing Adversary Proceeding No. 21-06012 (the "**Removed OK Litigation**").

22.     Following removal of the CO Litigation by K. Smith, to the United States Bankruptcy Court for the District of Colorado, on December 13, 2021, the CO Litigation was transferred to the Bankruptcy Court, commencing Adversary Proceeding No. 21-06016[2] (the "**Removed CO Litigation**").

23.     K. Smith has asserted that the Removed OK Litigation and Removed CO Litigation constitute collateral attacks on the Decree and Judgment by D. Smith.

**E.  Trustee as Manager of Caddoa**

24.     On August 27, 2021, the Trustee filed his *Motion of Gregory S. Milligan, Chapter 11 Trustee, Seeking Approval of Second Amendment to Operating Agreement of Caddoa Creek Ranch, LLC*, seeking authorization to execute the Second Amendment to the Caddoa Operating Agreement, appointing the Trustee as manager of Caddoa (the "**Caddoa Motion**") [Doc. 180].

25.     After a hearing held on November 15, 2021, the Bankruptcy Court entered its *Order Regarding Limited Objection to Debtor's Claimed Exemptions* [Doc. 243] sustaining K. Smith's objection to D. Smith's claimed exemption of his 90% interest in Caddoa, holding that such interest exceeds the amount of the applicable statutory limit under 11 U.S.C. §522(d)(5), also known as

---

[2] The Turnover Litigation, the Removed OK Litigation and the Removed CO Litigation are collectively referred to as the "**Adversary Proceedings**".

the "wild card exemption," and ordered that D. Smith was allowed an exemption as to the value of his 90% interest in Caddoa in the amount of $13,900 (the "**Wildcard Amount**"), but his 90% interest in Caddoa remains property of his estate[3].

26.     On November 17, 2021, after the Bankruptcy Court concluded that D. Smith's interest in Caddoa is not exempt and remains property of the estate, the Bankruptcy Court granted the Caddoa Motion, and the Trustee was appointed Manager of Caddoa (the "**Manager**") [Doc. 245].

### F. Sale of Bosque Property

27.     On March 1, 2022, the Trustee filed the *Trustee's Motion for (I) Order Approving (A) Bid Procedures, Including Approval of Stalking Horse Bidder, (B) Notice of Auction and Sale Hearing, and (C) Related Relief and (II) Order (A) Approving the Sale of Real Estate Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f), and (m), and 365, and (B) Granting Related Relief* [Doc. 322] in connection with the Bosque Property. On April 26, 2022, this Court entered an order approving the sale of the Bosque Property [Doc. 417] (the "**Sale Order**"). On May 9, 2022, D. Smith filed a Notice of Appeal of the Sale Order [Doc. 426]. On May 12, 2022, the sale transaction was consummated. *See* Notice of Consummation and Closing of Sale of Real Estate in Respect of 913-Acre Parcel in Bosque County, Texas [Doc. 428].

### HISTORY OF NEGOTIATIONS AND MEDIATION

28.     Through months of periodic negotiations, the Trustee and K. Smith made great strides in identifying and narrowing the issues regarding the claim of K. Smith. Those negotiations were tabled because it seemed somewhat academic until there were sales proceeds. Because of the

---

[3] D. Smith has filed a Notice of Appeal regarding this order (the "**Appeal**"). The Appeal has been fully briefed and is currently pending before the United States District Court.

Bosque Property sale, those discussions recently resumed. Building on the negotiations that had started in the fall of 2021, the parties continued the negotiations throughout the months of March, April and May. The parties agreed that a mediation would be beneficial to assist the parties in achieving a settlement.

29.     In that connection, on April 22, 2022, the Trustee and K. Smith filed their *Joint Motion to Refer Matter to Mediation* [Doc. 409] (the "**Mediation Motion**"). The Mediation Motion was granted by an *Agreed Order Granting Joint Motion to Refer Matter to Mediation* [Doc. 418] entered on April 28, 2022, and referred the matter to Judge Gargotta.

### THE SETTLEMENT AGREEMENT[4]

30.     On May 24, 2022, the Parties engaged in the Mediation before Judge Gargotta with respect to the foregoing Adversary Proceedings, Asserted Claims, and related matters. As a result of the successful Mediation, the Parties entered into the Settlement Agreement.

31.     The Settlement Agreement provides meaningful consideration to the estates in exchange for, among other things, providing K. Smith an interim distribution on account of her secured claim from the proceeds of the Bosque Property sale. This consideration includes both material economic concessions and non-economic benefits such as fulsome mutual releases and entry into a binding restructuring support agreement. The below chart summarizes the economic consideration provided for under the Settlement Agreement:

---

[4] The summary set forth below is qualified in its entirety by the Settlement Agreement that is incorporated herein by reference. To the extent of any inconsistency between this summary the Settlement Agreement, the Settlement Agreement shall control.

|  | **Asserted Allowable[5] Claim** | **Allowed Claim** | **Consideration** |
|---|---|---|---|
| Prepetition Claims | $9,388,676.17 | $8,938,676.17 | $450,000 |
| Postpetition Interest | Approx. $500,000 | Approx. $200,000 | $300,000 |
| Consideration for Adversary Proceeding Dismissals | | | $150,000 |
| **Total Economic Consideration Received by Estates** | | | **$900,000** |

32.     The material terms and conditions of the Settlement Agreement[6] are as follows:

**Allowance of Claims**.  The Asserted Claims shall be allowed as follows (the following allowed claims, the "**Allowed Claim**"):

a.      Prepetition Claims.

    i.   Judgment, Prepetition Interest, and Certain Fees: Allowed in the amount of $8,646,719.64 in both Bankruptcy Cases (the "**Allowed Secured Claim**"), representing a reduction of $450,000 from the asserted claim.

    ii.  Priority Domestic Support Obligations:

      (1)  Allowed in the amount of $91,956.53 in the D. Smith case, with section 507(a)(1) unsecured priority;

      (2)  Asserted $235,914.24 claim in the D. Smith case for pre-petition attorneys' fees allowed in the amount of $200,000, with $100,000 of such claim entitled to section 507(a)(1) priority, with the remaining $100,000 allowed as a general unsecured claim.

b.      Postpetition Claims.

    i.   Priority Domestic Support Obligations: Allowed as a section 503(b) administrative expense in the amount of $67,523.04, which accrues hereafter at a rate of $4,608.81 per month starting in June, 2022, plus medical expenses and other reimbursement obligations, until aspects of the support obligations are resolved by virtue of the terms detailed in

---

[5] The Asserted Claims include additional unliquidated amounts, including an entitlement to post-petition attorney's fees pursuant to section 506(b) of the Bankruptcy Code, that Trustee believes are not allowable and thus the waiver of us such potential amounts is not included in the consideration calculation. K.Smith earnestly asserts that she is entitled to significant fees and expenses under 506(b) but in order to secure the benefits of the CSA/RSA she has agreed to not seek such fees and expenses.

[6] Capitalized terms used but not otherwise defined in this section of the Motion shall have the meanings ascribed to them in the Settlement Agreement.

the Decree or the *Temporary Order Pending Appeal* (which remains in place until terminated).

 ii. <u>Postpetition Interest</u>: 2% simple interest on the Allowed Secured Claim.

 iii. <u>506(b) Attorneys' Fees</u>: K. Smith agrees to not assert entitlement to recovery of any attorneys' fees pursuant to section 506(b) of the Bankruptcy Code in the Bankruptcy Cases.

**<u>Adversary Proceedings</u>**.

a. <u>Removed CO Litigation</u>.

 i. K. Smith shall pay Caddoa $100,000, to be funded from proceeds received by K. Smith from the Bosque Property sale; and

 ii. The parties to the Removed CO Litigation shall execute and deliver to the Trustee a stipulation and proposed agreed order of dismissal, in a form reasonably agreed to amongst the parties, dismissing the Removed CO Litigation with prejudice. The Trustee, as Manager of Caddoa, agrees he will file, or cause to be filed, such stipulation and proposed agreed order within three (3) business days following entry of the Approval Order, provided that the effectiveness of the Approval Order has not been stayed for any reason.

 iii. <u>Dissolution of Caddoa</u>. The Trustee, in his capacity as Manager of Caddoa, shall take steps to dissolve Caddoa pursuant to Colorado state law. Caddoa's funds, including the $100,000 payment provided in section 5(a)(i) above, shall be used to pay Caddoa's creditors and fund the dissolution of the entity, with any remaining funds being distributed to the members of Caddoa in accordance with applicable state law. Such funds distributed to the D. Smith estate on account of his 90% interest in Caddoa shall be unencumbered by any liens or interests of K. Smith and shall be used to fund a reserve for D. Smith's asserted exemption up to the Wildcard Amount.

b. <u>Removed OK Litigation</u>.

 i. K. Smith shall pay the D. Smith estate $50,000, to be funded from proceeds received by K. Smith from her proceeds of the Bosque Waterfall; and

 ii. The parties to the Removed OK Litigation shall execute and deliver to the Trustee a stipulation and proposed agreed order of dismissal, in a form reasonably agreed to amongst the parties, dismissing the Removed OK Litigation with prejudice. The Trustee agrees he will file, or cause to be filed, such stipulation and proposed agreed order within three (3)

business days following entry of the Approval Order, provided that the effectiveness of the Approval Order has not been stayed for any reason.

c. <u>Turnover Litigation</u>. The parties to the Turnover Litigation shall execute and deliver to the Trustee a stipulation and proposed agreed order of dismissal, in a form reasonably agreed to amongst the parties, dismissing the Turnover Litigation with prejudice. The Trustee shall hold in trust and shall refrain from filing such stipulation and proposed agreed order of dismissal with the Bankruptcy Court until the date on which the Trustee, in his sole discretion, determines that the Turnover Litigation is no longer necessary for purposes of implementing Bankruptcy Rule 7070 with respect to issuance of corrective deeds and related documents or otherwise. The Parties shall thereafter take such actions as may be reasonably necessary to ensure entry of the agreed order of dismissal.

**State Court Matters.**

a. <u>Divorce Suit</u>. The Divorce Suit was removed to the bankruptcy court for the Northern District of Texas, Dallas Division by D. Smith prior to the appointment of the Trustee in the Bankruptcy Cases. After the Trustee's appointment, the removed Divorce Suit was transferred to the Bankruptcy Court (Adversary Proceeding No. 21-06013). On April 12, 2022, the Divorce Suit was remanded back to the Divorce Court. The Divorce Suit, as it relates to property of the estate, remains subject to the automatic stay. The Trustee will agree to termination of the automatic stay to allow K. Smith or D. Smith to exercise his or her remedies provided that no relief may be sought from the Divorce Court that conflicts with any of the Bankruptcy Court's orders, including but not limited to any order confirming any plan or the orders approving the Settlement Agreement or the RSA.

b. <u>State Court Petition for Review</u>. The Trustee will agree with regard to the Texas Supreme Court TRAP 8.2 stay to termination of the automatic stay to allow K. Smith or D. Smith to exercise his or her remedies, provided that no relief may be sought that conflicts with any of the Bankruptcy Court's orders, including but not limited to any order confirming any plan or the orders approving the Settlement Agreement or the RSA.

**Restructuring Support Agreement**. Contemporaneously with the execution of the Settlement Agreement, the Trustee and K. Smith shall execute and deliver to the Trustee the Restructuring Support Agreement (the "**RSA**"), in the form attached thereto as <u>Exhibit A</u>. The Parties shall thereafter take such actions as may be reasonably necessary to obtain approval of the RSA by the Bankruptcy Court in connection with the approval of the Settlement Agreement as provided in <u>Section 2</u>.

**Carve-Outs and Disbursement of Sale Proceeds.**

    a.    <u>Bosque Property</u>. The proceeds obtained by the D. Smith estate in connection with the sale of the estate's interests in the Bosque Property shall be disbursed as set forth in the waterfall attached to the Settlement Agreement as <u>Exhibit B</u> (the "**Bosque Waterfall**").

    b.    <u>OK Property and Solar Property</u>. The proceeds obtained by the Debtors' estates in connection with the monetization of the estates' interests in the OK Property and Solar Property shall be disbursed as set forth in the waterfall on <u>Exhibit B</u> to the Settlement Agreement (the "**OK and Solar Waterfall**").

<u>**506(c) Surcharge/Cash Collateral**</u>. K. Smith consents to the Trustee's use of cash collateral consistent with the Settlement Agreement, and covenants to consider in good faith the approval of further consensual uses of cash collateral not set forth herein.

<u>**Monetization of Debtors' Remaining Assets**</u>. K. Smith agrees to defer to the Trustee's reasonable business judgment with respect to the timing of the monetization of the Debtors' remaining assets, including the OK Property and the Solar Property.

    33.    Additionally, the Settlement Agreement provides for extensive mutual releases for the Parties.

    34.    The Trustee on behalf of the Debtors believes that the Settlement Agreement is in the best interests of the Debtors, their creditors, and other parties in interests. The Trustee, in his role as Manager, further believes the Settlement Agreement is in the best interests of Caddoa.

<div align="center">

**THE RESTRUCTURING SUPPORT AGREEMENT**[7]

</div>

    35.    The Trustee seeks approval of his entry into the Restructuring Support Agreement[8] with K. Smith. The RSA provides, in sum, that K. Smith will vote her interests and support approval of the plan to be filed by the Trustee, not seek to terminate the automatic stay or solicit

---

[7] The summaries of the material terms of the RSA set forth below are qualified in their entirety by the specific terms and conditions of the RSA. To the extent there exists any inconsistency between these summaries and the RSA, the RSA shall govern.

[8] Capitalized terms used but not otherwise defined in this section of the Motion shall have the meanings ascribed to them in the RSA.

or vote for any other plan of reorganization, and support the mutual releases, exculpations, and injunctions to be included in the proposed plan. The Trustee in turn agree to, in sum, continue to monetize the estates' assets, implement the terms of the Settlement Agreement, and seek confirmation of a plan with those characteristics.

36.     The material terms and conditions of the Restructuring Support Agreement are as follows:

**Agreements of K. Smith.**

a.     <u>Support of Restructuring</u>. Subject to the RSA and the terms of the Settlement Agreement, K. Smith agrees that she shall:

    i.     support, and take all reasonable actions necessary to facilitate the implementation or consummation of, the Restructuring and the approval by the Bankruptcy Court of the RSA, the Settlement Agreement, the Disclosure Statement and Plan, the form of which shall be acceptable in all material respects to the Trustee and K. Smith;

    ii.     not directly or indirectly seek, solicit or vote the Allowed KAS Claim for, any plan of reorganization other than the Plan;

    iii.     not seek to terminate or modify the automatic stay with respect to any of the Properties;

    iv.     subject to the receipt by K. Smith of an approved Disclosure Statement in accordance with the Solicitation, (i) timely vote, or cause to be voted, all of the Allowed KAS Claim to accept the Plan, and (ii) not change, withdraw or revoke such vote (or cause or direct such vote to be changed, withdrawn or revoked);

    v.     timely vote or cause to be voted all of the Allowed KAS Claim, as applicable, against and not consent to, or otherwise directly or indirectly support, solicit, assist, encourage or participate in the formulation, pursuit or support of, any restructuring or reorganization of the Debtors (or any plan or proposal in respect of the same) other than the Restructuring; and

    vi.     support the mutual release, exculpation and injunction provisions to be provided in the Plan.

b.     <u>Certain Conditions</u>. The obligations of K. Smith set forth in the RSA are subject to the following conditions:

    i.     the RSA shall have become effective in accordance with its provisions;

    ii.     the RSA shall not have terminated in accordance with its terms.

c.     <u>Transfers</u>. K. Smith agrees that K. Smith shall not transfer the Allowed KAS Claim.

**Agreements of the Trustee.**

a.  **Affirmative Covenants.** The Trustee agrees that, commencing on the date of the RSA and continuing until the confirmation of the Plan, unless otherwise expressly permitted or required by the RSA or the Settlement Agreement, the Trustee shall do the following:

    i.  monetize the Properties;

    ii.  implement the terms of the Settlement Agreement; and

    iii.  seek approval of the Disclosure Statement and confirmation of the Plan;

**Termination of Agreement.**

a.  **K. Smith Termination Events.** K. Smith may terminate the RSA as to all Parties upon written notice to the other Parties, delivered in accordance with the RSA, upon the occurrence of any of the following events:

    i.  the Bankruptcy Court grants relief that is materially inconsistent with the RSA or the Settlement Agreement in any material respect;

    ii.  the Plan is amended or otherwise modified so as to be materially inconsistent with the RSA or the Settlement Agreement;

    iii.  the failure of the confirmed Plan to go effective; or

    iv.  the Bankruptcy Cases are involuntarily dismissed or are both converted to Chapter 7 cases.

b.  **Mutual Termination.** The RSA, and the obligations of all Parties hereunder, may be terminated at any time by mutual agreement among the Trustee and K. Smith.

c.  **Trustee Events.** The Trustee may terminate the RSA as to all Parties upon written notice to the other Parties, delivered in accordance with Section 18 of the RSA, upon the occurrence of any of the following events:

    i.  the Bankruptcy Court grants relief that is materially inconsistent with the RSA or the Settlement Agreement in any material respect;

    ii.  the material breach by K. Smith of the RSA or the Settlement Agreement; or

    iii.  except at the request of the Trustee, the Bankruptcy Cases are involuntarily dismissed.

**Good Faith Cooperation; Further Assurances; Acknowledgment; No Solicitation.**

The Parties shall cooperate with each other in good faith and shall coordinate their activities. Furthermore, each of the Parties shall take such action as may be reasonably necessary to carry out the purposes and intent of the RSA and shall refrain from taking any action that would frustrate the purposes and intent of the RSA. The RSA is not, and shall not be deemed, a solicitation for consent to the Plan. The acceptance of the Plan by K. Smith will not be solicited until K. Smith

has received the Disclosure Statement and related ballot(s), as approved by the Bankruptcy Court.

### BASIS FOR RELIEF

**A.    Compromise of Controversies**

37.     Bankruptcy Rule 9019 authorizes bankruptcy courts to approve compromises and settlements that are "fair, equitable, and in the best interest of the estate." *In re Derosa-Grund*, 567 B.R. 773, 784 (Bankr. S.D. Tex. 2017); *see In re Wright*, 545 B.R. 541, 561 (Bankr. S.D. Tex. 2016).

38.     The Fifth Circuit in *Matter of Cajun Elec. Power Co-op., Inc.,* stated that bankruptcy judges must consider the following factors when evaluating a settlement: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise. 119 F.3d 349, 356 (5th Cir. 1997); *see also In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir. 1980). Furthermore, the Fifth Circuit has expanded upon the third factor by adding that courts must consider "[w]hether the compromise serves the paramount interest of creditors with proper deference to their reasonable views" and "[t]he extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion." *In re Roqumore,* 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008) (citing to  *Cajun Elec. Power Co-op.,* 119 F.3d at 356, and *In re Foster Mortgage Corp.,* 68 F.3d 914, 917 (5th Cir. 1995)).

39.     Although the trustee or debtor bears the burden of establishing that the balance of the factors supports a finding that the compromise is fair, equitable, and in the best interest of the estate, the trustee's or debtor's burden is not high. *See In re Derosa-Grund*, 567 B.R. at 785; *In re Roqumore,* 393 B.R. at 480. The trustee need only show that the decision to compromise or settle

falls within the range of reasonable litigation alternatives. *See In re Derosa-Grund*, 567 B.R. at 785; *In re Roqumore,* 393 B.R. at 480.

40.     Ultimately, the decision to approve a compromise lies within the discretion of the trial judge who need not "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement." *In re Wright*, 545 B.R. at 561 (citing *Cajun Elec. Power Co-op.,* 119 F.3d at 355).

41.     **Probability of success**. The likelihood of success in litigating the multitude of issues resolved by the Settlement Agreement is uncertain. The Settlement Agreement resolves a diverse set of complex issues including, but not limited to, K. Smith's entitlement to recover fees under section 506(b) of the Bankruptcy Code, the Trustee's ability to surcharge K. Smith's collateral pursuant to section 506(c) of the Bankruptcy Code, and K. Smith's entitlement to further fees and claims pursuant to applicable state law.

42.     Further, each of the Adversary Proceedings resolved by the Settlement Agreement is related to niche areas of state-specific law in Texas, Oklahoma, and Colorado, touching on matters of family, property, and corporate law, and the extent of the Divorce Court's jurisdiction. Under the circumstances, the probability of success in litigating the Adversary Proceedings is unclear at best. The Settlement Agreement provides an agreed form of resolution that benefits all parties while avoiding ongoing litigation on multiple specialized areas of the law.

43.     Finally, the Settlement Agreement provides for entry into the RSA, which will prevent further uncertainty in litigating these and other issues in the context of plan confirmation. Without having a defined path that paves the way to a resolution of these many open disputes, the probability of success in any of these related matters is unclear. Instead, the Settlement Agreement efficiently creates a predictable and agreeable resolution to all of these otherwise uncertain issues.

44.     **Complexity**. The complexity and likely duration of litigation all of the matters resolved in the Settlement Agreement pose expense, inconvenience, and delay. Each component resolved in the Settlement Agreement contains highly complex elements, all of which are more efficiently and properly resolved by and through the Settlement Agreement.

45.     <u>Asserted Claims</u>. K. Smith's Asserted Claims are complex, as they relate to unliquidated sanctions and fees K. Smith claims she is entitled to pursuant to applicable state family law. The Trustee believes that the Decree and cited statutes do not provide an adequate basis for recovery of attorneys' fees under section 506(b) of the Bankruptcy Code; however, the issues presented are novel and complex and the ultimate outcome of litigating entitlement to such fees is uncertain. Further, a portion of the Asserted Claims relates to unliquidated damages arising from alleged prepetition bad acts of D. Smith, raising additional issues governed by niche areas of Texas family law.

46.     <u>Adversary Proceedings</u>. The Adversary Proceedings each involve state-specific family, corporate, and property laws and further raise novel issues related to the extent of the Divorce Court's jurisdiction to appoint a receiver permitted to take personal and corporate actions outside the state of Texas. Each of the Adversary Proceedings relates to the pre-petition transfer and encumbrances of estate assets by Wright as court-appointed receiver for D. Smith. These contested transfers have resulted in title defects and complications that the Trustee has addressed to date through multiple motions pursuant to Bankruptcy Rule 7070 in the Turnover Litigation. Instead of wading through the complexities present in each Adversary Proceeding, the Settlement Agreement cleanly resolves the Adversary Proceedings through stipulated dismissals, saving the ongoing expense, delay, and inconvenience to the estates in resolving each matter individually through litigation.

47. <u>Distribution and Use of Cash Collateral</u>. The Settlement Agreement resolves further complex issues including the distribution of proceeds from the sale of the Bosque Property and future monetization of the Solar Property and OK Property, and the use by the Trustee of such cash collateral. Absent this resolution, the Trustee asserts he would be entitled to surcharge K. Smith's collateral for the payment of certain expenses and fees that have benefitted K. Smith. K. Smith contests the Trustee's ability to surcharge the collateral. The Settlement Agreement resolves the complex issue of implied consent to surcharge collateral in connection with the requested appointment of a chapter 11 trustee and avoids the related costs of litigating such issues.

48. **Interest of the Creditors**. The Settlement Agreement is in the best interest of the creditors, as it efficiently resolves the claims of the estates' largest secured creditor, K. Smith, minimizing ongoing administrative expenses and paving the way towards successful plan confirmation. Moreover, because the Settlement Agreement resolves all remaining Adversary Proceedings, it saves extensive time and expense of any potential litigation in resolving any outstanding disputes, leaving significantly more resources in the estate to fulfill the obligations due to the remaining creditors.

49. **Other factors weighing in favor of settlement**. The Settlement Agreement is a result of good faith negotiations amongst the Parties and the product of the Mediation. The Settlement Agreement prevents the Trustee from spending time and expense in litigating the Adversary Proceedings, and globally resolves the largest secured creditor's claims so that the Trustee can instead focus on monetizing estate assets such that the remaining creditors can be paid. Due to the overall benefit to the estates of the resolution of the Asserted Claims and Adversary Proceedings for both the Debtors and Caddoa, the Settlement Agreement is in the best interest of the estates.

B. **Approval of RSA**

(1)     *Entry into the RSA is a Sound Exercise of the Trustee' Business Judgment*

50.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). The Fifth Circuit has held that section 363 incorporates a "business judgment standard" for use, sale or lease of property of the estate outside of the ordinary course of business. *See In re Asarco, Inc. v. Elliot Mgmt. (In re Asarco, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) (adopting the "sound business justification" test to evaluate motions brought pursuant to section 363(b)); *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). Moreover, as the Fifth Circuit articulated in *Asarco*, the "business judgment standard in section 363 is flexible and encourages discretion." *Asarco*, 650 F.3d at 601 (citing *Cont'l Air Lines*, 780 F.2d at 1226).

51.     Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992). Furthermore, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). The protection of the business judgment rule continues to operate to shield a debtor's management

from judicial second-guessing. *See In re Integrated Res. Inc.*, 147 B.R. at 656; *In re Johns-Manville*, 60 B.R. at 615-16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions."). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under sections 363(b)(1) of the Bankruptcy Code.

52.     Further, section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

53.     The Trustee's decision to enter into the RSA is an exercise of his sound business judgment. First, the RSA is the product of extensive, arm's-length negotiations among the Trustee and K. Smith and is an integral part of the Settlement Agreement. Each party was represented by capable and sophisticated counsel. Second, entry into the RSA is necessary to ensure the support of the largest secured creditor. Obtaining this crucial support by obtaining approval of entry into the RSA will help the Trustee administer the estate and market the remaining assets.

54.     Courts have routinely approved relief similar to what is being requested in this Motion in connection with the RSA. *See, e.g., In re Energy & Exploration Partners, Inc.*, Case No. 15-44931 (RFN) (Bankr. N.D. Tex. Mar. 18, 2016 (order authorizing Trustee to implement terms of a postpetition restructuring support agreement*); In re Exide Techs.*, Case No. 13-11482 (KJC) (Bankr. D. Del. Feb. 4, 2015); *In re Milagro Holdings, LLC*, Case No. 15-11520 (Bankr. D. Del. Aug. 17, 2015); *In re Nebraska Book Co., Inc.*, Case No. 11-12005 (Bankr. D. Del. Mar. 23, 2012).

(2)     *The RSA Complies with Section 1125 of the Bankruptcy Code.*

55.     The Trustee submits that the RSA complies with the requirements of section 1125 of the Bankruptcy Code. Section 1125(b) provides that "[a]n acceptance or rejection of a plan may

not be solicited after the commencement of the case under this title . . . unless, at the time of or before such solicitation, there is transmitted . . . a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b).

56.     Courts have long recognized that the scope of impermissible postpetition "solicitation" under section 1125(b) should be interpreted narrowly, and that section 1125(b) should not be used to inhibit negotiations among the parties in interest. *See Century Glove, Inc. v. First American Bank of New York,* 860 F.2d 94, 101 (3d Cir. 1988); *see also In re Heritage Org., L.L.C.*, 376 B.R. 783, 791-93 (Bankr. N.D. Tex. 2007); *Trans World Airlines, Inc. v. Texaco, Inc. (In re Texaco, Inc.)*, 81 B.R. 813, 814-16 (Bankr. S.D.N.Y. 1988). Accordingly, courts have approved postpetition restructuring support agreements reached among Trustee and their creditors. *See, e.g., In re Tronox Inc.*, Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Dec. 23, 2009) [Docket No. 1030] (approving postpetition restructuring support agreement); *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. June 17, 2010) [Docket No. 3427] (same); *In re Owens Corning*, Case No. 00-03837 (JKF) (Bankr. D. Del. June 29, 2006) [Docket No. 18208] (same).

57.     Further, the RSA does not impermissibly lock-up K. Smith because it does not force K. Smith to vote in favor of the Plan absent adequate information.  K. Smith will be significantly involved in the Plan and Disclosure Statement formulation process and "cannot seriously be characterized as too ill-informed to act capably in their own interests." *In re Heritage Org., L.L.C.*, 376 B.R. at 794. K. Smith is a sophisticated party, represented by sophisticated counsel. Accordingly, K. Smith's entry into the RSA does not violate section 1125(b) of the Bankruptcy Code.

58.     The RSA is the product of extensive negotiations among the parties. The RSA does not dispense, or purport to dispense, with the solicitation and voting requirements of the

Bankruptcy Code. In particular, the RSA does not absolutely commit any of the parties thereto to support or vote for a particular plan of reorganization with no consideration of the disclosures set forth in an approved disclosure statement. The RSA thus contemplates that the Trustee would receive court approval for a disclosure statement with respect to the Plan, and that only thereafter, and after review of the approved Disclosure Statement and its attachments, would the parties to the RSA be obligated to exercise their chapter 11 voting rights.

59.    Given that the RSA is the product of the very plan negotiations that are so critical to the chapter 11 process and should, as a policy matter, be strongly encouraged, the Trustee submits that entry into the RSA does not constitute a "solicitation" of the votes of K. Smith that violates either the letter or the spirit of section 1125(b) of the Bankruptcy Code.

**C.    Request for Relief Pursuant to Bankruptcy Rules 6004(h)**

60.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property…is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). In light of the Trustee's desire to continue to efficiently move these cases towards resolution, including an effort to timely disburse sale proceeds to K. Smith on account of her Allowed Secured Claim, the agreements described herein must be consummated as soon as practicable. Accordingly, the Trustee requests that the order granting this Motion be effective immediately upon entry of the order and that the 14-day stay period under Bankruptcy Rule 6004(h) be waived.

<div align="center">

**NO PRIOR REQUEST**

</div>

61.    No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: May 27, 2022
Austin, Texas

<div style="margin-left:40%">

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

By: */s/ Morris D. Weiss*
    Morris D. Weiss
    Texas Bar No. 21110850
    Courtney K. Stone
    Texas Bar No. 24093208
    William R. "Trip" Nix
    Texas Bar No. 24092902
    100 Congress Ave., Suite 1800
    Austin, Texas 78701
    Telephone:  (512) 685-6400
    Facsimile:  (512) 685-6417
    Email:     morris.weiss@wallerlaw.com
                courtney.stone@wallerlaw.com
                trip.nix@wallerlaw.com

COUNSEL TO GREGORY S. MILLIGAN, CHAPTER 11 TRUSTEE

</div>

<div style="text-align:center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that the above and foregoing document has been served upon all parties on the attached service list electronically via the Court's ECF system or by first class mail on May 27, 2022.

<div style="margin-left:40%">

*/s/ Morris D. Weiss*
Morris D. Weiss

</div>

## LIMITED SERVICE LIST

**Debtors (via mail and email)**
Daryl Greg Smith
Canadian River Ranch, LLC
5826 Cooksey Lane
Waco, TX 76706
Dsmith1114@gmail.com

**Former Counsel to Debtors (via ECF)**
Thomas Daniel Berghman
Davor Rukavina
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Ste. 3800
Dallas, TX 75201

**United States Trustee (via ECF)**
Gary W. Wright & Shane P. Tobin
Office of the United States Trustee
903 San Jacinto Blvd., Room 230
Austin, TX 78701

**Chapter 11 Trustee (via ECF)**
Gregory S. Milligan
3800 N. Lamar Blvd., Suite 200
Austin, Texas 78756

**Secured Creditors**
Farm Credit of Western Oklahoma
513 S. Mission St.
Anadarko, OK 73005

Farm Credit Of Western Oklahoma, ACA
Brian McEntire, VP/Branch Manager Tuttle
PO Box 790, 4955 Farm Credit Dr.
Tuttle, OK 73089

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

Karen Annette Smith
700 Nettleton Dr.
Southlake, TX 76092

**20 Largest Unsecured Creditors (Combined)**
Bank of America
Attn: Bankruptcy Department
475 Cross Point Pkwy
P. O. Box 9000
Getzville, NY 14068

Boomer State Outdoors, LLC
12384 West 81st Street South
Sapulpa, OK 74066-8141

Catherine Aileen Smith
5826 Cooksey Lane
Waco, TX 76706

Central TX Radiological Associates, PA
3206 4th Street
Longview, TX 75695

City of Fort Worth
10000 Throckmorton Street
Fort Worth, TX 76102

Discover Bank
P. O. Box 385908
Minneapolis, MN 55438-5908

Dolcefino Consulting
3701 Kirby Dr., Suite 560
Houston, TX 77098

Griffith, Jay & Michel
2200 Forest Park Blvd.
Ft. Worth, TX 76110

Hanszen Laporte, LLP
14201 Memorial Drive
Houston, TX 77079

Hockley County Cattle Company, Inc.
P.O. Box 825
Levelland, TX 79336

Jessica L. Brown, PLLC
9450 SW Gemini Dr., #99088
Beaverton, OR 97008-7105

Law Offices of Elizabeth Parmer
309 W. 7th St., Ste 900
Ft. Worth, TX 76102

Lazy K Cattle Company, LLC
2956 Via Esperanza
Edmond, OK 73013

Lazy K. Cattle Company, LLC
Dylan Charles Edward
Rosell Law Group LLP
101 North Robinson Ave., Suite 700
Oklahoma City, OK 73102

North Texas Tollway Authority
PO Box 660244
Dallas, TX 75266

Providence Health Network
Frost-Arnett Company
PO Box 198988
Nashville, TN 37219

Stipe Law Firm
343 E Carl Albert Pkwy
Mcalester, OK 74501

Tekell & Tekell, LLP
400 Austin Avenue, Suite 1000
Waco, TX 76701

T-Mobile
Credence Resource Management LLC
17000 Dallas Pkwy., Ste 204
Dallas, TX 75248

**Parties Requesting Service
(via ECF)**
Eboney Cobb
Perdue, Brandon, Fielder, Collins & Mott
500 E. Border Street, Suite 640
Arlington, TX 76010

Mark Cochran
c/o Mark B. French
1901 Central Drive, Ste. 704
Bedford, TX 76021

Edwin Paul Keiffer
Rochelle McCullough, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201

Jason M. Rudd and Scott Lawrence
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 500
Dallas, TX 75204

Tara LeDay
McCreary, Veselka, Bragg & Allen, P.C.
P. O. Box 1269
Round Rock, TX 78680

Griffith, Jay & Michel, LLP
c/o Mark J. Petrocchi
2200 Forest Park Blvd.
Fort Worth, TX 76110

Steve Stasio
Stasio & Stasio, P.C.
303 Main Street, Suite 302
Fort Worth, Texas 76102

Marc W. Taubenfeld
McGuire, Craddock & Strother, P.C.
500 N. Akard Street, Suite 2200
Dallas, TX 75201

David G. Tekell
Tekell & Tekell, LLP
400 Austin Avenue, Suite 1000
Waco, TX 76701

Ruben Rene Escobedo
6800 Park Ten Blvd.
Suite 135-E
San Antonio, TX 78213

J. Michael McBride, Esq.
J. Michael McBride, P.C.
6420 Southwest Blvd., Ste. 112
Fort Worth, TX 76109

Ray Battaglia
Law Offices of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX 78218

William R. Davis, Jr.
David S. Gragg
Langley & Banack, Inc.
745 E. Mulberry, Suite 700
San Antonio, TX 78212

David Wise
Law Offices of David Wise
P.O. Box 1102
Friendswood, TX 77549

# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement (along with all exhibits, collectively, this "**Agreement**") is made and entered into as of May 24, 2022, by and among (a) Gregory S. Milligan, in his capacities as (i) Chapter 11 Trustee (the "**Trustee**") for the estates of Daryl Greg Smith ("**D. Smith**") and Canadian River Ranch, LLC ("**CRR**" and together with Smith, the "**Debtors**")), and (ii) Manager of Caddoa Creek Ranch, LLC ("**Caddoa**"), and (b) Karen Annette Smith ("**K. Smith**").  The Trustee, K. Smith and Caddoa are hereinafter referred to as the "**Parties**".

## RECITALS

**WHEREAS**, K. Smith sued D. Smith for divorce in the 325th Judicial District Court of Tarrant County (the "**Divorce Court**") on October 5, 2015, commencing Cause No. 325-584465-15 (the "**Divorce Suit**"), and D. Smith counter-sued K. Smith for divorce on April 8, 2016;

**WHEREAS**, on November 27, 2019, the Divorce Court entered the Final Decree of Divorce (the "**Decree**"), providing for, among other things, the allocation and means of distribution of the D. Smith and K. Smith marital estate, including a judgment against D. Smith in the amount of $8,500,000 secured by various deeds of trust and mortgages (the "**Judgment**"), representing D. Smith's obligation to pay to K. Smith her portion of the marital estate;

**WHEREAS**, D. Smith had appealed the Decree, as well as sought mandamus regarding the Decree, and filed a petition for review with the Texas Supreme Court which on account of Texas Rules of Appellate Procedure Rule 8.2 remains stayed (the "**State Court Petition for Review**" and together with the Divorce Suit, the "**State Court Matters**");

**WHEREAS**, on August 26, 2020, the Debtors and Darren Keith Reed ("**Reed**") brought suit against K. Smith and Stanley Wright ("**Wright**") in the District Court of McIntosh County, Oklahoma, to, among other things, quiet title to property of the marital estate that had been transferred by Wright, as court-appointed receiver for D. Smith, pursuant to the Decree, commencing Case No. CV-2020-83 (the "**OK Litigation**");

**WHEREAS**, on December 17, 2020, Caddoa brought suit against K. Smith and Wright in the District Court of Bent County, Colorado, to, among other things, quiet title to certain mineral interests that had been transferred by Wright, as court-appointed receiver for D. Smith, pursuant to the Decree, commencing Case No. 2020-CV-30014 (the "**CO Litigation**");

**WHEREAS**, on April 9, 2021, each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of Texas (the "**Bankruptcy Court**") commencing bankruptcy case nos. 21-60162-RBK-11 and 21-60163-RBK-11 (together, the "**Bankruptcy Cases**");

**WHEREAS**, on May 7, 2021, K. Smith filed her *Motion to Appoint a Chapter 11 Trustee,* and on June 23, 2021 after notice and a contested hearing, the Bankruptcy Court granted such motion;

**WHEREAS**, on June 9, 2021, the Debtors filed their *Original Complaint for Turnover, Avoidance, and Declaratory Relief* against K. Smith and Wright in the Bankruptcy Court, commencing Adversary Proceeding No. 21-06007 (the "**Turnover Litigation**"), demanding, among other things, declaratory relief and turnover related to title defects in property of the estates caused by certain transfers made by Wright, as court-appointed receiver for D. Smith, pursuant to the Decree;

**WHEREAS**, on June 29, 2021, the United States Trustee requested appointment of the Trustee in the Bankruptcy Cases, and the Bankruptcy Court approved such appointment;

**WHEREAS**, on or about July 9, 2021, the Trustee filed his *Trustee's Expedited Motion for Entry of Order: (I) Authorizing Assumption of Solar Lease; (II) Authorizing Entry into Lease Amendment; (III) Providing Protections for Lessee; and (IV) Authorizing the Chapter 11 Trustee to Execute Certain Documents Pursuant to Federal Rule of Civil Procedure 70, Made Applicable to this Proceeding through Federal Rule of Bankruptcy Procedure 7070* in order to request approval of the execution and delivery of corrective instruments primarily related to the approximately 1,200-acre parcel in Bosque County related to the solar lease that was the subject of the motion (the "**Solar Property**"), and on July 15, 2021, the Bankruptcy Court approved such motion;

**WHEREAS**, on August 6, 2021, K. Smith filed Proofs of Claim Nos. 15 and 4 in the D. Smith and CRR Bankruptcy Cases, respectively (together, as amended, the "**Asserted Claims**");

**WHEREAS**, on August 27, 2021, the Trustee filed his *Motion of Gregory S. Milligan, Chapter 11 Trustee, Seeking Approval of Second Amendment to Operating Agreement of Caddoa Creek Ranch, LLC*, seeking authorization to execute the Second Amendment to the Caddoa Operating Agreement, appointing the Trustee as manager of Caddoa (the "**Caddoa Motion**");

**WHEREAS**, following removal of the OK Litigation to the United States Bankruptcy Court for the Eastern District of Oklahoma, on October 6, 2021, the OK Litigation was transferred to the Bankruptcy Court, commencing Adversary Proceeding No. 21-06012 (the "**Removed OK Litigation**");

**WHEREAS**, after a hearing held on November 15, 2021, the Bankruptcy Court entered its *Order Regarding Limited Objection to Debtor's Claimed Exemptions*, sustaining K. Smith's objection to D. Smith's claimed exemption of his 90% interest in Caddoa, holding that such interest exceeds the amount of the applicable statutory limit under 11 U.S.C. §522(d)(5), also known as the "wild card exemption," and ordered that D. Smith was allowed an exemption as to the value of his 90% interest in Caddoa in the amount of $13,900 (the "**Wildcard Amount**"), but his 90% interest in Caddoa remains property of his estate[1];

**WHEREAS**, on November 17, 2021, after the Bankruptcy Court concluded that D. Smith's interest in Caddoa is not exempt and remains property of the estate, the Bankruptcy Court granted the Caddoa Motion, and the Trustee was appointed Manager of Caddoa (the "**Manager**");

---

[1] D. Smith has filed a Notice of Appeal regarding this order, commencing Case No. 21-cv-01244-ADA, in the United States District Court for the Western District of Texas, Waco Division (the "**Appeal**"). The Appeal has been fully briefed and is currently pending before the United States District Court.

**WHEREAS**, following removal of the CO Litigation to the United States Bankruptcy Court for the District of Colorado, on December 13, 2021, the CO Litigation was transferred to the Bankruptcy Court, commencing Adversary Proceeding No. 21-06016[2] (the "**Removed CO Litigation**");

**WHEREAS**, K. Smith has asserted that the Removed OK Litigation and Removed CO Litigation are essentially collateral attacks of the Decree and Judgment by D. Smith;

**WHEREAS**, on April 25, 2022, the Bankruptcy Court approved the sale of D. Smith's undivided interest in approximately 913 acres of real property located in Bosque County, Texas (the "**Bosque Property**");

**WHEREAS**, the Trustee is currently marketing for sale the estates' interests in approximately 11,000 acres of real property located in McIntosh County, Oklahoma (the "**OK Property**");

**WHEREAS**, the Parties engaged in a mediation on May 24, 2022, before Bankruptcy Court Chief Judge Craig Gargotta with respect to the foregoing Adversary Proceedings, Asserted Claims, and related matters (the "**Mediation**"); and

**WHEREAS**, as a result of the Mediation, and in order to avoid the costs, delays and uncertainties of litigation, the Parties desire to fully and finally resolve the claims and disputes between and among them that were asserted or could have been asserted in the Removed OK Litigation, the Removed CO Litigation, and the Asserted Claims, all on the terms and conditions set forth in this Agreement.

## <u>AGREEMENT</u>

**NOW, THEREFORE,** in consideration of the promises, agreements, covenants, representations, warranties and obligations contained herein, and for good and valuable consideration, the adequacy and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.  <u>Recitals</u>.  The above recitals are hereby incorporated in and made a part of this Agreement.

2.  <u>Bankruptcy Court Approval</u>.

    a.  <u>Motion for Approval</u>.  As promptly as practicable after this Agreement has been fully executed, the Trustee shall file a motion with the Bankruptcy Court, in form and substance reasonably acceptable to all Parties, for approval of this Agreement (including all exhibits, which are an integral part hereof) by the Bankruptcy Court.

    b.  <u>Approval Date</u>.  The Parties acknowledge that (a) this Agreement is subject to and contingent upon approval of the Bankruptcy Court, (b) this Agreement shall not be effective, nor shall any Party have any obligations hereunder, unless and until the Bankruptcy Court enters an order approving this Agreement (the "**Approval**

---

[2] The Turnover Litigation, the Removed OK Litigation and the Removed CO Litigation are collectively referred to as the "**Adversary Proceedings**".

Order"), and (c) the Parties shall take no action inconsistent with this Agreement and shall support entry of the Approval Order. The "**Approval Order Date**" shall be the first business day after the date on which (a) the Bankruptcy Court shall have entered an order authorizing and approving this Agreement, in form and substance reasonably acceptable to all Parties, and (b) such order shall have become immediately effective pursuant to Bankruptcy Rule 6004(h).

3.     <u>Prepetition Claim Documents</u>.  The Trustee agrees and stipulates that the Allowed Claim (as defined below) is evidenced by (a) the Decree (along with all incorporated prior orders), (b) that certain Promissory Note dated February 7, 2020 by Wright, as court-appointed receiver for D. Smith, in favor of K. Smith, (c) the *Temporary Order Pending Appeal* entered by the Divorce Court on July 31, 2020, and (d) the *Order Sustaining Challenge to Net Worth* entered by the Divorce Court on December 11, 2020 (collectively, the "**Prepetition Claim Documents**").

The Trustee further agrees and stipulates that the Allowed Secured Claim (as defined below) evidenced by the Prepetition Claim Documents is secured by perfected liens and security interests in the following property owned by the Debtors on the Petition Date: (a) the Bosque Property, (b) the OK Property, (c) the Solar Property, and (d) certain mineral interests in Bent County, Colorado, each as more particularly and fully described in (x) that certain *Deed of Trust, Security Agreement, Assignment of Rents and Financing Statement* dated February 7, 2020 by Wright, as court-appointed receiver for D. Smith, in favor of K. Smith, (y) that certain *Mortgage (with Power of Sale), Assignment of Leases and Rents and Security Agreement* dated February 7, 2020 by Wright, as court-appointed receiver for D. Smith, in favor of K. Smith, and (z) that certain *Deed of Trust* dated February 7, 2020 by Wright, as court-appointed receiver for D. Smith, in favor of K. Smith (collectively, the "**Mortgages**").

4.     <u>Allowance of Claims</u>.  The Asserted Claims shall be allowed as follows (the following allowed claims, the "**Allowed Claim**"):

      a.     <u>Prepetition Claims</u>.

          i.     <u>Judgment, Prepetition Interest, and Certain Fees</u>: Allowed in the amount of $8,646,719.64 in both Bankruptcy Cases (the "**Allowed Secured Claim**"), representing a reduction of $450,000 from the asserted claim.

          ii.     <u>Priority Domestic Support Obligations</u>:

               (1)     Allowed in the amount of $91,956.53 in the D. Smith case, with section 507(a)(1) unsecured priority;

               (2)     Asserted $235,914.24 claim in the D. Smith case for pre-petition attorneys' fees allowed in the amount of $200,000, with $100,000 of such claim entitled to section 507(a)(1) priority, with the remaining $100,000 allowed as a general unsecured claim.

b.    <u>Postpetition Claims</u>.

    i.   <u>Priority Domestic Support Obligations</u>: Allowed as a section 503(b) administrative expense in the amount of $67,523.04, which accrues hereafter at a rate of $4,608.81 per month starting in June, 2022, plus medical expenses and other reimbursement obligations, until aspects of the support obligations are resolved by virtue of the terms detailed in the Decree or the *Temporary Order Pending Appeal* (which remains in place until terminated).

    ii.   <u>Postpetition Interest</u>: 2% simple interest on the Allowed Secured Claim

    iii.   <u>506(b) Attorneys' Fees</u>:  K. Smith agrees to not assert entitlement to recovery of any attorneys' fees pursuant to section 506(b) of the Bankruptcy Code in the Bankruptcy Cases.

5.    <u>Adversary Proceedings</u>.

a.    <u>Removed CO Litigation</u>.

    i.   K. Smith shall pay Caddoa $100,000, to be funded from proceeds received by K. Smith from the Bosque Property sale; and

    ii.   The parties to the Removed CO Litigation shall execute and deliver to the Trustee a stipulation and proposed agreed order of dismissal, in a form reasonably agreed to amongst the parties, dismissing the Removed CO Litigation with prejudice.  The Trustee, as Manager of Caddoa, agrees he will file, or cause to be filed, such stipulation and proposed agreed order within three (3) business days following entry of the Approval Order, provided that the effectiveness of the Approval Order has not been stayed for any reason.

    iii.   <u>Dissolution of Caddoa</u>.  The Trustee, in his capacity as Manager of Caddoa, shall take steps to dissolve Caddoa pursuant to Colorado state law.  Caddoa's funds, including the $100,000 payment provided in section 5(a)(i) above, shall be used to pay Caddoa's creditors and fund the dissolution of the entity, with any remaining funds being distributed to the members of Caddoa in accordance with applicable state law.  Such funds distributed to the D. Smith estate on account of his 90% interest in Caddoa shall be unencumbered by any liens or interests of K. Smith and shall be used to fund a reserve for D. Smith's asserted exemption up to the Wildcard Amount.

b.    <u>Removed OK Litigation</u>.

    i.   K. Smith shall pay the D. Smith estate $50,000, to be funded from proceeds received by K. Smith from her proceeds of the Bosque Waterfall; and

    ii.   The parties to the Removed OK Litigation shall execute and deliver to the Trustee a stipulation and proposed agreed order of dismissal, in a form reasonably agreed to amongst the parties, dismissing the Removed OK

Litigation with prejudice.  The Trustee agrees he will file, or cause to be filed, such stipulation and proposed agreed order within three (3) business days following entry of the Approval Order, provided that the effectiveness of the Approval Order has not been stayed for any reason.

c.    Turnover Litigation.  The parties to the Turnover Litigation shall execute and deliver to the Trustee a stipulation and proposed agreed order of dismissal, in a form reasonably agreed to amongst the parties, dismissing the Turnover Litigation with prejudice.  The Trustee shall hold in trust and shall refrain from filing such stipulation and proposed agreed order of dismissal with the Bankruptcy Court until the date on which the Trustee, in his sole discretion, determines that the Turnover Litigation is no longer necessary for purposes of implementing Bankruptcy Rule 7070 with respect to issuance of corrective deeds and related documents or otherwise.  The Parties shall thereafter take such actions as may be reasonably necessary to ensure entry of the agreed order of dismissal.

6.    State Court Matters.

a.    Divorce Suit.  The Divorce Suit was removed to the bankruptcy court for the Northern District of Texas, Dallas Division by D. Smith prior to the appointment of the Trustee in the Bankruptcy Cases. After the Trustee's appointment, the removed Divorce Suit was transferred to the Bankruptcy Court (Adversary Proceeding No. 21-06013).   On April 12, 2022, the Divorce Suit was remanded back to the Divorce Court.  The Divorce Suit, as it relates to property of the estate, remains subject to the automatic stay. The Trustee will agree to termination of the automatic stay to allow K. Smith or D. Smith to exercise his or her remedies provided that no relief may be sought  from the Divorce Court that conflicts with any of the Bankruptcy Court's orders, including but not limited to any order confirming any plan or the orders approving this Agreement or the RSA.

b.    State Court Petition for Review.  The Trustee will agree with regard to the Texas Supreme Court TRAPP 8.2 stay to termination of the automatic stay to allow K. Smith or D. Smith to exercise his or her remedies provided that no relief may be sought  that conflicts with any of the Bankruptcy Court's orders, including but not limited to any order confirming any plan or the orders approving this Agreement or the RSA.

7.    Restructuring Support Agreement.   Contemporaneously with the execution of this Agreement, the Trustee and K. Smith shall execute and deliver to the Trustee the Restructuring Support Agreement (the "**RSA**"), in the form attached hereto as **Exhibit A**.  The Parties shall thereafter take such actions as may be reasonably necessary to obtain approval of the RSA by the Bankruptcy Court in connection with the approval of this Agreement as provided in Section 2 hereof.

8.      <u>Carve-Outs and Disbursement of Sale Proceeds</u>.

    a.      <u>Bosque Property</u>.  The proceeds obtained by the D. Smith estate in connection with the sale of the estate's interests in the Bosque Property shall be disbursed as set forth in the waterfall attached hereto as **Exhibit B** (the "**Bosque Waterfall**").

    b.      <u>OK Property and Solar Property</u>.  The proceeds obtained by the Debtors' estates in connection with the monetization of the estates' interests in the OK Property and Solar Property shall be disbursed as set forth in the waterfall on **Exhibit B** (the "**OK and Solar Waterfall**").

9.      <u>506(c) Surcharge/Cash Collateral</u>.  K. Smith consents to the Trustee's use of cash collateral consistent with this Agreement, and covenants to consider in good faith the approval of further consensual uses of cash collateral not set forth herein.

10.      <u>Monetization of Debtors' Remaining Assets</u>.  K. Smith agrees to defer to the Trustee's reasonable business judgment with respect to the timing of the monetization of the Debtors' remaining assets, including the OK Property and the Solar Property.

11.      <u>Releases</u>.

    a.      <u>Release by Debtors and Caddoa of K. Smith</u>.  Effective from and after the Approval Order Date, and except as expressly provided in this Agreement, the Trustee, for himself and on behalf of (a) the Debtors and (b) Caddoa, and his and their respective attorneys, accountants, financial advisors, predecessors, successors and assigns (collectively, the "**Debtor Releasors**"), hereby waives and releases any and all claims and rights that any of the Debtor Releasors have or may have against K. Smith and her attorneys, accountants, financial advisors, predecessors, successors and assigns (collectively, the "**KAS Releasees**"), of whatever kind or nature, at law or in equity, and whether direct or indirect, liquidated or unliquidated, matured or unmatured, contingent or noncontingent, known or unknown, suspected or unsuspected, including, but not limited to, all claims and rights of any of the Debtor Releasors that were asserted or could have been asserted in or in connection with the Adversary Proceedings, and any claims that were or could have been asserted in the Bankruptcy Cases.  To avoid confusion, the foregoing is intended to be a broad and general release extending to the entire relationship between each of the Trustee and Debtor Releasors, on the one hand, and each of the KAS Releasees, on the other hand; <u>provided</u>, <u>however</u>, that notwithstanding anything herein to the contrary, the Trustee and Debtor Releasors expressly do not waive or release any claims or rights arising from a breach of this Agreement or the RSA.

    b.      <u>Release by K. Smith of Debtors and Caddoa</u>.  Effective from and after the Approval Order Date, and except as expressly provided in this Agreement, K. Smith and her attorneys, accountants, financial advisors, predecessors, successors and assigns (collectively, the "**KAS Releasors**"), hereby waive and release any and all claims and rights that any of the KAS Releasors have or may have against the Trustee, Caddoa, or any of the Debtors, or any of their respective attorneys, accountants, financial advisors, predecessors, successors and assigns (collectively, the "**Debtor**

Releasees"), of whatever kind or nature, at law or in equity, and whether direct or indirect, liquidated or unliquidated, matured or unmatured, contingent or noncontingent, known or unknown, suspected or unsuspected, including but not limited to, all claims and rights of any of the KAS Releasors that were asserted or could have been asserted in or in connection with the Adversary Proceedings and any claims that were or could have been asserted in the Bankruptcy Cases. To avoid confusion, the foregoing is intended to be a broad and general release extending to the entire relationship between each of the KAS Releasors, on the one hand, and each of the Debtor Releasees, on the other hand; provided, however, that notwithstanding anything herein to the contrary, the KAS Releasors expressly do not waive or release any claims or rights arising from a breach of this Agreement.

The claims and rights that are waived and released in this Section 11 are hereinafter referred to as the "**Released Claims**." For the avoidance of doubt, the Released Claims do not include (i) claims any Party has or may assert against Reed and/or Wright, nor (ii) claims Reed and/or Wright may have or assert against any Party. As set forth in the RSA, the Plan shall include releases, exculpations and injunctions.

12.    Cooperation. Each Party shall confer with the other Parties prior to filing or submission of (i) the motion for approval of this Agreement and proposed order, (ii) the stipulations and proposed agreed orders of dismissal dismissing the Adversary Proceedings with prejudice, and (iii) any other document that any Party may desire to submit to the Bankruptcy Court in connection with any of the foregoing. The Parties agree to cooperate in good faith and to take any further actions reasonably necessary to effectuate this Agreement.

13.    Representations and Warranties. Each Party hereby represents and warrants that: (i) it is the sole and exclusive lawful owner of its respective Released Claims; (ii) it has not made any assignment or transfer, in whole or in part, including, but not limited to, assignment or transfer by subrogation or by operation of law of its respective Released Claims; (iii) subject to Bankruptcy Court approval, it has full power and authority to enter into this Agreement; (iv) it knows of no person or entity that intends to assert a claim by, through, under, or on behalf of such Party; (v) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Agreement; (vi) it is represented and has been advised by counsel in connection with this Agreement, which such Party executes wholly voluntarily and of its own choice, volition, judgment, belief and knowledge, after consultation with such counsel and not under coercion or duress; (vii) it has made its own investigation of the facts and is relying solely upon its own knowledge and the advice of its counsel; and (viii) it knowingly waives any claim that this Agreement was induced by any misrepresentation or nondisclosure and any right to rescind or avoid this Agreement based upon presently existing facts, known or unknown.

14.    No Admissions. By entering into this Agreement, the Parties do not admit any liability whatsoever and expressly deny any and all such liability. Nothing in this Agreement shall be construed as any admission of fault by any of the Parties with respect to any of the allegations made by any Party.

15.    Opportunity To Cure. It is agreed that in the event of a claimed default under this Agreement, the non-defaulting Party shall give written notice of the alleged default and the

defaulting Party shall cure the default within five (5) business days of such notice.  If the alleged default is cured within that time frame, then there shall be no breach of this Agreement.

16. <u>Notices</u>.  Any notice, demand, or communication required, permitted, or desired to be given hereunder shall be deemed effectively given when delivered by any of the following means: electronic mail at the addresses listed below, personally delivered with signed receipt, by overnight courier with signed receipt, or by registered United States mail, with postage prepaid and return receipt requested, addressed to the addresses below or to such other address as any Party may designate, with copies thereof to the respective counsel thereof as notified by such Party.

    <u>For the Trustee:</u>

        Gregory Milligan, Chapter 11 Trustee
        8911 N. of Capital Texas Highway, Suite 2120
        Austin, Texas 78759
        Email: gmilligan@harneypartners.com

        with a copy to:

        Waller Lansden Dortch & Davis, LLP
        100 Congress Avenue, 18th Floor
        Austin, Texas 78701
        Attention:  Morris Weiss
        Email: morris.weiss@wallerlaw.com

    <u>For K. Smith:</u>

        Karen Annette Smith
        700 Nettleton Dr.
        Southlake, TX 76092
        Email: karen.smith.2@gmail.com

        with a copy to:

        Rochelle McCullough, L.L.P.
        325 North Saint Paul Street, Suite 4500
        Dallas, Texas 75201
        Attention:  E. P. Keiffer
        Email: pkeiffer@romclaw.com

17. <u>Joint Participation</u>.  The Parties participated jointly in the negotiation and preparation of this Agreement, and each Party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement.  Accordingly, it is agreed that no rule of construction shall apply against any Party or in favor of any Party.  This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one Party and in favor of another Party.

18.     Waiver.  No claim or right arising out of a breach or default under this Agreement can be discharged by a waiver of that claim or right unless the waiver is in writing signed by the Party to be bound by such waiver.  A waiver by any Party of a breach or default by another Party of any provision of this Agreement shall not be deemed a waiver of future compliance with such provision, and such provision shall remain in full force and effect.

19.     Severability.  Should any of the provisions of this Agreement be rendered invalid by a court or government agency of competent jurisdiction, it is agreed that this shall not in any way or manner affect the enforceability of the other provisions of this Agreement which shall remain in full force and effect.

20.     Section Headings.  Section headings in this Agreement are included for convenience of reference only and shall not be a part of this Agreement for any other purpose.

21.     Entire Agreement.  The Parties each represent and warrant that no promise or inducement has been offered or made except as set forth in this Agreement and that the consideration stated is the sole consideration for this Agreement.  This Agreement constitutes the complete agreement and understanding among the Parties as to the subject matter hereof, and supersedes any and all prior agreements, understandings, promises, or inducements, no matter the form, concerning its subject matter.

22.     Modifications.  No modifications, amendments, or changes to this Agreement shall be binding or enforceable unless reduced to writing and signed by all of the Parties.

23.     Counterparts; Facsimile Signatures.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same Agreement.  This Agreement may be executed and delivered by facsimile or electronic scan, and upon such delivery, the facsimile or electronic scan signature shall be deemed to have the same effect as if the original signature had been delivered to the other Parties.

24.     Attorneys' Fees and Costs.  The Parties understand and agree that they are each responsible for payment of their respective costs and attorneys' fees incurred in connection with the negotiation, execution and implementation of this Agreement such that they shall not seek indemnification or any other form of reimbursement from any other Party for any such costs or fees.

25.     Successors.  This Agreement shall be binding upon, enforceable by and inure to the benefit of each of the Parties' respective successors, heirs and assigns.

26.     Inconsistencies between Settlement Agreement and RSA.  To the extent of any inconsistency between this Settlement Agreement and the RSA, this Settlement Agreement shall control.

27.     Bankruptcy Court Jurisdiction.  Until the closing of the Bankruptcy Cases, the Bankruptcy Court shall have sole and exclusive jurisdiction to hear and determine any dispute arising under this Agreement.

**IN WITNESS WHEREOF,** the Parties have entered into this Agreement as of the date first written above.

Gregory Milligan, solely in his capacity as Chapter 11 Trustee for Daryl Greg Smith and Canadian River Ranch, LLC

Date: May 25, 2022

Gregory Milligan, solely in his capacity as Manager of Caddoa Creek Ranch, LLC

Date: May 25, 2022

Karen Annette Smith

Date: 5-25-2022

## **EXHIBITS**

Exhibit A: Restructuring Support Agreement
Exhibit B: Bosque Waterfall and OK and Solar Waterfall

## Exhibit A

**Restructuring Support Agreement**

## RESTRUCTURING SUPPORT AGREEMENT

This RESTRUCTURING SUPPORT AGREEMENT (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof, this "**Agreement**"), dated as of May 24, 2022, is entered into by and among (i) Gregory S. Milligan (the "**Trustee**"), as chapter 11 trustee for Daryl Greg Smith ("**D. Smith**") and Canadian River Ranch, LLC ("**CRR**"; and collectively with D. Smith, the "**Debtors**"), and (ii) Karen Annette Smith ("**K. Smith**"). The Trustee and K. Smith are referred to herein as the "**Parties**" and individually as a "**Party**". Notwithstanding anything herein to the contrary (but subject to the terms of <u>Section 10</u> herein), this Agreement shall not be binding upon the Debtors until the Effective Date (as defined herein).

## PRELIMINARY STATEMENTS

**WHEREAS**, the Debtors are debtors in chapter 11 cases pending in the United States Bankruptcy Court for the Western District of Texas, Waco Division (the "**Bankruptcy Court**"), Case No. 21-60162[1], *In re Daryl Greg Smith* (the "**Smith Case**") and Case No. 21-60163, *In re Canadian River Ranch, LLC* (the "**CRR Case**"; and collectively with the Smith Case, the "**Bankruptcy Cases**"). Each of the Bankruptcy Cases was filed on April 9, 2021 (the "**Petition Date**");

**WHEREAS**, K. Smith filed a secured proof of claim in the Smith Case on August 6, 2021, in the total amount of $9,424,590.41 on the basis of a divorce court judgment and related fees/obligations, including a priority claim amount of $91,956.53 for domestic support obligations. On August 27, 2021, K. Smith filed an amended claim in the Smith Case for the same total amount, but with a priority claim amount of $335,762.12. K. Smith also filed a secured proof of claim in the CRR Case on August 6, 2021, but in the total amount of $9,096,719.64, with no priority claim amount (collectively, the "**Asserted Claims**");

**WHEREAS**, K. Smith asserts a security interest in certain real estate in Texas, including a 913-acre tract (the "**Bosque Property**") and an adjacent tract currently subject to a solar lease (the "**Solar Property**"), and Oklahoma (the "**OK Property**") that are each 90% owned by D. Smith, as well as a security interest in certain mineral interests in Colorado (collectively, the "**Properties**");

**WHEREAS**, prior to the date hereof, the Parties engaged in good faith, arm's length negotiations, including a mediation on May 24, 2022, before Chief Bankruptcy Judge Craig Gargotta with respect to certain adversary proceedings in which the Parties are involved, the Asserted Claims, and related matters (the "**Mediation**"), that have led to (i) the Settlement Agreement (as defined herein), and (ii) an agreement regarding the material terms of a restructuring of the Debtors that the Parties now desire to implement (the "**Restructuring**") in accordance with and subject to the terms and conditions set forth in this Agreement;

**WHEREAS**, the Restructuring will be implemented through (i) the terms of this Agreement and the Settlement Agreement, and (ii) the solicitation, confirmation and consummation of the Plan (as defined herein); and

---

[1] The Bankruptcy Cases are jointly administered under Case No. 21-60162.

**WHEREAS**, the Parties desire to express to each other their mutual support and commitment regarding the Restructuring on the terms and conditions contained in this Agreement and the Settlement Agreement.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## 1. Restructuring.

The Restructuring will be implemented through the monetization of the Properties in a manner as reasonably determined by the Trustee.

## 2. Certain Definitions.

As used in this Agreement, the following terms have the meanings set forth below:

2.1. "**9019 Order**" means an order of the Bankruptcy Court approving the Settlement Agreement.

2.2. "**Allowed KAS Claim**" means the allowed claim of K. Smith as set forth in the Settlement Agreement.

2.3. "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

2.4. "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code, (ii) the applicable Local Rules of Bankruptcy Practice and Procedure for the Bankruptcy Court and (iii) any general or chamber rules, or standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, and each of the foregoing, together with all amendments and modifications thereto that are subsequently made and as applicable to the Bankruptcy Cases or proceedings therein, as the case may be.

2.5. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order (and any exhibits, appendices and related documents) shall be materially consistent with this Agreement and the Settlement Agreement and otherwise in form and substance reasonably acceptable to the Trustee and K. Smith.

2.6. "**Disclosure Statement**" means the disclosure statement, including any exhibits, appendices and related documents, for the Plan, as amended, supplemented or otherwise modified from time to time by the Bankruptcy Court or otherwise, that describes the Plan and is prepared and distributed in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Federal Rules of Bankruptcy Procedure and other applicable law, and which shall be materially consistent with this Agreement and the Settlement Agreement and otherwise in form and substance reasonably acceptable to the Trustee and K. Smith.

2.7. "**Disclosure Statement Order**" means an order of the Bankruptcy Court approving the Disclosure Statement and the Solicitation, which order shall be materially consistent with this Agreement and the Settlement Agreement and otherwise in form and substance reasonably acceptable to the Trustee and K. Smith.

2.8. "**Plan**" means the chapter 11 plan to be proposed by the Trustee.

2.9. "**Settlement Agreement**" means that certain Settlement Agreement by and between (i) the Trustee, in his capacities as (a) Chapter 11 Trustee for the estates of D. Smith and CRR, and (b) Manager of Caddoa Creek Ranch, LLC ("**Caddoa**"), and (ii) K. Smith dated [DATE], 2022.

2.10. "**Solicitation**" means the solicitation of votes in connection with the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code.

**3. Agreements of K. Smith.**

3.1. <u>Support of Restructuring</u>. Upon the terms and subject to the conditions hereof and the terms and conditions set forth in the Settlement Agreement, K. Smith agrees that K. Smith shall:

3.1.1. support, and take all reasonable actions necessary to facilitate the implementation or consummation of, the Restructuring and the approval by the Bankruptcy Court of this Agreement, the Settlement Agreement, the Disclosure Statement and Plan, the form of which shall be acceptable in all material respects to the Trustee and K. Smith;

3.1.2. not directly or indirectly seek, solicit or vote the Allowed KAS Claim for, any plan of reorganization other than the Plan;

3.1.3. not seek to terminate or modify the automatic stay with respect to any of the Properties;

3.1.4. subject to the receipt by K. Smith of an approved Disclosure Statement in accordance with the Solicitation, (i) timely vote, or cause to be voted, all of the Allowed KAS Claim to accept the Plan, and (ii) not change, withdraw or revoke such vote (or cause or direct such vote to be changed, withdrawn or revoked);

3.1.5. timely vote or cause to be voted all of the Allowed KAS Claim, as applicable, against and not consent to, or otherwise directly or indirectly support, solicit, assist, encourage or participate in the formulation, pursuit or support of, any restructuring or reorganization of the Debtors (or any plan or proposal in respect of the same) other than the Restructuring; and

3.1.6. support the mutual release, exculpation and injunction provisions to be provided in the Plan.

3.2. <u>Certain Conditions</u>. The obligations of K. Smith set forth in <u>Section 3.1</u> above are subject to the following conditions:

3.2.1. this Agreement shall have become effective in accordance with the provisions of Section 10 hereof;

3.2.2. this Agreement shall not have terminated in accordance with the terms of Section 5 hereof.

3.3. Transfers. K. Smith agrees that K. Smith shall not sell, contract to sell, give, transfer, loan, issue, pledge, encumber, grant a security interest in, hypothecate, assign, offer or otherwise transfer or dispose of (including by participation) any economic, voting or other rights in or to, directly or indirectly, in whole or in part, all or any portion of any of the Allowed KAS Claim, save and except for the purpose of providing for living expenses for K. Smith by her counsels, which loans or advances will specifically not include any voting rights whatsoever as to any of the Allowed KAS Claim..

## 4. Agreements of the Trustee.

4.1. Affirmative Covenants. The Trustee agrees that, commencing on the date hereof and continuing until the confirmation of the Plan, unless otherwise expressly permitted or required by this Agreement or the Settlement Agreement, the Trustee shall do the following:

4.1.1. monetize the Properties;

4.1.2. implement the terms of the Settlement Agreement; and

4.1.3. seek approval of the Disclosure Statement and confirmation of the Plan;

## 5. Termination of Agreement.

5.1. K. Smith Termination Events. K. Smith may terminate this Agreement as to all Parties upon written notice to the other Parties, delivered in accordance with Section 18 hereof, upon the occurrence of any of the following events:

5.1.1. the Bankruptcy Court grants relief that is materially inconsistent with this Agreement or the Settlement Agreement in any material respect;

5.1.2. the Plan is amended or otherwise modified so as to be materially inconsistent with this Agreement or the Settlement Agreement;

5.1.3. the failure of the confirmed Plan to go effective; or

5.1.4. the Bankruptcy Cases are involuntarily dismissed or are both converted to Chapter 7 cases.

5.2. Mutual Termination. This Agreement, and the obligations of all Parties hereunder, may be terminated at any time by mutual agreement among the Trustee and K. Smith.

5.3.   <u>Trustee Events</u>. The Trustee may terminate this Agreement as to all Parties upon written notice to the other Parties, delivered in accordance with <u>Section 18</u> hereof, upon the occurrence of any of the following events:

5.3.1.   the Bankruptcy Court grants relief that is materially inconsistent with this Agreement or the Settlement Agreement in any material respect;

5.3.2.   the material breach by K. Smith of this Agreement or the Settlement Agreement; or

5.3.3.   except at the request of the Trustee, the Bankruptcy Cases are involuntarily dismissed.

5.4.   <u>Effect of Termination</u>. Upon the termination of this Agreement in accordance with this <u>Section 5</u>, this Agreement shall forthwith become void and of no further force or effect and each Party shall, except as provided otherwise in this Agreement, be immediately released from its liabilities, obligations, commitments, undertakings and agreements under or related to this Agreement and shall have all the rights and remedies that it would have had and shall be entitled to take all actions, whether with respect to the Restructuring or otherwise, that it would have been entitled to take had it not entered into this Agreement, including all rights and remedies that would have been available to it under applicable law; provided, however, that in no event shall any such termination relieve a Party hereto from liability for its breach or non-performance of its obligations hereunder prior to the date of such termination.

**6.   Good Faith Cooperation; Further Assurances; Acknowledgment; No Solicitation.**

The Parties shall cooperate with each other in good faith and shall coordinate their activities (to the extent practicable and subject to the terms hereof). Furthermore, subject to the terms hereof, each of the Parties shall take such action as may be reasonably necessary to carry out the purposes and intent of this Agreement and shall refrain from taking any action that would frustrate the purposes and intent of this Agreement. This Agreement is not, and shall not be deemed, a solicitation for consent to the Plan. The acceptance of the Plan by K. Smith will not be solicited until K. Smith has received the Disclosure Statement and related ballot(s), as approved by the Bankruptcy Court.

**7.   Process Documents.**

Each Party hereby covenants and agrees to negotiate in good faith the documents necessary to implement this Agreement and the Settlement Agreement.

**8.   Representations and Warranties.**

8.1.   Each Party, severally (and not jointly), represents and warrants to the other Parties that the following statements are true, correct and complete as of the date hereof:

8.1.1.   subject to the approval of the Bankruptcy Court with respect to the Trustee, each such Party has all requisite authority to (i) enter into this Agreement, (ii) carry out the

transactions contemplated under this Agreement and the Settlement Agreement and (iii) perform its obligations contemplated under this Agreement and the Settlement Agreement;

        8.1.2.   subject to the approval of the Bankruptcy Court, this Agreement is the legally valid and binding obligation of such Party, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability or a ruling of the Bankruptcy Court.

    8.2.   K. Smith represents and warrants to the Trustee that, as of the date hereof, K. Smith is the beneficial owner of the Asserted Claims.

## 9. Amendments and Waivers.

This Agreement, including any exhibits or schedules hereto, may not be modified, amended or supplemented except in a writing signed by the Trustee and K. Smith.

## 10. Effectiveness.

This Agreement shall become effective and binding:

    10.1.   on K. Smith when counterpart signature pages to this Agreement have been executed and delivered; and

    10.2.   on the Trustee when the 9019 Order has become effective in accordance with Bankruptcy Rule 6004(h) (such date, the "**Effective Date**").

## 11. GOVERNING LAW; JURISDICTION; WAIVER OF JURY TRIAL.

  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ANY CONFLICTS OF LAW PROVISIONS WHICH WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION. BY ITS EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH OF THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ANY LEGAL ACTION, SUIT, DISPUTE OR PROCEEDING ARISING UNDER, OUT OF OR IN CONNECTION WITH THIS AGREEMENT SHALL BE BROUGHT IN THE BANKRUPTCY COURT (FOR SO LONG AS THE DEBTORS ARE SUBJECT TO THE JURISDICTION OF THE BANKRUPTCY COURT) AND THE PARTIES HERETO IRREVOCABLY CONSENT TO THE JURISDICTION OF SUCH COURT AND WAIVE ANY OBJECTIONS AS TO VENUE OR INCONVENIENT FORUM. EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

12.    **Specific Performance.**

It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (including attorneys' fees and costs) as a remedy of any such breach, without the necessity of proving the inadequacy of money damages as a remedy, including an order of the Bankruptcy Court requiring any Party to comply promptly with any of its obligations hereunder.

13.    **Headings.**

The headings of the sections, paragraphs and subsections of this Agreement are inserted for convenience only and shall not affect the interpretation hereof or, for any purpose, be deemed a part of this Agreement.

14.    **Successors and Assigns; Severability; Several Obligations.**

This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators and representatives.

If any provision of this Agreement, or the application of any such provision to any person or circumstance, shall be held invalid or unenforceable in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof or the Agreement shall continue in full force and effect so long as the economic or legal substance of this Agreement and the Settlement Agreement contemplated hereby are not affected in any manner materially adverse to any Party. Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner in order that the economic substance contemplated hereby is consummated as originally contemplated to the greatest extent possible.

15.    **No Third-Party Beneficiaries.**

Unless expressly stated herein, this Agreement shall be solely for the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators and representatives, and no other person or entity shall be a third-party beneficiary hereof.

16.    **Prior Negotiations; Entire Agreement.**

This Agreement, including the exhibits and schedules hereto, constitutes the entire agreement of the Parties, and supersedes all other prior negotiations, with respect to the subject matter hereof.

17.    **Counterparts.**

This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement.

**18.    Notices.**

Any notice, demand, or communication required, permitted, or desired to be given hereunder shall be deemed effectively given when delivered by any of the following means: electronic mail at the addresses listed below, personally delivered with signed receipt, by overnight courier with signed receipt, or by registered United States mail, with postage prepaid and return receipt requested, addressed to the addresses below or to such other address as any Party may designate, with copies thereof to the respective counsel thereof as notified by such Party.

For the Trustee:

> Gregory Milligan, Chapter 11 Trustee
> 8911 N. of Capital Texas Highway, Suite 2120
> Austin, Texas 78759
> Email: gmilligan@harneypartners.com
>
> with a copy to:
>
> Waller Lansden Dortch & Davis, LLP
> 100 Congress Avenue, 18th Floor
> Austin, Texas 78701
> Attention: Morris Weiss
> Email: morris.weiss@wallerlaw.com

For K. Smith:

> Karen Annette Smith
> 700 Nettleton Dr.
> Southlake, TX 76092
> Email: karen.smith.2@gmail.com
>
> with a copy to:
>
> Rochelle McCullough, L.L.P.
> 325 North Saint Paul Street, Suite 4500
> Dallas, Texas 75201
> Attention: E. P. Keiffer
> Email: pkeiffer@romclaw.com

**19.    Reservation of Rights; No Admission.**

Except as expressly provided in this Agreement and in any amendment among the Parties, nothing herein is intended to, or does, in any manner waive, limit, impair or restrict the ability of any of the Parties to protect and preserve its rights, remedies and interests, including without limitation, its claims against any of the other Parties or its full participation in the Bankruptcy Cases. Except as expressly provided in this Agreement and in any amendment among the Parties, if this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights.

This Agreement and the Settlement Agreement are part of a proposed settlement of matters that could otherwise be the subject of litigation among the Parties hereto. Pursuant to Rule 408 of the Federal Rule of Evidence, any applicable state rules of evidence and any other applicable law, foreign or domestic, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms. This Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever.

**20.    Relationship Among Parties.**

It is understood and agreed that, except as expressly provided in this Agreement, none of the Parties: (i) have any duty of trust or confidence in any kind or form with each other; (ii) have or owe any other duties (fiduciary or otherwise (except for the Trustee's and Debtors' fiduciary duties under applicable law)) whatsoever to each other; and (c) have commitments among or between them. No prior history, pattern or practice of sharing confidences among or between the Parties shall in any way affect or negate this understanding and agreement.

**21.    Trustee's Fiduciary Duties.**

Notwithstanding anything to the contrary herein, nothing in this Agreement shall require the Trustee, D. Smith, or any manager or member of CRR (in each of such person's capacity as a court-appointed fiduciary, individual, member, or manager of the Debtors) to take any action, or to refrain from taking any action, to the extent required, in the opinion of counsel, to comply with its or their fiduciary obligations under applicable law.

**22.    Representation by Counsel.**

Each Party acknowledges that it has been represented by counsel, or provided a reasonable period of time to obtain access to and advice by counsel, in connection with this Agreement and the Settlement Agreement contemplated herein. Accordingly, any rule of law or any legal decision that would provide any Party with a defense to the enforcement of the terms of this Agreement against such Party based upon lack of legal counsel shall have no application and is expressly waived.

**23.    Independent Analysis.**

Each of the Trustee and K. Smith hereby confirms that they have made their own decision to execute this Agreement based upon their own independent assessment of documents and information available to them, as they deemed appropriate.

* * * * *

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed and delivered as of the date first set forth above.

Date: _____May 25, 2022_____

**Gregory Milligan, solely in his capacity as
Chapter 11 Trustee for Daryl Greg Smith
and Canadian River Ranch, LLC**

Date: _____5 - 25 - 2022_____

**Karen Annette Smith**

## Exhibit B

**Bosque Waterfall and OK and Solar Waterfall**

## EXHIBIT B

### Bosque Waterfall and OK and Solar Waterfall

1.  <u>Bosque Waterfall</u>.  The net proceeds of $4,140,720.04 obtained by the D. Smith estate in connection with the sale of the estate's interests in the Bosque Property would be disbursed as follows:

    i.  Payment to Kelcie Hibbs in the amount of $59,510.90

    ii.  Reserve for capital gains taxes in the amount of $579,000

    iii.  Reserve for Trustee fee in the amount of $135,000

    iv.  Reserve for Milligan's Professionals in the amount of $500,000

    v.  Reserve for U.S. Trustee fees in the amount of $33,126

    vi.  Payment to K. Smith on account of Allowed Secured Claim in the amount of $2,500,000 (net $2,290,889 payment to K. Smith after below transfers)

        (1)  $100,000 of $2,500,000 to be transferred to Caddoa pursuant to section 3(a)(i) above

        (2)  $50,000 of $2,500,000 to be transferred to D. Smith estate as consideration for dismissal of Removed OK Litigation

        (3)  $59,111 of $2,500,000 to be transferred to Kelcie Hibbs in satisfaction of secured claim on which K. Smith is jointly and severally liable with D. Smith

    vii.  Remaining proceeds in the amount of $334,083.38 retained by the D. Smith estate subject to lien in favor of K. Smith.

2.  <u>OK and Solar Waterfall</u>.  The net proceeds that might be received for a sale of the OK Property is uncertain.  If all of the acreage is sold at current list price, the expected net proceeds total approximately $16.57MM.  The OK Property is being marketed in sections, so it is possible sale proceeds come into the estates over time rather than as a single lump sum payment.

    The net proceeds that might be received for a monetization of the Solar Property (or it's related lease income) is uncertain. If rental income is sold at anticipated pricing, the expected net proceeds total approximately $5.67MM.

    Because the timing of the monetization of some or all of the OK Property and the Solar Property is uncertain, a single waterfall setting forth disbursements for any proceeds received on account of a sale of some or all of the OK Property or Solar Property is set forth below. This combined waterfall is designed to address payment of claims regardless

040122-15051/4878-9377-8977.2

of the timing of monetization or whether some or all of the OK Property is sold before or after monetization of the Solar Property.

Distributions of net sale proceeds for each sale of the OK Property and/or Solar Property through interim payments or a plan will be subject to the following waterfall:

First, net proceeds from any OK Property sale will be paid to the first-priority lienholder, Farm Credit of Western Oklahoma, ACA ("**Farm Credit**") in the amount of their allowed claim plus post-petition interest, in an estimated amount of approximately $4,500,000.

Second, net proceeds from any OK Property sale will be paid to the second-priority lienholder, Internal Revenue Service ("**IRS**") in the amount of their allowed claim plus post-petition interest, in an estimated amount of approximately $1,125,000.

Third, after full satisfaction of the Farm Credit and IRS claims from OK Property net proceeds, the net proceeds on (i) any OK Property transaction(s) or (ii) Solar Property monetization will be distributed pursuant to the following waterfall for each subject transaction:

1. Reserve for capital gains taxes of 20% of net proceeds, if applicable

2. Reserve for U.S. Trustee fees of 0.8% of gross sales price, if applicable

3. Reserve for Trustee fee of 3% of net proceeds

4. Reserve for Trustee professional fees in the amount of $1,500,000

5. Remaining net proceeds, after allocated funding of Trustee professional fees reserve, distributed to K. Smith up to amount of outstanding Allowed Secured Claim

6. Any remaining secured claims will be paid

7. Any remaining administrative claims, including domestic support obligations will be paid

8. K. Smith's allowed priority claim will be paid

9. Allowed claims of general unsecured creditors will be paid

10. Remaining proceeds will remain with the estates/Debtors