**The relief described hereinbelow is SO ORDERED.**

**Signed September 09, 2022.**

_____
**Ronald B. King**
**United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| DARYL GREG SMITH and, | § | CASE NO. 21-60162-RBK-11 |
| CANADIAN RIVER RANCH, LLC | § | CASE NO. 21-60163-RBK-11 |
| | § | Jointly Administered Under |
| | § | Case No. 21-60162-rbk |
| Debtors. | § | |

### ORDER (A) APPROVING THE SALE OF REAL ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(B), (F), AND (M),; AND (B) GRANTING RELATED RELIEF

Came on for consideration the motion (the "***Motion***")[1] of Gregory S. Milligan, chapter 11

trustee in the above-captioned bankruptcy cases (the "***Trustee***") for an order pursuant to

sections 105 and 363 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002

and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and the Local

Rules of the United States Bankruptcy Court for the Western District of Texas (the "***Local Rules***")

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in Sales Contract (as defined herein).

(i) approving (a) bid procedures for the sale of certain real estate (the "**Property**") owned by Debtors Daryl Greg Smith ("**Smith**") and Canadian River Ranch, LLC, and Darren Keith Reed[2] ("**Reed**"; and together with the Trustee, the "**Sellers**"), including the approval of a Stalking Horse Bidder, (b) establishing a date for an auction if the Trustee receives one or more timely and acceptable Qualified Bids (the "**Auction**") and a final hearing (the "**Sale Hearing**") to approve the sale of the Property (the "**Sale Transaction**"), (c) approving the form and manner of notice of the Auction and Sale Hearing, and (d) granting related relief and an (ii) order (a) approving the sale of the Property free and clear of all liens, claims, encumbrances, and other interests pursuant to sections 105 and 363 of the Bankruptcy Code, and (b) granting related relief, all as more fully described in the Motion; and this Court having entered an order on July 28, 2022 (Doc. 502) (the "**Bid Procedures Order**" and Exhibit 1 attached thereto, the "**Bid Procedures**"); and the Auction having been set for September 9, 2022 in accordance with the Bid Procedures Order; and one additional Qualified Bidder having submitted a competing bid for the Property; and the Stalking Horse Bidder having declined to submit a higher bid prior to the scheduled Auction; and the Trustee having determined that Purchaser represents the highest and otherwise best bid for the Property; and a final hearing (the "**Sale Hearing**") to approve the sale of the Property (the "**Sale Transaction**") having been held on September 9, 2022 to consider approval of the Sales Contract (as defined herein); and the Court having determined that notice of the Motion was adequate and sufficient; and all such parties having been afforded due process and an opportunity to be heard with respect to the Motion and all relief requested therein; and the Court having reviewed and considered: (i) the Motion; (ii) the objections and responsive pleadings filed in connection with the Motion, if any; and (iii) the representations of counsel made, and the evidence proffered, at the

---

[2] The Smith estate holds an undivided 90% interest in 280 acres of the Property. The remaining 10% interest is held by Reed. The other 159 acres that comprise the Property is owned by Canadian River Ranch, LLC.

Sale Hearing; and the Sale Hearing having been held, and after due deliberation and sufficient cause appearing therefor, hereby finds and determines that:

A.　**Jurisdiction and Venue**. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Western District of Texas*, the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper under 28 U.S.C. §§ 1408 and 1409.

B.　**Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.　**Statutory Predicates**. The statutory predicates for the relief sought in the Motion are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004.

D.　**Notice**. The service of the Motion on the Sale Notice Parties (as defined in the Bid Procedures Order) and the Sale Notice and the proposed entry of this Order to the Sale Notice Parties was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Bid Procedures Order. With respect to entities whose identities were not reasonably ascertained by the Trustee, notice was sufficient and reasonably calculated under the circumstances to reach such entities.  Accordingly, no further notice of, or hearing on, the Motion, the Sale Hearing, the Sale Contract, the Sale Transaction, or this Order is necessary or required.

E.　**Compliance with Bid Procedures Order**.  As demonstrated by (i) evidence adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee has conducted a fair and open sale process in a manner reasonably calculated

to produce the highest and otherwise best offer for the Property in compliance with the Bid Procedures Order. The Bid Procedures were substantively and procedurally fair to all parties. The sale process, Bid Procedures and Auction were non-collusive, duly noticed, and afforded a full, fair, and reasonable opportunity for any Person to make a higher and otherwise better offer to purchase the Property. The bidding and related procedures established by the Bid Procedures Order have been complied with in all material respects by the Trustee and the Purchaser.

F. **Successful Bidder**. Prior to the scheduled Auction, the Purchaser offered and the Trustee accepted, the highest and best Qualified Bid (as defined in the Bid Procedures), which is a cash bid in the amount of $707,210.00 (the "***Purchase Price***"), subject to adjustment as set forth in that certain Sales Contract, dated as of September 8, 2022 (as amended, supplemented, or otherwise modified from time to time, including all Exhibits, Schedules, and Appendices thereto (the "***Sales Contract***," attached hereto as **Exhibit 1**) by and among the Trustee, Reed, and Richard Eric Murdock and Lisa Ann Murdock (the "***Purchaser***"). The Purchaser is approved as the Successful Bidder, as such term is defined in the Bid Procedures, for the Property on the terms set forth in the Sales Contract by and among the Purchaser, the Trustee, and Reed.

G. **Back-Up Bidder**. The Stalking Horse Bidder, Roger C. Broach ("***Broach***"), offered the next highest or otherwise best Qualified Bid, which is a cash bid in the amount of $658,500, subject to adjustment as set forth in the Bid Procedures Order and/or Back-Up Bidder Agreement (as defined below). Broach is approved as the Back-Up Bidder, as such term is defined in the Bid Procedures, for the Property on the terms set forth in the form of the Back-Up Bidder's Sales Contract (the "***Back-Up Bidder Agreement***") attached hereto as **Exhibit 2**.

H. **Due Authority**. The Trustee and Reed have each approved the Sales Contract and the consummation of the Sale Transaction on behalf of the Sellers and the Sellers' sale of the

Property to the Purchaser has been duly and validly authorized by all necessary corporate or other entity action.  The Sellers have full power and authority to execute the Sales Contract and all other documents contemplated thereby and to consummate the Sale Transaction.  No consents or approvals, other than those expressly provided for in the Sales Contract, are required for the Sellers to consummate the Sale Transaction.

       I.      **<u>Business Justification</u>**. Approval of the Sales Contract and consummation of the Sale Transaction is in the best interests of the Debtors, their estates, creditors, and other parties in interest. The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Purchaser pursuant to section 363(b) of the Bankruptcy Code. Such business purposes and justifications include, but are not limited to, that the Sales Contract and the closing thereon will present the best opportunity to realize the value of the Property and avoid decline and devaluation of the Property.

       J.      The consideration to be provided by the Purchaser pursuant to the Sales Contract: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Property; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration. In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtors' estates and the indirect benefits of the Sale Transaction for the Debtors' creditors.  The Trustee's determination that the Sales Contract constitutes the highest and otherwise best offer for the Property is a result of due deliberation by the Trustee and constitutes a valid and sound exercise of the Trustee's business judgment. Entry of an order approving the Sale Motion, Sales Contract and the Sale Transaction is a necessary condition precedent to the Purchaser consummating the Sale Transaction.

K.      **Arm's-Length Sale**.  The Sales Contract was negotiated, proposed, and entered into by the Trustee, Reed, and the Purchaser without collusion, in good faith, and was the result of arm's-length bargaining between the parties represented by independent counsel.  The Back-Up Bidder Agreement was negotiated and proposed by the Trustee, Reed, and Broach, in good faith, without collusion, and was the result of arm's-length bargaining between the parties represented by independent counsel.  The Trustee, Reed, and the Purchaser have not engaged in any conduct that would cause or permit the Sales Contract to be avoided under section 363(n) of the Bankruptcy Code.  The Purchaser is not an "insider" or "Affiliate" of the Trustee or Debtors, as such terms are defined in the Bankruptcy Code.

L.      **Good Faith Purchaser**.  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The Purchaser is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction.  The Purchaser has proceeded in good faith in all respects in that, *inter alia*: (i) the Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Property; (ii) the Purchaser complied with the provisions of the Bid Procedures Order; (iii) the Purchaser's bid was subjected to the competitive bid procedures set forth in the Bid Procedures Order; (iv) no common identity of directors or officers exists among the Purchaser, Sellers, and the Debtors, and (v) all payments to be made by the Purchaser and all other material agreements or arrangements entered into by the Purchaser and the Sellers in connection with the Sale Transaction have been disclosed.

M.      **Legal, Valid and Binding Transfer**.  The Sellers are the sole and lawful owners of the Property, or otherwise have a valid, enforceable property interest in such, and title to (a) (i) an undivided 90% interest in the 280 acres of the Property is vested in the Debtor Smith's estate

within the meaning of section 541(a) of the Bankruptcy Code and (ii) the remaining 10% interest is held by Reed, and (b) a 100% interest in 159 acres of the Property is vested in the Debtor Canadian River Ranch, LLC's estate within the meaning of section 541(a) of the Bankruptcy Code. The Sellers have all right, title, and interest in the Property required to transfer and convey the Property to the Purchaser. The transfer of the Property to the Purchaser will be a legal, valid, and effective transfer of the Property and, except as provided in the Sales Contract, will vest the Purchaser with all right, title, and interest of the Sellers to the Property free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including liens, claims, encumbrances, and other interests of any Governmental Authority, as defined in the Sales Contract) other than those liens, claims, encumbrances, and other interests specifically assumed by the Purchaser pursuant to the Sales Contract. The sale of the Property shall also be free and clear of those liens, claims, encumbrances, and other interests that purport to give to any party a right or option to effectuate any forfeiture, modification, or termination of the Sellers' interests in the Property, or any similar rights.

N.     The Sales Contract is a valid and binding contract between the Sellers and the Purchaser, which is and shall be enforceable according to its terms.

O.     **Free and Clear**. The Purchaser would not have entered into the Sales Contract and would not consummate the Sale Transaction, thus adversely affecting the Debtors' estates and their creditors, if the transfer of the Property to the Purchaser was not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any such lien, claim, encumbrance, or other interest. A sale of the Property other than one free and clear of any liens, claims, encumbrances, and other interests,

would adversely impact the Debtors' estates and would yield substantially less value for the estates.

P.       Subject to the provisions of this Order and except as may be specifically provided in the Sales Contract, the Sellers may sell the Property free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied. Each entity with a lien, claim, encumbrance, or other interest in the Property to be transferred on the date the Sale Transaction is consummated (the "***Closing Date***"): (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance, or other interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of liens, claims, encumbrances, and other interests who did not object to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

Q.       **Not a Sub Rosa Plan**. The Sales Contract and Sale Transaction do not constitute an impermissible *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sales Contract and the Sale Transaction neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a plan for the Debtors.

R.       **No Fraudulent Transfer**. The Sales Contract was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, territory, or possession thereof, or the District of Columbia.  The Sellers and the Purchaser are not entering into the Sale Transaction fraudulently.

S.      **No Successor Liability**. The Purchaser (i) is not, and shall not be, considered a successor in interest to the Debtors, (ii) has not, *de facto* or otherwise, merged with or into the Debtors, (iii) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and (iv) is not holding themselves out to the public as a continuation of the Debtors. Except as otherwise specifically provided in the Sales Contract, the transfer of the Property to the Purchaser does not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' businesses before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of antitrust, successor, transferee, or assignee liability.

T.      **Prompt Consummation**. Time is of the essence in consummating the Sale Transaction. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the Sales Contract, including, without limitation, the Sale Transaction.

U.      **Good and Sufficient Cause**. There is other good and sufficient cause to grant the relief requested in the Motion and approve the Sales Contract and the Sale Transaction.

V.      **Legal and Factual Bases**. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.      The notice of the Sale Motion and Sale Hearing are approved as being fair, reasonable, and adequate under the circumstances, and any additional notice as may otherwise be required under state and federal law is hereby deemed satisfied.

2.      The Motion is **GRANTED** to the extent set forth herein.

3.      All objections to the relief requested in the Motion or the entry of this Order, if any, that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing are denied and overruled in their entirety on the merits, with prejudice.

**Approval of Free and Clear Sale of the Property**

4.      The Sales Contract, all exhibits and schedules thereto, and all of the terms and conditions thereof are hereby approved. The Trustee shall file final versions of the Sales Contract and all other ancillary documents with the Court upon closing the Sale Transaction.

5.      Pursuant to sections 105 and 363 of the Bankruptcy Code, the Trustee is authorized to (i) execute, deliver, and perform under, consummate, and implement the Sales Contract and the Sale Transaction together with all additional instruments and documents that are requested by the Purchaser and may be reasonably necessary or desirable to implement the Sales Contract and the Sale Transaction and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Sales Contract and the Sale Transaction, including, without limitation, any and all actions reasonably requested by the Purchaser which are consistent with the Sales Contract and the Sale Transaction.

6. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing Date: (i) the transfer of the Property to the Purchaser pursuant to the Sales Contract shall constitute a legal, valid, and effective transfer of the Property and shall vest the Purchaser with all right, title, and interest in and to the Property; (ii) the Property shall be transferred to the Purchaser free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority, any claims or assertions based on any theory of successor or transferee liability, and any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Property) other than those liens, claims, encumbrances, and other interests specifically assumed by the Purchaser pursuant to the Sales Contract; and (iii) all Persons are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, against Purchaser with respect to any such liens, claims, encumbrances, and other interests (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority (as defined in the Sales Contract), any claims or assertions based on any theory of successor or transferee liability, and any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Property).

7. All liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale with the same nature, validity, and priority as such liens, claims, encumbrances, or other interests encumbered the Property prior to the proposed sale. The Trustee shall be authorized to distribute the proceeds from the Sale upon closing in the estimated amounts set forth in the chart attached hereto as **Exhibit 3**.  When the estimated amounts in Exhibit 3 are finalized and paid, the Trustee shall file an updated Exhibit 3 with the Court.

8.      On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Sellers' interest in the Property or a bill of sale transferring good and marketable title in the Property.

9.      Pursuant to the Sales Contract and this Order, the transfer and assignment of the Property shall be effectuated on the terms set forth therein and herein, and shall not be restricted or prohibited, notwithstanding any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights with respect to the Sellers' transfer, sale, vesting, assumption, and/or assignment of the Property.

10.     This Order is and shall be effective as a determination that all liens, claims, encumbrances, and other interests shall be and are, without further action by any Person, unconditionally released, discharged, and terminated with respect to the Property as of the Closing Date, except as may otherwise be set forth in the Sales Contract.

11.     Except as otherwise provided herein or in the Sales Contract, on the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and instruments and to take all other actions as may be reasonably necessary to document and effectuate the release of their liens, claims, encumbrances, and other interests in the Property, if any, as such liens, claims, encumbrances, and other interests may have been recorded or may otherwise exist. If any such creditor fails to execute any such documents or instruments or take any such actions, the Trustee is authorized to execute such documents and instruments and to take such actions on behalf of the creditor so as to document the release of such liens, claims, encumbrances, and other interests.

**No Successor Liability**

12.     The Purchaser and its affiliates, successors, and assigns shall not be deemed, as a result of any action taken in connection with the transfer of the Property, to (i) be a successor to the Debtors or the estates, (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or the estates, or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and the Purchaser shall have no successor, transferee or vicarious liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes or other Governmental Authority fees, contributions, or surcharges arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Property prior to the Closing Date. Except as otherwise provided herein or in the Sales Contract, the transfer of the Property to the Purchaser pursuant to the Sales Contract shall not result in the Purchaser or its affiliates, members, or shareholders, or the Property, having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff or otherwise, directly or indirectly, (i) any claim against the Debtors or against any insider of the Debtors, or (ii) any lien, claim, encumbrance, or other interest.

13.     Upon the Closing, and except as otherwise expressly provided in the Sales Contract, the Purchaser shall not be liable for any claims against, and liabilities of, the Debtors or any of the Debtors' predecessors or affiliates.

14.     The Purchaser has given substantial consideration under the Sales Contract to the Smith estate. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of liens, claims, encumbrances, and other interests against the Debtors or the Property.

## No Fraudulent Transfer

15.     The consideration provided by the Purchaser under the Sales Contract constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory, or possession thereof, or the District of Columbia. The consideration provided by the Purchaser for the Property under the Sales Contract is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

## Good Faith

16.     The Sales Contract and the Sale Transaction are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sales Contract and the Sale Transaction shall not affect the validity of the sale of the Property to the Purchaser, unless this Order is duly stayed pending such appeal. The Purchaser is a good faith purchaser of the Property and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

## Additional Provisions

17.     This Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Property free and clear of all liens, claims, encumbrances, and other interests (all such entities being referred to as "***Recording Officers***"). All Recording Officers are authorized and specifically directed to strike recorded Liens, claims, encumbrances, and interests against the Property recorded prior to the date of this Order unless the Sales Contract expressly provides that the Purchaser is acquiring the Property subject to such claims, Liens, and interests.

18. Following the Closing Date, no holder of any lien, claim, encumbrance, or other interest on the Property or other party in interest may interfere with the Purchaser's use and enjoyment of the Property based on or related to such lien, claim, encumbrance, or other interest, or any actions that the Trustee or Debtors may take in their chapter 11 cases, and no party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale Transaction.

19. Except as expressly permitted or otherwise specifically provided by the Sales Contract or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Property, the ownership or operation of the Property prior to the closing

of the sale, or the sale of the Property are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Property, such persons' or entities' interests.

20.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Sales Contract and the Sale Transaction.

21.    The terms and provisions of the Sales Contract, the ancillary agreements, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Purchaser, and its respective affiliates, successors, and assigns, the Debtors' estates, all creditors of (whether known or unknown), and any affected third parties, notwithstanding the dismissal of the Debtors' cases or conversion of the Debtors' cases to cases under chapter 7, as to which trustee such terms and provisions likewise shall be binding and not subject to rejection or avoidance.  The Sales Contract, the Sale Transaction and this Order shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 trustee appointed in the Chapter 11 Cases.  Further, nothing contained in any plan confirmed in these Chapter 11 Cases or any order confirming any plan or any other order entered in these cases shall conflict with or derogate from the provisions of the Sales Contract or the terms of this Order.

22.    The Sales Contract and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that any such amendment does not have a material adverse effect on the Debtors or the Debtors' estates.

23.     The failure to include specifically any particular provision of the Sales Contract in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sales Contract be authorized and approved in its entirety.

24.     To the extent of any inconsistency between the provisions of this Order, the Sales Contract, and any documents executed in connection therewith, the provisions contained in this Order, the Sales Contract, and any documents executed in connection therewith shall govern, in that order.

25.     Nothing in this Order, the Sales Contract or any document executed in connection with the consummation thereof shall authorize or constitute a transfer of title to property which is excluded from the property of the Debtors' estates pursuant to section 541(b)(4) of the Bankruptcy Code.

26.     Notwithstanding anything to the contrary in the Bid Procedures or the Bid Procedures Order, Broach shall keep his Back-Up Bid (as defined in the Bid Procedures) open and irrevocable until the first to occur of (i) ninety (90) days after the completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Trustee of the release by the Trustee of the Back-Up Bidder's obligations. If the Purchaser fails to consummate the approved Sale Transaction because of a breach or failure to perform on the part of the Purchaser or otherwise, the Trustee shall be authorized, but not required, to deem Broach the Purchaser and to consummate the sale with Broach without further order of this Court. In such event, Broach shall be deemed the Purchaser and the Back-Up Bidder Agreement shall be deemed the Sales Contract for purposes of this Order.

27.     The provisions of this Order are non-severable and mutually dependent. Headings are included in this Order for ease of reference only.

28.     The provisions of this Order authorizing the sale and assignment of the Property free and clear of all liens, claims, encumbrances, and other interests shall be self-executing, and notwithstanding the failure of the Sellers, the Purchaser, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Purchaser or permitted to survive under the Sales Contract) on or against such Property, if any, shall be deemed released, discharged, and terminated.

29.     From time to time, as and when requested by any Party, each Party to the Sales Contract shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Purchaser its right, title, and interest in and to the Property.

30.     Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately and shall not be stayed. Time is of the essence in closing the Sale Transaction and the Trustee and the Purchaser intend to close the Sale Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

31.     In the event this Order is subject to Appeal, and as a result of such Appeal, the Sale Transaction is thereafter unwound and title to the Property is divested from Purchaser and/or re-vested in the Sellers (such resulting divestiture, a "*Divestiture*"), Purchaser shall be entitled to a full and immediate refund of the Purchase Price from Sellers in cash, in proportionate share to

their respective ownership interests (Smith's 90% refund obligation, the "***Smith Refund Obligation***"; Reed's 10% refund obligation, the "***Reed Refund Obligation***," and together with the Smith Refund Obligation, the "***Refund Obligations***"). The Smith Refund Obligation shall be fully secured by a priming, first priority lien on the Smith estate's interest in the Property, which shall be deemed to automatically arise upon the triggering of the Smith Refund Obligation. The Reed Refund Obligation shall be secured by a priming, first priority lien on Reed's interest in the Property, which shall be deemed to automatically arise upon the triggering of the Reed Refund Obligation. Sellers shall discharge the Refund Obligations fully and finally within 60 days following the entry of a final, non-appealable order providing for the Divestiture of the Property. Should the Sellers not timely, fully and finally discharge the Refund Obligations, then the Purchasers may seek an order of this Court judicially foreclosing their priming liens, and/or pursue a non-judicial foreclosure in accordance with the terms of the then current Oklahoma State Bar form of deed of trust, which will be deemed incorporated into this Order to govern the priming liens (with the right of the Purchasers to appoint substitute trustees). A copy of this Order shall be recorded in the real property records of the County in which the Property is located; if an Appeal is filed, but the Appeal (including any subsequent Appeals of the same subject matter) is dismissed or denied or the sale authorized by this Order is affirmed or otherwise unaffected by said Appeal(s) on account of paragraph 16 of this Order and the Property is thus not subject to Divestiture, then the Sellers may record an affidavit so stating.  Nothing in this Order or as to this specific provision of this Order shall be considered to affect paragraph 16 of this Order nor be in any way be considered with regard to any determination of what is required to secure a stay pending appeal, if a stay pending appeal is sought by any objecting party.

32.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Sales Contract, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Property to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order and the Sales Contract; (iii) adjudicate, if necessary, any and all disputes arising out of, concerning, or otherwise relating in any way to the Sale Transaction; and (iv) protect the Purchaser against any Liens, encumbrances, claims, and interests in the Property of any kind or nature whatsoever.

# # #

ORDER SUBMITTED BY:
Waller Lansden Dortch & Davis LLP
Morris D. Weiss
State Bar No. 21110850
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)
morris.weiss@wallerlaw.com
COUNSEL FOR TRUSTEE

## **EXHIBIT 1**

## **Sales Contract**

DocuSign Envelope ID: 9737BC7A-EF78-4583-9E97-430B9DF5F536

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

**OKLAHOMA REAL ESTATE COMMISSION**
*This is a legally binding contract; if not understood, seek legal advice from an attorney.*
***This form is recommended for use by only licensees who specialize in farm, ranch, and recreational land transactions***

# OKLAHOMA UNIFORM CONTRACT OF SALE OF REAL ESTATE
# FARM, RANCH, AND RECREATIONAL LAND

**CONTRACT DOCUMENTS.** The Contract is defined as this document with the following attachments(s):

**(check supplements as applicable)**

| | |
|---|---|
| ☑ Legal Description | ☐ Supplement |
| ☐ Accessories | ☐ Exhibit A |
| ☐ Rural Property Conventional Loan | ☐ Exhibit B |
| ☐ Seller Financing | ☑ Addendum _____ |
| ☐ Removal of Livestock | ☐ _____ |

**PARTIES.** THE CONTRACT is entered into between: <u>Gregory S. Milligan, in his capacity as Ch. 11 Trustee for Canadian River</u>
<u>Ranch LLC and Daryl G. Smith, owner of 90% undivided interest, and Darren K.&Julie Reed, owners 10% undivided interest</u>"Seller"
and <u>Richard Eric and Lisa Ann Murdock or assigns</u> "Buyer"

The Parties' signatures at the end of the Contract, which includes any attachments or documents incorporated by reference, with delivery to their respective Brokers, if applicable, will create a valid and binding Contract, which sets forth their complete understanding of the terms of the Contract. This agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors and permitted assigns. The Contract shall be executed by original signatures of the Parties or by signatures as reflected on separate identical Contract counterparts (carbon, photo, fax or other electronic copy). The Parties agree that as to all aspects of this transaction involving documents an electronic signature shall have the same force and effect as an original signature pursuant to the provisions of the Uniform Electronic Transactions Act, 12A, Oklahoma Statutes, Section 15-101 et seq. All prior verbal or written negotiations, representations and agreements are superseded by the Contract, which may only be modified or assigned by a further written agreement of Buyer and Seller.

**1. PURPOSE.** The undersigned Buyer hereby agrees to purchase from the undersigned Seller the following real property, to wit.

**2. PROPERTY.** The land, appurtenances, improvements, accessories and crops are collectively referred to as the "Property".

    **A.**   **LAND.** The land situated in <u>McIntosh</u> County, Oklahoma, described as follows:
    <u>Property ID #s 0000-13-10N-14E-3-001-00 (160 acres); 0000-14-10N-14E-4-001-00 (159 acres);</u>
    <u>0000-23-10N-14E-1-002-00 (120 acres)</u>, **or as described on**
**the <u>attached Legal Description Supplement</u>**, also known as (property address/zip code) _____
_____ ,

    **(Check one)**

    1)   ☑ together with all of Seller's right, title, interest and estate in and to oil, gas and other minerals in and under the Land not previously reserved or conveyed of record, <u>The Seller does not warrant the amount of minerals owned or that the Seller owns any minerals whatsoever, unless specifically provided in the Special Provisions Paragraph of the Contract.</u>

    **OR**

    ☐ less and except; all oil, gas and other minerals related to the extraction of oil & gas and the following specific mineral interests, _____ , in and under the Land; <u>all other unspecified minerals in and under the land will transfer with the surface rights.</u>

    2)   together with all of the buildings, structures and improvements in, on or under the Land, and existing rural water tap rights, if any, including applicable certificates and all rights thereto (the "Improvements");

    3)   together with all of the appurtenances belonging thereto and all of Seller's right, title and interest in and to all streets, alleys and other public ways adjacent to the Land;

    4)   together with all rights to any Natural Gas supply agreements with Natural Gas mineral owners, lease holders or producers, if any. <u>The Seller does not warrant the future execution of these agreements;</u>

    5)   subject to existing zoning ordinances, restrictions, easements, rights of way and _____ .

    **B.**   **IMPROVEMENTS**. The following items, if existing on the Property, unless otherwise excluded, shall remain with the Property at no additional cost to Buyer:

    1)   <u>Farm, Ranch and Recreation Land Improvements.</u> The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, corrals; and: <u>Fences</u>
    _____

    2)   <u>House(s).</u> Number of houses on the property (Check One) : ☑ NONE or ☐ _____ ( number)

    3)   <u>Residential Improvements, if any.</u> The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mailboxes, television antennas and satellite dish systems and equipment, heating and air conditioning units, security and fire detection equipment, wiring, plumbing

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

OREC FARM, RANCH, AND RECREATIONAL SALE (1-1-2022)                                                        Page 1 of 8

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>
Property Identifier

and light fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property; and: _____.

**C.** **ACCESSORIES.** The following items, if existing on the Property, unless otherwise excluded, shall remain with the Property at no additional cost to Buyer:

1) <u>Farm, Ranch and Recreation Accessories.</u> The following described related accessories (check items of *conveyed* accessories):

☐ portable buildings   ☐ hunting blinds   ☐ game feeders   ☐ livestock feeders and troughs
☐ irrigation equipment   ☐ submersible pumps   ☐ pressure tanks   ☐ fuel tanks if owned (propane, gasoline, diesel)
☐ corrals   ☐ chutes   ☑ gates   ☐ **See Accessories Supplement**.

2) <u>Residential Accessories, if any.</u> The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, controls for satellite dish systems, controls for garage door openers, entry gate controls, door keys, mail box, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs and _____.

**D.** **CROPS.** Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property. _____.

| (Check One) Grasses and trees ☐ are   ☑ are NOT considered crops in the Contract. |
|---|

**E.** **EXCLUSIONS.** The following improvements, accessories and crops will be retained by Seller and excluded from this Contract:
_____.

**3.** **TIME PERIODS SPECIFIED IN CONTRACT.** Time periods for Earnest Money Deposit, Proof of Funds, Investigations, Inspections and Reviews and Financing Supplement Agreement shall commence on <u>upon mutual execution</u> (Time Reference Date), regardless of the date the Contract is signed by Buyer and Seller. The day after the Time Reference Date shall be counted as day one (1). If left blank, the Time Reference Date shall be the third day after the last date of signatures of the Parties.

**4.** **TERMS.**

**A.** **PURCHASE PRICE.** Buyer shall pay for the Property the sum of ($ <u>707,210.00</u> ) (sum of B, C & D below) payable as follows:

**B.** **EARNEST MONEY.** The sum of $ <u>65,850.00</u> as Earnest Money, shall be deposited in the trust account of _____ or if left blank, the Listing Broker's trust account

☑ with submission of this contract or ☑ within <u>three</u> **days after** the day of the final signature(s) executing this Contract, to be applied on the purchase price and/or closing costs, if any, at the time of closing. If Buyer fails to deposit the Earnest Money as required by this Contract, Buyer will be in default.

**C.** **CASH AT CLOSING.** Cash portion of Purchase Price payable by Buyer $ <u>641,360</u> .

**D.** **LOAN FUNDING.** The sum of all financing described below (excluding any loan funding fee or mortgage insurance premium) is $ _____.

**E.** **ADJUSTED PURCHASE PRICE.** The Purchase Price (check one): ☐ **will**   ☑ **will not** be adjusted based on the survey required by Paragraph 7A. If the Purchase Price is adjusted, the Purchase Price will be calculated on the basis of $ _____ per acre. If the Purchase Price is adjusted by more than _____%, either Party may terminate this Contract by providing written notice to the other Party within _____ days after the terminating Party receives the survey. If neither Party terminates this Contract or if the variance is _____% or less, the adjustment will be made to the amount in:

| (Check One) ☐ 4.C. ☐ 4.D. ☐ proportionately to 4.C. and 4.D. |
|---|

**5.** **FINANCING.** The portion of the Purchase Price not payable in cash will be paid as follows (check applicable items below):

**A.** ☐ **CONVENTIONAL LOAN.** This Contract is subject to financing described in the attached **Convention Loan Supplement** for one or more third Party mortgage loans in the total amount of $ _____. (Excluding any loan funding fee or mortgage insurance premium).

**B.** ☐ **SELLER FINANCING.** As reflected on the attached **Seller Financing Supplement.**

**C.** ☑ **This Contract is "CASH ONLY" and is NOT subject to ANY FINANCING REQUIREMENTS.**

| (Check One) This Contract ☑ is subject to ☐ is NOT subject to verification of Buyer's Proof of Funds below: |
|---|

1) **Proof of Funds:** Buyer shall provide the following within three (3) days after the Time Reference Date in Paragraph 9:

a. A letter of financial capabilities from a banking institution on bank letter head verifying that Buyer has the necessary cash or line of credit in an amount equal to or in excess of the Purchase Price herein.

**OR**

b. A copy of a Bank Statement showing sufficient funds to fulfill the Buyer's obligations of this Contract.

c. Buyer hereby gives permission to the Seller and the Seller's Broker, if applicable, or representatives to contact the banking institution providing the letter of financial capabilities or the financial institution shown on the copy of a Bank Statement, to verify said information.

2) If Buyer does not provide proof of funds as indicated in 5.C.1) of this subparagraph, this Contract shall become null and void.

3) If banking or financial institution information provided can not be verified to the satisfaction of the Seller within two (2) business days after receipt the Seller may cancel this Contract with written notice by mail, photo, fax or electronic copy delivered to the Buyer as provided in the Notices Paragraph 27.

---

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

DocuSign Envelope ID: 9737BC7A-EF78-4583-9F97-430B0DF5F536

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

6. **TITLE EVIDENCE.** Seller, within _____ days (Ten (10) days if left blank) prior to Closing Date, agrees to make available to Buyer Title Evidence as follows:

**A. Abstracting**
1) Seller shall furnish a complete and current surface-rights-only Abstract of Title, certified by an Oklahoma-licensed and bonded abstract company;
**OR**
A copy of Seller's existing owner's title insurance policy issued by a title insurer licensed in the State of Oklahoma together with a supplemental and current surface-rights-only certified by an Oklahoma-licensed and bonded abstract company, and
2) A current Uniform Commercial Code Search Certificate.

**B. Required Form of Title Evidence:**

**(Check one)**
1) ☐ <u>Abstract of Title</u> (unless otherwise specified in the Special Provisions Paragraph 16).

   a. Seller, at **Seller's Expense** shall pay all abstracting pursuant to subparagraph 6(A).
   b. Buyer shall pay, at **Buyer' expense**, the attorney's Title Opinion, not for purposes of Title Insurance, and all other costs associated with obtaining a Mortgagee's Title Insurance Policy, if required by the Lender(s).
2) ☑ <u>Commitment for Owner's Title Insurance Policy</u> (unless otherwise specified in Closing and Funding Paragraph 14).

3) **Access Notice**: Broker advises Buyer to determine physical and legal access availability to their satisfaction.

**C. (Check appropriate Seller's and Buyer's Expense)**

Seller's  Buyer's
Expense: Expense:  (Boxes NOT checked  are NOT APPLICABLE)

| Seller's | Buyer's | |
|---|---|---|
| ☐ | ☑ | The premium for such surface-rights-only  Owner's Title Policy |
| ☐ | ☐ | All surface-rights-only abstracting (prior to closing fees) |
| ☐ | ☐ | A Mortgage Inspection Report (a representation of the boundaries of the Property and the improvements thereon), if required by Lender(s) |
| ☐ | ☑ | The attorney's fees for examination of the abstract (Base or Supplemental) as required by Title Company |
| ☐ | ☑ | The final title report and/or recertification fee as required by Title Company (post-closing fees) |
| ☐ | ☑ | The Mortgagee's Title Insurance Policy, if any |

7. **SURVEY AND TITLE REVIEW.**
**A. SURVEY. The survey or boundary (Pin Stake) survey must be made by a surveyor acceptable to the Title Company and any Lender. (check one box only):**
1) ☐ Within _____ days after the **Time Reference Date** of this Contract, Seller, at Seller's expense, shall furnish a new survey to Buyer.
2) ☐ Within _____ days after the **Time Reference Date** of this Contract, Buyer, at Buyer's expense, shall obtain a new survey.
3) ☐ Within _____ days after the **Time Reference Date** of this Contract, Seller shall furnish Seller's existing survey of the Property to Buyer and the Title Company, along with Seller's affidavit acceptable to the Title Company for approval of the survey.  The existing Survey (check one): ☐ will  ☐ will not be recertified to a date subsequent to the **Time Reference Date** of this Contract at the expense of (check one): ☐ Buyer ☐ Seller.  If the existing survey is not approved by the Title Company or Buyer's Lender, a new survey will be obtained at the expense of (check one): ☐ Buyer ☐ Seller no later than _____ days (three (3) days if left blank) prior to the Closing Date.
4) ☑ Survey is NOT REQUIRED (see subparagraph 7.E.4)
5) ☐ Other: _____.
**B. OBJECTIONS.** Buyer shall have _____ days (ten (10) days if left blank) after receipt to examine the Title Evidence and to deliver Buyer's objection to Title.  In the event the Title Evidence is not made available to Buyer within ten (10) days prior to Closing Date, said Closing Date shall be extended to allow Buyer the ten (10) days from receipt to examine the Title Evidence.

**C. SELLER TO CORRECT ISSUES WITH TITLE (IF APPLICABLE), POSSIBLE CLOSING DELAY.**  Upon receipt by Seller, or in care of Seller's Broker, if applicable, of any title requirements reflected in an Attorney's Title Opinion or Title Insurance Commitment, based upon the standard of marketable title set out in the Title Examination Standards of the Oklahoma Bar Association, the Parties agree to the following:
1) At Seller's option and expense, may cure title requirements identified by Buyer;
2) Delay Closing Date for <u>90</u> days (thirty (30) days if left blank), or a longer period as may be agreed upon in writing, to allow Seller to cure Buyer's title requirements.  In the event Seller cures Buyer's objection prior to the delayed Closing Date, Buyer and Seller agree to close within five (5) days of notice of such cure.  In the event that title requirements are not cured within the time specified in this Paragraph, the **Buyer may cancel the Contract and receive a refund of Earnest Money**; and
3) Buyer agrees to accept title subject to: (a) utility easements serving the property, (b) building and use restrictions of record, (c) set back and building lines, (d) zoning regulations, and (e) reserved and severed mineral rights, which shall not be considered objections for requirements of Title.
**D. SURFACE LEASES**. Seller shall provide Buyer with copies of existing written leases and give <u>written notice</u> of oral leases within _____ days (three [3] days if left blank) of the Time Reference Date.  **If there are NO existing Leases this paragraph is not applicable.**
1) If Seller **does not provide** copies of existing said written leases or give written notice of oral leases within the three (3) days after the Time Reference Date the provisions of Paragraph 20 shall apply. The Seller shall be in default of this Agreement.

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

2) This Contract is subject to Buyer review, acceptance and approval of said leases, if any, <u>within five (5) days of the receipt of said leases.</u>

**3)** **If the Buyer fails to give notice of objection to the leases, as above, the leases shall be deemed acceptable to the Buyer.**

4) The following Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title:_____

_____ .

**E. BROKER NOTICES.**

1) <u>Abstract or Title Policy.</u>   Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's election or Buyer should be furnished with or obtain a Title Policy.  If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer' choice due to the time limitations on Buyer' right to object in subparagraph 7.B.

2) <u>Annexation.</u>  If the Property is located outside the limits of a municipality, Seller notifies Buyer that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality.  Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

3) <u>Unimproved Property Located in the Area of a Utility Service Provider.</u>   If the Property is located in an area of a utility service provider and the Property does not receive water or sewer service from the utility service provider on the date the Property is transferred, the Broker advises Buyer to obtain costs estimates necessary to utilize said services.

4) <u>Exterior Fences and Roadways.</u>  Broker advises that exterior fences and roadways may or may not be located on a surveyed boundary.

5) <u>Water Rights and Permits.</u>  Contact the Oklahoma Water Resources Board.

6) <u>Oil & Gas and other Mineral Rights.</u>  Contact the Oklahoma Corporation Commission.

7) <u>Mining Operations and Permits.</u>  Contact Oklahoma Department of Mines.

**8.   ACCEPTANCE OF PROPERTY.**  Buyer, upon accepting Title or transfer of possession of the Property, shall be deemed to have accepted the Property in its then condition. No warranties, expressed or implied, by Sellers, or Seller's Broker and/or their associated licensees, with reference to the condition of the Property, shall be deemed to survive the Closing.

**9.   INSPECTIONS, ACCESS AND UTILITIES.** - See para. 7 of Addendum

~~A.   The Buyer agrees and acknowledges that Seller, Seller's Broker and their licensed associates, are not experts regarding the condition of the~~ Property. No representations, warranties, or guarantees regarding the condition of the Property, or environmental hazards, are expressed or implied except as may be specified by Seller in the Special Provisions Paragraph 16.

**B.** Buyer shall have _____ days (ten (10) days if left blank) after the **Time Reference Date** to complete any investigations, inspections, and reviews by inspectors selected by Buyer and licensed by the state or otherwise permitted by law to make inspections.  Seller shall permit Buyer and Buyer's Broker, if applicable, access to the Property at reasonable times.  Seller shall pay for turning on existing utilities for inspections.  **Notice.** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.  The Broker advises Buyer to obtain Termite, Home, Radon Gas, Mold, Septic, Well and Environmental Inspections.

**C.** Buyer, at Buyer's expense, shall have the right to enter upon the Property, together with Buyer's representative(s), independent  contractor(s) and/or any other person Buyer deems qualified, to conduct any and all investigations, inspections, tests, studies and reviews.  If the property and buildings thereon are secured by locks, the Seller will provide access within 24 hours of a written request. Excepting only the negligence of Seller or a condition caused or permitted by Seller, Buyer shall indemnify, protect, defend and hold Seller harmless from and against any and all claims, demands, losses, liabilities, costs, fees and expenses (including attorney's and consultant's fees) arising out of or related to Buyer's entry onto the Property in connection with any testing or investigation performed pursuant to this Contract. Buyer's investigations, inspections and reviews may include, but may not be limited to, the following:

**1) Flood, Storm Run-off Water, Storm Sewer Back-up or Water History**
**2) Roof, Structural members, roof decking, coverings and related components**
**3) Hazard Insurance**
**4) Structural Inspection**
**5) Use of Property** (property use restrictions, building restrictions, easements, restrictive covenants, zoning ordinances and regulations)
**6) Square Footage/Acreage** (buyer shall not rely on any quoted square footage and/or acreage and shall have the right to measure the property)
**7) Home Inspection (**if applicable)

**D.   ENVIRONMENTAL MATTERS.**  Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the property.  This offer ☐ **is** ☑ **is not** contingent upon the Buyer, at Buyer's cost, obtaining an acceptable Environmental Site Assessment Report within **the time frame set in the Inspection, Access and Utilities subparagraph 9.B**.  If the Environmental Site Assessment Report is not obtained in the specified time period, this contingency shall be considered waived by the Buyer.

**E.   EQUIPMENT AND SYSTEMS.** Within _____ days (ten (10) if left blank) from the **Time Reference Date** of this Contract, Buyer, at Buyer's expense, shall have the right to inspect all fixtures and equipment relating to plumbing, heating and cooling, electrical systems and any other equipment or systems and shall report any item not in normal working order, in writing, to Seller, in care of Seller's Broker, if applicable, including a copy of the estimated cost to repair such items. If the total estimated cost to Seller of such repairs and replacement required by this paragraph exceeds $_____, Seller shall have the option to cancel and terminate this Contract within forty-eight (48) hours of being advised of such estimate unless Buyer agrees, in writing, to pay repair and replacement costs in excess of such amount.

**F.   WOOD DESTROYING INSECTS INSPECTION.** Buildings on property, if any.  Within _____ days (ten (10) if left blank) from the **Time Reference Date** of this Contract, Buyer shall have the right to have the Property inspected by Buyer's choice of a licensed exterminating company and deliver to Seller, in care of Seller's Broker, if applicable, an infestation report. The expense of such report shall be the Buyer's expense. In the event the report shows visible infestation or visible damage, Seller agrees, at Seller's expense, to treat and/or repair same, provided the estimated cost to cure such infestation or damage does not exceed $_____. If the estimated cost exceeds

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

**OREC FARM, RANCH, AND RECREATIONAL SALE  (1-1-2022)** **Page 4 of 8**

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

~~such amount, Seller shall have the option to cancel and terminate this Contract within forty-eight (48) hours of being advised of such estimate~~ unless Buyer agrees, in writing, to pay any costs in excess of such amount.

**G.** **BUYER'S RIGHT TO OBJECT OR CANCEL.** If, upon Buyer's investigation, inspections and reviews, the Buyer shall give written notice to the Seller of:

1) Removal of Contingencies, which indicates acceptance of the reports with NO OBJECTIONS.
   **OR**
   Objections to items in the report along with a copy of the report(s) by delivery to the Seller, in care of Seller's Broker, if applicable, within the respective time frames. The Seller shall be given _____ days (three (3) days if left blank) to cure the objections at the Seller's expense or enter into a written agreement with the Buyer to have a dollar amount to be adjusted at closing, as a Seller's expense.

2) If the Seller does not cure the objections and does not enter into a written agreement with the Buyer to have a dollar amount to be adjusted from the proceeds at closing as a Seller's expense within the respective time frames, the Buyer may cancel and terminate this Contract and receive a refund of the earnest money by delivering written notice to the Seller, in care of Seller's Broker, if applicable, as provided in Paragraph 27 within twenty-four (24) hours of the expiration of the time period specified in this provision.

**H.** **EXPIRATION OF BUYER'S RIGHT TO CANCEL CONTRACT.** Failure of the Buyer to complete one of the following within the respective time frames shall constitute acceptance of the Property regardless of its condition:

1) ~~Perform any Investigations, Inspections or Reviews.~~
2) ~~Deliver a written list of objections or items to be treated, repaired and replaced.~~

**10.** **SELLER'S DISCLOSURES.** Except as otherwise disclosed in this Contract, **Seller has no knowledge of the following** (check as applicable):

**A.** ☐ Flooding of the Property which has had a material adverse effect on the use of the Property.
**B.** ☐ Pending or threatened litigation, condemnation, or special assessment affecting the Property.
**C.** ☐ Dumpsite, landfill, or underground tanks or containers now or previously located on the Property.
**D.** ☐ Wetlands, as defined by federal or state law or regulation, affecting the Property.
**E.** ☐ Threatened or endangered species or their habitats affecting the Property.
**F.** ☐ Other:_____.

**11.** **GOVERNMENT PROGRAMS**: The Property is subject to the government programs listed below or on the attached exhibit:_____
_____.
Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under government programs is made by separate agreement between the Parties which will survive Closing.

**12.** **RESIDENTIAL PROPERTY CONDITIONS.**

| ☑ Check if there is NO residential house(s) on the Property. (If checked disregard this paragraph). |
|---|

**A.** **RESIDENTIAL PROPERTY CONDITION DISCLOSURE.** No representations by Seller regarding the condition of Property or environmental hazards are expressed or implied, other than as specified in the Oklahoma Residential Property Condition Disclosure Statement ("Disclosure Statement") or the Oklahoma Property Condition Disclaimer Statement ("Disclaimer Statement"), if applicable. A real estate licensee has no duty to Seller or Buyer to conduct an independent inspection of the Property and has no duty to independently verify accuracy or completeness of any statement made by Seller in the Disclosure Statement and any amendment or the Disclaimer Statement.

**B.** **LENDER REQUIRED REPAIRS AND TREATMENTS**. Unless otherwise agreed in writing, neither Party is obligated to pay for lender-required repairs, which includes treatment for wood destroying insects. If the Parties do not agree to pay for the lender required repairs or treatments, this Contract will terminate and the Earnest Money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds _____% of the Purchase Price, Buyer may terminate this Contract and the Earnest Money will be refunded to Buyer.

**C.** **RESIDENTIAL SERVICE CONTRACTS.** Buyer may purchase a residential service contract from a residential service company licensed by the state. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential Contract in an amount not to exceed $_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in the state.

**13.** **BROKER'S FEES.** All obligations of the Parties for payment of brokers' fees are contained in separate agreements. <u>All Parties herein direct the Listing and Selling Brokers to provide the Closing Agent with copies of the compensation agreements between the Buyer and Sellers and their respective Brokers to facilitate payment to the respective Brokers at the time of closing or as Buyer and Seller and their respective Broker(s), if applicable, agree in writing on the attached</u> .

**14.** **CLOSING and FUNDING.**

A. The closing of the sale will be on or before _See Special Provisions_ 20_____, or upon delayed closing pursuant to the Survey and Title Review Paragraph 7.C.2) whichever date is later (Closing Date). If either Party fails to close the sale by the Closing Date, the non-defaulting Party may exercise the remedies contained in the Default Paragraph 20.

B. No Fault Closing Delay: Buyer and Seller agree to a closing date extension of up to _____ days (five (5) days if left blank) if closing is delayed due to the abstracting company, closing company, lender or title company not under the control of the Buyer or Seller.

C. At closing:

1) Seller shall execute and deliver a ~~general~~ <span style="color:red">special</span> warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in the Survey and Title Review Paragraph 7.C.3) an assignment of Leases, and furnishes tax statements or certificates showing no delinquent taxes on the Property.

2) Buyers shall pay the Purchase Price in good funds acceptable to the escrow agent.

3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this Contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy.

4) Upon Closing, the existing abstract of title, if owned by Seller, shall become the property of Buyer.

D. All covenants, representations and warranties in this Contract survive closing.

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

**OREC FARM, RANCH, AND RECREATIONAL SALE (1-1-2022)**          **Page 5 of 8**

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

**15. POSSESSION.** Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted (check one): ☑ upon closing and funding ☐ according to a written lease required by the Parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the Parties. Consult your insurance agent prior to change of ownership or possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the Parties to economic loss.

**16. SPECIAL PROVISIONS.** <u>The terms and conditions set forth in the Sale Contract Addendum attached hereto are hereby incorporated in this Contract in their entirety.</u>

**17. SETTLEMENT AND OTHER EXPENSES.**

    **A.** The following expenses must be paid at or prior to closing:

        1) <u>Expenses payable by Seller</u> (Seller's Expenses).

          a. Releases of existing liens, including prepayment penalties and recording fees; release of Seller loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; title expenses in the Title Evidence subparagraph 6.B. and other expenses payable by Seller under this Contract.

          b. Seller shall also pay an amount not to exceed $ <u>0.00</u> to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, state-coordinated veteran's housing assistance programs, or other governmental loan programs; Buyer' prepaid items; other Buyer' expenses.

        2) <u>Expenses payable by Buyer</u> (Buyer's Expenses).

          a. Loan origination, discount, buy-down, and commitment fees (Loan Fees).

          b. Termite Inspection fees; Property Inspection fees; Appraisal fees; loan application fees; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; courier fee, repair inspection, underwriting fee and wire transfer; expenses incident to any loan; title expenses in subparagraph 6.B. and other expenses payable by Buyer under this Contract.

    **B.** Buyer shall pay Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the Lender.

    **C.** If any expense exceeds an amount expressly stated in this Contract for such expense to be paid by a Party, that Party may terminate this Contract unless the other Party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, state-coordinated veteran's housing assistance programs or other governmental loan program regulations.

**18. PRORATIONS OF TAXES.** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. If taxes for the current year vary from the amount prorated at closing, the Parties shall adjust the proration when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.

**19. CASUALTY LOSS.** If any part of the Property is damaged or destroyed by fire or other casualty after the Time Reference Date of this Contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event, by the Closing Date. If Seller fails to do so due to factors beyond Seller' control, Buyer may: (a) terminate this Contract and the Earnest Money will be refunded to Buyer; (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary; or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller obligations under this paragraph are independent of any obligations of Seller under the Acceptance of Property Paragraph 8.

**20. DEFAULT.** Seller or Buyer will be in default if either fails to comply with any material covenant, agreement, or obligation within the time limits required by this Contract. **TIME IS OF THE ESSENCE IN THIS CONTRACT.**

    **A.** If Buyer fails to comply with this Contract, Buyer will be in default, and Seller may:

        1) enforce specific performance, seek such other relief as may be provided by law, or both; or

        2) terminate this Contract and receive the Earnest Money as liquidated damages, thereby releasing both Parties from this Contract.

    **B.** If, due to factors beyond Seller' control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may:

        **1)** **<u>extend the time for performance up to 15 days and the Closing Date will be extended as necessary;</u>** or

        2) terminate this Contract as the sole remedy and receive the Earnest Money.

    If Seller fails to comply with this Contract for any other reason, Seller will be in default and Buyer may: (a) enforce specific performance, seek such other relief as may be provided by law, or both; or (b) terminate this Contract and receive the Earnest Money, thereby releasing both Parties from this Contract.

**21. DISCLAIMER AND INDEMNIFICATION.** It is expressly understood by Seller and Buyer that Listing Broker and its affiliated licensees and Selling Broker and its affiliated licensees do not warrant the present or future crop productivity including grasses, water availability above or below ground, size by square footage or acreage, condition, structure, or structure systems of the Property or any building, nor do they hold themselves out to be experts in quality, design and construction. Seller and Buyer shall hold the Listing Broker and its affiliated licensees and Selling Broker and its affiliated licensees harmless in the event of losses, claims or demands by or against Seller or Buyer. This paragraph shall survive the Closing.

**22. INCURRED EXPENSES AND RELEASE OF EARNEST MONEY.**

    **A. INCURRED EXPENSES.** Buyer and Seller agree that any expenses, incurred on their behalf, shall be paid by the Party incurring such expenses and shall not be paid from earnest money.

    **B. RELEASE OF EARNEST MONEY.** In the event a dispute arises prior to the release of earnest money held in escrow, the escrow holder shall retain said earnest money until one of the following occur:

        1) A written release is executed by Buyer and Seller agreeing to its disbursement;

        2) Agreement of disbursement is reached through Mediation;

        3) Interpleader or legal action is filed, at which time the earnest money shall be deposited with the Court Clerk; or

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

**OREC FARM, RANCH, AND RECREATIONAL SALE (1-1-2022)**           Page 6 of 8

DocuSign Envelope ID: 9737BC7A-EE78-4583-9E97-430B9ADF5F56

Farm and Ranch Contract: Canadian River Ranch - 439 Acre Parcel, Lenna Rd

Property Identifier

    4)   The passage of thirty (30) days from the date of final termination of the Contract has occurred and options 1), 2) or 3) above has not been exercised; Broker escrow holder, at Broker's discretion, may disburse earnest money. Such disbursement may be made only after fifteen (15) days written notice to Buyer and Seller at their last known address stating the escrow holder's proposed disbursement.

    5)   In the event Earnest Money is held in escrow at a title company, the Earnest Money **may only** be released pursuant to paragraph 22(B)(1), (2), or (3).

**23.  REPRESENTATIONS**.

    **A.**  Seller represents that as of the Closing Date: (a) there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing payment of any loans assumed by Buyer, and (b) assumed loans will not be in default. If any representation of Seller in this Contract is untrue on the Closing Date, Buyer may terminate this Contract and the Earnest Money will be refunded to Buyer.

    **B.** Buyer represents that they have **NOT** relied on any quoted acreage and/or square footage from any source and have had the right to measure the land or buildings on the Property to their satisfaction prior to closing.

**24.  TAX DEFERRED EXCHANGE 1031**. In conformance with Section 1031 of the Internal Revenue Code, it may be the intention of the Seller or Buyer or both to effect a tax-deferred exchange. Either the Seller or Buyer or both may assign his/ her rights in the contract to a Qualified Intermediary for the purpose of effecting a tax-deferred exchange. The Parties agree to cooperate and execute the necessary documents to allow either or both Parties to effect such exchange at no additional cost or liability to the other Party. However, any warranties that may be expressed in this contract shall remain and be enforceable between the Parties executing this document.

**25.  MEDIATION**. Any dispute arising with respect to the Contract shall first be submitted to a dispute resolution mediation system servicing the area in which the Property is located. Any settlement agreement shall be binding. In the event an agreement is not reached, the Parties may pursue legal remedies as provided by the Contract.

**26.  NON-FOREIGN SELLER**. If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**27.  NOTICES**. Any notice provided for herein shall be given to the Parties in writing, through their respective broker, if applicable, and sent by: (a) personal delivery, (b) United States mail, postage prepaid, or (c) by facsimile or other electronic means, to the Escrow Agent, as defined in Terms Paragraph 4.B. herein.

**28.  BROKER RELATIONSHIP DISCLOSURE/COMMISSION**. Buyer acknowledges and confirms that the Broker providing brokerage services to the Buyer has described and disclosed their duties and responsibilities to the Buyer prior to the Buyer signing this Contract.

    ☐ (Applicable for in-house transactions only) Buyer acknowledges and confirms that the broker is providing brokerage services to both Parties to the transaction prior to the Parties signing this Contract.

    Seller acknowledges and confirms that the Broker providing brokerage services to the seller has described and disclosed their duties and responsibilities to the seller prior to the seller signing this Contract.

    ☐ (Applicable for in-house transactions only) Seller acknowledges and confirms that the broker is providing brokerage services to both Parties to the transaction prior to the Parties signing this Contract.

    Seller further acknowledges receipt of Estimate of Costs associated with this transaction and that a Residential sales Contract information Booklet has been made available to the seller in print, or at www.orec.ok.gov.

**29.  DELIVERY OF ACCEPTANCE OF OFFER OR COUNTEROFFER.** The Buyer and Seller authorize their respective Brokers, if applicable, to receive delivery of an accepted offer or counteroffer and any related addenda or documents.

**30.  EXECUTION BY PARTIES**.

    **AGREED TO BY BUYER:**

On This Date _____8/31/2022_____8/31/2022_____

Richard Eric Murdock                           Lisa Ann Murdock

Buyer's Printed Name                             Buyer's Printed Name

_Richard Eric Murdock_                          _Lisa Ann Murdock_

F0829C47528043C...                           A92CEB2A5AE4411...

Buyer's Signature                                  Buyer's Signature

 

Buyer's Printed Name                             Buyer's Printed Name

 

Buyer's Signature                                  Buyer's Signature

 

Buyer's Printed Name                             Buyer's Printed Name

 

Buyer's Signature                                  Buyer's Signature

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

**OREC FARM, RANCH, AND RECREATIONAL SALE (1-1-2022)**          **Page 7 of 8**

DocuSign Envelope ID: 0F21BE7A-FF73-4582-9469-42D5B4DE4636

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

**TERMINATION OF OFFER.** The above Offer shall automatically terminate on _____ at _____, unless withdrawn prior to acceptance or termination.

**AGREED TO BY SELLER:** Seller accepts the foregoing offer and shall sell the above described Property on the terms and conditions herein stated and shall pay the Listing Broker the compensation previously agreed upon in the Listing Agreement or other agreement of employment between them, which shall survive this Contract, for professional services rendered and to be rendered in this transaction. *Seller further acknowledges receipt of Seller' Estimate of Expenses in regard to this transaction and the Confirmation and Acknowledgement of Disclosures prior to Seller's Acceptance.*

On This Date _____

Gregory S. Milligan, Chapter 11 Trustee
_____          _____
Seller's Printed Name                                      Seller's Printed Name

_____          _____
Seller's Signature                                              Seller's Signature

Darren K. Reed
_____          _____
Seller's Printed Name                                      Seller's Printed Name

_____          _____
Seller's Signature                                              Seller's Signature

Julie Reed
_____          _____
Seller's Printed Name                                      Seller's Printed Name

_____          _____
Seller's Signature                                              Seller's Signature

## EARNEST MONEY RECEIPT AND INSTRUCTIONS

Receipt of $ 65,850.00  ☑ Check ☐ Cash as Earnest Money Deposit, to be deposited in accordance with the terms and conditions of the Terms Paragraph 4.B. Broker(s) acknowledges receipt of Earnest Money and Listing Broker, if applicable, shall deposit said funds in accordance with Paragraph 4 of this Contract. If deposited in an escrow account other than the Listing Broker, the Listing Broker, if applicable, shall provide a copy of receipt to the Selling Broker.

**SELLING BROKER/ASSOCIATE:**                    **LISTING BROKER/ASSOCIATE:**

Kelly Hurt 155768
_____          _____
OREC Associate License Number                  OREC Associate License Number

Land Doctors
_____          _____
OREC Company Name                                      OREC Company Name

175234
_____          _____
OREC Company License Number                   OREC Company License Number

29848 Co Rd 1480, Allen, OK 74825
_____          _____
Company Address                                            Company Address

580-421-7512
_____          _____
Company Phone Number                                 Company Phone Number

Kelly@LandDoctors.com
_____          _____
Associate Email                    Date                    Associate Email                    Date

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

**OREC FARM, RANCH, AND RECREATIONAL SALE  (1-1-2022)**                                        Page 8 of 8

Farm and Ranch Contract: Canadian River Ranch - 439 Acre Parcel, Lenna Rd

LEGAL DESCRIPTION

| Property ID | Legal Description |
|---|---|
| 0000-13-10N-14E-3-001-00 | SW/4 Section 13 10N 14E (160 Acres) |
| 0000-14-10N-14E-4-001-00 | SE/4 Section 14 10N 14E less and except 1 acre beginning SE/C SE SE N208.71' W208.71' S208.71' E208.71' POB SEC 14-10-14 (159 Acres) |
| 0000-23-10N-14E-1-002-00 | E/2 NE/4 and NE/4 SE/4 Section 23 10N 14E (120 acres) |

## SALE CONTRACT ADDENDUM

THIS SALE CONTRACT ADDENDUM (this "**Addendum**") is made a part of  that certain Oklahoma Uniform Contract of Sale of Real Estate - Farm, Ranch and Recreational Land (the "**Contract**") by and between Gregory S. Milligan, in his capacity as Chapter 11 Trustee (the "**Trustee**") for the chapter 11 cases of Canadian River Ranch, LLC and Daryl Greg Smith (together, the "**Debtors**"), owners of certain interests in the real property described therein (the "**Property**"), and Darren Keith and Julie Reed ("**Reed**"), owners of a 10% undivided interest in certain portions of the Property, together with the Trustee ("**Sellers**"), and Richard Eric and Lisa Ann Murdock or his assigns ("**Buyer**").  In addition to the obligations of Sellers and Buyer contained in the Contract, Sellers and Buyer hereby agree as follows:

Reference is hereby made to that certain (i) Trustee's Motion for (I) Order Approving: (A) Bid Procedures, Including Approval of Stalking Horse Bidder; (B) Notice of Auction and Sale Hearing; and (C) Related Relief, and (II) Order: (A) Approving the Sale of Real Estate Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f), (h) and (m), 365, and 503; and (B) Granting Related Relief filed by the Trustee (the "**Bid Procedures Motion**") [D.E. 485] filed on July 15, 2022 in the United States Bankruptcy Court for the Western District of Texas, Waco Division (the "**Bankruptcy Court**"), and (ii) Order Granting the Bid Procedures Motion (the "**Bid Procedures Order**") [D.E. 502].  The Bid Procedures Order establishes (i) an auction (the "**Auction**"), and (ii) a final hearing (the "**Sale Hearing**") to approve the sale of the Property on September 9, 2022.  All capitalized terms used herein and not otherwise defined shall have the same meaning as ascribed to them in the Bid Procedures Motion and Bid Procedures Order.

Upon both (i) the full execution of the Contract, and (ii) the Trustee's determination that Buyer is a Qualified Bidder, a valid and binding contract shall exist.

1.    TERM; CONTRACT APPROVAL:

(a)    The "**Effective Date**" of the Contract shall be the date of execution.  The parties hereto understand, acknowledge and agree that, sale of the Property is subject to Bankruptcy Court approval, and that the terms of the Contract and this Addendum are subject to higher and better offers at the Auction.

2.    PROPERTY:  Sellers agree to sell to Buyer and Buyer agrees to purchase from Sellers the Property. Sellers and Buyer acknowledge and agree that the legal description for the Property technically may be legally insufficient for the purpose of supporting an action for enforcement of the Contract. Because the parties desire to execute the Contract to provide for the right of enforcement, Sellers and Buyer agree that: (i) they are experienced in transactions of this nature; (ii) they are familiar with the location of the Property; and (iii) each party waives any and all claims of an insufficient legal description, including, but not limited to, any and all claims under the Statute of Frauds.

3.    TITLE:  The title to the Property shall be free and clear of liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363(f) of the United States Bankruptcy Code,  subject only to (i) Section 7.C. of the Contract and (ii) an exception in the event that the Closing occurs before the Sale Order has become a Final Order. For purposes hereof, "**Final Order**" shall mean with respect to the Sale Order that (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing (collectively, "**Appeal**") has expired and no Appeal has been timely filed, or (b) any Appeal that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further Appeal has been or can be taken or granted.

4.    PURCHASE PRICE:  The total purchase price for the Property shall be as set forth in Section 4.A. of the Contract (as may be adjusted upward following the Auction, the "**Purchase Price**").  Buyer shall

deposit with the escrow agent the earnest money as more particularly set forth in Section 4.B. of the Contract (the "**Earnest Money**").

5.　　<u>CLOSING DATE</u>:  The closing of the Contract ("**Closing**") shall take place remotely on the earlier of (i) September 27, 2022, and (ii) no later than three (3) calendar days after the Sale Order becomes a Final Order, subject to any delay of Closing as provided in Section 7.C. of the Contract. For the avoidance of doubt, if Buyer is not the Successful Bidder at the Auction, the provisions of Section 10 herein will control the disposition of the Earnest Money and obligation under this Section 5.

6.　　<u>INSPECTION</u>:  Buyer may not perform any intrusive testing of the Property.  Buyer shall indemnify Sellers against all losses, damages, expenses, and claims that may arise by reason of any entry by Buyer or any agent, employee or contractor of Buyer into and upon and testing of the Property pursuant to this Section and shall repair any damage to the Property caused by such entry.

7.　　<u>INSPECTIONS/AS-IS, WHERE-IS</u>.  Buyer has previously inspected the Property and, by executing the Contract, affirms that it has approved all aspects of the Property.  It is understood that Buyer will be relying solely on its independent inspections and evaluations of the Property in determining the Property's fitness for Buyer's intended use.  The Contract is an arms-length contract between the parties hereto.  THE PURCHASE PRICE WAS BARGAINED FOR ON THE BASIS OF AN "AS-IS, WHERE-IS, WITH ALL FAULTS" TRANSACTION AND REFLECTS THE CONTRACT OF THE PARTIES THAT THERE ARE NO REPRESENTATIONS, DISCLOSURES, OR EXPRESS OR IMPLIED WARRANTIES, EXCEPT THOSE IN THE CONTRACT AND THE CLOSING DOCUMENTS. AT CLOSING, BUYER WILL ACCEPT THE PROPERTY IN ITS THEN CURRENT CONDITION AT CLOSING.  BUYER IS NOT RELYING ON ANY REPRESENTATIONS, DISCLOSURES, OR EXPRESS OR IMPLIED WARRANTIES OTHER THAN THOSE EXPRESSLY CONTAINED IN THE CONTRACT AND THE CLOSING DOCUMENTS.  BUYER IS NOT RELYING ON ANY INFORMATION REGARDING THE PROPERTY PROVIDED BY ANY PERSON, OTHER THAN BUYER'S OWN INSPECTION AND THE REPRESENTATIONS AND WARRANTIES CONTAINED IN THE CONTRACT AND THE CLOSING DOCUMENTS. IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT BUYER ACCEPTS THE CONDITION OF THE PROPERTY WITHOUT ANY IMPLIED REPRESENTATION, WARRANTY OR GUARANTEE AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE AS TO THE CONDITION, SIZE OR VALUE OF THE PROPERTY, EXCEPT ONLY AS MAY BE OTHERWISE EXPRESSLY PROVIDED IN THE CONTRACT, AND SELLERS HEREBY EXPRESSLY DISCLAIM ANY AND ALL SUCH IMPLIED REPRESENTATIONS, WARRANTIES OR GUARANTEES, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY, OR CONDITION OF THE PROPERTY BEING SOLD, (B) THE SUITABILITY OF THE PROPERTY FOR ANY ACTIVITIES THAT BUYER MAY CONDUCT THEREON, (C) THE COMPLIANCE OF THE PROPERTY WITH ANY LAWS, ORDINANCES, OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL ENTITY, (D) COMPLIANCE OF THE PROPERTY WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION, OR LAND USE LAWS, RULES, REGULATIONS, ORDERS, OR REQUIREMENTS, INCLUDING THE EXISTENCE IN OR THE PROPERTY OF HAZARDOUS MATERIALS, OR (E) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, EXCEPT AS SET FORTH IN THE CONTRACT.

8.　　<u>REPRESENTATIONS</u>:  Buyer acknowledges that neither Sellers nor any party on Sellers' behalf have made, nor do they hereby make, any representations as to the past, present or future condition, income, expenses, operation or any other matter or thing affecting or relating to the Property except as expressly set forth in the Contract.

4884-0249-2464.1

2

9.      DEFAULT AND REMEDIES: Sellers or Buyer shall be in default under the Contract if either fails to comply with any material covenant, agreement or obligation within any time limits required by the Contract (a "**Default**" or "**Defaults**").  In the event of any purported default by Sellers, Buyer must deliver a notice in writing to Sellers specifying the default and affording the Sellers five (5) Business Days (as defined below) to cure (the "**Cure Period**"). Following Default by either Sellers or Buyer under the Contract and the expiration of the Cure Period as it relates to Sellers, the other party shall have the following remedies:

(a)      If Sellers Default, Buyer may either (i) cancel and terminate the Contract, and receive a full refund of the Earnest Money, or (ii) seek to enforce the order approving sale through the Bankruptcy Court.

(b)      If Buyer Defaults, Sellers may terminate the Contract by written notice to Buyer and retain the Earnest Money as liquidated damages as Sellers' sole remedy. The parties hereby acknowledge that it would be extremely difficult to ascertain the extent of actual damages caused by Buyer's Default and that the Earnest Money represents as fair an approximation of such actual damages as the parties can now determine.

(c)      If, as a result of an alleged Default under the Contract, either Sellers or Buyer employ an attorney to enforce their rights, the non-prevailing party in the dispute shall, unless prohibited by law, reimburse the prevailing party for all reasonable attorney's fees, court costs and other legal expenses incurred by the prevailing party in connection with the Default.

10.      DISPOSITION OF EARNEST MONEY AND OTHER FUNDS AND DOCUMENTS:   The Earnest Money shall be non-refundable and shall be paid to Sellers in the event of any termination of the Contract except as expressly set forth (i) in Section 9(a) hereof or (ii) this Section 10 as follows:

(a)      The Earnest Money shall be held in a segregated account by the Title Company until no later than ten (10) days after the Sale Hearing.

(b)      If the Buyer is not the Successful Bidder or the Back-Up Bidder, the Earnest Money shall be refundable and shall be returned to the Buyer no later than ten (10) days after the Sale Hearing.

(c)      If the Buyer is the Successful Bidder, upon delivery of the special warranty deed, as more particularly described in Section 14.C.1. of the Contract (the "**Deed**"), at Closing, the Earnest Money shall be credited against the Purchase Price.

(d)      If the Buyer is the Back-Up Bidder, the Earnest Money shall continue to be held by the Sellers until the first to occur of (i) sixty (60) days after completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Sellers of the release by Sellers of the Back-Up Bidder's obligations, at which time the Earnest Money shall be returned to the Buyer.  Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on part of such Successful Bidder or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Sellers will be authorized to consummate the sale with the Back-Up Bidder, at which time, upon delivery of the Deed at Closing, the Earnest Money shall be credited against the Purchase Price. Additionally, the Earnest Money will become immediately non-refundable upon the Buyer becoming the new Successful Bidder.

11.      REVERSAL ON APPEAL. If the Buyer is the Successful Bidder and pays the Purchase Price and if the Sale Order is reversed on Appeal and such reversal affects the validity of the sale to Buyer, then the

Buyer shall be entitled to a refund of the Purchase Price from the Sellers in proportion to their ownership interests as set forth in the recitals hereto.

12.    NOTICES:  All notices required under the Contract shall be deemed to be properly served if reduced to writing and sent by (i) certified or registered mail; (ii) Federal Express or similar overnight courier; (iii) facsimile transmission; or (iv) personal delivery and the date of such notice will be deemed to have been the date on which such notice is delivered or attempted to be delivered as shown by the certified mail return receipt or a commercial delivery service record, or in the case of facsimile on the date of receipt of the transmission as shown on a successful transmission confirmation receipt; provided, however, if the date for the performance of any action or obligation, or any time period specified hereunder occurs on a day other than a Business Day, then such date or time period shall be extended until the next Business Day. All notices shall be addressed as follows, unless otherwise specified in writing:

| SELLERS: | BUYER: |
|---|---|
| Daryl Greg Smith<br>5826 Cooksey Lane<br>Waco, Texas 76706<br>Email: dsmith1114@gmail.com | Richard Eric and Lisa Ann Murdock<br>Email: murdockproperties@yahoo.com |
| With a Copy to: | With a Copy to: |
| c/o Gregory S. Milligan<br>Chapter 11 Trustee for Canadian River Ranch, LLC and Daryl Greg Smith<br>P.O. Box 90099<br>Austin, TX 78709<br>Email: gmilligan@harneypartners.com | _____<br>_____<br>_____<br>_____<br>Email: |
| and | |
| Waller Lansden Dortch & Davis, LLP<br>c/o Morris Weiss<br>100 Congress Ave., Suite 1800<br>Austin, Texas 78701<br>Fax: (512) 685-6417<br>Email: Morris.Weiss@Wallerlaw.com | |
| Darren Keith and Julie Reed<br>611 S. Llano<br>Whitney, Texas 76692<br>Email: dkeithreed@yahoo.com | |
| With a Copy to: | |
| R. Rene Escobedo<br>6800 Park Ten Blvd., Suite 135-E<br>San Antonio, Texas 78213<br>Fax: (210) 223-3815<br>Email: rene.escobedo@rre-law.com | |

4884-0249-2464.1

13.     <u>TIME AND EXACT PERFORMANCE ARE OF THE ESSENCE UNDER THE CONTRACT</u>. Buyer and Sellers hereby agree to perform each and every obligation hereunder in a prompt and timely manner; <u>provided, however</u>, if the date for the performance of any action or obligation, or any time period specified hereunder occurs on a day other than a Business Day, then the date or time period shall be extended until the next Business Day.  As used herein "<b>Business Day</b>" shall mean any calendar day other than a Saturday, Sunday, or Oklahoma or Federal legal holiday.

14.     <u>ADDITIONAL TERMS</u>:

        (a)     <u>Permits and Approvals</u>.  Sellers shall reasonably cooperate with Buyer in verifying any existing governmental approvals and in seeking and making any inquiries related to the Property, as reasonably determined necessary by Buyer, provided such cooperation is at no cost or expense to Sellers. Sellers make no representations or warranties about the existence of or effectiveness of any governmental approvals.

        (b)     <u>Assignment</u>.  Buyer may assign the Contract to any entity formed by Buyer for the purpose of taking title to the Property, provided the assignee assumes, in writing, all obligations and liabilities of Buyer under the Contract and has the same beneficial ownership as the Buyer, and with approval of the Bankruptcy Court.  Unless agreed to by Sellers, Buyer shall not be relieved of any liability hereunder upon such an assignment.

        (c)     <u>Miscellaneous</u>.  This Addendum shall be governed by, and construed and interpreted under, the laws and judicial decisions of the State of Oklahoma.  This Addendum and all covenants, terms, conditions, warranties, and undertakings contained herein, and all amendments, modifications and extensions hereof, as applicable, shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and permitted assigns.  This Addendum may be executed in multiple counterparts, each of which shall be deemed an original, but taken together shall constitute one instrument. Sole and exclusive jurisdiction over any disputes related to this Addendum and the Contract shall be in the United States Bankruptcy Court for the Western District of Texas, Waco Division.

        (d)     <u>CONFLICTS OF PROVISIONS</u>. SELLERS AND BUYER HEREBY ACKNOWLEDGE AND AGREE THAT THE TERMS AND CONDITIONS OF THIS ADDENDUM SUPERSEDE ANY DIFFERENT OR INCONSISTENT PROVISIONS IN THE CONTRACT AND, AS A RESULT, IN THE EVENT OF ANY CONFLICT BETWEEN THE TERMS AND CONDITIONS OF THE CONTRACT AND THE TERMS AND CONDITIONS OF THIS ADDENDUM, THE TERMS AND CONDITIONS OF THIS ADDENDUM SHALL CONTROL.

15.     <u>ENTIRE AGREEMENT AND MANNER OF MODIFICATION</u>:  The Contract, and any attachments or addenda thereto, constitutes the complete agreement of the parties concerning the Property, and supersedes all other agreements and may be modified only by both parties initialing changes in the Contract or by written agreement. However, in the event of any conflict between the Contract and the Sale Order, the terms of the Sale Order shall prevail.

16.     <u>NO RULE OF STRICT CONSTRUCTION</u>:  Each party and its counsel has reviewed and jointly participated in the establishment of the Contract and the attachments or addenda thereto.  No rule of strict construction or presumption that ambiguities will be construed against any drafter will apply, and no presumptions will be made or inferences drawn because of the final inclusion of a term not contained in a prior draft or the final deletion of a term contained in a prior draft.

IN WITNESS WHEREOF, Sellers and Buyer execute this Addendum on the date(s) indicated below their respective signatures.

**SELLERS**:

_Greg Milligan_

GREGORY S. MILLICAN, Chapter 11 Trustee for Canadian River Ranch, LLC and Daryl Greg Smith in Case No. 21-60162 before the United States Bankruptcy for the Western District of Texas, Waco Division

Date: 09/06/22

BUYER:

DocuSigned by:
_Richard Eric Murdock_
F0829C47528043C...

Richard Eric and Lisa Ann Murdock

Date: 8/31/2022          8/31/2022

_Darren Keith Reed   Julie Reed_

DARREN KEITH REED and JULIE REED

Date: 9-8-2022

Signature Page<br>Sale Contract Addendum

## **EXHIBIT 2**

## **Back-Up Bidder Agreement**

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

**OKLAHOMA REAL ESTATE COMMISSION**

*This is a legally binding contract; if not understood, seek legal advice from an attorney.*
***This form is recommended for use by only licensees who specialize in farm, ranch, and recreational land transactions***

# OKLAHOMA UNIFORM CONTRACT OF SALE OF REAL ESTATE
# FARM, RANCH, AND RECREATIONAL LAND

**CONTRACT DOCUMENTS.** The Contract is defined as this document with the following attachments(s):

**(check supplements as applicable)**

| | |
|---|---|
| ☑ Legal Description | ☐ Supplement |
| ☐ Accessories | ☐ Exhibit A |
| ☐ Rural Property Conventional Loan | ☐ Exhibit B |
| ☐ Seller Financing | ☑ Addendum _____ |
| ☐ Removal of Livestock | ☐ _____ |

**PARTIES.** THE CONTRACT is entered into between: <u>Gregory S. Milligan, in his capacity as Ch. 11 Trustee for Canadian River</u>
<u>Ranch LLC and Daryl G. Smith, owner of 90% undivided interest, and Darren K.&Julie Reed, owners 10% undivided interest</u>"Seller"
and <u>Roger C. Broach or assigns</u> "Buyer"

The Parties' signatures at the end of the Contract, which includes any attachments or documents incorporated by reference, with delivery to their respective Brokers, if applicable, will create a valid and binding Contract, which sets forth their complete understanding of the terms of the Contract. This agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors and permitted assigns. The Contract shall be executed by original signatures of the Parties or by signatures as reflected on separate identical Contract counterparts (carbon, photo, fax or other electronic copy). The Parties agree that as to all aspects of this transaction involving documents an electronic signature shall have the same force and effect as an original signature pursuant to the provisions of the Uniform Electronic Transactions Act, 12A, Oklahoma Statutes, Section 15-101 et seq. All prior verbal or written negotiations, representations and agreements are superseded by the Contract, which may only be modified or assigned by a further written agreement of Buyer and Seller.

**1. PURPOSE.** The undersigned Buyer hereby agrees to purchase from the undersigned Seller the following real property, to wit.

**2. PROPERTY.** The land, appurtenances, improvements, accessories and crops are collectively referred to as the "Property".

    **A. LAND.** The land situated in <u>McIntosh</u> County, Oklahoma, described as follows:
    <u>Property ID #s 0000-13-10N-14E-3-001-00 (160 acres); 0000-14-10N-14E-4-001-00 (159 acres);</u>
    <u>0000-23-10N-14E-1-002-00 (120 acres)</u>, **or as described on the attached Legal Description Supplement**, also known as (property address/zip code) _____
,

    **(Check one)**

    1) ☑ together with all of Seller's right, title, interest and estate in and to oil, gas and other minerals in and under the Land not previously reserved or conveyed of record, <u>The Seller does not warrant the amount of minerals owned or that the Seller owns any minerals whatsoever, unless specifically provided in the Special Provisions Paragraph of the Contract.</u>

    **OR**

    ☐ less and except; all oil, gas and other minerals related to the extraction of oil & gas and the following specific mineral interests, _____, in and under the Land; <u>all other unspecified minerals in and under the land will transfer with the surface rights.</u>

    2) together with all of the buildings, structures and improvements in, on or under the Land, and existing rural water tap rights, if any, including applicable certificates and all rights thereto (the "Improvements");

    3) together with all of the appurtenances belonging thereto and all of Seller's right, title and interest in and to all streets, alleys and other public ways adjacent to the Land;

    4) together with all rights to any Natural Gas supply agreements with Natural Gas mineral owners, lease holders or producers, if any. <u>The Seller does not warrant the future execution of these agreements;</u>

    5) subject to existing zoning ordinances, restrictions, easements, rights of way and _____.

    **B. IMPROVEMENTS.** The following items, if existing on the Property, unless otherwise excluded, shall remain with the Property at no additional cost to Buyer:

    1) <u>Farm, Ranch and Recreation Land Improvements.</u> The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, corrals; and: <u>Fences</u>
_____

    2) House(s). Number of houses on the property (Check One) : ☑ NONE or ☐ _____ ( number)

    3) <u>Residential Improvements, if any.</u> The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mailboxes, television antennas and satellite dish systems and equipment, heating and air conditioning units, security and fire detection equipment, wiring, plumbing

---

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
**OREC FARM, RANCH, AND RECREATIONAL SALE (1-1-2022)**

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

and light fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property; and: _____.

**C.** **ACCESSORIES.** The following items, if existing on the Property, unless otherwise excluded, shall remain with the Property at no additional cost to Buyer:

1) Farm, Ranch and Recreation Accessories. The following described related accessories (check items of *conveyed* accessories):
   ☐ portable buildings  ☐ hunting blinds  ☐ game feeders  ☐ livestock feeders and troughs
   ☐ irrigation equipment  ☐ submersible pumps  ☐ pressure tanks  ☐ fuel tanks if owned (propane, gasoline, diesel)
   ☐ corrals  ☐ chutes  ☑ gates  ☐ **See Accessories Supplement**.

2) Residential Accessories, if any. The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, controls for satellite dish systems, controls for garage door openers, entry gate controls, door keys, mail box,  mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs and _____.

**D.** **CROPS.** Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property. _____.

> **(Check One)** Grasses and trees ☐ are  ☑ are NOT considered crops in the Contract.

**E.** **EXCLUSIONS.** The following improvements, accessories and crops will be retained by Seller and excluded from this Contract: _____.

**3.** **TIME PERIODS SPECIFIED IN CONTRACT.** Time periods for Earnest Money Deposit, Proof of Funds, Investigations, Inspections and Reviews and Financing Supplement Agreement shall commence on <u>upon mutual execution</u> (Time Reference Date), regardless of the date the Contract is signed by Buyer and Seller. The day after the Time Reference Date shall be counted as day one (1). If left blank, the Time Reference Date shall be the third day after the last date of signatures of the Parties.

**4.** **TERMS**.

**A.** **PURCHASE PRICE.** Buyer shall pay for the Property the sum of ($ <u>658,500</u> ) (sum of B, C & D below) payable as follows:

**B.** **EARNEST MONEY.** The sum of $ <u>65,850</u> as Earnest Money, shall be deposited in the trust account of _____ or if left blank, the Listing Broker's trust account ☑ with submission of this contract or ☐ **within** _____ **days after** the day of the final signature(s) executing this Contract, to be applied on the purchase price and/or closing costs, if any, at the time of closing. If Buyer fails to deposit the Earnest Money as required by this Contract, Buyer will be in default.

**C.** **CASH AT CLOSING.** Cash portion of Purchase Price payable by Buyer $ <u>592,650</u>.

**D.** **LOAN FUNDING.** The sum of all financing described below (excluding any loan funding fee or mortgage insurance premium) is $ _____.

**E.** **ADJUSTED PURCHASE PRICE.** The Purchase Price (check one): ☐ **will** ☑ **will not** be adjusted based on the survey required by Paragraph 7A. If the Purchase Price is adjusted, the Purchase Price will be calculated on the basis of $ _____ per acre. If the Purchase Price is adjusted by more than _____%, either Party may terminate this Contract by providing written notice to the other Party within _____ days after the terminating Party receives the survey. If neither Party terminates this Contract or if the variance is _____% or less, the adjustment will be made to the amount in:

> **(Check One)** ☐ 4.C.  ☐ 4.D.  ☐ proportionately to 4.C. and 4.D.

**5.** **FINANCING.** The portion of the Purchase Price not payable in cash will be paid as follows (check applicable items below):

**A.** ☐ **CONVENTIONAL LOAN.** This Contract is subject to financing described in the attached **Convention Loan Supplement** for one or more third Party mortgage loans in the total amount of $ _____. (Excluding any loan funding fee or mortgage insurance premium).

**B.** ☐ **SELLER FINANCING.** As reflected on the attached **Seller Financing Supplement.**

**C.** ☑ **This Contract is "CASH ONLY" and is NOT subject to ANY FINANCING REQUIREMENTS.**

> **(Check One)** This Contract ☑ is subject to ☐ is NOT subject to verification of Buyer's  Proof of Funds below:

1) **Proof of Funds:** Buyer shall provide the following within three (3) days after the Time Reference Date in Paragraph 9:

   a. A letter of financial capabilities from a banking institution on bank letter head verifying that Buyer has the necessary cash or line of credit in an amount equal to or in excess of the Purchase Price herein.

   **OR**

   b. A copy of a Bank Statement showing sufficient funds to fulfill the Buyer's obligations of this Contract.

   c. Buyer hereby gives permission to the Seller and the Seller's Broker, if applicable, or representatives to contact the banking institution providing the letter of financial capabilities or the financial institution shown on the copy of a Bank Statement, to verify said information.

2) If Buyer does not provide proof of funds as indicated in 5.C.1) of this subparagraph, this Contract shall become null and void.

3) If banking or financial institution information provided can not be verified to the satisfaction of the Seller within two (2) business days after receipt the Seller may cancel this Contract with written notice by mail, photo, fax or electronic copy delivered to the Buyer as provided in the Notices Paragraph 27.

---

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

6. **TITLE EVIDENCE.** Seller, within _____ days (Ten (10) days if left blank) prior to Closing Date, agrees to make available to Buyer Title Evidence as follows:

    **A. Abstracting**

       1) Seller shall furnish a complete and current surface-rights-only Abstract of Title, certified by an Oklahoma-licensed and bonded abstract company;

         **OR**

         A copy of Seller's existing owner's title insurance policy issued by a title insurer licensed in the State of Oklahoma together with a supplemental and current surface-rights-only certified by an Oklahoma-licensed and bonded abstract company, and

       2) A current Uniform Commercial Code Search Certificate.

    **B. Required Form of Title Evidence:**

       **(Check one)**

       1) ☐ <u>Abstract of Title</u> (unless otherwise specified in the Special Provisions Paragraph 16).

         a. Seller, at **Seller's Expense** shall pay all abstracting pursuant to subparagraph 6(A).

         b. Buyer shall pay, at **Buyer' expense**, the attorney's Title Opinion, not for purposes of Title Insurance, and all other costs associated with obtaining a Mortgagee's Title Insurance Policy, if required by the Lender(s).

       2) ☑ <u>Commitment for Owner's Title Insurance Policy</u> (unless otherwise specified in Closing and Funding Paragraph 14).

       3) <u>**Access Notice**</u>: Broker advises Buyer to determine physical and legal access availability to their satisfaction.

    **C. (Check appropriate Seller's and Buyer's Expense)**

    Seller's  Buyer's

    Expense:  Expense:  (Boxes NOT checked are NOT APPLICABLE)

| Seller's | Buyer's | |
|---|---|---|
| ☐ | ☑ | The premium for such surface-rights-only Owner's Title Policy |
| ☐ | ☐ | All surface-rights-only abstracting (prior to closing fees) |
| ☐ | ☐ | A Mortgage Inspection Report (a representation of the boundaries of the Property and the improvements thereon), if required by Lender(s) |
| ☐ | ☑ | The attorney's fees for examination of the abstract (Base or Supplemental) as required by Title Company |
| ☐ | ☑ | The final title report and/or recertification fee as required by Title Company (post-closing fees) |
| ☐ | ☑ | The Mortgagee's Title Insurance Policy, if any |

7. **SURVEY AND TITLE REVIEW.**

    **A. SURVEY.** The survey or boundary (Pin Stake) survey must be made by a surveyor acceptable to the Title Company and any Lender. (check one box only):

       1) ☐ Within _____ days after the **Time Reference Date** of this Contract, Seller, at Seller's expense, shall furnish a new survey to Buyer.

       2) ☐ Within _____ days after the **Time Reference Date** of this Contract, Buyer, at Buyer's expense, shall obtain a new survey.

       3) ☐ Within _____ days after the **Time Reference Date** of this Contract, Seller shall furnish Seller's existing survey of the Property to Buyer and the Title Company, along with Seller's affidavit acceptable to the Title Company for approval of the survey. The existing Survey (check one): ☐ will  <u>☐ will not</u> be recertified to a date subsequent to the **Time Reference Date** of this Contract at the expense of (check one): ☐ Buyer ☐ Seller. If the existing survey is not approved by the Title Company or Buyer's Lender, a new survey will be obtained at the expense of (check one): ☐ Buyer ☐ Seller no later than _____ days (three (3) days if left blank) prior to the Closing Date.

       4) ☑ Survey is NOT REQUIRED (see subparagraph 7.E.4)

       5) ☐ Other: _____.

    **B. OBJECTIONS.** Buyer shall have _____ days (ten (10) days if left blank) after receipt to examine the Title Evidence and to deliver Buyer's objection to Title. In the event the Title Evidence is not made available to Buyer within ten (10) days prior to Closing Date, said Closing Date shall be extended to allow Buyer the ten (10) days from receipt to examine the Title Evidence.

    **C. <u>SELLER TO CORRECT ISSUES WITH TITLE (IF APPLICABLE), POSSIBLE CLOSING DELAY.</u>** Upon receipt by Seller, or in care of Seller's Broker, if applicable, of any title requirements reflected in an Attorney's Title Opinion or Title Insurance Commitment, based upon the standard of marketable title set out in the Title Examination Standards of the Oklahoma Bar Association, the Parties agree to the following:

       1) At Seller's option and expense, may cure title requirements identified by Buyer;

       2) Delay Closing Date for <u>90</u> days (thirty (30) days if left blank), or a longer period as may be agreed upon in writing, to allow Seller to cure Buyer's title requirements. In the event Seller cures Buyer's objection prior to the delayed Closing Date, Buyer and Seller agree to close within five (5) days of notice of such cure. In the event that title requirements are not cured within the time specified in this Paragraph, the **<u>Buyer may cancel the Contract and receive a refund of Earnest Money</u>**; and

       3) Buyer agrees to accept title subject to: (a) utility easements serving the property, (b) building and use restrictions of record, (c) set back and building lines, (d) zoning regulations, and (e) reserved and severed mineral rights, which shall not be considered objections for requirements of Title.

    **D. SURFACE LEASES.** Seller shall provide Buyer with copies of existing written leases and give <u>written notice</u> of oral leases within _____ days (three [3] days if left blank) of the Time Reference Date. **If there are NO existing Leases this paragraph is not applicable.**

       1) If Seller **does not provide** copies of existing said written leases or give written notice of oral leases within the three (3) days after the Time Reference Date the provisions of Paragraph 20 shall apply. The Seller shall be in default of this Agreement.

---

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

OREC FARM, RANCH, AND RECREATIONAL SALE (1-1-2022)        **TRUSTEE EXHIBIT 1**  **Page 3 of 8**

Page 3 of 19

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

2) This Contract is subject to Buyer review, acceptance and approval of said leases, if any, <u>within five (5) days of the receipt of said leases.</u>

**3) If the Buyer fails to give notice of objection to the leases, as above, the leases shall be deemed acceptable to the Buyer.**

4) The following Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title:_____
_____ .

**E. BROKER NOTICES.**

1) <u>Abstract or Title Policy.</u>  Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's election or Buyer should be furnished with or obtain a Title Policy.  If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer' choice due to the time limitations on Buyer' right to object in subparagraph 7.B.

2) <u>Annexation.</u>  If the Property is located outside the limits of a municipality, Seller notifies Buyer that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality.  Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction.  To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

3) <u>Unimproved Property Located in the Area of a Utility Service Provider.</u>   If the Property is located in an area of a utility service provider and the Property does not receive water or sewer service from the utility service provider on the date the Property is transferred, the Broker advises Buyer to obtain costs estimates necessary to utilize said services.

4) <u>Exterior Fences and Roadways.</u>  Broker advises that exterior fences and roadways may or may not be located on a surveyed boundary.

5) <u>Water Rights and Permits.</u>  Contact the Oklahoma Water Resources Board.

6) <u>Oil & Gas and other Mineral Rights.</u>  Contact the Oklahoma Corporation Commission.

7) <u>Mining Operations and Permits.</u>  Contact Oklahoma Department of Mines.

**8.   ACCEPTANCE OF PROPERTY.**  Buyer, upon accepting Title or transfer of possession of the Property, shall be deemed to have accepted the Property in its then condition. No warranties, expressed or implied, by Sellers, or Seller's Broker and/or their associated licensees, with reference to the condition of the Property, shall be deemed to survive the Closing.

**9.   INSPECTIONS, ACCESS AND UTILITIES.**  - See para. 7 of Addendum

~~A.   The Buyer agrees and acknowledges that Seller, Seller's Broker and their licensed associates, are not experts regarding the condition of the~~ Property. No representations, warranties, or guarantees regarding the condition of the Property, or environmental hazards, are expressed or implied except as may be specified by Seller in the Special Provisions Paragraph 16.

**B.**   Buyer shall have _____ days (ten (10) days if left blank) after the **Time Reference Date** to complete any investigations, inspections, and reviews by inspectors selected by Buyer and licensed by the state or otherwise permitted by law to make inspections.  Seller shall permit Buyer and Buyer's Broker, if applicable, access to the Property at reasonable times.  Seller shall pay for turning on existing utilities for inspections. **Notice.** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.  The Broker advises Buyer to obtain Termite, Home, Radon Gas, Mold, Septic, Well and Environmental Inspections.

**C.**   Buyer, at Buyer's expense, shall have the right to enter upon the Property, together with Buyer's representative(s), independent  contractor(s) and/or any other person Buyer deems qualified, to conduct any and all investigations, inspections, tests, studies and reviews.  If the property and buildings thereon are secured by locks, the Seller will provide access within 24 hours of a written request. Excepting only the negligence of Seller or a condition caused or permitted by Seller, Buyer shall indemnify, protect, defend and hold Seller harmless from and against any and all claims, demands, losses, liabilities, costs, fees and expenses (including attorney's and consultant's fees) arising out of or related to Buyer's entry onto the Property in connection with any testing or investigation performed pursuant to this Contract. Buyer's investigations, inspections and reviews may include, but may not be limited to, the following:
**1) Flood, Storm Run-off Water, Storm Sewer Back-up or Water History**
**2) Roof, Structural members, roof decking, coverings and related components**
**3) Hazard Insurance**
**4) Structural Inspection**
**5) Use of Property** (property use restrictions, building restrictions, easements, restrictive covenants, zoning ordinances and regulations)
**6) Square Footage/Acreage** (buyer shall not rely on any quoted square footage and/or acreage and shall have the right to measure the property)
**7) Home Inspection (**if applicable)

**D.   ENVIRONMENTAL MATTERS.**  Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the property.  This offer ☐ **is** ☑ **is not** contingent upon the Buyer, at Buyer's cost, obtaining an acceptable Environmental Site Assessment Report within **the time frame set in the Inspection, Access and Utilities subparagraph 9.B**.  If the Environmental Site Assessment Report is not obtained in the specified time period, this contingency shall be considered waived by the Buyer.

**E.   EQUIPMENT AND SYSTEMS.** Within _____ days (ten (10) if left blank) from the **Time Reference Date** of this Contract, Buyer, at Buyer's expense, shall have the right to inspect all fixtures and equipment relating to plumbing, heating and cooling, electrical systems and any other equipment or systems and shall report any item not in normal working order, in writing, to Seller, in care of Seller's Broker, if applicable, including a copy of the estimated cost to repair such items. If the total estimated cost to Seller of such repairs and replacement required by this paragraph exceeds $_____, Seller shall have the option to cancel and terminate this Contract within forty-eight (48) hours of being advised of such estimate unless Buyer agrees, in writing, to pay repair and replacement costs in excess of such amount.

**F.   WOOD DESTROYING INSECTS INSPECTION.** Buildings on property, if any.  Within _____ days (ten (10) if left blank) from the **Time Reference Date** of this Contract, Buyer shall have the right to have the Property inspected by Buyer's choice of a licensed exterminating company and deliver to Seller, in care of Seller's Broker, if applicable, an infestation report. The expense of such report shall be the Buyer's expense. In the event the report shows visible infestation or visible damage, Seller agrees, at Seller's expense, to treat and/or repair same, provided the estimated cost to cure such infestation or damage does not exceed $_____. If the estimated cost exceeds

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

**OREC FARM, RANCH, AND RECREATIONAL SALE  (1-1-2022)**

**TRUSTEE EXHIBIT 1**

Farm and Ranch Contract: Canadian River Ranch - 439 Acre Parcel, Lenna Rd

Property Identifier

~~such amount, Seller shall have the option to cancel and terminate this Contract within forty-eight (48) hours of being advised of such estimate~~ unless Buyer agrees, in writing, to pay any costs in excess of such amount.

**G.** **BUYER'S RIGHT TO OBJECT OR CANCEL.** If, upon Buyer's investigation, inspections and reviews, the Buyer shall give written notice to the Seller of:

1) Removal of Contingencies, which indicates acceptance of the reports with NO OBJECTIONS.

   **OR**

   Objections to items in the report along with a copy of the report(s) by delivery to the Seller, in care of Seller's Broker, if applicable, within the respective time frames. The Seller shall be given _____ days (three (3) days if left blank) to cure the objections at the Seller's expense or enter into a written agreement with the Buyer to have a dollar amount to be adjusted at closing, as a Seller's expense.

2) If the Seller does not cure the objections and does not enter into a written agreement with the Buyer to have a dollar amount to be adjusted from the proceeds at closing as a Seller's expense within the respective time frames, the Buyer may cancel and terminate this Contract and receive a refund of the earnest money by delivering written notice to the Seller, in care of Seller's Broker, if applicable, as provided in Paragraph 27 within twenty-four (24) hours of the expiration of the time period specified in this provision.

**H.** **EXPIRATION OF BUYER'S RIGHT TO CANCEL CONTRACT.** Failure of the Buyer to complete one of the following within the respective time frames shall constitute acceptance of the Property regardless of its condition:

1) Perform any Investigations, Inspections or Reviews.
2) ~~Deliver a written list of objections or items to be treated, repaired and replaced.~~

**10.** **SELLER'S DISCLOSURES.** Except as otherwise disclosed in this Contract, **Seller has no knowledge of the following** (check as applicable):

**A.** ☐ Flooding of the Property which has had a material adverse effect on the use of the Property.
**B.** ☐ Pending or threatened litigation, condemnation, or special assessment affecting the Property.
**C.** ☐ Dumpsite, landfill, or underground tanks or containers now or previously located on the Property.
**D.** ☐ Wetlands, as defined by federal or state law or regulation, affecting the Property.
**E.** ☐ Threatened or endangered species or their habitats affecting the Property.
**F.** ☐ Other:_____.

**11.** **GOVERNMENT PROGRAMS**: The Property is subject to the government programs listed below or on the attached exhibit:_____

_____.
Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the Parties which will survive Closing.

**12.** **RESIDENTIAL PROPERTY CONDITIONS.**

> ☑ Check if there is NO residential house(s) on the Property. (If checked disregard this paragraph).

**A.** **RESIDENTIAL PROPERTY CONDITION DISCLOSURE.** No representations by Seller regarding the condition of Property or environmental hazards are expressed or implied, other than as specified in the Oklahoma Residential Property Condition Disclosure Statement ("Disclosure Statement") or the Oklahoma Property Condition Disclaimer Statement ("Disclaimer Statement"), if applicable. A real estate licensee has no duty to Seller or Buyer to conduct an independent inspection of the Property and has no duty to independently verify accuracy or completeness of any statement made by Seller in the Disclosure Statement and any amendment or the Disclaimer Statement.

**B.** **LENDER REQUIRED REPAIRS AND TREATMENTS**. Unless otherwise agreed in writing, neither Party is obligated to pay for lender-required repairs, which includes treatment for wood destroying insects. If the Parties do not agree to pay for the lender required repairs or treatments, this Contract will terminate and the Earnest Money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds _____% of the Purchase Price, Buyer may terminate this Contract and the Earnest Money will be refunded to Buyer.

**C.** **RESIDENTIAL SERVICE CONTRACTS**. Buyer may purchase a residential service contract from a residential service company licensed by the state. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential Contract in an amount not to exceed $_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in the state.

**13.** **BROKER'S FEES.** All obligations of the Parties for payment of brokers' fees are contained in separate agreements. All Parties herein direct the Listing and Selling Brokers to provide the Closing Agent with copies of the compensation agreements between the Buyer and Sellers and their respective Brokers to facilitate payment to the respective Brokers at the time of closing or as Buyer and Seller and their respective Broker(s), if applicable, agree in writing on the attached _____.

**14.** **CLOSING and FUNDING.**

A. The closing of the sale will be on or before <u>See Special Provisions</u> 20 _____, or upon delayed closing pursuant to the Survey and Title Review Paragraph 7.C.2) whichever date is later (Closing Date). If either Party fails to close the sale by the Closing Date, the non-defaulting Party may exercise the remedies contained in the Default Paragraph 20.

B. No Fault Closing Delay: Buyer and Seller agree to a closing date extension of up to _____ days (five (5) days if left blank) if closing is delayed due to the abstracting company, closing company, lender or title company not under the control of the Buyer or Seller.

C. At closing:

1) Seller shall execute and deliver a ~~general~~ warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in the Survey and Title Review Paragraph 7.C.3) an assignment of Leases, and furnishes tax statements or certificates showing no delinquent taxes on the Property. *[handwritten: special]*

2) Buyers shall pay the Purchase Price in good funds acceptable to the escrow agent.

3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this Contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy.

4) Upon Closing, the existing abstract of title, if owned by Seller, shall become the property of Buyer.

D. All covenants, representations and warranties in this Contract survive closing.

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC FARM, RANCH, AND RECREATIONAL SALE (1-1-2022)

TRUSTEE EXHIBIT 1    Page 5 of 8
Page 5 of 19

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

**15. POSSESSION.** Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted (check one): ☑ upon closing and funding ☐ according to a written lease required by the Parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the Parties. Consult your insurance agent prior to change of ownership or possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the Parties to economic loss.

**16. SPECIAL PROVISIONS.** <u>The terms and conditions set forth in the Addendum for the Stalking Horse Bidder Terms and Conditions to be attached hereto are hereby incorporated in this Contract in their entirety, which Addendum may not become part of this Contract until the Bid Procedure Order has been issued by the Bankruptcy Court</u>

**17. SETTLEMENT AND OTHER EXPENSES.**

  **A.** The following expenses must be paid at or prior to closing:

    1) <u>Expenses payable by Seller</u> (Seller's Expenses).

      a. Releases of existing liens, including prepayment penalties and recording fees; release of Seller loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; title expenses in the Title Evidence subparagraph 6.B. and other expenses payable by Seller under this Contract.

      b. Seller shall also pay an amount not to exceed $ <u>0.00</u> to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, state-coordinated veteran's housing assistance programs, or other governmental loan programs; Buyer' prepaid items; other Buyer' expenses.

    2) <u>Expenses payable by Buyer</u> (Buyer's Expenses).

      a. Loan origination, discount, buy-down, and commitment fees (Loan Fees).

      b. Termite Inspection fees; Property Inspection fees; Appraisal fees; loan application fees; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; courier fee, repair inspection, underwriting fee and wire transfer; expenses incident to any loan; title expenses in subparagraph 6.B. and other expenses payable by Buyer under this Contract.

  **B.** Buyer shall pay Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the Lender.

  **C.** If any expense exceeds an amount expressly stated in this Contract for such expense to be paid by a Party, that Party may terminate this Contract unless the other Party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, state-coordinated veteran's housing assistance programs or other governmental loan program regulations.

**18. PRORATIONS OF TAXES.** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. If taxes for the current year vary from the amount prorated at closing, the Parties shall adjust the proration when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.

**19. CASUALTY LOSS.** If any part of the Property is damaged or destroyed by fire or other casualty after the Time Reference Date of this Contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event, by the Closing Date. If Seller fails to do so due to factors beyond Seller' control, Buyer may: (a) terminate this Contract and the Earnest Money will be refunded to Buyer; (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary; or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller obligations under this paragraph are independent of any obligations of Seller under the Acceptance of Property Paragraph 8.

**20. DEFAULT.** Seller or Buyer will be in default if either fails to comply with any material covenant, agreement, or obligation within the time limits required by this Contract. **TIME IS OF THE ESSENCE IN THIS CONTRACT.**

  **A.** If Buyer fails to comply with this Contract, Buyer will be in default, and Seller may:

    1) enforce specific performance, seek such other relief as may be provided by law, or both; or

    2) terminate this Contract and receive the Earnest Money as liquidated damages, thereby releasing both Parties from this Contract.

  **B.** If, due to factors beyond Seller' control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may:

    **1)** <u>**extend the time for performance up to 15 days and the Closing Date will be extended as necessary;**</u> or

    2) terminate this Contract as the sole remedy and receive the Earnest Money.

  If Seller fails to comply with this Contract for any other reason, Seller will be in default and Buyer may: (a) enforce specific performance, seek such other relief as may be provided by law, or both; or (b) terminate this Contract and receive the Earnest Money, thereby releasing both Parties from this Contract.

**21. DISCLAIMER AND INDEMNIFICATION.** It is expressly understood by Seller and Buyer that Listing Broker and its affiliated licensees and Selling Broker and its affiliated licensees do not warrant the present or future crop productivity including grasses, water availability above or below ground, size by square footage or acreage, condition, structure, or structure systems of the Property or any building, nor do they hold themselves out to be experts in quality, design and construction. Seller and Buyer shall hold the Listing Broker and its affiliated licensees and Selling Broker and its affiliated licensees harmless in the event of losses, claims or demands by or against Seller or Buyer. This paragraph shall survive the Closing.

**22. INCURRED EXPENSES AND RELEASE OF EARNEST MONEY.**

  **A. INCURRED EXPENSES.** Buyer and Seller agree that any expenses, incurred on their behalf, shall be paid by the Party incurring such expenses and shall not be paid from earnest money.

  **B. RELEASE OF EARNEST MONEY.** In the event a dispute arises prior to the release of earnest money held in escrow, the escrow holder shall retain said earnest money until one of the following occur:

    1) A written release is executed by Buyer and Seller agreeing to its disbursement;

    2) Agreement of disbursement is reached through Mediation;

    3) Interpleader or legal action is filed, at which time the earnest money shall be deposited with the Court Clerk; or

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

OREC FARM, RANCH, AND RECREATIONAL SALE  (1-1-2022)

**TRUSTEE EXHIBIT 1**
**Page 6 of 19**

Page 6 of 8

Canadian River Ranch – 439 Acre Parcel, Lenna Rd

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

4) The passage of thirty (30) days from the date of final termination of the Contract has occurred and options 1), 2) or 3) above has not been exercised; Broker escrow holder, at Broker's discretion, may disburse earnest money. Such disbursement may be made only after fifteen (15) days written notice to Buyer and Seller at their last known address stating the escrow holder's proposed disbursement.

5) In the event Earnest Money is held in escrow at a title company, the Earnest Money **may only** be released pursuant to paragraph 22(B)(1), (2), or (3).

23. **REPRESENTATIONS**.

A. Seller represents that as of the Closing Date: (a) there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing payment of any loans assumed by Buyer, and (b) assumed loans will not be in default. If any representation of Seller in this Contract is untrue on the Closing Date, Buyer may terminate this Contract and the Earnest Money will be refunded to Buyer.

B. Buyer represents that they have **NOT** relied on any quoted acreage and/or square footage from any source and have had the right to measure the land or buildings on the Property to their satisfaction prior to closing.

24. **TAX DEFERRED EXCHANGE 1031**. In conformance with Section 1031 of the Internal Revenue Code, it may be the intention of the Seller or Buyer or both to effect a tax-deferred exchange. Either the Seller or Buyer or both may assign his/ her rights in the contract to a Qualified Intermediary for the purpose of effecting a tax-deferred exchange. The Parties agree to cooperate and execute the necessary documents to allow either or both Parties to effect such exchange at no additional cost or liability to the other Party. However, any warranties that may be expressed in this contract shall remain and be enforceable between the Parties executing this document.

25. **MEDIATION**. Any dispute arising with respect to the Contract shall first be submitted to a dispute resolution mediation system servicing the area in which the Property is located. Any settlement agreement shall be binding. In the event an agreement is not reached, the Parties may pursue legal remedies as provided by the Contract.

26. **NON-FOREIGN SELLER**. If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

27. **NOTICES**. Any notice provided for herein shall be given to the Parties in writing, through their respective broker, if applicable, and sent by: (a) personal delivery, (b) United States mail, postage prepaid, or (c) by facsimile or other electronic means, to the Escrow Agent, as defined in Terms Paragraph 4.B. herein.

28. **BROKER RELATIONSHIP DISCLOSURE/COMMISSION**. Buyer acknowledges and confirms that the Broker providing brokerage services to the Buyer has described and disclosed their duties and responsibilities to the Buyer prior to the Buyer signing this Contract.

☐ (Applicable for in-house transactions only) Buyer acknowledges and confirms that the broker is providing brokerage services to both Parties to the transaction prior to the Parties signing this Contract.

Seller acknowledges and confirms that the Broker providing brokerage services to the seller has described and disclosed their duties and responsibilities to the seller prior to the seller signing this Contract.

☐ (Applicable for in-house transactions only) Seller acknowledges and confirms that the broker is providing brokerage services to both Parties to the transaction prior to the Parties signing this Contract.

Seller further acknowledges receipt of Estimate of Costs associated with this transaction and that a Residential sales Contract information Booklet has been made available to the seller in print, or at www.orec.ok.gov.

29. **DELIVERY OF ACCEPTANCE OF OFFER OR COUNTEROFFER**. The Buyer and Seller authorize their respective Brokers, if applicable, to receive delivery of an accepted offer or counteroffer and any related addenda or documents.

30. **EXECUTION BY PARTIES**.

AGREED TO BY BUYER:

On This Date _____7/14/2022_____

Roger C. Broach
Buyer's Printed Name

_____
Buyer's Signature

_____
Buyer's Printed Name

_____
Buyer's Signature

_____
Buyer's Printed Name

_____
Buyer's Signature

_____
Buyer's Printed Name

_____
Buyer's Printed Name

_____
Buyer's Signature

_____
Buyer's Printed Name

_____
Buyer's Signature

_____
Buyer's Printed Name

_____
Buyer's Signature

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

OREC FARM, RANCH, AND RECREATIONAL SALE (1-1-2022)                                    Page 7 of 8

TRUSTEE EXHIBIT 1
Page 7 of 19

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>
                                                          Property Identifier

**TERMINATION OF OFFER.** The above Offer shall automatically terminate on _____ at _____, unless withdrawn prior to acceptance or termination.

**AGREED TO BY SELLER:** Seller accepts the foregoing offer and shall sell the above described Property on the terms and conditions herein stated and shall pay the Listing Broker the compensation previously agreed upon in the Listing Agreement or other agreement of employment between them, which shall survive this Contract, for professional services rendered and to be rendered in this transaction. *Seller further acknowledges receipt of Seller' Estimate of Expenses in regard to this transaction and the Confirmation and Acknowledgement of Disclosures prior to Seller's Acceptance.*

On This Date _____

 Gregory S. Milligan, Chapter 11 Trustee
_____          _____
Seller's Printed Name                                                      Seller's Printed Name

_____          _____
Seller's Signature                                                           Seller's Signature

 Darren K. Reed
_____          _____
Seller's Printed Name                                                      Seller's Printed Name

_____          _____
Seller's Signature                                                           Seller's Signature

 Julie Reed
_____          _____
Seller's Printed Name                                                      Seller's Printed Name

_____          _____
Seller's Signature                                                           Seller's Signature

## EARNEST MONEY RECEIPT AND INSTRUCTIONS

Receipt of $_____  ☐ Check  ☐ Cash as Earnest Money Deposit, to be deposited in accordance with the terms and conditions of the Terms Paragraph 4.B. Broker(s) acknowledges receipt of Earnest Money and Listing Broker, if applicable, shall deposit said funds in accordance with Paragraph 4 of this Contract. If deposited in an escrow account other than the Listing Broker, the Listing Broker, if applicable, shall provide a copy of receipt to the Selling Broker.

**SELLING BROKER/ASSOCIATE:**                         **LISTING BROKER/ASSOCIATE:**

Kelly Hurt 155768
_____          _____
OREC Associate License Number                              OREC Associate License Number

Land Doctors
_____          _____
OREC Company Name                                              OREC Company Name

175234
_____          _____
OREC Company License Number                              OREC Company License Number

29848 Co Rd 1480, Allen, OK 74825
_____          _____
Company Address                                                    Company Address

580-421-7512
_____          _____
Company Phone Number                                         Company Phone Number

 Kelly@LandDoctors.com
_____          _____
Associate Email                        Date                       Associate Email                        Date

---

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

**OREC FARM, RANCH, AND RECREATIONAL SALE (1-1-2022)**          **TRUSTEE EXHIBIT 1**    Page 8 of 8

Farm and Ranch Contract: <u>Canadian River Ranch - 439 Acre Parcel, Lenna Rd</u>

Property Identifier

**TERMINATION OF OFFER.** The above Offer shall automatically terminate on _____ at _____, unless withdrawn prior to acceptance or termination.

**AGREED TO BY SELLER:** Seller accepts the foregoing offer and shall sell the above described Property on the terms and conditions herein stated and shall pay the Listing Broker the compensation previously agreed upon in the Listing Agreement or other agreement of employment between them, which shall survive this Contract, for professional services rendered and to be rendered in this transaction. *Seller further acknowledges receipt of Seller' Estimate of Expenses in regard to this transaction and the Confirmation and Acknowledgement of Disclosures prior to Seller's Acceptance.*

On This Date _____

Gregory S. Milligan, Chapter 11 Trustee

Seller's Printed Name

Seller's Signature

Darren K. Reed

Seller's Printed Name

Seller's Signature

Julie Reed

Seller's Printed Name

Seller's Signature

_____
Seller's Printed Name

_____
Seller's Signature

_____
Seller's Printed Name

_____
Seller's Signature

_____
Seller's Printed Name

_____
Seller's Signature

## EARNEST MONEY RECEIPT AND INSTRUCTIONS

Receipt of $_____ ☐ Check ☐ Cash as Earnest Money Deposit, to be deposited in accordance with the terms and conditions of the Terms Paragraph 4.B. Broker(s) acknowledges receipt of Earnest Money and Listing Broker, if applicable, shall deposit said funds in accordance with Paragraph 4 of this Contract. If deposited in an escrow account other than the Listing Broker, the Listing Broker, if applicable, shall provide a copy of receipt to the Selling Broker.

**SELLING BROKER/ASSOCIATE:**

Kelly Hurt 155768
OREC Associate License Number

Land Doctors
OREC Company Name

175234
OREC Company License Number

29848 Co Rd 1480, Allen, OK 74825
Company Address

580-421-7512
Company Phone Number

Kelly@LandDoctors.com
Associate Email                    Date

**LISTING BROKER/ASSOCIATE:**

_____
OREC Associate License Number

_____
OREC Company Name

_____
OREC Company License Number

_____
Company Address

_____
Company Phone Number

_____
Associate Email                    Date

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

**OREC FARM, RANCH, AND RECREATIONAL SALE (1-1-2022)**

TRUSTEE EXHIBIT 1  Page 8 of 8
Page 9 of 19

Farm and Ranch Contract: Canadian River Ranch - 439 Acre Parcel, Lenna Rd

LEGAL DESCRIPTION

| Property ID | Legal Description |
|---|---|
| 0000-13-10N-14E-3-001-00 | SW/4 Section 13 10N 14E (160 Acres) |
| 0000-14-10N-14E-4-001-00 | SE/4 Section 14 10N 14E less and except 1 acre beginning SE/C SE SE N208.71' W208.71' S208.71' E208.71' POB SEC 14-10-14 (159 Acres) |
| 0000-23-10N-14E-1-002-00 | E/2 NE/4 and NE/4 SE/4 Section 23 10N 14E (120 acres) |

## ADDENDUM FOR STALKING HORSE BIDDER TERMS AND CONDITIONS

THIS ADDENDUM FOR STALKING HORSE BIDDER (this "**Addendum**") is made a part of that certain Oklahoma Uniform Contract of Sale of Real Estate - Farm, Ranch and Recreational Land (the "**Contract**") by and between Gregory S. Milligan, in his capacity as Chapter 11 Trustee (the "**Trustee**") for the chapter 11 cases of Canadian River Ranch, LLC and Daryl Greg Smith (together, the "**Debtors**"), owners of certain interests in the real property described therein (the "**Property**"), and Darren Keith and Julie Reed ("**Reed**"), owners of a 10% undivided interest in certain portions of the Property, together with the Trustee ("**Sellers**"), and Roger C. Broach or his assigns ("**Buyer**").  In addition to the obligations of Sellers and Buyer contained in the Contract, Sellers and Buyer hereby agree as follows:

Reference is hereby made to that certain (i) Trustee's Motion for (I) Order Approving: (A) Bid Procedures, Including Approval of Stalking Horse Bidder; (B) Notice of Auction and Sale Hearing; and (C) Related Relief, and (II) Order: (A) Approving the Sale of Real Estate Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f), (h) and (m), 365, and 503; and (B) Granting Related Relief filed by the Trustee (the "**Bid Procedures Motion**") [D.E. __] filed on [__], 2022 in the United States Bankruptcy Court for the Western District of Texas, Waco Division (the "**Bankruptcy Court**"), and (ii) Order Granting the Bid Procedures Motion (the "**Bid Procedures Order**") [D.E. __].  The Bid Procedures Motion also sought to establish (i) an auction (the "**Auction**"), (ii) a hearing (the "**Stalking Horse Hearing**") to approve Sellers' selection of a stalking horse purchaser ("**Stalking Horse Purchaser**") and provision of bid protections thereto, if any, and (iii) a final hearing (the "**Sale Hearing**") to approve the sale of the Property.  All capitalized terms used herein and not otherwise defined shall have the same meaning as ascribed to them in the Bid Procedures Motion and Bid Procedures Order.

Upon both (i) the full execution of the Contract, and (ii) the Bankruptcy Court's entry of an order ("**Stalking Horse Approval Order**") (a) approving the Contract and (b) unconditionally establishing Buyer as the Stalking Horse Purchaser (whether or not Buyer is the actual eventual purchaser of the Property, or is entitled, instead, to the "Break Up Fee" (as defined below)) and a Qualified Bidder, a valid and binding contract shall exist.

1.      TERM; CONTRACT APPROVAL; BID PROTECTIONS:

(a)      The "**Effective Date**" of the Contract shall be the first business day after the entry of the Stalking Horse Approval Order.  The parties hereto understand, acknowledge and agree that, upon entry of the Stalking Horse Approval Order, the parties shall abide by the "Bid Protections" (as defined below).

(b)      As used herein, "**Bid Protections**" means that if Buyer is designated as the Stalking Horse Purchaser and thereafter, as a result of the Auction process whereby other potential buyers are permitted to bid to purchase the Property, a person other than Buyer is selected to purchase the Property (such person, the "**Successful Bidder**") pursuant to an order entered by the Bankruptcy Court (the "**Sale Order**"), then Buyer shall receive a fee (the "**Break Up Fee**") equal to the sum of (i) an amount equal to two percent (2.0%) of the Purchase Price (as defined in the Contract), plus (ii) the amount of actual, out-of-pocket expenses incurred by Buyer in the negotiation of the Contract, up to a maximum amount of Ten Thousand and 00/100 Dollars ($10,000.00) for reimbursement of actual expenses incurred in connection with Buyer's pursuit of the purchase of the Property, which Break Up Fee shall be payable from the sale proceeds at the closing of the sale to the Successful Bidder.

2.      PROPERTY:  Sellers agree to sell to Buyer and Buyer agrees to purchase from Sellers the Property. Sellers and Buyer acknowledge and agree that the legal description for the Property technically may be legally insufficient for the purpose of supporting an action for enforcement of the Contract. Because the

4868-1195-7541.6

parties desire to execute the Contract to provide for the right of enforcement, Sellers and Buyer agree that: (i) they are experienced in transactions of this nature; (ii) they are familiar with the location of the Property; and (iii) each party waives any and all claims of an insufficient legal description, including, but not limited to, any and all claims under the Statute of Frauds.

3.      TITLE:  The title to the Property shall be free and clear of liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363(f) of the United States Bankruptcy Code,  subject only to (i) Section 7.C. of the Contract and (ii) an exception in the event that the Closing occurs before the Sale Order has become a Final Order. For purposes hereof, "**Final Order**" shall mean with respect to the Sale Order that (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing (collectively, "**Appeal**") has expired and no Appeal has been timely filed, or (b) any Appeal that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further Appeal has been or can be taken or granted.

4.      PURCHASE PRICE:  The total purchase price for the Property shall be as set forth in Section 4.A. of the Contract (as may be adjusted upward following the Auction, the "**Purchase Price**").  Buyer shall deposit with the escrow agent the earnest money as more particularly set forth in Section 4.B. of the Contract (the "**Earnest Money**").

5.      CLOSING DATE:  The closing of the Contract ("**Closing**") shall take place remotely on the earlier of (i) September 27, 2022, and (ii) no later than three (3) calendar days after the Sale Order becomes a Final Order, subject to any delay of Closing as provided in Section 7.C. of the Contract. For the avoidance of doubt, if Buyer is not the Successful Bidder at the Auction, the provisions of Section 10 herein will control the disposition of the Earnest Money and obligation under this Section 5.

6.      INSPECTION:  Buyer may not perform any intrusive testing of the Property.  Buyer shall indemnify Sellers against all losses, damages, expenses, and claims that may arise by reason of any entry by Buyer or any agent, employee or contractor of Buyer into and upon and testing of the Property pursuant to this Section and shall repair any damage to the Property caused by such entry.

7.      INSPECTIONS/AS-IS, WHERE-IS.  Buyer has previously inspected the Property and, by executing the Contract, affirms that it has approved all aspects of the Property.  It is understood that Buyer will be relying solely on its independent inspections and evaluations of the Property in determining the Property's fitness for Buyer's intended use.  The Contract is an arms-length contract between the parties hereto.  THE PURCHASE PRICE WAS BARGAINED FOR ON THE BASIS OF AN "AS-IS, WHERE-IS, WITH ALL FAULTS" TRANSACTION AND REFLECTS THE CONTRACT OF THE PARTIES THAT THERE ARE NO REPRESENTATIONS, DISCLOSURES, OR EXPRESS OR IMPLIED WARRANTIES, EXCEPT THOSE IN THE CONTRACT AND THE CLOSING DOCUMENTS. AT CLOSING, BUYER WILL ACCEPT THE PROPERTY IN ITS THEN CURRENT CONDITION AT CLOSING.  BUYER IS NOT RELYING ON ANY REPRESENTATIONS, DISCLOSURES, OR EXPRESS OR IMPLIED WARRANTIES OTHER THAN THOSE EXPRESSLY CONTAINED IN THE CONTRACT AND THE CLOSING DOCUMENTS.  BUYER IS NOT RELYING ON ANY INFORMATION REGARDING THE PROPERTY PROVIDED BY ANY PERSON, OTHER THAN BUYER'S OWN INSPECTION AND THE REPRESENTATIONS AND WARRANTIES CONTAINED IN THE CONTRACT AND THE CLOSING DOCUMENTS. IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT BUYER ACCEPTS THE CONDITION OF THE PROPERTY WITHOUT ANY IMPLIED REPRESENTATION, WARRANTY OR GUARANTEE AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE AS TO THE CONDITION, SIZE OR VALUE OF THE PROPERTY, EXCEPT ONLY AS MAY BE OTHERWISE EXPRESSLY PROVIDED

TRUSTEE EXHIBIT 1
Page 12 of 19

IN THE CONTRACT, AND SELLERS HEREBY EXPRESSLY DISCLAIM ANY AND ALL SUCH IMPLIED REPRESENTATIONS, WARRANTIES OR GUARANTEES, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY, OR CONDITION OF THE PROPERTY BEING SOLD, (B) THE SUITABILITY OF THE PROPERTY FOR ANY ACTIVITIES THAT BUYER MAY CONDUCT THEREON, (C) THE COMPLIANCE OF THE PROPERTY WITH ANY LAWS, ORDINANCES, OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL ENTITY, (D) COMPLIANCE OF THE PROPERTY WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION, OR LAND USE LAWS, RULES, REGULATIONS, ORDERS, OR REQUIREMENTS, INCLUDING THE EXISTENCE IN OR THE PROPERTY OF HAZARDOUS MATERIALS, OR (E) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, EXCEPT AS SET FORTH IN THE CONTRACT.

8.     REPRESENTATIONS:  Buyer acknowledges that neither Sellers nor any party on Sellers' behalf have made, nor do they hereby make, any representations as to the past, present or future condition, income, expenses, operation or any other matter or thing affecting or relating to the Property except as expressly set forth in the Contract.

9.     DEFAULT AND REMEDIES: Sellers or Buyer shall be in default under the Contract if either fails to comply with any material covenant, agreement or obligation within any time limits required by the Contract (a "**Default**" or "**Defaults**").  In the event of any purported default by Sellers, Buyer must deliver a notice in writing to Sellers specifying the default and affording the Sellers five (5) Business Days (as defined below) to cure (the "**Cure Period**"). Following Default by either Sellers or Buyer under the Contract and the expiration of the Cure Period as it relates to Sellers, the other party shall have the following remedies:

(a)     If Sellers Default, Buyer may either (i) cancel and terminate the Contract, and receive a full refund of the Earnest Money, or (ii) seek to enforce the order approving sale through the Bankruptcy Court.

(b)     If Buyer Defaults, Sellers may terminate the Contract by written notice to Buyer and retain the Earnest Money as liquidated damages as Sellers' sole remedy. The parties hereby acknowledge that it would be extremely difficult to ascertain the extent of actual damages caused by Buyer's Default and that the Earnest Money represents as fair an approximation of such actual damages as the parties can now determine.

(c)     If, as a result of an alleged Default under the Contract, either Sellers or Buyer employ an attorney to enforce their rights, the non-prevailing party in the dispute shall, unless prohibited by law, reimburse the prevailing party for all reasonable attorney's fees, court costs and other legal expenses incurred by the prevailing party in connection with the Default.

10.    DISPOSITION OF EARNEST MONEY AND OTHER FUNDS AND DOCUMENTS:  The Earnest Money shall be non-refundable upon entry of the Stalking Horse Approval Order and shall be paid to Sellers in the event of any termination of the Contract except as expressly set forth (i) in Section 9(a) hereof or (ii) this Section 10 as follows:

(a)     The Earnest Money shall be held in a segregated account by the Title Company until no later than ten (10) days after the Sale Hearing.

(b)     If the Buyer is not the Successful Bidder or the Back-Up Bidder, the Earnest Money shall be refundable and shall be returned to the Buyer no later than ten (10) days after the Sale Hearing.

4868-1195-7541.6

3

(c)     If the Buyer is the Successful Bidder, upon delivery of the special warranty deed, as more particularly described in Section 14.C.1. of the Contract (the "**Deed**"), at Closing, the Earnest Money shall be credited against the Purchase Price.

(d)     If the Buyer is the Back-Up Bidder, the Earnest Money shall continue to be held by the Sellers until the first to occur of (i) sixty (60) days after completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Sellers of the release by Sellers of the Back-Up Bidder's obligations, at which time the Earnest Money shall be returned to the Buyer.  Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on part of such Successful Bidder or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Sellers will be authorized to consummate the sale with the Back-Up Bidder, at which time, upon delivery of the Deed at Closing, the Earnest Money shall be credited against the Purchase Price. Additionally, the Earnest Money will become immediately non-refundable upon the Buyer becoming the new Successful Bidder.

11.     REVERSAL ON APPEAL. If the Buyer is the Successful Bidder and pays the Purchase Price and if the Sale Order is reversed on Appeal and such reversal affects the validity of the sale to Buyer, then the Buyer shall be entitled to a refund of the Purchase Price from the Sellers in proportion to their ownership interests as set forth in the recitals hereto.

12.     FIDUCIARY OUT.  Notwithstanding any of the terms of the Contract or this Addendum, in the event that prior to entry of the Stalking Horse Approval Order the Trustee determines in good faith, after consultation with counsel, that it is necessary to do so in order to comply with his fiduciary duties to the Debtors' bankruptcy estates, the Trustee may adjourn, withdraw, or modify the Bid Procedures Motion or otherwise elect to not seek Bankruptcy Court approval of the Contact. In the event the Stalking Horse Approval Order is not entered as a result of the Trustee's failure to seek entry of such order pursuant to this Section 12 or otherwise, the Contract shall be of no force and effect.

13.     NOTICES:  All notices required under the Contract shall be deemed to be properly served if reduced to writing and sent by (i) certified or registered mail; (ii) Federal Express or similar overnight courier; (iii) facsimile transmission; or (iv) personal delivery and the date of such notice will be deemed to have been the date on which such notice is delivered or attempted to be delivered as shown by the certified mail return receipt or a commercial delivery service record, or in the case of facsimile on the date of receipt of the transmission as shown on a successful transmission confirmation receipt; provided, however, if the date for the performance of any action or obligation, or any time period specified hereunder occurs on a day other than a Business Day, then such date or time period shall be extended until the next Business Day. All notices shall be addressed as follows, unless otherwise specified in writing:

SELLERS:                                             BUYER:

Daryl Greg Smith                                      Roger C. Broach
5826 Cooksey Lane                                     7667 East 46th Place
Waco, Texas 76706                                     Tulsa, OK  74145
Email: dsmith1114@gmail.com                           Email: roger@broach.com

With a Copy to:                                       With a Copy to:

c/o Gregory S. Milligan                               _____
Chapter 11 Trustee for Canadian River Ranch,          _____
LLC and Daryl Greg Smith                              _____
P.O. Box 90099                                        _____

4868-1195-7541.6

4

Austin, TX  78709                                              Email:
Email: gmilligan@harneypartners.com

and

Waller Lansden Dortch & Davis, LLP
c/o Morris Weiss
100 Congress Ave., Suite 1800
Austin, Texas  78701
Fax: (512) 685-6417
Email:  Morris.Weiss@Wallerlaw.com


Darren Keith and Julie Reed
611 S. Llano
Whitney, Texas 76692
Email:  dkeithreed@yahoo.com

With a Copy to:

R. Rene Escobedo
6800 Park Ten Blvd., Suite 135-E
San Antonio, Texas 78213
Fax: (210) 223-3815
Email:  rene.escobedo@rre-law.com


14.    TIME AND EXACT PERFORMANCE ARE OF THE ESSENCE UNDER THE CONTRACT.
Buyer and Sellers hereby agree to perform each and every obligation hereunder in a prompt and timely
manner; provided, however, if the date for the performance of any action or obligation, or any time period
specified hereunder occurs on a day other than a Business Day, then the date or time period shall be
extended until the next Business Day.  As used herein "**Business Day**" shall mean any calendar day other
than a Saturday, Sunday, or Oklahoma or Federal legal holiday.

15.    ADDITIONAL TERMS:

       (a)    Permits and Approvals.  Sellers shall reasonably cooperate with Buyer in verifying any
existing governmental approvals and in seeking and making any inquiries related to the Property, as
reasonably determined necessary by Buyer, provided such cooperation is at no cost or expense to Sellers.
Sellers make no representations or warranties about the existence of or effectiveness of any governmental
approvals.

       (b)    Assignment.  Buyer may assign the Contract to any entity formed by Buyer for the purpose
of taking title to the Property, provided the assignee assumes, in writing, all obligations and liabilities of
Buyer under the Contract and has the same beneficial ownership as the Buyer, and with approval of the
Bankruptcy Court.  Unless agreed to by Sellers, Buyer shall not be relieved of any liability hereunder upon
such an assignment.

       (c)    Miscellaneous.  This Addendum shall be governed by, and construed and interpreted under,
the laws and judicial decisions of the State of Oklahoma.  This Addendum and all covenants, terms,
conditions, warranties, and undertakings contained herein, and all amendments, modifications and

4868-1195-7541.6

5

extensions hereof, as applicable, shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and permitted assigns.  This Addendum may be executed in multiple counterparts, each of which shall be deemed an original, but taken together shall constitute one instrument. Sole and exclusive jurisdiction over any disputes related to this Addendum and the Contract shall be in the United States Bankruptcy Court for the Western District of Texas, Waco Division.

(d)    CONFLICTS OF PROVISIONS. SELLERS AND BUYER HEREBY ACKNOWLEDGE AND AGREE THAT THE TERMS AND CONDITIONS OF THIS ADDENDUM SUPERSEDE ANY DIFFERENT OR INCONSISTENT PROVISIONS IN THE CONTRACT AND, AS A RESULT, IN THE EVENT OF ANY CONFLICT BETWEEN THE TERMS AND CONDITIONS OF THE CONTRACT AND THE TERMS AND CONDITIONS OF THIS ADDENDUM, THE TERMS AND CONDITIONS OF THIS ADDENDUM SHALL CONTROL.

16.    ENTIRE AGREEMENT AND MANNER OF MODIFICATION:  The Contract, and any attachments or addenda thereto, constitutes the complete agreement of the parties concerning the Property, and supersedes all other agreements and may be modified only by both parties initialing changes in the Contract or by written agreement. However, in the event of any conflict between the Contract and the Sale Order, the terms of the Sale Order shall prevail.

17.    NO RULE OF STRICT CONSTRUCTION:  Each party and its counsel has reviewed and jointly participated in the establishment of the Contract and the attachments or addenda thereto.  No rule of strict construction or presumption that ambiguities will be construed against any drafter will apply, and no presumptions will be made or inferences drawn because of the final inclusion of a term not contained in a prior draft or the final deletion of a term contained in a prior draft.

[Signatures on Following Page]

4868-1195-7541.6

6

IN WITNESS WHEREOF, Sellers and Buyer execute this Addendum on the date(s) indicated below their respective signatures.

**SELLERS**:                                                      **BUYER**:

_____                    _____
GREGORY S. MILLIGAN, Chapter 11 Trustee          Roger Broach
for Canadian River Ranch, LLC and Daryl Greg
Smith in Case No. 21-60162 before the United       Date:_____
States Bankruptcy for the Western District of
Texas, Waco Division

Date: July 14, 2022_____


_____
DARREN KEITH REED and JULIE REED

Date:_____

IN WITNESS WHEREOF, Sellers and Buyer execute this Addendum on the date(s) indicated below their respective signatures.

**SELLERS**:

_____
GREGORY S. MILLIGAN, Chapter 11 Trustee for Canadian River Ranch, LLC and Daryl Greg Smith in Case No. 21-60162 before the United States Bankruptcy for the Western District of Texas, Waco Division

Date:_____

_____
DARREN KEITH REED and JULIE REED

Date:_____

**BUYER**:

_____
Roger Broach

Date:_____7/14/2022_____

Signature Page
Stalking Horse Bidder Addendum

**TRUSTEE EXHIBIT 1**
**Page 18 of 19**

IN WITNESS WHEREOF, Sellers and Buyer execute this Addendum on the date(s) indicated below their respective signatures.

**SELLERS**:                                        **BUYER**:

_____         _____

GREGORY S. MILLIGAN, Chapter 11 Trustee         Roger Broach
for Canadian River Ranch, LLC and Daryl Greg
Smith in Case No. 21-60162 before the United         Date:_____
States Bankruptcy for the Western District of
Texas, Waco Division

Date:_____


_____
DARREN KEITH REED and JULIE REED

Date: 7-11-2022

## EXHIBIT 3

### Estimated Distribution of Proceeds

**ESTIMATED FUNDS FLOW**

*Oklahoma Acreage Sale in September 2022*

**Sale of 439 acres:**

| | | | |
|---|---|---|---|
| Acres: | 280 | Gross Proceeds | $451,069 |
| $/acre: | $1,610.96 | Closing Costs | (20,569) |
| Closing Costs: | 4.56% | Break-Up Fee to Stalking Horse Bidder | (8,429) |
| | | Net Proceeds | **$422,071** |
| | | 10% to DKR (disbursed to Farm Credit) | 42,207 |
| | | 90% to Estate | 379,864 |
| | | | |
| | | ***Estate Distributions*** | |
| | | Capital Gains Reserve | 72,174 |
| | | Farm Credit | 349,897 |
| | | IRS | - |
| | | KAS | - |
| | | | |
| Acres: | 159 | Gross Proceeds | $256,143 |
| $/acre: | $1,610.96 | Closing Costs | (11,680) |
| Closing Costs: | 4.56% | Break-Up Fee to Stalking Horse Bidder | (4,741) |
| | | Net Proceeds | $239,721 |
| | | | |
| | | ***Estate Distributions*** | |
| | | Capital Gains Reserve | 47,944 |
| | | US Trustee fees | 1,534 |
| | | Trustee Fees | 7,192 |
| | | Trustee Prof Fees | 183,051 |
| | | KAS | - |