**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| DARYL GREG SMITH and, | § | CASE NO. 21-60162-RBK-11 |
| CANADIAN RIVER RANCH, LLC | § | CASE NO. 21-60163-RBK-11 |
| | § | Jointly Administered Under |
| | § | Case No. 21-60162-rbk |
| Debtors. | § | |

**TRUSTEE'S MOTION FOR (I) ORDER APPROVING: (A) BID
PROCEDURES, INCLUDING APPROVAL OF STALKING HORSE BIDDER;
(B) PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND RELATED NOTICES,
(C) NOTICE OF AUCTION AND SALE HEARING, AND (D) RELATED RELIEF
AND (II) ORDER (A) APPROVING THE SALE OF REAL ESTATE FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS
PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(B), (F), (H) AND (M),
365, AND 503 (B) APPROVING ASSUMPTION, ASSIGNMENT AND
SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365 AND
<u>RELATED CURE AMOUNTS, AND (C) GRANTING RELATED RELIEF</u>**

**A Motion for Expedited Hearing regarding this Motion will be filed.**

TO THE HONORABLE RONALD B. KING,
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Gregory S. Milligan, chapter 11 trustee in the above-captioned bankruptcy cases (the "**Trustee**") and files this motion ("**Motion**") pursuant to sections 105, 363, 365, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") seeking entry of the Bid Procedures Order for the sale of the Property, as such terms are defined and set forth below. In support of the Motion, the Trustee respectfully represents:

**Jurisdiction and Venue**

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

3.      The Trustee is seeking to establish a sales procedure regarding the approximately 1,239 acre parcel located in Bosque County, Texas (the "**Property**"). Pursuant to sections 105, 363, 365, and 503 of the Bankruptcy Code and Rules 2002 and 6004 of Bankruptcy Rules, the Trustee hereby moves the Court for the entry of an order (the "**Bid Procedures Order**"), substantially in the form attached hereto as **Exhibit A**, (i) approving the bid procedures (the "**Bid Procedures**," substantially in the form attached to the Bid Procedures Order as Exhibit 1) for the sale of certain real estate set forth in the Owens Contract (the "**Property**") owned by Sellers (as defined below), including the approval of a stalking horse bidder and bid protections; (ii) approving the procedures for the assumption, assignment, and sale of executory contracts and unexpired leases, including notice of proposed cure costs (the "**Assumption and Assignment Procedures**"); (iii) establishing a date for an auction (the "**Auction**") and a final hearing (the "**Sale Hearing**") to approve the sale of the Property as more fully defined herein (the "**Sale Transaction**"); and (iii) approving the form and manner of notice of the Auction and Sale Hearing.

4.      The Trustee also hereby moves the Court, pursuant to Bankruptcy Code sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006, for the entry of an order (the "**Sale Order**"), substantially in the form attached hereto as **Exhibit B**, (i) approving the sale of the Property free and clear of all liens, claims, encumbrances, and other interests (except as expressly set forth in the Owens Contract (as defined below)), (ii) approving the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to Bankruptcy Code sections 363 and 365 and related cure amounts, and (iii) granting related relief.

## Background

### A.     General Background

5.      Daryl Greg Smith ("**Smith**") and Canadian River Ranch, LLC ("**CRR**" and together with Smith, the "**Debtors**") each filed a voluntary petition for relief under the Bankruptcy Code on April 9, 2021 (the "**Petition Date**").

6.      On May 18, 2021, the Court ordered that the Debtors' cases (the "**Chapter 11 Cases**") be jointly administered. See *Order Granting Debtors' Motion for Joint Administration* [Doc. 29].

7.      On June 29, 2021, the United States Trustee requested appointment of the Trustee in this matter, and the Court approved such appointment. *See Order Approving Appointment of Gregory S. Milligan as Chapter 11 Trustee* [Doc. 91].

8.      The Smith estate holds an undivided 90% interest in the Property, approximately 1,239 acres of real property located in Bosque County, Texas. The remaining 10% interest is held by Darren Keith Reed ("**Reed**," and together with the Trustee, "**Sellers**").

9.      On December 28, 2022, the Trustee filed his *Second Application to Approve Retention and Employment of Riley-McLean Land, LLC as Real Estate Broker for the Trustee*, requesting that the Court enter an order approving the retention of Riley-McLean Land, LLC[1] ("**Broker**") as the broker for the Trustee with respect to the Property [Doc. 594] (the "**Broker Application**").  The Trustee requested that the Court hear the Broker Application on an expedited basis, and it has been set for hearing on January 11, 2023 at 2:00 p.m.  The Trustee will be requesting that the hearing on the approval of the Bid Procedures be set at the same time.

---

[1] The Broker was previously approved as broker for the Trustee in connection with the sale of the approximately 913 acres in Bosque County, Texas [Doc. 280].  That sale was approved by this Court by an order entered April 26, 2022 [Doc. 417], and closed on May 12, 2022.  The Broker's retention agreement in connection with such sale was terminated upon the closing.

B.    **Solar Lease**

10.    The Property is the subject of a ground lease with Angus Solar, LLC (the "**Solar Tenant**") for the construction of a solar energy farm.  On or about October 31, 2017, Caddoa Creek Ranch, LLC ("**Caddoa**") (which is 90% owned by Smith) executed a Ground Lease Agreement (as amended, the "**Solar Lease**") with the Solar Tenant.  The court presiding over the pre-petition divorce proceeding of Debtor Smith and Karen Annette Smith (i) ordered the dissolution of Caddoa and (ii) appointed Stanley Wright as receiver (the "**Receiver**") to act on behalf of Daryl Greg Smith. On February 7, 2020, the Receiver recorded a Special Warranty Deed (the "**Transfer Deed**") to effectuate the transfer of the Property 90% to Smith and 10% to Reed.  The Transfer Deed created a cloud on the title to the Property.  The Receiver was discharged and had no authority to take any other actions in connection with the Transfer Deed.

11.    On July 22, 2020, Angus and Caddoa entered into the First Amendment to Ground Lease Agreement.

12.    Shortly after his appointment, the Trustee began taking various steps to clear title to the Property, including filing his Emergency Motion for Order (I) Approving Assumption of Solar Lease; (II) Authorizing Entry into Lease Amendment; (III) Providing Protections for Lessee; and (IV) Authorizing the Chapter 11 Trustee to Execute Certain Documents Pursuant to FRCP 70, Made Applicable to this Proceeding Through FRBP 7070 (the "**Solar Motion**") [Doc. 116]. On July 15, 2021, this Court entered its Order (I) Approving Assumption of Solar Lease; (II) Authorizing Entry into Lease Amendment; (III) Providing Protections for Lessee; and (IV) Authorizing Chapter 11 Trustee to Execute Certain Documents Pursuant to Federal Rule of Civil Procedure 70 (the "**Solar Order**") [Doc. 128].  Pursuant to the Solar Order, this Court authorized the entry into the Corrected Second Amendment to Ground Lease Agreement, permitted the filing of a corrected Transfer Deed with respect to the Property to enable the Trustee to provide clean title in connection with the

assumption of the Solar Lease, and authorized the assumption of the Solar Lease.  The Trustee has performed all of these actions.

13.     Subsequently, the Trustee was informed of the existence of a Notice of Lis Pendens (the "**Lis Pendens**") affecting the Property and the clouding the title.  The Solar Lease requires that there be no liens on the Property and that it be titled in the names of Smith and Reed. Because of the Lis Pendens, the Corrected Transfer Deed authorized by the Solar Order (and recorded in the real property records) was not recognized in the chain of title.  As a result, the Receiver was still listed at the record title owner.  The title company handling the closing of various matters for the Trustee requested that the Lis Pendens be released. On February 14, 2022, the Trustee filed a motion requesting authority to execute and record a release of the Lis Pendens [Doc. 290] and was granted such authority by an order entered by this Court on March 4, 2022 [Doc. 339].  The release has been recorded.

14.     The Solar Lease was subject to an initial diligence period of 365 days after the effective date, and four extended diligence periods of 365 days each, commencing immediately after the expiration of the previous diligence period.  The fourth extended diligence period expired on October 30, 2022. It was anticipated that the tenant would commence construction on the Property by October 30, 2022, at which time rent payments would commence under the Solar Lease.

15.     Upon information and belief, the ultimate beneficial owner of the Solar Tenant is a subsidiary of Vistra Corp. ("**Vistra**"), which, according to its public filings, operates as an integrated retail electricity and power generation company with over 4.3 million customers and, among other things, owns TXU.  Also in public filings, Vistra indicated that it intended to delay this project in Bosque County for at least two years.

16. The Solar Lease provides for semi-annual payments on January 15th and July 15th, and if construction commenced during either of the referenced periods, rent would be prorated through the date of the next semi-annual payment. The tenant did not commence construction by October 30, 2022. However, on November 2, 2022, the Trustee received a check dated November 1, 2022 from the Solar Tenant in the amount of $585,000(the "**Rent Check**"), purporting to represent the rent payment for one year, which is not consistent with the terms of the Solar Lease. The Trustee disagrees with the Solar Tenant's interpretation of the Solar Lease, and advised Vistra that he was holding the Rent Check.

**C.** **Cattle Grazing Lease**

17. The Property is also subject to a cattle grazing lease (the "**Cattle Grazing Lease**"). On or about August 17, 2020, Caddoa executed the Cattle Grazing Lease with Robert C. Heise (the "**Cattle Tenant**"). The Transfer Deed executed by the Receiver transferred Caddoa's interest in the Cattle Grazing Lease to Smith (90%) and Reed (10%). On November 1, 2021, the Trustee (on behalf of Smith) and Reed (collectively, the "**Landlord**") and the Cattle Tenant entered into the First Amendment to the Cattle Grazing Lease[2]. On October 1, 2022, the Landlord and the Cattle Tenant entered into the Second Amendment to the Cattle Grazing Lease. The Cattle Grazing Lease currently runs month to month.

**D.** **Proposed Sale Process and Issues Related to Sale**

18. By this Motion, the Trustee seeks authority to sell the Property. The Trustee believes that a competitive sales process should realize the highest and best value for the Property. Reed consents to the sale of the Property and relief requested herein.

---

[2] The Cattle Tenant did not execute the First Amendment, but performed under its terms.

1.      **Previous Marketing Efforts.**

   a.      <u>Exploration of Options to Monetize the Solar Lease</u>

19.      In July of 2021, shortly following entry of the Solar Order, the Trustee began exploring the market regarding how best to monetize a solar lease.  In that connection, counsel to the Trustee contacted Ben Huffman of the law firm Sheppard, Mullin, Richter & Hampton LLP ("**Sheppard**"), who specializes in this area of the law.  Mr. Huffman generally outlined the market for monetizing solar leases and noted that interested parties generally fall into three categories: ones that will only monetize a lease once (i) a project is fully constructed and has begun generating revenue, (ii) a project is fully constructed but has not yet started to generate revenue, or (iii) a project has commenced construction.  Their business models are predicated on "purchasing" the lease term using a discounted cash flow method.  Some investors may also be interested in purchasing the underlying real estate.  The Trustee retained Sheppard, and such retention was approved by the Court by an order entered June 10, 2022 [Doc. 455].

20.      The Trustee had been in ongoing discussions with parties that would be willing to monetize the Solar Lease once construction had commenced.  Mr. Huffman had been in contact with several additional parties regarding their interest in potentially monetizing the Solar Lease. The Trustee, Mr. Huffman and potential Solar Lease monetization counterparties analyzed and discussed potential monetization structures and the pricing and terms for such structures, all of which depended upon the commencement of construction of the project.

21.      In August 2022, the Trustee was informed by Vistra that they were delaying the solar project for an indefinite period and would not be commencing construction by the end of October as anticipated.  They further advised that they have provided the following statement to the Bosque County stakeholders:

- As Vistra has explained recently to Bosque County, the Valley Mills ISD and residents, the costs for our renewable projects, including the proposed Angus Solar Energy Facility, have been increasing at a double-digit pace.

- After evaluating all costs, including the value of the local tax abatements, Vistra has concluded that the difficult but necessary decision at this time is to place the Angus project on hold.

- We believe the chosen site remains ideal for a solar generation project that would be mutually beneficial to Bosque County residents, businesses, local governments and Vistra. We'll continue to review the potential viability of the Angus Solar Energy Facility in anticipation of improved economic conditions.

- Vistra thanks the Bosque County Commissioners Court, Valley Mills ISD Board of Trustees, their fine staffs and the many residents who've supported the Angus project.

This information caused the Trustee to reevaluate his options for monetizing the Solar Lease and the Property.

22.     Because the Solar Tenant is a special purpose entity and not backed by Vistra's balance sheet, potential counterparties considering ways to monetize the lease stream for the benefit of the estate must underwrite the strength of the project, not the Solar Tenant (because it otherwise is merely a shell entity).

23.     Prior to October 30, 2022, the Solar Tenant had requested that the Trustee agree to extend the final diligence period and modify the intended use of the Property under the Solar Lease, and the Trustee declined those requests.  The Trustee, on the other hand, requested that the Solar Tenant acknowledge that the Solar Lease has terminated as of October 30, 2022, or agree to purchase the Property, and the Solar Tenant declined those requests.

24.     There is a disagreement between the parties over the interpretation of the Solar Lease and whether the failure to begin construction of the project before the expiration of the final diligence period resulted in a termination of the Solar Lease.

25.     The indicative values the Trustee received for a sale of the Property without the Solar Lease in place and the indicative values the Trustee received for the monetization of the initial term of the Solar Lease (assuming the commencement of construction of the Project had occurred by now) were within the same approximate range.

26.     Given the mandate that the Trustee must monetize all assets at fair market value to pay creditors, the Trustee concluded it was more prudent to sell the Property "as is" with the Solar Lease in its current posture.

27.     The Trustee does not believe that there are any defaults related to the Solar Lease and that he can sell the Property and assign the Solar Lease with the rights of all parties preserved. The Trustee intends to assign his rights to the Rent Check to the purchaser of the Property.

28.     While in the process of researching the monetization of the Solar Lease, the Trustee received an unsolicited offer from the Stalking Horse Bidder (as defined below).  As it became apparent that the Solar Tenant was not commencing construction on the Property, the Trustee continued his conversations with various interested parties, including the Stalking Horse Bidder.  In anticipation of further marketing the Property, the Trustee began the process to retain the Broker. After an assessment of offers received and marketing efforts undertaken, the Trustee, after consultation with Broker and his counsel, determined that the Owens Contract (as defined below) provides the estate the greatest value and therefore should be designated as the Stalking Horse Bid (as defined below).

29.     The Trustee has entered into an agreement with Logan Owens, pursuant to which he would serve as stalking horse bidder (the "**Stalking Horse Bidder**") for the Property, consisting of (i) a standard Farm and Ranch Contract promulgated by the Texas Real Estate Commission (the "**Contract**"), and (ii) an Addendum for Stalking Horse Bidder Terms and Conditions (the "**Addendum**" and, together with the Contract, (the "**Owens Contract**"), a copy of which is attached hereto as **Exhibit C**.   The Owens Contract  has no financing or diligence contingencies. The Owens Contract provides, in summary, as follows[3]:

a)     Purchase Price: $7,126,378

b)     $712,616 deposit, refundable only if the Stalking Horse Bidder is outbid at the Auction or if the Owens Contract terminates for any reason other than a default by the Stalking Horse Bidder.

c)     Bid Protections: 2.5% Break Up Fee; up to $90,000 expense reimbursement (the "**Bid Protections**").

d)     Conditions: Standard and customary, including (i) entry of the Sale Order in form and substance reasonably acceptable to the Stalking Horse Bidder, (ii) delivery of insurable and marketable title to the Property, (iii) the Bid Procedures Order and the Sale Order both being in full force and effect and not having been modified, amended or stayed unless approved by the Stalking Horse Bidder in its sole discretion, and (iv) there being no damages due under the Solar Lease or any other 365 Contract (as defined below) with respect to the Property in excess of $50,000.

e)     Closing: On or before March 24, 2023.

30.     The Trustee proposes the approval of the Owens Contract as the stalking horse bid (the "**Stalking Horse Bid**") for the Property and that he be authorized to establish a procedure for the sale of the Property as an all cash sale, on an AS-IS basis, with the closing costs to be allocated as set forth in the Contract between the Stalking Horse Bidder or successful bidder at the Auction (as applicable, the "**Purchaser**") and Sellers, and that the closing occur on the first business day

---

[3] The summary below is qualified in its entirety by the Owens Contract.

following the satisfaction of each of the conditions set forth in Section 3 of the Addendum to the Owens Contract.

31.     The Owens Contract will be provided to all prospective competing bidders (each, a "**Potential Bidder**") in connection with a marketing process of the Property. Potential Bidders will be required to submit to the Broker or Trustee an executed sales contract (a "**Modified Sales Contract**") in the same form as, and redlined against, the Owens Contract, reflecting the terms upon which the Potential Bidder would seek to affect a purchase of the Property, by no later than March 2, 2023 (the "**Bid Deadline**").

32.     In the event that Trustee obtains Qualified Bids (as defined below) in addition to the Stalking Horse Bid, Trustee proposes an Auction of the Property to be conducted in conjunction with the Sale Hearing, with such Auction to be conducted in open Court. The Trustee proposes to conduct the Sale Hearing with any Qualified Bidders (as defined in the Bid Procedures) allowed to participate, with the highest bidder being determined by the Trustee in consultation with the Broker and his counsel. If no Qualified Bids other than the Stalking Horse Bid are received, the Trustee may request that the Court set a Sale Hearing at any time following the expiration of the Bid Deadline.

33.     **Executory Contracts**. The Trustee proposes to assume and assign certain 365 Contracts (as defined below) by and between the Debtors and/or the Trustee and third parties that pertain to the use of the Property on the date the Sale Transaction is consummated. The Stalking Horse Bidder desires to assume the Solar Lease and the Cattle Grazing Lease. The 365 Contracts which may be assumed and assigned to the Purchaser in connection with the Sale Transaction, and the proposed amounts, if any, the Trustee believes are owed to the counterparty to each 365 Contract

to cure all defaults, arrears or other damages existing under such 365 Contract (the "**Cure Costs**"), are set forth on **Exhibit D** attached hereto.

### The Bid Procedures

34.     By this Motion, the Trustee requests entry of the Bid Procedures Order, which will, among other things, establish the following timeline:[4]

| Proposed Sale Timeline | |
|---|---|
| Service of Notice of Assumption and Assignment (in this Motion) | Filing date of this Motion |
| Assumption and Assignment Objection Deadline | Ten (10) calendar days from Service of Notice of Assumption and Assignment (contained in this Motion) |
| Assumption and Assignment Objection Response Deadline | Five (5) calendar days from receipt of Objection |
| Granting of Bid Procedures Motion and approval of Stalking Horse | On or before January 17, 2023 |
| Deadline to Serve Sale Notice and Form Sales Contract | Three (3) calendar days following entry of order granting bidding procedures |
| Prepare/Finalize Marketing Materials/Populate Data Room | The later of January 24, 2023 or within one week of entry of the Bid Procedures Order |
| Hearing to Determine Objection to Assumption and Assignment | On or before February 17, 2023 |
| Marketing Period | Through February 28, 2023 |
| Competing Bid Deadline | March 2, 2023 at 5:00 p.m. CT |
| Notice of Qualified Bidder with notice to Karen Smith and Stalking Horse Bidder | March 6, 2023 |

---

[4] Capitalized terms used, but not otherwise defined, in this timeline shall have the meaning ascribed to such terms in the Bid Procedures.  To the extent there are any ambiguities or inconsistencies between this summary and the Bid Procedures, the terms of the Bid Procedures shall govern in all respects.

| Sale Objection Deadline | March 7, 2023 at 5:00 p.m. CT |
| --- | --- |
| Auction (if required)/Selection of Final Bid | March 9, 2023 |
| Sale Hearing | March 9, 2023 |
| Entry of Sale Order | March 10, 2023 |
| Deadline to File Auction Results | March 13, 2023 |
| Consummation of Sale | March 24, 2023 |

35.     The Bid Procedures are designed to maximize value for the Smith estate while ensuring an orderly sale process. The Bid Procedures describe, among other things, the procedures for parties to access information, the manner in which Potential Bidders and bids become "Qualified," the procedures for receipt and negotiation of bids received, the conduct of any auction, the selection and approval of any ultimately successful bidder, and related deadlines (the "**Bidding Process**"). The Bidding Process affords the Trustee a sufficient opportunity to pursue a sale process that will maximize the value of the Property for the benefit of the Smith estate under the circumstances.

36.     Certain of the key terms of the Bid Procedures are highlighted below:

i.      **Diligence**: Potential Bidders which have executed a non-disclosure agreement substantially similar to the non-disclosure agreement between the Stalking Horse Bidder and the Trustee will each be provided a copy of the Owens Contract, current title commitment for the Property (and any updates thereto along with any documents reflected in the title commitment), current survey of the Property (and any updates thereto), and copies of current 365 Contracts on the Property. Potential Bidders may conduct additional, non-destructive diligence at their own option and expense, including tours of the Property and the engagement of customary engineers and contractors.

ii.     **Bid Deadline**: Any person or entity interested in participating in the Auction must submit a Qualified Bid (as defined in the Bid Procedures) on or before March 2, 2023 by 5:00 p.m. (prevailing Central time) to (i) the Trustee,

Gregory Milligan, 8911 N. Capital of Texas Highway, Suite 2120, Austin, TX 78759, gmilligan@harneypartners.com; (ii) the Broker, Lindsey Holubec, Riley-McLean Land, LLC, 505 Walsh Street, Austin, TX 78703, LLH@rileymclean.com; and (iii) attorneys for the Trustee, Waller Lansden Dortch & Davis LLP, Attn: Morris Weiss, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, morris.weiss@wallerlaw.com (collectively, the "**Trustee Notice Parties**").

    iii.    **Auction Qualification Process**: To be eligible to participate in the Auction, each Potential Bidder must be determined by the Trustee, in his sole and absolute business judgment, to satisfy each of the conditions set forth below:

    a.    Identification of Assets and Purchase Price: Each Potential Bidder must submit a bid in writing that must be a bid for the entirety of the Property for cash at closing. All bidders must complete their due diligence prior to the Bid Deadline. There shall be no other provision for the completion of due diligence after the Bid Deadline.

    b.    Minimum Overbid Amount: No competing bid will be accepted by the Trustee unless the Purchase Price stated therein is equal to the amount of the Stalking Horse Bid, plus the Bid Protections and an initial overbid amount of no less than $75,000 (the "**Initial Topping Bid**"). By way of example only, because the Stalking Horse Bid is for $7,126,378, with a break-up fee of 2.5% (equal to $178,159) plus $90,000 in expense reimbursement, an Initial Topping Bid must be in the amount of no less than $7,469,537 ($7,126,378 + $178,159 + $90,000 + $75,000).

    c.    Identification of Bidder: Each Potential Bidder must fully disclose the legal identity of each entity that will be bidding or otherwise participating in connection with such bid, and must also disclose any connections or agreements with the Debtors or Trustee, any other known Potential Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

    d.    Modified Agreement: Each Potential Bidder must submit to the Trustee Notice Parties an irrevocable offer in the form of a Modified Sales Contract on terms and conditions no less favorable to the Smith estate than the terms and conditions of the Owens Contract, including all exhibits and schedules contemplated thereby and a marked copy of the Modified Sales Contract reflecting the differences between the submitted Modified Sales Contract and the Owens Contract.

    e.    Proof of Financial Ability to Perform: Each Potential Bidder must demonstrate to the Trustee in his sole and absolute business judgment that it is financially capable of consummating the transaction contemplated by (i) the Modified Sales Contract and (ii) any additional bids, overbids, or modifications to the Modified Sales Contract such

Potential Bidder may make during the Auction. The Potential Bidder must detail the source(s) of funds that will be used to consummate the transaction, and include satisfactory evidence of committed financing or other financial ability to consummate the transactions in a timely manner. Each Potential Bidder must expressly acknowledge and represent that the Potential Bidder (i) has had an opportunity to conduct any and all due diligence relating to the Property prior to making its bid, (ii) has relied solely upon its own independent review, investigation, and/or inspection of the Property in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, except as expressly stated in the representations and warranties contained in the Modified Sales Contract ultimately accepted and executed by the Trustee. Bids must include evidence of authorization and approval from the bidder's board of directors (or comparable governing body), if applicable, with respect to the submission, execution, delivery and closing of the Modified Sales Contract and may not contain any condition to closing of the transaction on the receipt of any third party approvals (excluding required Court approval and any required governmental and/or regulatory approval, if any) or any financing or diligence contingencies of any kind.

f.  <u>Ability to Close</u>. Each Potential Bidder must be able to close the transaction by March 24, 2023.

g.  <u>Good Faith Deposit</u>: Each Potential Bidder must provide a good faith deposit (the "**Good Faith Deposit**") in the form of a certified or bank check (or other form acceptable to the Trustee in its sole and absolute discretion) deposited with the title company in an amount equal to ten percent (10%) of such Potential Bidder's Initial Topping Bid. All Good Faith Deposits shall be held in a segregated account by the Trustee until no later than ten (10) days after the Sale Hearing and thereafter returned to the respective bidders in accordance with the Bid Procedures, unless the bidder has been selected as the Back-Up Bidder (as defined below).

iv.  **<u>Stalking Horse Bid</u>**: The Trustee has selected the Stalking Horse Bidder and the Stalking Horse Bid, as discussed above.

a.  The Trustee has determined that it is appropriate to provide the Stalking Horse Bidder with the Bid Protections (as will be further set forth in the Bid Procedures Order), including a break-up fee of 2.5% of the Purchase Price set forth in the Stalking Horse Bid (equal to $178,159) plus $90,000 in expense reimbursement. The Bid Protections were negotiated at arm's length and with the intent of maximizing the value to be received by the Trustee for the benefit of the Smith estate. Any objections to the approval of the Stalking Horse Bidder, Stalking Horse Bid, and Bid Protections

must be filed no later than two (2) business days prior to the hearing to approve this Motion (the "**Bid Procedures Hearing**").

v.    **Qualified Bidder**:  The Trustee shall make a determination in his sole and absolute business judgment regarding whether a bid is a Qualified Bid (as set forth in the Bid Procedures) and shall notify bidders whether their bids have been determined to be Qualified Bids by March 6, 2023.  The Stalking Horse Bidder will be deemed a Qualified Bidder, and the Stalking Horse Bid will constitute a Qualified Bid for all purposes.

vi.    **Auction, Auction Procedures, and Overbids**:  In the event that the Trustee receives one or more timely Qualified Bids, the Trustee shall conduct an Auction.  The Auction, if required, will be held in the courtroom and supervised by the Court.  The Trustee may adjourn or cancel the Auction at or prior to the Auction if no Qualified Bids are received.

b.    No later than two (2) business days prior to the Auction, the Trustee shall notify the Stalking Horse Bidder and all other Qualified Bidders of all Qualified Bids received and the highest Initial Topping Bid.

c.    The Qualified Bidders shall appear in person or virtually if the hearing is conducted via WebEx at the Auction or through a duly authorized representative.  Only Qualified Bidders shall be entitled to make any subsequent bids at the Auction.  Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

d.    Bidding shall commence at the amount of the highest Initial Topping Bid received by the Trustee that is a Qualified Bid from a Qualified Bidder. Qualified Bidders may then submit successive bids higher than the previous bid, based on and increased from the Initial Topping Bid, in increments of at least $75,000.  All Qualified Bidders shall have the right to submit additional bids and make additional modifications to their respective Modified Sales Contracts, as applicable, at the Auction to improve such bids.  The Auction may include negotiations with the Qualified Bidders and open bidding in the presence of all other Qualified Bidders.  The potential cost to the Smith estate of the Bid Protections shall be used by the Trustee in determining the "highest or otherwise best" bid during each round of the Auction.

e.    On or before the dates set forth in the tables above, the Trustee shall cause the results of the Auction, including a copy of the Successful Bid, and the identity of any Purchaser and Back-Up Bidder to be filed on the docket of this case and available via PACER.

      f. The Trustee shall request at the Sale Hearing that the Court authorize the Trustee to consummate the Sale Transaction with the Purchaser. All Qualified Bidders at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

vii. **Back-Up Bidder**: If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid for the Property at the Auction (the "**Back-Up Bid**") shall be required to serve as the back-up bidder (the "**Back-Up Bidder**") for the Property and keep such Back-Up Bid open and irrevocable until the first to occur of (i) sixty (60) days after the completion of the Auction, (ii) consummation of the transaction with the Purchaser, or (iii) the Back-Up Bidder's receipt of notice from the Trustee of the release by the Trustee of the Back-Up Bidder's obligations. Following the Sale Hearing, if the Purchaser fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Purchaser or otherwise, the Back-Up Bidder will be deemed to be the new Purchaser, and the Trustee will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

viii. **Return of Good Faith Deposits**: Good Faith Deposits shall be returned without interest to each bidder not selected by the Trustee as the Purchaser or the Back-Up Bidder by no later than the third (3rd) business day following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be held by the Trustee until three (3) business days after the closing of the Sale Transaction with the Purchaser or termination of the Back-Up Bid as provided above.

ix. **Alteration of Procedures**: The Trustee reserves the right to request Court authority to alter the Bid Procedures (other than the Bid Protections or the amount of the minimum Initial Topping Bid). The Trustee may terminate discussions with any and all prospective acquirers at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bid Procedures.

### Assumption and Assignment Procedures

37. To facilitate the Sale Transaction, the Trustee proposes the following procedures for notifying counterparties to the 365 Contracts of potential cure amounts in connection with the assumption and assignment process:

i. **Notice of Assumption and Assignment**: Concurrently with the filing of this Motion, the Trustee shall file with the Court and serve via first class mail and email on all counterparties to any of the Debtors' executory contracts and unexpired leases (together, the "**365 Contracts**") and all parties who have

requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "**Contract Notice Parties**") a notice of assumption, assignment and sale substantially in the form of the Notice of Assumption and Assignment attached to the Bid Procedures Order as **Exhibit 3**.

ii.  The Notice of Assumption and Assignment shall include the Trustee's calculation of the amount necessary to cure all Cure Costs for each such 365 Contract. The Trustee reserves the right to supplement the list of 365 Contracts and provide additional Notices of Assumption and Assignment for previously omitted 365 Contracts as appropriate, and to remove a 365 Contract from the list of Desired 365 Contracts (as defined below) at any time prior to the hearing to determine objections to the assumption and assignment.

iii.  **Objections to Assumption and Assignment**: Any counterparty to a 365 Contract shall file and serve on the Objection Recipients (as defined herein) any objections to (a) the proposed assumption, assignment and sale of the 365 Contracts (and must state in its objection, with specificity, the legal and factual basis thereof) and (b) if applicable, the proposed Cure Costs (and must state in its objection, with specificity, what Cure Costs are required with appropriate documentation in support thereof, including, without limitation, identifying if any breach exists under such 365 Contract and the amount of the alleged damages arising therefrom) no later than ten (10) calendar days from the filing of this Motion (the "**Assumption and Assignment Objection Deadline**"). The Trustee shall file and serve his response to any such objection within five (5) days of the filing of the objection.

iv.  If a counterparty to a 365 Contract files a timely objection asserting a higher cure than the maximum Cure Costs set forth in the Notice of Assignment and Assumption, and the parties are unable to consensually resolve the dispute regarding the Cure Costs prior to the hearing to resolve any such objection (on or about February 17, 2023) (the "**Assumption/Assignment Hearing**"), the amount to be paid or reserved with respect to such objection will be determined at the Assumption/Assignment Hearing. All other objections to the proposed assumption and assignment of the Debtors' right, title, and interest in, to and under the 365 Contracts, if it is ultimately designated a 365 Contract that the Successful Bidder proposes be assumed, assigned, and sold to it in connection with the transaction (a "**Desired 365 Contract**"), will also be heard at the Assumption/Assignment Hearing.

v.  If no objection is timely filed and served, the counterparty to a 365 Contract shall be deemed to have consented to the assumption, assignment and sale of the 365 Contract to any Successful Bidder(s) if such 365 Contract is designated by any Successful Bidder(s) as a Desired 365 Contract and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, except with respect to the adequate assurance of future performance by any Successful Bidder(s). Any

objections to any Successful Bidder's proposed form of adequate assurance of future performance must be raised at the Assumption/Assignment Hearing and will be resolved at the Assumption/Assignment Hearing. The Cure Costs provided to the contract counterparty shall be controlling, notwithstanding anything to the contrary in any 365 Contract, or any other document, and the counterparty to the 365 Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such 365 Contract against the Debtors or the Successful Bidder(s), or the property of any of them.

### Sale Notice Procedures

38.     Within three (3) business days after entry of the Bid Procedures Order, the Trustee (or his agents) shall provide notice (substantially in the form of the Sale Notice attached to the Bid Procedures Order as <u>Exhibit 2</u>) of the Bid Procedures Order, the Motion, the Auction, the Sale Objection Deadline, and the Sale Hearing by first-class mail upon (i) the Office of the United States Trustee for the Western District of Texas; (ii) all entities known by the Trustee to have asserted any lien, claim, encumbrance, or other interest in the Property (for whom identifying information and addresses are available to the Trustee); (iii) any Governmental Authority known to have a claim in the bankruptcy cases; (iv) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002; (v) all of the Debtors' known creditors; and (vi) all other persons known to Trustee that have expressed an interest in purchasing the Property and as directed by the Court (for whom identifying information and addresses are available to the Trustee) (collectively, the "**Sale Notice Parties**").

39.     The Trustee submits that the proposed Sale Notice and providing notice of this Motion, the Auction and the Sale Hearing as described herein, complies fully with Bankruptcy Rule 2002 and the Local Rules and constitutes good and adequate notice of the Sale Transaction and the proceedings with respect thereto. Therefore, the Trustee respectfully requests that this Court approve the form of the Sale Notice and the notice procedures proposed above.

40.     Any and all objections, if any, to any Sale Transaction, including objections to the Auction and the selection of any Purchaser must be filed by 5:00 p.m. (prevailing Central Time) on March 7, 2023 (the "**Sale Objection Deadline**") and served on the following: (i) the Trustee, Gregory Milligan, 8911 N. Capital of Texas Highway, Suite 2120, Austin, TX 78759, gmilligan@harneypartners.com; (ii) the Broker, Lindsey Holubec, Riley-McLean Land, LLC, 505 Walsh Street, Austin, TX 78703, LLH@rileymclean.com; and (iii) attorneys for the Trustee, Waller Lansden Dortch & Davis LLP, Attn: Morris Weiss, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, morris.weiss@wallerlaw.com; (iv) the Office of the United States Trustee, Attn: Gary W. Wright, 903 San Jacinto Blvd., Room 230, Austin, TX 78701, gary.wright3@usdoj.gov; (v) counsel to the Stalking Horse Bidder, Kelley Drye & Warren LLP, Attn: James Carr and Benjamin D. Feder, 3 World Trade Center, 175 Greenwich Street, New York, NY 10007, jcarr@kelleydrye.com and bfeder@kelleydrye.com; (vi) counsel to Karen Annette Smith, Edwin Paul Keiffer, Rochelle McCullough, LLP, 325 N. St. Paul Street, Suite 4500, Dallas, TX 75201, pkeiffer@romclaw.com; and (vii) counsel to Keith Reed, Rene Escobedo, 6800 Park Ten Blvd., Suite 135-E, San Antonio, TX 78213, rene.escobedo@rre-law.com (the "**Objection Recipients**").

41.     Any party failing to timely file an objection to the Sale Transaction shall be forever barred from objecting and shall be deemed to have consented to the Sale Transaction, including the transfer of the Smith estate's right, title, and interest in, to and under the Property free and clear of any and all liens, claims, encumbrances, and other interests in accordance with the Owens Contract or any other definitive agreement for a Sale Transaction.

**Legal Basis for Relief Requested**

**A.     Approval of the Sale and Bid Procedures is Warranted Under Section 363 of the Bankruptcy Code**

42.     Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l).  Section 105 provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

43.     A sale of a debtor's assets is authorized under section 363 of the Bankruptcy Code if there is a business justification for the sale.  *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper))*, 933 F.2d 513, 515 (7th Cir. 1991)); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986).  Among the factors in determining whether there is sufficient business justification for the sale, the bankruptcy court:

> should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis–a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In re Cont'l Air Lines, Inc.*, 780 F.2d at 1226 (*quoting Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.))*, 722 F.2d 1063, 1071 (2d Cir. 1983)).  "Where the debtor articulates a

reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litig. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  When a valid business justification exists, the law vests the debtor's or trustee's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *In re Integrated Res.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A. 2d 858, 872 (Del. 1985)). Therefore, parties objecting to the Trustee's proposed sale must make a showing of "bad faith, self-interest, or gross negligence." *Integrated Res.*, 147 B.R. at 656.

44.     Moreover, the Bankruptcy Court has authority under section 105(a) of the Bankruptcy Code to approve non-ordinary course transactions under section 363(b) of the Bankruptcy Code.  The Fifth Circuit has acknowledged that section 105 confers broad powers on bankruptcy courts:

> [Section] 105 [is] an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction . . . .

*See Davis v. Davis (In re Davis)*, 170 F.3d 475, 492 (5th Cir 1999) (citation omitted).

45.     The Trustee has proposed the sale of the Property after thorough consideration of all viable alternatives, and has concluded that the Sale is supported by a number of sound business reasons.  As counsel for the Trustee advised the Court previously throughout the cases, successful completion of these Chapter 11 Cases requires the monetization of the Debtors' assets in order to satisfy claims. The ultimate timing and amount of the monetization of the Debtors' other material

assets, approximately 9,000 remaining acres located in McIntosh County, Oklahoma, remain unknown, with the sale of the Oklahoma property not guaranteed as to timing or value.

46.     Based on the foregoing, the sale of the Property is justified by sound business reasons and is in the best interests of the Smith estate.  Accordingly, pursuant to section 363(b) of the Bankruptcy Code, the Trustee requests approval of the sale to the Purchaser as set forth herein.

**B.     The Sale of the Assets Free and Clear of Liens, Claims, and Interests is Authorized Under Section 363(f) of the Bankruptcy Code**

47.     The Trustee also requests that the Court authorize the Sale of the Property free and clear of any and all liens, claims, charges, encumbrances and interests (collectively, the "*Interests*") as set forth in the Owens Contract or in any other definitive agreement for a Sale Transaction, which may be asserted or otherwise exist, with any such Interests to attach to the proceeds of the Sale of the Property, subject to the rights and defenses of the Trustee, if any, with respect thereto.  Section 363 of the Bankruptcy Code provides that a debtor may sell property of the estate free and clear of any other entity's interest in such property if:

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such Assets;

(4)     such interest is in a bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

48.     While the term "any interest," as used in section 363(f), is not defined in the Bankruptcy Code, courts have held that the scope of section 363(f) of the Bankruptcy Code is not

limited to *in rem* interests. *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-82 (4th Cir. 1996); *Folger Adam Sec. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258 (3d Cir. 2000) (citing 3 COLLIER ON BANKRUPTCY 363.06[1]). Thus, a debtor can "sell its assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

49.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Property free and clear of all Interests. *See Citicom Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

50.     The Trustee believes that the proposed sale satisfies at least one of the five conditions in section 363(f) of the Bankruptcy Code. In particular, the proposed Sale Order will provide for all Interests to attach to the proceeds from the Sale of the Property in the order of their priority and with the same validity, priority, force and effect which such Interests now have against the Property, subject to the rights, claims, defenses, and other objections, if any, of the Trustee and parties in interest with respect to such Interests. The Trustee accordingly requests authority to convey the Property pursuant to the requested Sale Procedures, free and clear of all such Interests.

51.     The Trustee believes that a sale of the Property will generate enough proceeds to satisfy a material portion of Smith's debt owing to Karen Smith; thus the Trustee believes a valid business justification exists to sell the Property.

52.     Moreover, as stated herein, the Trustee will provide notice of the sale of the Property to parties in interest. The Trustee believes that the proposed notice procedures are reasonable and adequate under the circumstances.

53.     At the Sale Hearing, the Trustee will provide evidence that the sale price for the Property is fair and reasonable by showing that the Purchaser offered the highest or otherwise best purchase offer for the Property.  Moreover, the Bid Procedures are designed to encourage as many bidders as possible to put forth their best offers, thus increasing the likelihood that the Property will be sold for the highest or best purchase price possible.

54.     Finally, the Trustee will present evidence at the Sale Hearing that the Owens Contract or other definitive agreement for a Sale Transaction was a fairly negotiated, arm's length transaction in which the Purchaser acted in good faith, and, therefore, that the protections of section 363(m) of the Bankruptcy Code should apply.

55.     Accordingly, the Trustee requests that the Court approve the proposed Sale Transaction set forth herein.

## C.     Approval of the Bid Protections set forth in the Owens Contract is Appropriate

56.     In general, bid protections encourage a potential purchaser to invest the requisite time, money and effort to negotiate with the trustee and perform the necessary due diligence attendant to the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process.  Typically, bidding incentives are judged under a business judgment standard, which proscribes judicial second-guessing of the actions of the Trustee taken in good faith and in the exercise of honest judgment.  *See e.g.*, *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking" (internal quotation marks and citation omitted)).

57.     Courts typically approve bid protections in chapter 11 bankruptcy sales.  *See, e.g.,* *In re Lincolnshire Campus, LLC*, 2010 WL 5269706, at *1 (Bankr. N.D. Tex. July 23, 2010) (approving breakup fee and expense reimbursement under section 503(b) of the Bankruptcy Code

in the context of a sale of substantially all of the debtor's assets under section 363 of the Bankruptcy Code); *In re Texas Rangers Baseball Partners*, 431 B.R. at 715 (same); *In re APP Plus*, 223 B.R. 870, 875 (Bankr. E.D.N.Y. 1998) (approving break-up fee in connection with sale of substantially all of the Debtor's assets pursuant to 11 U.S.C. § 363(b)); *In re Kmart*, Case No. 02-B-02474 (Bankr. N.D. Ill. May 10, 2002) (authorizing a termination fee and overbid amounts for potential bidders).

58.     The Trustee will present evidence at the Bid Procedures Hearing that the proposed Bid Protections provide benefit to the Smith estate.  In particular, the proposed Break-Up Fee and Expense Reimbursement in the Owens Contract are reasonable and customary for sale transactions of the type presented here.  Without the assurance of such Bid Protections, the Stalking Horse Bidder would not have entered into the Owens Contract because the Stalking Horse Bidder must perform due diligence on the value of the Property, and must similarly invest time and money in crafting an offer.  The Bid Protections thus incentivize the Stalking Horse Bidder to enter into the Owens Contract with the Trustee. In this manner, the Bid Protections will facilitate competition in the Bidding Process, increasing the likelihood that the Trustee receives the highest or best price possible for the Property.

59.     In addition to increasing the likelihood of competitive bidding, the Stalking Horse Bidder has established a floor for other bids, precluding the possibility that the Trustee could receive less than is contemplated for the Property.  Offering Bid Protections will encourage the Stalking Horse Bidder to invest its resources in valuing the Property, making it more likely that the Smith estate will receive the true value for the Property.

**D. The Court Should Approve the Procedure for Assumption and Assignment of Contracts Under Section 365 of the Bankruptcy Code**

60.     In connection with the approval of the Sale Procedures, the Trustee also requests approval of a procedure with respect to the assumption and assignment of contracts to the Purchaser as necessary to effectuate the transfer of the Property.

61.     Section 365 of the Bankruptcy Code permits a debtor to assign an executory contract or unexpired lease if "(A)    the [debtor] assumes such contract or lease in accordance with the provisions of this section; and (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2).  Section 365(a) of the Bankruptcy Code authorizes a debtor to assume an executory contract or unexpired lease, and section 365(b)(1), in turn, codifies the requirements for such assumption, providing that:

> (b)(l) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> > (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
> >
> > (B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).  The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See In re Texas Health Enters., Inc.*, 246 B.R. 832, 834 (Bankr.

E.D. Tex. 2000); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985).

62.     It is well established that the decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor.  *See In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422-26 (Bankr. N.D. Tex. 2009); *Richmond Leasing Co. v. Capital Bank, N.A. (In re Richmond Leasing Co.)*, 762 F.2d 1303, 1309 (5th Cir. 1985); *Delightful Music Ltd. v. Taylor (In re Taylor)*, 913 F.2d 102, 107 (3d Cir. 1990).  Accordingly, assumption or rejection of any executory contract is appropriate where the assumption or rejection would benefit the estate.

63.     The assumption and assignment of any contracts necessary to the transfer of the Property satisfies the requirements of section 365 of the Bankruptcy Code.  First, to the extent that there is any default under any of the 365 Contracts, the procedures set forth herein specify that any such defaults will be cured as part of the Sale Transaction.  Second, any Purchaser will be required to demonstrate sufficient ability to continue performance under each of the assumed 365 Contracts.  To the extent necessary (or requested by any party in interest), the Stalking Horse Bidder or any other Successful Bidder will demonstrate that adequate assurance of future performance is present.  The principles set forth above are equally applicable to the proposed assignment of the Solar Lease.

64.     Relief from Bankruptcy Rules 6004(h) is appropriate under Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Fed. R. Bankr. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

65.     To preserve the value of the Smith estate, and limit the costs of administering and preserving the Property, it is critical that the Trustee close the sale of the Property as soon as possible after all closing conditions have been met or waived. Accordingly, the Trustee hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h).

**WHEREFORE,** the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

By: */s/ Morris D. Weiss*
    Morris D. Weiss
    Texas Bar No. 21110850
    Courtney K. Stone
    Texas Bar No. 24093208
    100 Congress Ave., Suite 1800
    Austin, Texas 78701
    Telephone:  (512) 685-6400
    Facsimile:  (512) 685-6417
    Email:      morris.weiss@wallerlaw.com
            courtney.stone@wallerlaw.com

COUNSEL TO GREGORY S. MILLIGAN,
CHAPTER 11 TRUSTEE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing document has been served upon the parties listed below and on all parties on the attached service list by email and/or by first class mail, or electronically via the Court's ECF system on January 9, 2023.

<u>Counsel to Stalking  Horse Bidder</u>
Kelley Drye & Warren LLP
Attn: James Carr and Benjamin D. Feder
3 World Trade Center
175 Greenwich Street
New York, NY 10007
jcarr@kelleydrye.com
bfeder@kelleydrye.com

<u>Cattle Tenant</u>
Robert C. Heise
1327A FM 339S
Groesbeck, TX 76692
Bar5cattleco@yahoo.com

<u>Counsel to Solar Tenant</u>
David M. Powlen
Barnes & Thornburg LLP
222 Delaware Ave.,  Suite 1200
Wilmington, DE 19801
David.Powlen@btlaw.com

Will Russ and Julie Klavan
Barnes & Thornburg LLP
2121 N. Pearl Street, Suite 700
Dallas, TX 75201
wruss@btlaw.com
Julie.Klavan@btlaw.com


 */s/ Morris D. Weiss*
Morris D. Weiss

**SERVICE LIST**

**Debtors (via mail and email)**
Daryl Greg Smith
Canadian River Ranch, LLC
5826 Cooksey Lane
Waco, TX 76706
Dsmith1114@gmail.com

**Former Counsel to Debtors
(via ECF)**
Thomas Daniel Berghman
Davor Rukavina
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Ste. 3800
Dallas, TX 75201

**United States Trustee (via ECF)**
Gary W. Wright & Shane P. Tobin
Office of the United States Trustee
903 San Jacinto Blvd., Room 230
Austin, TX 78701

**Governmental Agencies**
United States Department of Justice
United States Attorney, Civil
Process Clerk
for the Internal Revenue Service
601 N. W. Loop 410, Suite 600
San Antonio, TX 78216

United States Attorney General
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Oklahoma Tax Commission
Oklahoma City, OK 73194

Steven Bass (**via email**)
Assistant United States Attorney
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
Steven.Bass@usdoj.gov

**Chapter 11 Trustee (via ECF)**
Gregory S. Milligan
3800 N. Lamar Blvd., Suite 200
Austin, Texas 78756

**Creditors**
Andrew F. Stasio
Stasio & Stasio, P.C.
303 Main Street, Suite 302
Fort Worth, Texas 76102

Angus Solar, LLC
c/o Cypress Creek Renewables,
LLC
3402 Pico Blvd
Santa Monica, CA 90405

Bank of America
Attn: Bankruptcy Department
475 Cross Point Pkwy
PO Box 9000
Getzville, NY 14068-9000

Bank of America, N.A.
P O Box 982284
El Paso, TX 79998-2238

Boomer State Outdoors, LLC
12384 West 81st Street
South Sulpapa, OK 74066-8141

Bosque County
c/o Tara LeDay
P.O. Box 1269
Round Rock, TX 78680

Canadian River Ranch Partnership
5826 Cooksey Ln
Robinson, TX 76706

Catherine Aileen Smith
5826 Cooksey Lane
Waco, TX 76706

Central TX Radiological
Associates, PA
3206 4th Street
Longview, TX 75605

City of Fort Worth
10000 Throckmorton Street
Fort Worth, TX 76102

Darren Keith Reed and Julie Reed
601 S Llano St
Whitney, TX 76692

Discover Bank
PO Box 385908
Minneapolis, MN 55438-5908

Dolcefino Consulting
3701 Kirby Dr., Ste. 560
Houston, TX 77098

Dolcefino Consulting
Freedman Price & Anziani PC
1102 West Avenue, Suite 200
Austin, TX 78701

Eric Grantham
Stipe Law Firm
343 E Carl Albert Pkwy
McAlester, OK 74501

Farm Credit of Western Oklahoma
513 S. Mission St.
Anadarko, OK 73005

Farm Credit Of Western
Oklahoma, ACA
Brian McEntire, VP/Branch
Manager Tuttle
PO Box 790, 4955 Farm Credit Dr.
Tuttle, OK 73089

Freedman & Price, P.C.
1102 West Avenue, Ste. 200
Austin, TX 78701

Gary L. Nickelson
Law Office of Gary L. Nickelson
5201 W. Freeway, Ste. 100
Fort Worth, TX 76107

Greg A. Farrar
Farrar & Farrar PC
2021 S. Lewis Ave., Ste. 420
Tulsa, OK 74104

Griffith, Jay & Michel
2200 Forest Park Blvd.
Fort Worth, TX 76110-1732

Hanszen Laporte, LLP
14201 Memorial Drive
Houston, TX 77079

Hill County
c/o Tara LeDay
P.O. Box 1269
Round Rock, TX 78680

Hill County Tax Assessor
PO Box 412
Hillsboro, TX 76645

Hockley County Cattle Company,
Inc.
P.O. Box 825
Levelland, TX 79336

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

James C. Hodges
26522 East 21st Street, Ste. 4
Tulsa, OK 74114

Jessica L. Brown, PLLC
9450 SW Gemini Dr. #99088
Beaverton, OR 97008-7105

Karen Annette Smith
700 Nettleton Dr.
Southlake, TX 76092

Kelcie A. Hibbs
Loe, Warren, Hibbs & Lawrence,
PC
4420 W. Vickery Blvd, Suite 200
Fort Worth, TX 76107

Law Offices of Elizabeth 'Betsy'
Parmer
309 W. 7th St., Ste. 900
Fort Worth, TX 76102

Lazy K Cattle Company, LLC
2956 Via Esperanza
Edmond, OK 73013

Lazy K. Cattle Company, LLC
Dylan Charles Edward
Rosell Law Group LLP
101 North Robinson Ave., Ste. 700
Oklahoma City, OK 73102

Mark Cochran
101 W. Randol Mill Road, Ste 110
Arlington, TX 76011

North Texas Tollway Authority
PO Box 660244
Dallas, TX 75266-0244

Office of the Attorney General
Child Support Division
PO Box 12017
Austin, TX 78711

Paul B. Cason
Goodwin/Lewis
PO Box 312
Oklahoma City, OK 73101

Peov Linda Hem
Law Office of Linda Hem, PLLC
10300 North Central Expressway
Suite 235
Dallas, Texas 75231

Providence Health Network
Frost-Arnett Company
PO Box 198988
Nashville, TN 37219

Shawn R. Redman
Couch, Conville & Blitt LLC
3501 N. Causeway Blvd., Ste. 800
Metairie, LA 70002

Stipe Law Firm
343 E Carl Albert Pkwy
Mcalester, OK 74501

T Mobile/T-Mobile USA Inc
by American InfoSource as agent
4515 N Santa Fe Ave.
Oklahoma City, OK 73118

T-Mobile
Credence Resource Management,
LLC
17000 Dallas Parkway, Ste. 204
Dallas, TX 75248

Terry Terry Law, PLLC
300 Throckmorton, Suite 500
Fort Worth, Texas 76102

Texas Taxing Authorities
c/o Tara LeDay
P.O. Box 1269
Round Rock, TX 78680

Tina Horn
PO Box 154729
Waco, TX 76715

Trustee Jeremy R. Pruett
301 Commerce St., Ste. 1500
Fort Worth, TX 76102

V. Wayne Ward, P.C.
Trinity Plantation Building
1201 E. Belknap
Fort Worth, Texas 7610

White Bluff Property Owners'
Association
20022 Misty Valley Cir
Whitney, TX 76692

Whitney ISD
c/o Perdue Brandon Fielder et al
500 East Border Street, Suite 640
Arlington, TX 76010

Whitney ISD Tax Office
305 S San Jacinto St, PO Box 592
Whitney, TX 76692

William R. Korb
Bourland, Wall & Wenzel, P.C.
301 Commerce, Ste. 1500
Fort Worth, TX 76102

Baccus Estates
Und. 1/5 Interest
Rt. 1 Box 709
Vernon, OK 74845

Charles & Dona Morgan Living
Trust
28 S. Fork Eagle Mountain Rd.
Columbus, MT 59019-7101

Cheryl Wise
c/o Law Offices of David Wise
P.O. Box 1102
Friendswood, TX 77549

David Wise
c/o Law Offices of David Wise
P.O. Box 1102
Friendswood, TX 77549

Dorothy O'shea
201 Amarillo Terrace #228
Houston, TX 77077

Emily Bear, et al.
c/o Turner Bear, Jr
P.O. Box 907
Coweta, OK 74429-0907

Francis R. First, III, et al.
3208 N. State Hwy 97
Sand Springs, OK 74063

Freddie Smith
c/o Charles Morgan
28 S Fork Eagle Mountain Rd
Columbus, MT 59019-7101

George J. Khair, Jr., Trustee
1/3 Interest of Khair Family Trust
519 E Andover Dr.
Burbank, CA 91504

GLB Exploration, Inc.
c/o Robert D. Gray
3500 S. Boulevard, #10B
Edmond, OK 73013

Handprint Valley Ranch, LLC
2904 Via Esperanza
Edmond, OK 73013

Handprint Valley Ranch, LLC
c/o Sam T. Allen IV
Loeffler, Allen & Ham
221 E. Dewey Ave.
Sapulpa, OK 74066

James Bruce Siberts, Jr.
212 W Clegern
Henryetta, OK 74437

Joshua Nathaniel Rumsey
and Jack N. Rumsey
1981 N. Lexington Dr.
Chandler, AZ 85224

Joshua Rumsey
c/o Mark Grober
830 N. Main Street
Muskogee, OK 74401

Juanita Louise Daniels
Steigleder Trust
621 B Street NW
Ardmore, OK 73401

Lana Marie Shaughnessy
947 N. Jackson St
Glendale, CA 91207

Madill Bank & Trust Co. 1/5
Interest
155 Dowsett Ave..
Honolulu, HI 96817

Melinda Sandlin, 1/9 Interest
c/o Melinda Sandlin Gorin
3243 Robinwood Ave
Clovis, CA 93619

Preslie H. Brown, et al.
c/o Newt Mitchell
2201 West Main
Norman, OK 73069

Robert Phillip Siberts
and James Bruce Siberts, Jr.
212 W Clegern
Henryetta, OK 74437

Rodney Ford
145A HC 62
Eufaula, OK 74432

Sky River Properties, LLC
3000 Custer Rd #270-222
Plano, TX 75075

Stidham School
113074 E. 4110 Rd
Eufaula, OK 74432

V.E. Hill
c/o Southwest Management Inc.
10 Marin Street
Honolulu, HI 96817

Wise Family Living Trust
c/o Law Offices of David Wise
P.O. Box 1102
Friendswood, TX 77549

Wise Family Living Trust
c/o Brandon Wilson
3847 South Blvd, Ste. 100
Edmund, OK 73013

**Parties Requesting Service
(via ECF)**
Eboney Cobb
Perdue, Brandon, Fielder, Collins
& Mott
500 E. Border Street, Suite 640
Arlington, TX 76010

Mark Cochran
c/o Mark B. French
1901 Central Drive, Ste. 704
Bedford, TX 76021

Edwin Paul Keiffer
Rochelle McCullough, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201

Jason M. Rudd and Scott Lawrence
Wick Phillips Gould & Martin,
LLP
3131 McKinney Avenue, Suite 500
Dallas, TX 75204

Tara LeDay
McCreary, Veselka, Bragg &
Allen, P.C.
P. O. Box 1269
Round Rock, TX 78680

Griffith, Jay & Michel, LLP
c/o Mark J. Petrocchi
2200 Forest Park Blvd.
Fort Worth, TX 76110

Steve Stasio
Stasio & Stasio, P.C.
303 Main Street, Suite 302
Fort Worth, Texas 76102

Marc W. Taubenfeld
McGuire, Craddock & Strother,
P.C.
500 N. Akard Street, Suite 2200
Dallas, TX 75201

David G. Tekell
Tekell & Tekell, LLP
400 Austin Avenue, Suite 1000
Waco, TX 76701

Ruben Rene Escobedo
6800 Park Ten Blvd.
Suite 135-E
San Antonio, TX 78213

J. Michael McBride, Esq.
J. Michael McBride, P.C.
6420 Southwest Blvd., Ste. 112
Fort Worth, TX 76109

Ray Battaglia
Law Offices of Ray Battaglia,
PLLC
66 Granburg Circle
San Antonio, TX 78218

William R. Davis, Jr.
David S. Gragg
Langley & Banack, Inc.
745 E. Mulberry, Suite 700
San Antonio, TX 78212

David Wise
Law Offices of David Wise
P.O. Box 1102
Friendswood, TX 77549

# **EXHIBIT A**

## **Bid Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| DARYL GREG SMITH and, | § | CASE NO. 21-60162-RBK-11 |
| CANADIAN RIVER RANCH, LLC | § | CASE NO. 21-60163-RBK-11 |
| | § | Jointly Administered Under |
| | § | Case No. 21-60162-rbk |
| Debtors. | § | |

**ORDER APPROVING (A) BID PROCEDURES, INCLUDING
APPROVAL OF STALKING HORSE BIDDER, (B) PROCEDURES FOR
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND RELATED NOTICES,
(C) NOTICE OF AUCTION AND SALE HEARING, AND (D) RELATED RELIEF**

Came on for consideration the motion (the "***Motion***")[1] of Gregory S. Milligan, chapter 11 trustee in the above-captioned bankruptcy cases (the "***Trustee***") for an order pursuant to sections 105, 363, 365 and 503 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), (i) approving the bid procedures (the "***Bid Procedures***," attached hereto as **Exhibit 1**) for the sale

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

of certain real estate owned by Sellers and set forth in the Owens Contract (the "***Property***"), including the approval of the Stalking Horse Bidder and the provision of bid protections to such Stalking Horse Bidder (the "***Bid Protections***"), (ii) approving the procedures for the assumption, assignment, and sale of executory contracts and unexpired leases, including notice of proposed cure costs (the "***Assumption and Assignment Procedures***"), (iii) establishing a date for an auction (the "***Auction***") and a final hearing (the "***Sale Hearing***") to approve the sale of the Property (the "***Sale Transaction***"); (iii) approving the form and manner of notice of the Auction and Sale Hearing, and the Assumption and Assignment Procedures, and (iv) granting related relief, and the Court having determined that notice of the Motion was adequate and sufficient; and all parties having been afforded due process and an opportunity to be heard with respect to the Motion and all the relief requested therein; and the Court having reviewed and considered: (i) the Motion; (ii) the objections and responsive pleadings filed in connection with the Motion, if any; and (iii) the representations of counsel made and the evidence proffered at the hearing to approve the Motion (the "***Bid Procedures Hearing***"); and the Bid Procedures Hearing having been held, and after due deliberation and sufficient cause appearing therefor, hereby finds and determines that:

A.      This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for relief sought in the Motion are sections 105(a), 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006.

C.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  The entry of this Order is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

D.      The notice of the Motion, the Bid Procedures Hearing, and the proposed entry of this Order was adequate and sufficient under the circumstances of these Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, no further notice of the Motion, the Bid Procedures Hearing, or this Order is necessary or required.

E.      The Trustee has articulated good and sufficient reasons for the Court to (i) approve the Bid Procedures for the sale of the Property, (ii) approve Logan Owens ("***Owens***" or the "***Stalking Horse Bidder***") as the stalking horse bidder for the Property and the provision of the Bid Protections, including the Break-Up Fee and the Expense Reimbursement as set forth in the Addendum to the Owens Contract and the Bid Procedures, (iii) approve the Assumption and Assignment Procedures, (iv) establish a date for the Auction (if necessary) and the Sale Hearing, (v) approve the form and manner of notice of the Auction and Sale Hearing, and the Assumption and Assignment Procedures, and (vi) grant related relief. Such good and sufficient reasons were set forth in the Motion and on the record at the Bid Procedures Hearing, are incorporated by reference herein and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.      The proposed *Notice of Auction and Sale Hearing* (the "***Sale Notice***,") substantially in the form attached hereto as __Exhibit 2__ and the proposed *Notice of Assumption and Assignment* to be served on the Contract Notice Parties (the "***Notice of Assumption and Assignment***,") substantially in the form attached hereto as __Exhibit 3__, are each calculated to provide adequate notice

concerning the proposed sale of the Property and the proposed assumption, assignment, and sale of the Leases (the "***365 Contracts***"), and will provide due and adequate notice of the relief sought in the Motion.

G. The Trustee has demonstrated that the Bid Procedures and the Bid Protections, including the Break-Up Fee and the Expense Reimbursement, (i) are fair, reasonable, and appropriate, (ii) are designed to maximize the value of the Smith estate, and (iii) have been negotiated by the Trustee and the Stalking Horse Bidder in good faith and at arms' length.

H. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** to the extent set forth herein.

2. All objections to the relief requested in the Motion, if any, that have not been withdrawn, waived, settled or ruled upon as announced to the Court at the Bid Procedures Hearing are denied and overruled in their entirety except as otherwise set forth herein.

3. The Bid Procedures are hereby approved in their entirety in the form attached hereto as **Exhibit 1**. Notwithstanding the foregoing, the consummation of the Sale Transaction shall remain subject to the entry of the Sale Order; *provided* that Sections 1, 3, 11, 12 and 13 of the Addendum to the Owens Contract are hereby approved and are and shall be enforceable against Sellers in accordance with their terms.

4. The Trustee may proceed with the Sale Transaction in accordance with the Bid Procedures and is authorized to take any and all actions necessary or appropriate to implement the

Bid Procedures.  Furthermore, the Trustee, in his sole discretion (subject, however, to the Bid Protections), may elect to remove the Property from the market.

5.       The process for submitting Qualified Bids (as defined in the Bid Procedures) is fair, reasonable and appropriate and is designed to maximize recoveries for the benefit of the Smith estate, its creditors, and other parties in interest. Any disputes as to the selection of a Qualified Bid, Initial Topping Bid and/or Successful Bid (all as defined in the Bid Procedures) shall be resolved by this Court.

6.       The Trustee is authorized to conduct the Auction in the event he receives one or more timely and acceptable Qualified Bids. The Auction is necessary to ensure that the Trustee receives the highest or best purchase offer for the Property, thus maximizing value to the Smith estate and resulting distributions to its creditors.

7.       Owens and the Owens Contract are each approved as the Stalking Horse Bidder and the Stalking Horse Bid, respectively, for the Property. The Court finds that the Bid Protections as described in the Owens Contract and the Bid Procedures are reasonable and necessary and are designed to maximize the value of the Smith estate, and are hereby approved.  Specifically, the Stalking Horse Bidder shall be and hereby is granted the right to the Break-Up Fee in an amount equal to two and five tenths percent (2.5%) of the Purchase Price, plus the Expense Reimbursement not to exceed $90,000 of documented reasonable out-of-pocket expenses incurred by Buyer in connection with the Sale Transaction, including legal fees and expenses.  The Break-Up Fee and the Expense Reimbursement, to the extent payable to Buyer, each shall be an allowed super-priority administrative expense claim against the Smith estate until paid.

8.       The form of Sale Notice attached hereto as **<u>Exhibit 2</u>** is hereby approved.

9.      Within three (3) business days after the Court enters this Order, the Trustee (or his agents) shall serve the Sale Notice by first class United States mail on (i) the Office of the United States Trustee for the Western District of Texas; (ii) all entities known by the Trustee to have asserted any lien, claim, encumbrance, or other interest in the Property (for whom identifying information and addresses are available to the Trustee); (iii) any governmental authority known to have a claim in the bankruptcy cases; (iv) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; (v) all of the Debtors' known creditors; and (vii) all other Persons known to Trustee that have expressed an interest in purchasing the Property and as directed by the Court (for whom identifying information and addresses are available to the Trustee) (collectively, the "***Sale Notice Parties***").

10.     Service of the Sale Notice as approved and set forth herein shall be deemed proper, due, timely, good, and sufficient notice of, among other things, the entry of this Order, the Bid Procedures, the Auction, the Sale Hearing, the deadline to object to the Motion, and the proposed Sale Transaction, including the transfer of the Sellers' right, title and interest in, to and under the Property free and clear of any and all liens, claims, encumbrances, and other interests, and no other or further notice is necessary.

11.     The form of Notice of Assumption and Assignment attached hereto as **<u>Exhibit 3</u>** is approved. In combination with the Sale Notice, the Notice of Assumption and Assignment contains the type of information required under Bankruptcy Rule 2002 that is currently known to the Trustee and (ii) is reasonably calculated to provide due, adequate and timely notice to all counterparties of (a) the potential assumption and assignment of the 365 Contracts and rights thereunder, (b) the maximum amount and manner offered to satisfy any defaults, or arrears or other damages under the 365 Contracts (the "***Cure Costs***"), and (c) the deadline to file objections to such assumption and

assignment, applicable Cure Costs, the existence of any defaults, and/or adequate assurance of future performance.

12.     Within two (2) business days after the Court enters this Order, the Trustee shall file the Notice of Assumption and Assignment with the Court and serve on all counterparties to the Leases and all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "***Contract Notice Parties***"). Service of such Notice of Assumption and Assignment as approved and set forth herein shall be deemed proper, due, timely, good, and sufficient notice of, among other things, the proposed assumption and assignment of the 365 Contracts and rights thereunder, the Cure Costs, and the procedures for objecting thereto, and no other or further notice is necessary.

13.     If at any time after the entry of this Order, the Trustee identifies additional prepetition executory contracts or unexpired leases to be assumed and assigned to the Purchaser, the Trustee shall serve a supplemental notice of assumption and assignment (the "***Supplemental Assumption and Assignment Notice***") by facsimile, electronic transmission, hand delivery or overnight mail on the counterparty (and its attorney, if known) to each supplemental 365 Contract at the last known address available to the Trustee by no later than ten days before the proposed effective date of the assignment.

14.     Any counterparty to any 365 Contract must file any objection to (i) the proposed assumption, assignment and sale of the applicable 365 Contract (and must state in its objection, with specificity, the legal and factual basis thereof) and (ii) if applicable, the proposed Cure Costs (and must state in its objection, with specificity, what Cure Costs are required with appropriate documentation in support thereof) no later than [date] at 5:00 p.m. (prevailing Central Time) (the "***Assumption and Assignment Objection Deadline***" and, together with the Sale Objection Deadline

(as defined herein), the "***Objection Deadlines***") and must serve the objection on (i) the Trustee, Gregory Milligan, 8911 N. Capital of Texas Highway, Suite 2120, Austin, TX 78759, gmilligan@harneypartners.com; (ii) the Broker, Lindsey Holubec, Riley-McLean Land, LLC, 505 Walsh Street, Austin, TX 78703, LLH@rileymclean.com; and (iii) attorneys for the Trustee, Waller Lansden Dortch & Davis LLP, Attn: Morris Weiss, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, morris.weiss@wallerlaw.com; (iv) the Office of the United States Trustee, Attn: Gary W. Wright, 903 San Jacinto Blvd., Room 230, Austin, TX 78701, gary.wright3@usdoj.gov; (v) counsel to the Stalking Horse Bidder, Kelley Drye & Warren LLP, Attn: James Carr and Benjamin D. Feder, 3 World Trade Center, 175 Greenwich Street, New York, NY 10007, jcarr@kelleydrye.com and bfeder@kelleydrye.com; (vi) counsel to Karen Annette Smith, Edwin Paul Keiffer, Rochelle McCullough, LLP, 325 N. St. Paul Street, Suite 4500, Dallas, TX 75201, pkeiffer@romclaw.com; and (vii) counsel to Keith Reed, Rene Escobedo, 6800 Park Ten Blvd., Suite 135-E, San Antonio, TX 78213, rene.escobedo@rre-law.com (the "***Objection Recipients***").

      15.    If a counterparty to a 365 Contract files a timely objection asserting a higher cure amount than the maximum Cure Costs set forth in the Notice of Assumption and Assignment, and the parties are unable to consensually resolve the dispute regarding the amount of the cure prior to the Assumption/Assignment Hearing, the amount to be paid or reserved with respect to such objection shall be determined at the Assumption/Assignment Hearing. All other objections to the proposed assumption and assignment of the Sellers' right, title and interest in, to and under the 365 Contracts shall also be heard at the Assumption/Assignment Hearing.

      16.    If no objection is timely filed and served, the counterparty to a 365 Contract shall be deemed to have consented to the assumption, assignment and sale of the 365 Contract to the

Purchaser if such 365 Contract is designated by the Purchaser as a Desired 365 Contract and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, except with respect to the adequate assurance of future performance by the Purchaser. Any objections to any Purchaser's proposed form of adequate assurance of future performance must be raised at the Sale Hearing and shall be resolved at the Sale Hearing. The Cure Costs set forth in the Notice of Assumption and Assignment shall be controlling, notwithstanding anything to the contrary in any 365 Contract, or any other document, and the counterparty to the 365 Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such 365 Contract against the Sellers or the Purchaser, or the property of any of them.

17.     Any and all objections, if any, to any Sale Transaction, including objections to the Auction and the selection of any Purchaser, must be filed by 5:00 p.m. (prevailing Central Time) on [March 7, 2023] (the "***Sale Objection Deadline***") and be served on the Objection Recipients.

18.     Any party failing to timely file an objection to any Sale Transaction shall be forever barred from objecting and shall be deemed to have consented to any Sale Transaction, including the transfer of the Sellers' right, title, and interest in, to and under the Property free and clear of any and all liens, claims, encumbrances, and other interests in accordance with a definitive agreement for a Sale Transaction.

19.     If any party asserts that any property or right cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, claims, encumbrances, and other interests in  accordance with a definitive agreement for a Sale Transaction and sections 363 and/or 365 of the Bankruptcy Code on account of one or more alleged rights, then such party shall file and serve a notice with all supporting documentation (a "***Rights Notice***") so that the Rights Notice is actually received by the

Objection Recipients on or before the Sale Objection Deadline. Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right. The assertion of a Rights Notice shall not require an exercise of the underlying right asserted and any such right asserted shall be subject to the terms and conditions of a definitive agreement for a Sale Transaction.

20.     Any party failing to timely file and serve a Rights Notice shall be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Sellers' right, title and interest in, to and under the properties of the Sellers to be sold, assumed and/or assigned pursuant to a definitive agreement for a Sale Transaction, and from asserting any alleged rights with respect to the Sellers' transfer, sale, assumption, and/or assignment of the Sellers' right, title and interest in, to and under such properties, as set forth in a definitive agreement for a Sale Transaction and deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of such right, title and interest in, to and under such properties, free and clear of all liens, claims, encumbrances, and other interests in accordance with a definitive agreement for a Sale Transaction (regardless of whether such consent must be in writing).

21.     If a party timely files and serves a Rights Notice, but the objection is not resolved at or before the closing of the Sale Transaction, the property or right to which that party has alleged a right may, at the option of the Purchaser, be excluded from the Property to be acquired under the definitive agreement for a Sale Transaction, and the purchase price shall be reduced in accordance therewith.

22.     Any party desiring to submit a bid for the Sellers' right, title and interest in, to and under the Property must comply with the Bid Procedures.

23.     To the extent that one or more timely and acceptable Qualified Bid(s) is received, an auction on [March 9, 2023] at [TIME] shall be conducted in open Court, presided over by the Judge. The Trustee may adjourn or cancel the Auction at or prior to the Auction in the event no Qualified Bids are received.

24.     The Trustee may request Court authority to alter the Bid Procedures (other than the Bid Protections or the amount of the minimum Initial Topping Bid), including changes so as to modify deposit amounts and to modify or eliminate the requirements with respect to Back-Up Bidders. The Trustee may terminate discussions with any and all prospective acquirers at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bid Procedures.

25.     The Sale Hearing shall be held on [March 9, 2023] at [TIME]; *provided* that if no other Qualified Bids are received, the Trustee, in his sole discretion, may request the Court set a Sale Hearing at any time following the expiration of the Bid Deadline.

26.     Notwithstanding Bankruptcy Rule 6004 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  To the extent applicable, the stays described in Bankruptcy Rule 6004(h) are hereby waived.

27.     The terms of this Order shall control to the extent of any conflict with the Motion.

28.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

###

ORDER SUBMITTED BY:
Waller Lansden Dortch & Davis LLP
Morris D. Weiss
State Bar No. 21110850
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)
morris.weiss@wallerlaw.com
COUNSEL FOR TRUSTEE

040122-15051/4865-7465-7607.8

## **Exhibit 1**

**Bid Procedures**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| DARYL GREG SMITH and, | § | CASE NO. 21-60162-RBK-11 |
| CANADIAN RIVER RANCH, LLC | § | CASE NO. 21-60163-RBK-11 |
| | § | Jointly Administered Under |
| | § | Case No. 21-60162-rbk |
| Debtors. | § | |

**BID PROCEDURES FOR THE SALE OF THE PROPERTY**

Gregory S. Milligan, chapter 11 trustee in the above-captioned bankruptcy cases (the "***Trustee***"), sets forth the following bid procedures (the "***Bid Procedures***") to be employed in connection with an auction, if the Trustee receives one or more timely Qualified Bids (the "***Auction***"), for the sale of certain real estate set forth in the Owens Contract (the "***Property***") owned by (i) the estate of Daryl Greg Smith and (ii) Darren Keith Reed (together, the "***Sellers***").  At a hearing following the Auction (the "***Sale Hearing***"), the Trustee will seek the entry of an order (the "***Sale Order***") from the United States Bankruptcy Court for the Western District of Texas, Waco Division (the "***Court***") authorizing and approving the sale of the Property among the Sellers and the Qualified Bidder(s) (as defined herein) that the Trustee determines to have made the highest or otherwise best bid (the "***Purchaser***").  These Bid Procedures have been approved and authorized pursuant to the *Order Approving (A) Bid Procedures, Including Approval of Stalking Horse Bidder, (B) Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Related Notices, (C) Notice of Auction and Sale Hearing, and (D) Related Relief* (the "***Bid Procedures Order***") entered by the Court on [DATE], 2023.[1]

### A.    Approvals

The proposed sale(s) shall in all respects be subject to approval by the Court and in compliance with: (i) the applicable provisions of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"); (ii) the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"); and (iii) other applicable rules and law, including, without limitation, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Western District of Texas (the "***Local Rules***") and Orders of the Court.

### B.    Assets to Be Sold

The Auction shall consist of the Property.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Order.

C.    **Preliminary Diligence**

Any prospective competing bidder (each, a "***Potential Bidder***") identified by the Trustee or the Broker as reasonably likely to be a Qualified Bidder (as defined herein) and which has executed a non-disclosure agreement substantially similar to the non-disclosure agreement between the Stalking Horse Bidder and the Trustee shall be provided a copy of the Owens Contract, current title commitment for the Property (and any updates thereto along with any documents reflected in the title commitment), current survey of the Property (and any updates thereto), and copies of current leases on the Property. Potential Bidders may conduct additional, non-destructive diligence at their own option and expense, including tours of the Property and the engagement of customary engineers and contractors.

All bidders must complete their due diligence prior to the Bid Deadline.  There shall be no other provision for the completion of due diligence after the Bid Deadline.

D.    **Bid Deadline**

Any person or entity interested in participating in the Auction must submit a Qualified Bid (as defined below) on or before [March 2, 2023] by 5:00 p.m. (prevailing Central Time) in writing, to (i) the Trustee, Gregory Milligan, 8911 N. of Capital Texas Highway, Suite 2120, Austin, TX 78759, gmilligan@harneypartners.com; (ii) the Broker, Lindsey Holubec, Riley-McLean Land, LLC, 505 Walsh Street, Austin, TX 78703, LLH@rileymclean.com; and (iii) attorneys for the Trustee, Waller Lansden Dortch & Davis LLP, Attn: Morris Weiss, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, morris.weiss@wallerlaw.com (collectively, the "***Trustee Notice Parties***").

E.    **Stalking Horse Bid**

The Trustee has entered into a sales contract with Logan Owens ("***Owens***" or the "***Stalking Horse Bidder***") for the sale of the Property (the "***Owens Contract***" or the "***Stalking Horse Bid***"). The Owens Contract provides, in summary, as follows[2]:

a)    Purchase Price: $7,126,378

b)    $712,637 deposit, refundable only if the Stalking Horse Bidder is outbid at the Auction or if the Owens Contract terminates for any reason other than a default by the Stalking Horse Bidder.

c)    Bid Protections: 2.5% Break Up Fee; up to $90,000 Expense Reimbursement (the "**Bid Protections**").

d)    Conditions: Standard and customary, including (i) entry of the Sale Order in form and substance reasonably acceptable to the Stalking Horse Bidder, (ii) delivery of insurable and marketable title to the Property, (iii) the Bid Procedures Order and the Sale Order both being in full force and effect and not having been modified, amended or stayed unless approved by the Stalking Horse Bidder in

---

[2] The summary below is qualified in its entirety by the Owens Contract.

its sole discretion, and (iv) there being no Cure Costs due under any Lease or 365 Contract with respect to the Property in excess of $50,000.

e)    Closing: On or before [March 24, 2023].

The Court has approved Owens as the Stalking Horse Bidder and the Owens Contract as the Stalking Horse Bid.

## F.    <u>Qualified Bids</u>

To participate in the bidding process and be deemed a "*Qualified Bidder*," each Potential Bidder must submit a "*Qualified Bid*" by the Bid Deadline. No competing bid will be accepted by the Trustee unless the Purchase Price stated therein is equal to the amount of the Stalking Horse Bid, plus the Bid Protections and an initial overbid amount of no less than $75,000 (the "*Initial Topping Bid*"). By way of example only, because the Stalking Horse Bid is for $7,126,378, with a break-up fee of 2.5% (equal to $178,159) plus $90,000 in expense reimbursement, an Initial Topping Bid must be in the amount of no less than $7,469,537 ($7,126,378 + $178,159 + $90,000 + $75,000). In addition, to constitute a Qualified Bid, a bid must:

(a)    be in writing that must be a bid for the entirety of the Property for cash at closing;

(b)    identify the Property;

(c)    include a proposed list of the 365 Contracts that the Potential Bidder proposes be assumed, assigned, and sold to it in connection with the transaction (the "*Desired 365 Contracts*") and proposed adequate assurance of future performance;

(d)    fully disclose the legal identity of each entity that will be bidding or otherwise participating in connection with such bid;

(e)    fully disclose any connections or agreements with the Debtors or Trustee, any other known Potential Bidder or Qualified Bidder, and/or any officer or director of the foregoing;

(f)    provide an irrevocable offer in the form of an executed copy of a Modified Sales Contract on terms and conditions no less favorable to the Smith estate than the terms and conditions of the Owens Contract, including all exhibits and schedules contemplated thereby;

(g)    include a marked copy of the Modified Sales Contract reflecting the differences between the Modified Sales Contract and the Owens Contract;

(h)    with the exception of the Stalking Horse Bid, expressly state that the bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement;

(i)     demonstrate that such bidder is financially capable of consummating the transactions contemplated by (i) the Modified Sales Contract and (ii) any additional bids, overbids, or modifications to the Modified Sales Contract such Potential Bidder may make during the Auction, and detail the source(s) of funds that will be used to consummate the transaction;

(j)     include satisfactory evidence of committed financing or other financial ability to consummate the transactions contemplated by the Modified Sales Contract in a timely manner;

(k)     expressly acknowledge and represent that the Potential Bidder (i) has had an opportunity to conduct any and all due diligence relating to the Property prior to making its bid, (ii) has relied solely upon its own independent review, investigation, and/or inspection of the Property in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, except as expressly stated in the representations and warranties contained in the Modified Sales Contract ultimately accepted and executed by the Trustee;

(l)     not contain any financing or diligence contingencies of any kind;

(m)     not contain any condition to closing of the transaction on the receipt of any third party approvals (excluding required Court approval and any required governmental and/or regulatory approval, if any);

(n)     include evidence of authorization and approval from the bidder's board of directors (or comparable governing body), if applicable, with respect to the submission, execution, delivery and closing of the Modified Sales Contract;

(o)     be able to close the transaction as specified in Section 6 of the Addendum to the Owens Contract; and

(p)     include a good faith deposit (the "***Good Faith Deposit***") in the form of a certified or bank check (or other form acceptable to the Trustee in its sole and absolute discretion) deposited with the title company in an amount equal to ten percent (10%) of such Potential Bidder's Initial Topping Bid.  All Good Faith Deposits shall be held in a segregated account by the Trustee and thereafter returned to the respective bidders in accordance with these Bid Procedures, unless the bidder has been selected as the Back-Up Bidder (as defined herein).

The Trustee shall make a determination in his sole and absolute business judgment regarding whether a bid is a Qualified Bid (as set forth in the Bid Procedures) and shall notify bidders whether their bids have been determined to be Qualified Bids by [March 6], 2023.  The Stalking Horse Bidder will be deemed a Qualified Bidder, and the Stalking Horse Bid will constitute a Qualified Bid for all purposes.

## G.    <u>Auction, Auction Procedures, and Overbids</u>

In the event that the Trustee receives one or more timely Qualified Bids, the Trustee shall conduct the Auction. The Auction, if required, will be in the courtroom and supervised by the Court. The Trustee may adjourn or cancel the Auction at or prior to the Auction if no Qualified Bids are received.

No later than two (2) business days prior to the Auction, the Trustee shall notify the Stalking Horse Bidder and all other Qualified Bidders of all Qualified Bids received and the highest Initial Topping Bid.

The Auction shall be governed by the following procedures, subject to modification by the Trustee at the Auction, with the approval of the Court:

(a)    The Qualified Bidders shall appear in person or virtually if the hearing is conducted via WebEx at the Auction, or through a duly authorized representative.

(b)    Only the Qualified Bidders shall be entitled to make any subsequent bids at the Auction.

(c)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

(d)    Bidding shall commence at the amount of the highest Initial Topping Bid received by the Trustee that is a Qualified Bid from a Qualified Bidder.

(e)    Qualified Bidders may then submit successive bids higher than the previous bid, based on and increased from the Initial Topping Bid, in increments of at least $75,000.  All Qualified Bidders shall have the right to submit additional bids and make additional modifications to their respective Modified Sales Contracts, as applicable, at the Auction to improve such bids.  The Auction may include negotiations with the Qualified Bidders and open bidding in the presence of all other Qualified Bidders.  The potential cost to the Smith estate of the Bid Protections shall be used by the Trustee in determining the "highest or otherwise best" bid during each round of the Auction.

(f)    The Auction among Qualified Bidders shall continue according to these procedures until the Trustee determines, subject to Court approval, that the Trustee has received the highest or otherwise best bid (the "***Successful Bid***"). In making this decision, the Trustee may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualified Bidder's ability to close a given transaction, the proposed timing thereof, and rights of such Qualified Bidder and the Trustee with respect to the termination thereof, the number, type and nature of any changes reflected in the Modified Sales Contract requested by each Qualified Bidder, and the net benefit to the Smith estate.  The Qualified Bidder submitting the Successful Bid(s) for the Property shall become the Purchaser

and shall have such rights and responsibilities of a purchaser, as set forth in the Modified Sales Contract or Owens Contract, as applicable.

Bids made after the close of the Auction shall not be considered by the Trustee. All Qualified Bidders at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

On or before [March 13, 2023], the Trustee shall cause the results of the Auction, including a copy of the Successful Bid, the identity of the Purchaser and Back-Up Bidder (defined below), and the Purchaser's proposed form of adequate assurance of future performance, to be filed with the Bankruptcy Court.

## H.    **Back-Up Bidder and Return of Good Faith Deposits**

If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid for the Property at the Auction (the "***Back-Up Bid***") shall be required to serve as the back-up bidder (the "***Back-Up Bidder***") for the Property and keep such Back-Up Bid open and irrevocable until the first to occur of (i) sixty (60) days after the completion of the Auction, (ii) consummation of the transaction with the Purchaser, or (iii) the Back-Up Bidder's receipt of notice from the Trustee of the release by the Trustee of the Back-Up Bidder's obligations. Following the Sale Hearing, if the Purchaser fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Purchaser or otherwise, the Back-Up Bidder will be deemed to be the new Purchaser, and the Trustee will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

Except as provided herein, Good Faith Deposits shall be returned without interest to each bidder not selected by the Trustee as the Purchaser or the Back-Up Bidder by no later than the third (3rd) business day following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be held by the Trustee until three (3) business days after the closing of the Sale Transaction with the Purchaser or termination of the Back-Up Bid as provided above.

## I.    **Reservation of Rights**

The Trustee reserves the right to request Court authority to alter the Bid Procedures (other than the Bid Protections or the amount of the minimum Initial Topping Bid). The Trustee may terminate discussions with any and all prospective acquirers at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bid Procedures.

## J.    **Sale Hearing**

The Successful Bid(s) will be subject to approval by the Bankruptcy Court. The Sale Hearing will take place on [March 9, 2023] at [TIME].  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court on the date scheduled for the Sale Hearing or on the Court's docket. If no other Qualified Bids are received, the Trustee, in his sole discretion, may request the Court set a Sale Hearing at any time following the expiration of the Bid Deadline.

The Trustee's presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute the Trustee's acceptance of the bid.  The Trustee will be deemed to have accepted a bid only when the bid has been approved by order of the Bankruptcy Court.

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

By: /s/ Morris D. Weiss
    Morris D. Weiss
    Texas Bar No. 21110850
    Courtney K. Stone
    Texas Bar No. 24093208
    100 Congress Ave., Suite 1800
    Austin, Texas 78701
    Telephone:  (512) 685-6400
    Facsimile:  (512) 685-6417
    Email:    morris.weiss@wallerlaw.com
            courtney.stone@wallerlaw.com

COUNSEL TO GREGORY S. MILLIGAN,
CHAPTER 11 TRUSTEE

## **Exhibit 2**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| DARYL GREG SMITH and, | § | CASE NO. 21-60162-RBK-11 |
| CANADIAN RIVER RANCH, LLC | § | CASE NO. 21-60163-RBK-11 |
| | § | Jointly Administered Under |
| | § | Case No. 21-60162-rbk |
| Debtors. | § | |

## NOTICE OF AUCTION AND SALE HEARING

PLEASE TAKE NOTICE that on April 9, 2021 (the "***Petition Date***"), Daryl Greg Smith ("***Smith***") and Canadian River Ranch, LLC ("***CRR***" and together with Smith, the "***Debtors***") each filed a voluntary petition for relief under the Bankruptcy Code filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.  On June 29, 2021, the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "***Bankruptcy Court***") approved the appointment of Gregory S. Milligan as chapter 11 trustee for the Debtors (the "***Trustee***").

PLEASE TAKE NOTICE that on _____, 2023, the Bankruptcy Court entered an order (the "***Bid Procedures Order***") approving the *Trustee's Motion for (I) Order Approving: (A) Bid Procedures, Including Approval of Stalking Horse Bidder; (B) Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Related Notices, (C) Notice of Auction and Sale Hearing, and (D) Related Relief and (II) Order (A) Approving the Sale of Real Estate Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(B), (F), (H) and (M), 365, and 503, (B) Approving Assumption, Assignment And Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Sections 363 and 365 and Related Cure Amounts, and (C) Granting Related Relief* (the "***Sale Motion***[4]"), filed by the Trustee.  The Sale Motion and Bid Procedures Order also sought to establish (i) an auction (the "***Auction***") and (ii) a final hearing (the "***Sale Hearing***") to approve the sale of certain real estate set forth in the Owens Contract (the "***Property***") owned by (i) the estate of Daryl Greg Smith and (ii) Darren Keith Reed (together, the "***Sellers***"), all as more fully described in the Sale Motion.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bid Procedures Order, the Trustee is authorized to enter into the Owens Contract with the Stalking Horse Bidder for the Property.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bid Procedures Order, if the Trustee receives one or more timely and acceptable Qualified Bids (as defined in the Bid Procedures Order) for the Property, the Auction shall take place [**March 9, 2023] at [TIME] (prevailing Central Time)** in open Court or such other location as designated by the Trustee in a notice to all Qualified Bidders. Only parties that have submitted a Qualified Bid, as set forth in the Bid

---

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

Procedures Order, by no later than [**March 2, 2023] at 5:00 p.m. (prevailing Central Time)** (the "*Bid Deadline*") may bid at the Auction. Any party that wishes to take part in this process and submit a bid for the Property must submit their competing bid prior to the Bid Deadline and in accordance with the Bid Procedures.

PLEASE TAKE FURTHER NOTICE that the Sale Hearing to consider approval of the sale of the Property to the winning bidder at the Auction, free and clear of all liens, claims, encumbrances and other interests, will be held before the Honorable Ronald B. King at the Bankruptcy Court, [San Antonio or Waco] on [**March 9, 2023]at _____ .m. (prevailing Central Time)**, or at such other time as the Court is available.

PLEASE TAKE FURTHER NOTICE that objections to the sale, if any, must be filed with the Bankruptcy Court and served so as to be actually received by the Objection Recipients no later than **[March 7, 2023] at 5:00 p.m. (prevailing Central Time)**.

PLEASE TAKE FURTHER NOTICE that the Objection Recipients are (i) the Trustee, Gregory Milligan, 8911 N. Capital of Texas Highway, Suite 2120, Austin, TX 78759, gmilligan@harneypartners.com; (ii) the Broker, Lindsey Holubec, Riley-McLean Land, LLC, 505 Walsh Street, Austin, TX 78703, LLH@rileymclean.com; and (iii) attorneys for the Trustee, Waller Lansden Dortch & Davis LLP, Attn: Morris Weiss, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, morris.weiss@wallerlaw.com; (iv) the Office of the United States Trustee, Attn: Gary W. Wright, 903 San Jacinto Blvd., Room 230, Austin, TX 78701, gary.wright3@usdoj.gov; (v) counsel to the Stalking Horse Bidder, Kelley Drye & Warren LLP, Attn: James Carr and Benjamin D. Feder, 3 World Trade Center, 175 Greenwich Street, New York, NY 10007, jcarr@kelleydrye.com and bfeder@kelleydrye.com; (vi) counsel to Karen Annette Smith, Edwin Paul Keiffer, Rochelle McCullough, LLP, 325 N. St. Paul Street, Suite 4500, Dallas, TX 75201, pkeiffer@romclaw.com; and (vii) counsel to Keith Reed, Rene Escobedo, 6800 Park Ten Blvd., Suite 135-E, San Antonio, TX 78213, rene.escobedo@rre-law.com.

**PLEASE TAKE FURTHER NOTICE THAT UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT, AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER HEARING AND NOTICE.**

PLEASE TAKE FURTHER NOTICE that this Notice of Auction and Sale Hearing is subject to the fuller terms and conditions of the Sale Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Trustee encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Property and/or copies of any related document, including the Sale Motion, the Owens Contract filed in connection with the Sale Motion, or the Bid Procedures Order, may make a written request to Waller Lansden Dortch & Davis, LLP, Morris D. Weiss, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, morris.weiss@wallerlaw.com. In addition, copies of the Sale Motion, the Bid Procedures Order and this Notice may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at PACER for a fee (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

Dated: _____, 2023
Austin, Texas

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

By: /s/ Morris D. Weiss
    Morris D. Weiss
    Texas Bar No. 21110850
    Courtney K. Stone
    Texas Bar No. 24093208
    100 Congress Ave., Suite 1800
    Austin, Texas 78701
    Telephone: (512) 685-6400
    Facsimile: (512) 685-6417
    Email:    morris.weiss@wallerlaw.com
              courtney.stone@wallerlaw.com

    COUNSEL TO GREGORY S. MILLIGAN,
    CHAPTER 11 TRUSTEE

## Exhibit 3

**Notice of Assignment and Assumption**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| DARYL GREG SMITH and, | § | CASE NO. 21-60162-RBK-11 |
| CANADIAN RIVER RANCH, LLC | § | CASE NO. 21-60163-RBK-11 |
| | § | Jointly Administered Under |
| | § | Case No. 21-60162-rbk |
| Debtors. | § | |

**NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**WHICH MAY BE ASSUMED AND ASSIGNED IN CONNECTION**
**WITH THE SALE OF CERTAIN REAL ESTATE AND**
**THE PROPOSED CURE AMOUNT WITH RESPECT THERETO**

  **You are receiving this *Notice of Executory Contracts and Unexpired Leases Which May Be Assumed and Assigned in Connection With the Sale of Certain Real Estate and the Proposed Cure Amount With Respect Thereto* (the "*Notice of Assumption and Assignment*") because you may be a counterparty to an executory contract or unexpired lease with the Sellers. Please read this notice carefully as your rights may be affected by the transactions described herein.**

  PLEASE TAKE NOTICE that on April 9, 2021 (the "***Petition Date***"), Daryl Greg Smith ("***Smith***") and Canadian River Ranch, LLC ("***CRR***" and together with Smith, the "***Debtors***") each filed a voluntary petition for relief under the Bankruptcy Code filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.  On June 29, 2021, the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "***Bankruptcy Court***") approved the appointment of Gregory S. Milligan as chapter 11 trustee for the Debtors (the "***Trustee***").

  PLEASE TAKE NOTICE that on [date], the United States Bankruptcy Court for the Western District of Texas, Waco Division (the "***Bankruptcy Court***") entered an order (the "***Bid Procedures Order***") approving the *Trustee's Motion for (I) Order Approving: (A) Bid Procedures, Including Approval of Stalking Horse Bidder; (B) Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Related Notices, (C) Notice of Auction and Sale Hearing, and (D) Related Relief and (II) Order (A) Approving the Sale of Real Estate Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(B), (F), (H) and (M), 365, and 503, (B) Approving Assumption, Assignment And Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Sections 363 and 365 and Related Cure Amounts, and (C) Granting Related Relief* (the "***Sale Motion***"), filed by the Trustee.[5]  The Sale Motion and Bid Procedures Order set forth certain procedures (the "***Bid Procedures***") to approve the sale of certain real estate set forth in the Owens Contract (the

---

[5] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

"*Property*") owned by (i) the estate of Daryl Greg Smith and (ii) Darren Keith Reed (together, the "*Sellers*"), all as more fully described in the Sale Motion (the "*Sale Transaction*").

PLEASE TAKE FURTHER NOTICE that the Auction and hearing to approve the sale of the Property (the "*Sale Hearing*") before the Honorable Ronald B. King at the United States Bankruptcy Court, [San Antonio or Waco] on [**March 9, 2023] at _____ _.m. (prevailing Central Time)**, or at such other time as the Court is available.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bid Procedures Order, the Trustee has established procedures for the assumption, assignment and sale of certain executory contracts and unexpired leases (collectively, the "*365 Contracts*") to a potential purchaser and the determination of related Cure Costs (as defined herein). The Sellers are parties to certain 365 Contracts and, in accordance with the Bid Procedures Order, hereby file this notice identifying (i) the 365 Contracts, which may be assumed and assigned to the Stalking Horse Bidder or such other Purchaser in connection with the Sale Transaction and (ii) the proposed amounts, if any, the Trustee believes are owed to the counterparty to the 365 Contract to cure any defaults, arrears or other damages existing under the 365 Contract (the "*Cure Costs*"), both as set forth on **Exhibit 1** attached hereto.

PLEASE TAKE FURTHER NOTICE that the listing of a 365 Contract on **Exhibit 1** does not constitute an admission that the agreement is an executory contract or unexpired lease as contemplated by section 365(a) of the Bankruptcy Code or that the Sellers have any liability thereunder, and the Sellers expressly reserve all of their rights, claims, causes of action and defenses with respect to the 365 Contracts listed on **Exhibit 1**.

PLEASE TAKE FURTHER NOTICE that any objections to the assumption, assignment, and sale of any 365 Contract identified in this notice (except with respect to the adequate assurance of future performance by any successful bidders), including to the Cure Costs set forth in **Exhibit 1** must be (i) in writing, (ii) filed with the Bankruptcy Court and (iii) served on (i) the Trustee, Gregory Milligan, 8911 N. Capital of Texas Highway, Suite 2120, Austin, TX 78759, gmilligan@harneypartners.com; (ii) the Broker, Lindsey Holubec, Riley-McLean Land, LLC, 505 Walsh Street, Austin, TX 78703, LLH@rileymclean.com; and (iii) attorneys for the Trustee, Waller Lansden Dortch & Davis LLP, Attn: Morris Weiss, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, morris.weiss@wallerlaw.com; (iv) the Office of the United States Trustee, Attn: Gary W. Wright, 903 San Jacinto Blvd., Room 230, Austin, TX 78701, gary.wright3@usdoj.gov; (v) counsel to the Stalking Horse Bidder, Kelley Drye & Warren LLP, Attn: James Carr and Benjamin D. Feder, 3 World Trade Center, 175 Greenwich Street, New York, NY 10007, jcarr@kelleydrye.com and bfeder@kelleydrye.com; (vi) counsel to Karen Annette Smith, Edwin Paul Keiffer, Rochelle McCullough, LLP, 325 N. St. Paul Street, Suite 4500, Dallas, TX 75201, pkeiffer@romclaw.com; and (vii) counsel to Keith Reed, Rene Escobedo, 6800 Park Ten Blvd., Suite 135-E, San Antonio, TX 78213, rene.escobedo@rre-law.com (the "*Objection Recipients*") by **[date] at 5:00 p.m. (prevailing Central Time)** (the "*Assignment and Assumption Objection Deadline*"). Any such objections must set forth the proposed assumption, assignment, and sale of the 365 Contracts (and must state, with specificity, the legal and factual basis thereof) and, if applicable, the proposed Cure Costs (and must state, with specificity, what Cure Costs are required with appropriate documentation in support thereof). Other than the Cure Costs listed on

**Exhibit 1**, the Sellers are not aware of any amounts due and owing under the 365 Contracts listed therein.

PLEASE TAKE FURTHER NOTICE that if a counterparty to a 365 Contract files a timely objection asserting a higher cure amount than the maximum Cure Costs set forth in this Notice of Assumption and Assignment, and the parties are unable to consensually resolve the dispute prior to the hearing to resolve any such objection (on or about [February 17, 2023]) (the "***Assumption/Assignment Hearing***"), the amount to be paid or reserved with respect to such objection shall be determined at the Assumption/Assignment Hearing. All other objections to the proposed assumption and assignment of the Sellers' right, title and interest in, to and under the 365 Contracts shall also be heard at the Assumption/Assignment Hearing.

**PLEASE TAKE FURTHER NOTICE that each counterparty to any 365 Contract that does not timely file an objection by the Assignment and Assumption Objection Deadline shall be forever barred from asserting any objection with regard to the assumption, assignment, sale, and/or Cure Costs set forth in Exhibit 1, except with respect to the adequate assurance of future performance by the Successful Bidder(s). Any objections to any Purchaser's proposed form of adequate assurance of future performance must be raised at the Sale Hearing and shall be resolved at the Sale Hearing. The Cure Costs set forth in the Notice of Assumption and Assignment shall be controlling, notwithstanding anything to the contrary in any 365 Contract or any other document, and the counterparty to the 365 Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such 365 Contract against the Sellers or the Purchaser, or the property of any of them.**

PLEASE TAKE FURTHER NOTICE that although the Trustee has made a good faith effort to identify all 365 Contracts to be assumed and assigned in connection with the Sale Transaction, he may discover additional contracts that the Sellers and the Purchaser desire to assume and assign in connection therewith. Accordingly, if at any time after the entry of the Bid Procedures Order, the Trustee identifies additional prepetition executory contracts to be assumed and assigned to the Purchaser, the Trustee shall serve a supplemental notice of assumption and assignment (the "***Supplemental Assumption and Assignment Notice***") by facsimile, electronic transmission, hand delivery or overnight mail on i) the counterparty to each supplemental 365 Contract at the last known address available to the Trustee and ii) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 at any time prior to the Assumption/Assignment Hearing. Each such Supplemental Assumption and Assignment Notice shall set forth (i) the name and address of the contract counterparty, (ii) notice of the proposed effective date of the assignment (subject to the right of Purchaser to withdraw such request for assumption and assignment of the contract prior to the Closing), (iii) identification of the 365 Contract, (iv) the Cure Costs, if any, and (v) the proposed adequate assurance.

PLEASE TAKE FURTHER NOTICE that this Notice of Assumption and Assignment is subject to the fuller terms and conditions of the Sale Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Trustee encourages parties-in-interest to review such documents in their entirety. Parties with questions regarding the proposed assumption, assignment, and sale procedures contained herein should contact the Trustee's counsel at the contact information provided below.

The inclusion of a 365 Contract on **Exhibit 1** does not mean that such 365 Contract will be assumed or assigned in connection with the Sale Transaction or that the Trustee or any Purchaser will make any cure payment in connection with such 365 Contract.

Dated: _____, 2023
Austin, Texas

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

By: _/s/ Morris D. Weiss_
    Morris D. Weiss
    Texas Bar No. 21110850
    Courtney K. Stone
    Texas Bar No. 24093208
    100 Congress Ave., Suite 1800
    Austin, Texas 78701
    Telephone:  (512) 685-6400
    Facsimile:  (512) 685-6417
    Email:      morris.weiss@wallerlaw.com
                courtney.stone@wallerlaw.com

COUNSEL TO GREGORY S. MILLIGAN,
CHAPTER 11 TRUSTEE

## EXHIBIT 1

**365 Contracts**

| Counterparty | Contract | Proposed Cure Cost |
|---|---|---|
| Angus Solar, LLC | Ground Lease, dated October 31, 2017, originally between Caddoa Creek Ranch, LLC as Landlord and Angus Solar, LLC as Tenant, as amended | $0.00 |
| Robert C. Heise | Cattle Grazing Lease, dated August 17, 2020, originally between Caddoa Creek Ranch, LLC and Robert C. Heise, as amended | $0.00 |

## EXHIBIT B

**Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| DARYL GREG SMITH and, | § | CASE NO. 21-60162-RBK-11 |
| CANADIAN RIVER RANCH, LLC | § | CASE NO. 21-60163-RBK-11 |
| | § | Jointly Administered Under |
| | § | Case No. 21-60162-rbk |
| Debtors. | § | |

**ORDER (A) APPROVING THE SALE OF REAL ESTATE FREE AND CLEAR**
**OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**
**PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(B), (F), (H) AND (M),**
**(B) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF**
**CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365 AND**
**RELATED CURE AMOUNTS, AND (C) GRANTING RELATED RELIEF**

Came on for consideration the motion (the "***Motion***")[1] of Gregory S. Milligan, chapter 11 trustee in the above-captioned bankruptcy cases (the "***Trustee***") for an order pursuant to sections 105, 363, 365 and 503 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and the Local

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in Sales Contract (as defined herein).

Rules of the United States Bankruptcy Court for the Western District of Texas (the "*Local Rules*") (i) approving (a) bid procedures for the sale of certain real estate (the "*Property*") owned by Debtor Daryl Greg Smith ("*Smith"*) and Darren Keith Reed[2] ("*Reed*"; and together with the Trustee, the "*Sellers*"), including the approval of a Stalking Horse Bidder, (b) approving the procedures for the assumption, assignment, and sale of executory contracts and unexpired leases, including notice of proposed cure costs (the "*Assumption and Assignment Procedures*"), (c) establishing a date for an auction if the Trustee receives one or more timely and acceptable Qualified Bids (the "*Auction*") and a final hearing (the "*Sale Hearing*") to approve the sale of the Property (the "*Sale Transaction*"), (d) approving the form and manner of notice of the Auction and Sale Hearing, and (e) granting related relief and an (ii) order (a) approving the sale of the Property free and clear of all liens, claims, encumbrances, and other interests pursuant to sections 105 and 363 of the Bankruptcy Code, (b) approving the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to sections 363 and 365 of the Bankruptcy Code and related Cure Costs, and (c) granting related relief, all as more fully described in the Motion; and this Court having entered an order on _____, 2023 (Doc. __) (the "*Bid Procedures Order*" and Exhibit 1 attached thereto, the "*Bid Procedures*"); and the Auction having been set for [DATE] in accordance with the Bid Procedures Order; [and only the Purchaser[s] (as defined herein) having been deemed a Qualified Bidder[s] and having submitted a Qualified Bid[s] for the Property]; [and [NUMBER] Qualified Bidders having submitted competing bids for the Property; and an Auction having been held on [DATE]; and the Trustee having determined that Purchaser represents the highest and otherwise best bid for the Property]; and a final hearing (the "*Sale Hearing*") to approve the sale of the Property (the "*Sale Transaction*") having been held on

---

[2] The Smith estate holds an undivided 90% interest in the Property. The remaining 10% interest is held by Reed.

[DATE] to consider approval of the Sales Contract (as defined herein); and the Court having determined that notice of the Motion was adequate and sufficient; and all such parties having been afforded due process and an opportunity to be heard with respect to the Motion and all relief requested therein; and the Court having reviewed and considered: (i) the Motion; (ii) the objections and responsive pleadings filed in connection with the Motion, if any; and (iii) the representations of counsel made, and the evidence proffered, at the Sale Hearing; and the Sale Hearing having been held, and after due deliberation and sufficient cause appearing therefor, hereby finds and determines that:

A.  **Jurisdiction and Venue**. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Western District of Texas*, the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper under 28 U.S.C. §§ 1408 and 1409.

B.  **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.  **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004.

D.  **Notice**. The service of the Motion on the Sale Notice Parties (as defined in the Bid Procedures Order) and the Sale Notice and the proposed entry of this Order to the Sale Notice Parties was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Bid Procedures Order. With respect to entities whose identities were not reasonably ascertained by the Trustee, notice was sufficient and reasonably calculated under the circumstances to reach such entities.  Accordingly, no further notice of, or hearing on,

the Motion, the Sale Hearing, the Sale Contract, the Sale Transaction, the related assumption and assignment of certain executory contracts and unexpired leases and Cure Costs, or this Order is necessary or required.

E.     **Compliance with Bid Procedures Order**.  As demonstrated by (i) evidence adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee has conducted a fair and open sale process in a manner reasonably calculated to produce the highest and otherwise best offer for the Property in compliance with the Bid Procedures Order. The Bid Procedures were substantively and procedurally fair to all parties.  The sale process, Bid Procedures and Auction were non-collusive, duly noticed, and afforded a full, fair, and reasonable opportunity for any Person to make a higher and otherwise better offer to purchase the Property. The bidding and related procedures established by the Bid Procedures Order have been complied with in all material respects by the Trustee and the Purchaser.

F.     **Successful Bidder**. At the Auction held on [DATE], the Purchaser offered and the Trustee accepted, the highest and best Qualified Bid (as defined in the Bid Procedures), which is a cash bid in the amount of [PRICE] (the "***Purchase Price***"), subject to adjustment as set forth in that certain Sales Contract, dated as of [DATE] (as amended, supplemented, or otherwise modified from time to time, including all Exhibits, Schedules, and Appendices thereto (the "***Sales Contract***," attached hereto as **Exhibit 1**) by and among the Trustee and [PARTY] (the "***Purchaser***"). The Purchaser is approved as the Successful Bidder, as such term is defined in the Bid Procedures, for the Property on the terms set forth in the Sales Contract by and among the Purchaser and the Trustee.

G.     **Back-Up Bidder**. [At the Auction held on [DATE], [PARTY] offered the next highest or otherwise best Qualified Bid, which is a cash bid in the amount of [PRICE], subject to

adjustment as set forth in the Bid Procedures Order and/or Back-Up Bidder Agreement (as defined below). [PARTY] is approved as the Back-Up Bidder, as such term is defined in the Bid Procedures, for the Property on the terms set forth in the form of the Back-Up Bidder's Sales Contract (the "***Back-Up Bidder Agreement***") attached hereto as **Exhibit 2**.]

       H.    **Due Authority**. The Trustee and Reed have each approved the Sales Contract and the consummation of the Sale Transaction on behalf of the Sellers and the Sellers' sale of the Property to the Purchaser has been duly and validly authorized by all necessary corporate or other entity action. The Sellers have full power and authority to execute the Sales Contract and all other documents contemplated thereby and to consummate the Sale Transaction. No consents or approvals, other than those expressly provided for in the Sales Contract, are required for the Sellers to consummate the Sale Transaction.

       I.    **Business Justification**. Approval of the Sales Contract and consummation of the Sale Transaction is in the best interests of Debtor Smith, his estate, creditors, and other parties in interest. The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Purchaser pursuant to section 363(b) of the Bankruptcy Code. Such business purposes and justifications include, but are not limited to, that the Sales Contract and the closing thereon will present the best opportunity to realize the value of the Property and avoid decline and devaluation of the Property.

       J.    **Consideration**. The consideration to be provided by the Purchaser pursuant to the Sales Contract: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Property; (iii) will provide a greater recovery for Smith's creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration. In reaching this determination, the Court has taken into account both the

consideration to be realized directly by the Smith estate and the indirect benefits of the Sale Transaction for the Debtors' creditors. The Trustee's determination that the Sales Contract constitutes the highest and otherwise best offer for the Property is a result of due deliberation by the Trustee and constitutes a valid and sound exercise of the Trustee's business judgment. Entry of an order approving the Sale Motion, Sales Contract and the Sale Transaction is a necessary condition precedent to the Purchaser consummating the Sale Transaction.

K. **Arm's-Length Sale**. The Sales Contract was negotiated, proposed, and entered into by the Trustee and the Purchaser without collusion, in good faith, and was the result of arm's-length bargaining between the parties represented by independent counsel. The Back-Up Bidder Agreement was negotiated and proposed by the Trustee and [PARTY], in good faith, without collusion, and was the result of arm's-length bargaining between the parties represented by independent counsel. The Trustee and the Purchaser have not engaged in any conduct that would cause or permit the Sales Contract to be avoided under section 363(n) of the Bankruptcy Code. The Purchaser is not an "insider" or "Affiliate" of the Trustee or Debtors, as such terms are defined in the Bankruptcy Code.

L. **Good Faith Purchaser**. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction. The Purchaser has proceeded in good faith in all respects in that, *inter alia*: (i) the Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Property; (ii) the Purchaser complied with the provisions of the Bid Procedures Order; (iii) the Purchaser's bid was subjected to the competitive bid procedures set forth in the Bid Procedures Order; (iv) no common identity of directors or officers exists among the Purchaser,

Sellers, and the Debtors, and (v) all payments to be made by the Purchaser and all other material agreements or arrangements entered into by the Purchaser and the Sellers in connection with the Sale Transaction have been disclosed.

M.     **Legal, Valid and Binding Transfer**. The Sellers are the sole and lawful owners of the Property, or otherwise have a valid, enforceable property interest in such, and title to (i) an undivided 90% interest in the Property is vested in the Debtor Smith's estate within the meaning of section 541(a) of the Bankruptcy Code and (ii) the remaining 10% interest is held by Reed.  The Sellers have all right, title, and interest in the Property required to transfer and convey the Property to the Purchaser.  The transfer of the Property to the Purchaser will be a legal, valid, and effective transfer of the Property and, except as provided in the Sales Contract, will vest the Purchaser with all right, title, and interest of the Sellers to the Property free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including liens, claims, encumbrances, and other interests of any Governmental Authority, as defined in the Sales Contract) other than those liens, claims, encumbrances, and other interests specifically assumed by the Purchaser pursuant to the Sales Contract.  The sale of the Property shall also be free and clear of those liens, claims, encumbrances, and other interests that purport to give to any party a right or option to effectuate any forfeiture, modification, or termination of the Sellers' interests in the Property, or any similar rights.

N.     The Sales Contract is a valid and binding contract between the Sellers and the Purchaser, which is and shall be enforceable according to its terms.

O.     **Free and Clear**. The Purchaser would not have entered into the Sales Contract and would not consummate the Sale Transaction, thus adversely affecting the Smith estate and its creditors, if the transfer of the Property to the Purchaser and the assumption and assignment of the

Desired 365 Contracts were not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any such lien, claim, encumbrance, or other interest.  A sale of the Property other than one free and clear of any liens, claims, encumbrances, and other interests, would adversely impact Smith's estate and would yield substantially less value for the Smith estate.

P.     **Compliance with Section 363(f).**  Subject to the provisions of this Order and except as may be specifically provided in the Sales Contract, the Sellers may sell the Property free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied. Each entity with a lien, claim, encumbrance, or other interest in the Property to be transferred on the date the Sale Transaction is consummated (the "***Closing Date***"): (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance, or other interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of liens, claims, encumbrances, and other interests who did not object to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

Q.     **Not a Sub Rosa Plan**. The Sales Contract and Sale Transaction do not constitute an impermissible *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sales Contract and the Sale Transaction neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a plan for the Debtors.

R.     **No Fraudulent Transfer**. The Sales Contract was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, territory, or possession thereof, or the District of Columbia.  The Sellers and the Purchaser are not entering into the Sale Transaction fraudulently.

S.     **No Successor Liability**. The Purchaser (i) is not, and shall not be, considered a successor in interest to the Debtors, (ii) has not, *de facto* or otherwise, merged with or into the Debtors, (iii) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and (iv) is not holding themselves out to the public as a continuation of the Debtors. Except as otherwise specifically provided in the Sales Contract, the (i) transfer of the Property to the Purchaser and (ii) assumption by the Sellers and assignment and sale to the Purchaser of the Desired 365 Contracts do not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' businesses before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of antitrust, successor, transferee, or assignee liability.

T.     **Assumption and Assignment of Executory Contracts and Unexpired Leases**. Notice of the Sellers' assumption and assignment and sale of the Desired 365 Contracts to the Purchaser has been provided to all counterparties to a Desired 365 Contract, together with a statement therein from the Sellers with respect to the amount, if any, to be paid to such counterparty to cure any defaults under the Desired 365 Contracts (the "***Cure Costs***"), and to otherwise comply with the requirements of section 365(b) of the Bankruptcy Code with respect to the Desired 365 Contracts. As to each Desired 365 Contract, payment of the Cure Costs, as set forth on **Exhibit 3**

hereto, is sufficient for the Sellers to comply fully with the requirements of section 365(b) of the Bankruptcy Code and the Purchaser has demonstrated adequate assurance of future performance.

U.     The Sellers shall have no further liability or obligation under the Desired 365 Contracts.

V.     The assumption and assignment of the Desired 365 Contracts pursuant to the terms of this Order is integral to the Sales Contract and is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and represents a reasonable exercise of sound and prudent business judgment by the Debtors.

W.     In addition, the Purchaser has provided adequate assurance of its ability to perform its obligations under each of the Desired 365 Contracts within the meaning of section 365(f) of the Bankruptcy Code. All other requirements and conditions under the Bankruptcy Code for the assumption by the Sellers and assignment and sale to the Purchaser of the Desired 365 Contracts have been satisfied. Therefore, the Desired 365 Contracts may be assumed by the Sellers and assigned to Purchaser.

X.     **Prompt Consummation**. Time is of the essence in consummating the Sale Transaction. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the Sales Contract, including, without limitation, the Sale Transaction and the assumption and assignment of the Desired 365 Contracts, prior to, and outside of, a chapter 11 plan.

Y.     **Good and Sufficient Cause**. There is other good and sufficient cause to grant the relief requested in the Motion and approve the Sales Contract and the Sale Transaction.

Z.     **Legal and Factual Bases**. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.      The notice of the Sale Motion and Sale Hearing and notice of the assumption and assignment of the Desired 365 Contracts (and related Cure Costs) are approved as being fair, reasonable, and adequate under the circumstances, and any additional notice as may otherwise be required under state and federal law is hereby deemed satisfied.

2.      The Motion is **GRANTED** to the extent set forth herein.

3.      All objections to the relief requested in the Motion or the entry of this Order, if any, that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing are denied and overruled in their entirety on the merits, with prejudice.

**Approval of Free and Clear Sale of the Property**

4.      The Sales Contract, all exhibits and schedules thereto, and all of the terms and conditions thereof are hereby approved. The Trustee shall file final versions of the Sales Contract and all other ancillary documents with the Court upon closing the Sale Transaction.

5.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Trustee is authorized to (i) execute, deliver, and perform under, consummate, and implement the Sales Contract and the Sale Transaction together with all additional instruments and documents that are requested by the Purchaser and may be reasonably necessary or desirable to implement the Sales

Contract and the Sale Transaction and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession the Property and assuming and assigning the Desired 365 Contracts and rights thereunder, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Sales Contract and the Sale Transaction, including, without limitation, any and all actions reasonably requested by the Purchaser which are consistent with the Sales Contract and the Sale Transaction.

6.      Pursuant to sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing Date: (i) the transfer of the Property to the Purchaser pursuant to the Sales Contract shall constitute a legal, valid, and effective transfer of the Property and shall vest the Purchaser with all right, title, and interest in and to the Property; (ii) the Property shall be transferred to the Purchaser free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority, any claims or assertions based on any theory of successor or transferee liability, and any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Property) other than those liens, claims, encumbrances, and other interests specifically assumed by the Purchaser pursuant to the Sales Contract; and (iii) all Persons are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, against Purchaser with respect to any such liens, claims, encumbrances, and other interests (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority (as defined in the Sales Contract), any claims or assertions based on any theory of successor or transferee liability, and any

restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Property).

7.       All liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale with the same nature, validity, and priority as such liens, claims, encumbrances, or other interests encumbered the Property prior to the proposed sale and shall be distributed pursuant to further order of the Court.

8.       On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Sellers' interest in the Property or a bill of sale transferring good and marketable title in the Property.

9.       Pursuant to the Sales Contract and this Order, the transfer and assignment of the Property shall be effectuated on the terms set forth therein and herein, and shall not be restricted or prohibited, notwithstanding any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights with respect to the Sellers' transfer, sale, vesting, assumption, and/or assignment of the Property. All parties who failed to timely file and serve a Rights Notice (as defined in the Bid Procedures Order) are deemed to consent to and approve of the transfer, sale, assumption and/or assignment of the Properties.

10.      This Order is and shall be effective as a determination that all liens, claims, encumbrances, and other interests shall be and are, without further action by any Person, unconditionally released, discharged, and terminated with respect to the Property as of the Closing Date, except as may otherwise be set forth in the Sales Contract.

11.      Except as otherwise provided herein or in the Sales Contract, on the Closing Date, Smith's creditors are authorized and directed to execute such documents and instruments and to

take all other actions as may be reasonably necessary to document and effectuate the release of their liens, claims, encumbrances, and other interests in the Property, if any, as such liens, claims, encumbrances, and other interests may have been recorded or may otherwise exist. If any such creditor fails to execute any such documents or instruments or take any such actions, the Trustee is authorized to execute such documents and instruments and to take such actions on behalf of the creditor so as to document the release of such liens, claims, encumbrances, and other interests.

### No Successor Liability

12.     The Purchaser and its affiliates, successors, and assigns shall not be deemed, as a result of any action taken in connection with the transfer of the Property, to (i) be a successor to the Debtors or the estates, (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or the estates, or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and the Purchaser shall have no successor, transferee or vicarious liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes or other Governmental Authority fees, contributions, or surcharges arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Property prior to the Closing Date. Except as otherwise provided herein or in the Sales Contract, the transfer of the Property to the Purchaser pursuant to the Sales Contract shall not result in the Purchaser or its affiliates, members, or shareholders, or the Property, having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in

equity, whether by payment, setoff or otherwise, directly or indirectly, (i) any claim against the Debtors or against any insider of the Debtors, or (ii) any lien, claim, encumbrance, or other interest.

13.     Upon the Closing, and except as otherwise expressly provided in the Sales Contract, the Purchaser shall not be liable for any claims against, and liabilities of, the Debtors or any of the Debtors' predecessors or affiliates.

14.     The Purchaser has given substantial consideration under the Sales Contract to the Smith estate. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of liens, claims, encumbrances, and other interests against the Debtors or the Property.

**<u>Assumption and Assignment of Desired 365 Contracts</u>**

15.     Pursuant to section 365 of the Bankruptcy Code, the Sellers are authorized to assume the Desired 365 Contracts designated in Schedule 1 to the Sales Contract, the Purchaser is authorized to pay all Cure Costs with respect to the Desired 365 Contracts (pursuant to the Cure Costs set forth on **<u>Exhibit 3</u>** hereto as set forth in the Sales Contract), and the Sellers are authorized to assign and sell the Desired 365 Contracts to the Purchaser.

16.     The Desired 365 Contracts, consistent with the provisions contained herein, shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Desired 365 Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, following the Purchaser's payment of the Cure Costs, the Sellers shall be relieved from any further liability with respect to the Desired 365 Contracts after such assignment and sale to the Purchaser.

17.    All defaults or other obligations of the Sellers under the Desired 365 Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured, upon payment of the Cure Costs by the Purchaser, and the Purchaser shall have no liability arising or accruing under the Desired 365 Contracts on or prior to the Closing, except as otherwise expressly provided in the Sales Contract. Except as set forth in Schedule 1 to the Sales Contract, neither Purchaser nor any of its affiliates shall have any liability or obligation to any Person for any default under or Cure Costs related to any 365 Contract of any Seller existing at or prior to the Closing, subject to adjustments to the Purchase Price as contemplated in the Sales Contract. Except as provided herein, the Sellers shall have no liability for Cure Costs with respect to the Desired 365 Contracts.  Notwithstanding the foregoing, if any Cure Costs are filed, either (i) the Bankruptcy Court shall have determined that there are no damages in connection with any such filed Cure Costs, or (ii) any damages determined by the Bankruptcy Court to exist in connection with such Cure Costs (the "***Alleged Damages***") shall be satisfied by the Smith bankruptcy estate up to a limit of $50,000 (the "***Limit***").

18.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Desired 365 Contracts are barred from asserting against the Sellers, the Purchaser, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Desired 365 Contracts arising or incurred prior to the Closing, other than the Cure Costs.

19.    The failure of the Sellers or the Purchaser to enforce at any time one or more terms or conditions of any Desired 365 Contract shall not be a waiver of such terms or conditions or of the right of the Sellers or the Purchaser, as the case may be, to enforce every term and condition

of the Desired 365 Contracts. The validity of the assumption, assignment, and sale of the Desired 365 Contracts to the Purchaser shall not be affected by any existing dispute between any of the Sellers and any non-Debtor party to such Desired 365 Contracts. Any party that may have had the right to consent to the assignment of any Desired 365 Contract is deemed to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

20.     To the extent a counterparty to a Desired 365 Contract failed to timely object to Cure Costs, such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time, and such Cure Costs, when paid, shall completely revive any Purchased Contract to which it relates.

### No Fraudulent Transfer

21.     The consideration provided by the Purchaser under the Sales Contract constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory, or possession thereof, or the District of Columbia. The consideration provided by the Purchaser for the Property under the Sales Contract is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

### Good Faith

22.     The Sales Contract and the Sale Transaction are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sales Contract and the Sale Transaction shall not affect the validity of the sale of the Property to the Purchaser, unless this Order is duly stayed pending such appeal. The Purchaser

is a good faith purchaser of the Property and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

### **Additional Provisions**

23.     This Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Property free and clear of all liens, claims, encumbrances, and other interests (all such entities being referred to as "***Recording Officers***"). All Recording Officers are authorized and specifically directed to strike recorded Liens, claims, encumbrances, and interests against the Property recorded prior to the date of this Order unless the Sales Contract expressly provides that the Purchaser is acquiring the Property subject to such claims, Liens, and interests.

24.     Following the Closing Date, no holder of any lien, claim, encumbrance, or other interest on the Property or other party in interest may interfere with the Purchaser's use and enjoyment of the Property based on or related to such lien, claim, encumbrance, or other interest, or any actions that the Trustee or Debtors may take in their chapter 11 cases, and no party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale Transaction.

25.     Except as expressly permitted or otherwise specifically provided by the Sales Contract or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and

other creditors, holding interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Property, the ownership or operation of the Property prior to the closing of the sale, or the sale of the Property are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or  assigns, its property, or the Property, such persons' or entities' interests.

26.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Sales Contract and the Sale Transaction.

27.     The terms and provisions of the Sales Contract, the ancillary agreements, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Purchaser, and its respective affiliates, successors, and assigns, the Debtors' estates, all creditors of (whether known or unknown), and any affected third parties, notwithstanding the dismissal of the Debtors' cases or conversion of the Debtors' cases to cases under chapter 7, as to which trustee such terms and provisions likewise shall be binding and not subject to rejection or avoidance.  The Sales Contract, the Sale Transaction and this Order shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 trustee appointed in the Chapter 11 Cases.  Further, nothing contained in any plan confirmed in these Chapter 11 Cases or any order confirming any plan or any other order entered in these cases shall conflict with or derogate from the provisions of the Sales Contract or the terms of this Order.

28.     The Sales Contract and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the

Court, provided that any such amendment does not have a material adverse effect on the Debtors or the Debtors' estates.

29.     The failure to include specifically any particular provision of the Sales Contract in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sales Contract be authorized and approved in its entirety.

30.     To the extent of any inconsistency between the provisions of this Order, the Sales Contract, and any documents executed in connection therewith, the provisions contained in this Order, the Sales Contract, and any documents executed in connection therewith shall govern, in that order.

31.     Nothing in this Order, the Sales Contract or any document executed in connection with the consummation thereof shall authorize or constitute a transfer of title to property which is excluded from the property of the Debtors' estates pursuant to section 541(b)(4) of the Bankruptcy Code.

32.     Notwithstanding anything to the contrary in the Bid Procedures or the Bid Procedures Order, [PARTY] shall keep its Back-Up Bid (as defined in the Bid Procedures) open and irrevocable until the first to occur of (i) sixty (60) days after the completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Trustee of the release by the Trustee of the Back-Up Bidder's obligations. If the Purchaser fails to consummate the approved Sale Transaction because of a breach or failure to perform on the part of the Purchaser or otherwise, the Trustee shall be authorized, but not required, to deem [PARTY] the Purchaser and to consummate the sale with [PARTY] without further order of this Court. In such event, [PARTY] shall be deemed the

Purchaser and the Back-Up Bidder Agreement shall be deemed the Sales Contract for purposes of this Order.

33.    The provisions of this Order are non-severable and mutually dependent. Headings are included in this Order for ease of reference only.

34.    The provisions of this Order authorizing the sale and assignment of the Property free and clear of all liens, claims, encumbrances, and other interests shall be self-executing, and notwithstanding the failure of the Sellers, the Purchaser, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Purchaser or permitted to survive under the Sales Contract) on or against such Property, if any, shall be deemed released, discharged, and terminated.

35.    From time to time, as and when requested by any Party, each Party to the Sales Contract shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Purchaser its right, title, and interest in and to the Property.

36.    In the event this Order is subject to Appeal, and as a result of such Appeal, the Sale Transaction is thereafter unwound and title to the Property is divested from Purchaser and/or re-vested in the Sellers (such resulting divestiture, a "***Divestiture***"), Purchaser shall be entitled to a full and immediate refund of the Purchase Price from Sellers in cash, in proportionate share to their respective ownership interests (Smith's 90% refund obligation, the "***Smith Refund***

*Obligation*", Reed's 10% refund obligation, the "***Reed Refund Obligation***," and together with the Smith Refund Obligation, the "***Refund Obligations***").

37.     Notwithstanding the provisions of Bankruptcy Rule 6004(h) and 6006(d), this Order shall be effective and enforceable immediately and shall not be stayed. Time is of the essence in closing the Sale Transaction and the Trustee and the Purchaser intend to close the Sale Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

38.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Sales Contract, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Property to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order and the Sales Contract; (iii) adjudicate, if necessary, any and all disputes arising out of, concerning, or otherwise relating in any way to the Sale Transaction; and (iv) protect the Purchaser against any Liens, encumbrances, claims, and interests in the Property of any kind or nature whatsoever.

# # #

ORDER SUBMITTED BY:
Waller Lansden Dortch & Davis LLP
Morris D. Weiss
State Bar No. 21110850
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)
morris.weiss@wallerlaw.com
COUNSEL FOR TRUSTEE

## **EXHIBIT C**

**Owens Contract**



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
# FARM AND RANCH CONTRACT
11-08-2021

**1. PARTIES:** The parties to this contract are Gregory S. Milligan, in his capacity as Chapter 11 Trustee for Daryl P. Smith (owner of an undivided 90% Interest) and Darren Keith Reed and Julie Ann Reed (owner of an undivided 10% Interest)
(Seller) and __R. Logan Owens, or his assignee__ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the Property (Property).

A. LAND: The land situated in the County of __Bosque__, Texas, described as follows: __1,239.37 acres, as more particularly described on Exhibit A.__

or as described on attached exhibit, also known as _____
(address/zip code), together with all rights, privileges, and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships.

B. IMPROVEMENTS:
  (1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
  (2) RESIDENTIAL IMPROVEMENTS: The house, garage, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.

C. ACCESSORIES:
  (1) FARM AND RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☐ portable buildings ☑ hunting blinds ☐ game feeders ☑ livestock feeders and troughs ☑ irrigation equipment ☑ fuel tanks ☑ submersible pumps ☑ pressure tanks ☑ corrals ☑ gates ☑ chutes ☐ other: _____

  (2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

D. CROPS: Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.

E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: _____.

F. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**
A. Cash portion of Sales Price payable by Buyer at closing ................... $_____ 7,126,377.50
B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum, ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum .. $_____ 0.00
C. Sales Price (Sum of A and B) ...................................... $_____ 7,126,377.50
D. The Sales Price ☑ will ☐ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be calculated on the basis of $_____ per acre. If the Sales Price is adjusted by more than 10%, either party may terminate this contract by providing written notice to the other party within _____ days after the terminating party receives the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to the amount in ☐ 3A ☐ 3B ☐ proportionately to 3A and 3B.

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)

☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.

☐ B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.

☑ C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, water, wind, or other natural resource lease affecting the Property to which Seller is a party.

Initialed for identification by Buyer_____ _____ and Seller _____ _____          TREC NO. 25-14

| Contract Concerning | 1,239.37 Acres (Bosque County, TX) | Page 2 of 11 | 11-08-2021 |
|---|---|---|---|
| | (Address of Property) | | |

☑ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.

☐ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

## 5. EARNEST MONEY AND TERMINATION OPTION:

A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to _Stewart Title Guaranty_ , as escrow agent, at _____ _1360 Post Oak Blvd., Floor 10, Houston, TX 77056_ (address): $_____ _712.637.00_ as earnest money and $_____ _N/A_ as the Option Fee. The earnest money and Option Fee shall be made payable to escrow agent and may be paid separately or combined in a single payment.

   (1) Buyer shall deliver additional earnest money of $_____ _N/A_ to escrow agent within __N/A__ days after the Effective Date of this contract.

   (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

   (3) The amount(s) escrow agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

   (4) Buyer authorizes escrow agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases escrow agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within __N/A__ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and escrow agent shall release any Option Fee remaining with escrow agent to Seller; and (ii) any earnest money will be refunded to Buyer.

C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this Paragraph 5.

E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

## 6. TITLE POLICY AND SURVEY:

A. TITLE POLICY: Seller shall furnish to Buyer at ☐ Seller's ☑ Buyer's expense an owner policy of title insurance (Title Policy) issued by: _____Stewart Title Guaranty_____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

   (1) The standard printed exception for standby fees, taxes and assessments.

   (2) Liens created as part of the financing described in Paragraph 3.

   (3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

   (4) The standard printed exception as to marital rights.

   (5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

   (6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:

     ☐ (i) will not be amended or deleted from the title policy; or

     ☑ (ii) will be amended to read, "shortages in area" at the expense of ☑ Buyer ☐ Seller.

   (7) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for identification by Buyer_____ _____ and Seller _____ _____      TREC NO. 25-14

Contract Concerning _____1,239.37 Acres (Bosque County, TX)_____ Page 3 of 11   11-08-2021
(Address of Property)

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only):

☑ (1) Within ___10___ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** The existing survey ☐ will ☑ will not be recertified to a date subsequent to the Effective Date of this contract at the expense of ☐ Buyer ☐ Seller. If the existing survey is not approved by the Title Company or Buyer's lender(s), a new survey will be obtained at the expense of ☐ Buyer ☑ Seller no later than 3 days prior to Closing Date.

☐ (2) Within _____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

☐ (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

☐ (4) No survey is required.

D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (7) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any expenditions which prohibit the following use or activity: _None_

_____.

Buyer must object the earlier of (i) the Closing Date or (ii) ___3___ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. EXCEPTION DOCUMENTS: Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
|---|---|---|
| See attached current Title Commitment on Exhibit B | | |
| | | |
| | | |

F. SURFACE LEASES: Prior to the execution of the contract, Seller has provided Buyer with copies of written leases and given notice of oral leases (Leases) listed below or on the attached exhibit. The following Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title:_____
_____.

G. TITLE NOTICES:
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(3) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in

Initialed for identification by Buyer_____ _____ and Seller __GSM__ _____    TREC NO. 25-14

| Contract Concerning | 1,239.37 Acres (Bosque County, TX) | Page 4 of 11 | 11-08-2021 |
|---|---|---|---|
| | (Address of Property) | | |

the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☑ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

## 7. PROPERTY CONDITION:

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect . **NOTICE:** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)
☐ (1) Buyer has received the Notice
☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☑ (3) The Texas Property Code does not require this Seller to furnish the Notice.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D (1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)
☑ (1) Buyer accepts the Property As Is.
☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____

(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

E. COMPLETION OF REPAIRS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense.

Contract Concerning _____1,239.37 Acres (Bosque County, TX)_____ Page 5 of 11    11-08-2021
(Address of Property)

If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.

F. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. SELLER'S DISCLOSURES:    Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
   (1) any flooding of the Property which has had a material adverse effect on the use of the Property;
   (2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
   (3) any environmental hazards that materially and adversely affect the Property;
   (4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
   (5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
   (6) any threatened or endangered species or their habitat affecting the Property.

I. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $_____0. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. GOVERNMENT PROGRAMS: The Property is subject to the government programs listed below or on the attached exhibit: None_____
_____.
Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

**8. BROKERS AND SALES AGENTS:**
A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale.  Disclose if applicable: N/A_____

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**
A. The closing of the sale will be on or before_____See Addendum_, 20_____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
   (1) Seller shall execute and deliver a ~~general~~ special warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
   (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
   (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
   (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

**10. POSSESSION:**
A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☑ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

Initialed for identification by Buyer_____ _____ and Seller _____ _____    TREC NO. 25-14

B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
(1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
(2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)

A. The terms and conditions set forth in the Addendum for the Stalking Horse Bidder Terms and Conditions to be attached hereto are hereby incorporated in this Contract in its entirety, which Addendum may not become part of this Contract until the Bid Procedure Order (as defined in such Addendum) has been issued by the Bankruptcy Court.
B. Seller to convey 100% of the minerals and executive rights that it owns as of the closing date.
C. Buyer and Sellers agree that either Seller may elect to effectuate a tax deferred exchange in accordance with the Internal Revenue Service Code, Section 1031. Buyer agrees to cooperate with such Seller in effectuating said tax deferred exchange. In cooperating with such Seller, Buyer shall incur no additional expense, obligation or liability.

**12. SETTLEMENT AND OTHER EXPENSES:**
A. The following expenses must be paid at or prior to closing:
(1) Expenses payable by Seller (Seller's Expenses):
(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
(b) Seller shall also pay an amount not to exceed $ _____ 0.00 to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
(2) Expenses payable by Buyer (Buyer's Expenses) Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**
A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.
B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

Initialed for identification by Buyer_____ _____ and Seller _GSM_ _____        TREC NO. 25-14

| Contract Concerning | 1,239.37 Acres (Bosque County, TX) | Page 7 of 11 | 11-08-2021 |
|---|---|---|---|
| | (Address of Property) | | |

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

18. **ESCROW:**
   A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. Escrow agent may require any disbursement made in connection with this contract to be conditioned on escrow agent's collection of good funds acceptable to escrow agent.
   B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by escrow agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.
   C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.
   D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
   E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

Initialed for identification by Buyer_____ _____ and Seller _____ _____          TREC NO. 25-14

| Contract Concerning | 1,239.37 Acres (Bosque County, TX) | Page 8 of 11 | 11-08-2021 |
|---|---|---|---|
| | (Address of Property) | | |

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

To Buyer at: P.O. Box 830

Leander, Texas 78641

Phone: ( 512 ) 968-5820

E-mail/Fax: logan.owens@tex-mixconcrete.com

E-mail/Fax: 

To Seller at: P.O. Box 90099

Austin, Texas 78709

Phone: ( 512 ) 464-1139

E-mail/Fax: 

E-mail/Fax: 

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

☐ Third Party Financing Addendum
☐ Seller Financing Addendum
☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association
☐ Buyer's Temporary Residential Lease
☐ Loan Assumption Addendum
☐ Addendum for Sale of Other Property by Buyer
☐ Addendum for "Back-Up" Contract
☐ Addendum for Coastal Area Property
☐ Addendum for Authorizing Hydrostatic Testing
☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal
☐ Addendum for Reservation of Oil, Gas and Other Minerals
☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
☐ Seller's Temporary Residential Lease
☐ Short Sale Addendum
☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead -based Paint Hazards as Required by Federal Law
☐ Addendum for Property in a Propane Gas System Service Area
☐ Addendum Regarding Residential Leases
☐ Addendum Regarding Fixture Leases
☑ Other (list): Exhibit A - Legal Description Exhibit B - Copy of Current Title Commitment Addendum for Stalking Horse Bidder Terms and Conditions

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's Attorney is: James Carr, Kelley Drye & Warren LLP

Phone: ( 212 ) 808-7955

Fax: ( )

E-mail: jcarr@kelleydrye.com

Seller's Attorney is: Morris Weiss, Waller Lansden Dortch Davis

Phone: ( 512 ) 685-6418

Fax: ( )

E-mail: Morris.Weiss@wallerlaw.com

Initialed for identification by Buyer_____ _____ and Seller (SM _____  TREC NO. 25-14

Contract Concerning _____ 1,239.37 Acres (Bosque County, TX) _____ Page 9 of 11    11-08-2021
(Address of Property)

**EXECUTED the _____ day of _____, 20\_\_\_\_\_ (Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**



Buyer _____

Seller _____
Gregory S. Milligan, Chapter 11 Trustee for
Daryl Greg Smith In Case No. 21-60162 before
the United States Bankruptcy Court for the
Western District of Texas, Waco Division, owner
of a 90% undivided interest in the Property

Buyer _____

Seller _____
Darren K. Reed and Julie Ann Reed, owner
of a 10% undivided interest in the Property

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-14. This form replaces TREC NO. 25-13.

TREC NO. 25-14

Contract Concerning _____ 1,239.37 Acres (Bosque County, TX) _____ Page 9 of 11   11-08-2021
(Address of Property)

---

**EXECUTED the _____ day of _____, 20_____ (Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

---

Buyer _____

Seller _____

Gregory S. Milligan, Chapter 11 Trustee for
Daryl Greg Smith In Case No. 21-60162 before
the United States Bankruptcy Court for the
Western District of Texas, Waco Division, owner
of a 90% undivided interest in the Property

Buyer _____

Seller _____

Darren K. Reed and Julie Ann Reed, owner
of a 10% undivided interest in the Property



The form of this contract has been approved by the Texas Real Estate Commission.  TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-14. This form replaces TREC NO. 25-13.

TREC NO. 25-14

| Contract Concerning | 1,239.37 Acres (Bosque County, TX) | Page 10 of 11  11-08-2021 |
|---|---|---|
| | (Address of Property) | |

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker:

By: _____

Listing Broker:

By: _____

## BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| | | |
|---|---|---|
| _____ | Riley-McLean Land | 9004156 |
| Other Broker                License No. | Listing or Principal Broker | License No. |
| | Carlotta McLean | 437483 |
| _____ | Listing Associate's Name | License No. |
| Associate's Name           License No. | | |
| _____ | Team Name | |
| Team Name | CCM@rileymclean.com | 512-960-4676 |
| _____ | Listing Associate's Email Address | Phone |
| Associate's Email Address        Phone | | |
| _____ | Licensed Supervisor of Listing Associate | License No. |
| Licensed Supervisor of Associate   License No. | 505 Walsh Street | |
| _____ | Listing Broker's Office Address | Phone |
| Other Broker's Office Address      Phone | Austin                          TX          78703 |
| _____ | City                    State        Zip |
| City              State          Zip | |

represents  ☐ Buyer only as Buyer's agent
☐ Seller as Listing Broker's subagent

| | | |
|---|---|---|
| Selling Associate | | License No. |
| Team Name | | |
| Selling Associate's Email Address | | Phone |
| Licensed Supervisor of Selling Associate | | License No. |
| Selling Associate's Office Address | | |
| City | State | Zip |

represents  ☑ Seller only
☐ Buyer only
☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☐Seller ☐ Buyer will pay Listing/Principal Broker ☐a cash fee of $_____ N/A or ☐ __N/A__% of the total Sales Price; and (b) ☐Seller ☐ Buyer will pay Other Broker ☐a cash fee of $_____ N/A or ☐ __N/A__% of the total Sales Price.  Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

**Brokers' fees are negotiable.  Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.**

_____
Seller

_____
Seller

_____
Buyer

_____
Buyer

Do not sign if there is a separate written agreement for payment of Brokers' fees.

Contract Concerning _____ 1,239.37 Acres (Bosque County, TX) _____ Page 11 of 11    11-08-2021
(Address of Property)

---

### OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

_____        _____
Escrow Agent                                                                                                    Date

---

### EARNEST MONEY RECEIPT

Receipt of $_____ Earnest Money in the form of _____
is acknowledged.

_____   _____   _____
Escrow Agent                                           Received by          Email Address                         Date/Time

_____        _____
Address                                                                                                            Phone

_____   _____   _____   _____
City                                          State                       Zip                                        Fax

---

### CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

_____   _____   _____
Escrow Agent                                           Received by          Email Address                              Date

_____        _____
Address                                                                                                            Phone

_____   _____   _____   _____
City                                          State                       Zip                                        Fax

---

### ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $_____ additional Earnest Money in the form of _____
is acknowledged.

_____   _____   _____
Escrow Agent                                           Received by          Email Address                         Date/Time

_____        _____
Address                                                                                                            Phone

_____   _____   _____   _____
City                                          State                       Zip                                        Fax

TREC NO. 25-14

## ADDENDUM FOR STALKING HORSE BIDDER TERMS AND CONDITIONS

THIS ADDENDUM FOR STALKING HORSE BIDDER (this "**Addendum**") is made a part of that certain Farm and Ranch Contract (the "**Contract**" and, collectively with this Addendum, this "**Purchase Agreement**") by and between Gregory S. Milligan, in his capacity as Chapter 11 Trustee (the "**Trustee**") for the estate of Daryl Greg Smith, an owner of a 90% undivided interest in the real property described therein ("**Smith**"), and Darren Keith Reed, an owner of a 10% undivided interest in the real property described therein  ("**Reed**," together with the Trustee, "**Sellers**"), and R. Logan Owens, or his designee ("**Buyer**").  All capitalized terms used herein and not otherwise defined in this Addendum shall have the same meaning as ascribed to them in the Contract.  In addition to the obligations of Sellers and Buyer contained in the Contract, Sellers and Buyer hereby agree as follows:

**WHEREAS:**

A.  Smith is a debtor in a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the Bankruptcy Court for the Western District of Texas (the "**Bankruptcy Court**"), Case No. 21-60612 (RBK) (the "**Bankruptcy Case**").  The Trustee serves as trustee of Smith's bankruptcy estate (the "**Smith Estate**") pursuant to the *Order Approving Appointment of Gregory S. Milligan as Chapter 11 Trustee* entered in the Bankruptcy Case [Doc. 91].

B.  Sellers wish to sell to Buyer and Buyer wishes to purchase from Sellers the Property (the "**Purchase**"), which will occur in the Bankruptcy Case pursuant to section 363 of the Bankruptcy Code.

1. <u>BANKRUPTCY PROCESS:</u>

(a)  No later than three (3) Business Days (as defined below) following the date of the mutual execution and delivery of the Contract and this Addendum, the Trustee shall file a motion (the "**Bid Procedures Motion**") in the Bankruptcy Court seeking, among other things, the entry of an order (the "**Bid Procedures Order**") approving certain bid and auction procedures in connection with the sale of the Property (collectively, the "**Bid Procedures**"), in form and substance reasonably acceptable to Buyer,  that designate Buyer as the "stalking horse" purchaser (the "**Stalking Horse Purchaser**") and provide, among other things, for the Break-Up Fee and Expense Reimbursement (each as defined below) and a minimum overbid requirement.

(b)  The Bid Procedures Order shall also establish (i) an auction (the "**Auction**"), and a hearing (the "**Stalking Horse Hearing**") to approve Sellers' selection of Buyer as the Stalking Horse Purchaser, and (ii) a final hearing (the "**Sale Hearing**") and the entry of an order in form and substance reasonably acceptable to Buyer (the "**Sale Order**") approving the sale of the Property to either Buyer, or another purchaser selected at the Auction in accordance with the Bid Procedures.

(c)  The Bid Procedures Order shall further require that any party holding or claiming an interest in the Property pursuant to any contract or lease with Sellers must file a statement with the Bankruptcy Court within the period set forth in the Bid Procedures Order identifying if any breach exists under such contract or lease and the amount of the alleged damages arising therefrom (collectively, "**Breach of Contract Claims**").

Upon both (i) the full execution of this Purchase Agreement, and (ii) the Bankruptcy Court's entry of the Bid Procedures Order (a) approving this Purchase Agreement and (b) establishing,

(d)    among other things, Buyer as the Stalking Horse Purchaser and as a qualified bidder in accordance with the Bid Procedures, a valid and binding contract shall exist between Sellers and Buyer. The parties hereto understand, acknowledge and agree that upon entry of the Bid Procedures Order, the parties shall be bound to abide by the "Bid Protections" (as defined below).

(e)    As used herein, "**Bid Protections**" means a break-up fee in an amount equal to two and five tenths percent (2.5%) of the Purchase Price (the "**Break-Up Fee**"), plus an expense reimbursement not to exceed $90,000 of documented reasonable out-of-pocket expenses incurred by Buyer in connection with the Purchase, including legal fees and expenses (the "**Expense Reimbursement**"). If the Purchase fails to close due to the acceptance by the Trustee of an alternative bid, Buyer will be entitled to be paid both the Break-Up Fee and Expense Reimbursement; *provided* that the Break-Up Fee shall be payable from the sale proceeds at the closing of the sale to the alternative bidder or any other subsequent purchaser, as applicable, pursuant to (i) the Bid Procedures Order, or (ii) an alternate transaction that results in the sale of the Property. If the Purchase fails to close due to any other reason (other than a termination of this Purchase Agreement (x) by mutual consent of Sellers and Buyer pursuant to Section 11(a) below, or (y) by Sellers pursuant to Section 11(c) below, Buyer will be entitled to payment of the Expense Reimbursement. The Break-Up Fee and the Expense Reimbursement, to the extent payable to Buyer, each shall be an allowed super-priority administrative expense claim against the Smith Estate until paid.

(f)    The Bid Procedures Order will further provide, among other things, that the potential cost to the Smith Estate of the Break-Up Fee and the Expense Reimbursement shall be used by the Trustee in determining the "highest or otherwise best" bid during each round of any Auction held in accordance with the Bid Procedures. In addition, the Bid Protections shall further include provisions in the Bid Procedures Order that, among other things, (i) conclusively deem this Purchase Agreement to be a "qualified bid" and the Buyer to be a "qualified bidder" entitled to participate at any Auction, and (ii) provide a minimum initial overbid requirement for any Auction of $75,000 over the total of the Purchase Price, the Break-Up Fee and the Expense Reimbursement.

2.    PURCHASE PRICE: The purchase price for the Property shall be $7,126,377.50, as set forth in Section 3 of the Contract (the "**Purchase Price**"); *provided* that such Purchase Price is based on a price of $5,750.00 per acre and assumes that the Property contains 1,239.37 acres. The Purchase Price actually paid at the closing of this Purchase Agreement ("**Closing**") shall be $5,750.00 per acre, as may be adjusted (i) following the results of the Auction if the Purchase Price is increased, and (ii) by the total acreage of the Property based on a survey obtained in accordance with Section 6(C) of the Contract. Buyer shall deposit with the Title Company, as escrow agent, the earnest money payment of $712,637 as more particularly set forth in Section 5.A. of the Contract (the "**Earnest Money**"). For the avoidance of doubt, if Buyer is not the Successful Bidder (as shall be defined in the Bid Procedures), the provisions of Section 13 herein will control the disposition of the Earnest Money.

3.    CLOSING CONDITIONS: Closing of the Purchase shall be contingent upon:

(a)    Entry of the Sale Order that shall contain, among other things, (i) provisions providing for the sale of the Property to Buyer free and clear of all claims, liens, interests or other encumbrances of any type or nature whatsoever (collectively, "**Encumbrances**") pursuant to section 363(f) of the Bankruptcy Code, except (and subject to Section 3(b) below) for Encumbrances arising pursuant to or in connection with (A) the Angus Solar Lease (as defined below), or (B) any other contract or lease agreed to be assumed by Buyer and listed in Schedule 1 to this Addendum; and (ii) express findings by the Bankruptcy Court that (a) pursuant to Federal Rule of Bankruptcy Procedure 6004(h), the Sale Order will not be stayed, and (b) Buyer is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code;



(b)     No Breach of Contract Claims shall have been filed by the deadline set forth in the Bid Procedures Order; *provided* that if any Breach of Contract Claims are filed, either (i) the Bankruptcy Court shall have determined that there are no damages in connection with any such filed Breach of Contract Claims, or (ii) any damages determined by the Bankruptcy Court to exist in connection with such Breach of Contract Claims (the "**Alleged Damages**") shall be satisfied by the Smith Estate up to a limit of $50,000 (the "**Limit**"). If the Alleged Damages exceed the Limit, then Buyer shall have the right to terminate this contract as provided in section 11(b) hereof or elect to satisfy such excess amount by increasing the Purchase Price by such amount;

(c)     Both the Bid Procedures Order and the Sale Order shall be in full force and effect and neither order shall have been modified, amended or stayed unless approved by Buyer in its sole discretion;

(d)     There shall be no alterations of any kind, whether by negotiation or litigation, to that certain Ground Lease Agreement (as modified and amended, the "**Angus Solar Lease**") as described in the *Order (I) Approving Assumption of Solar Lease; (II) Authorizing Entry Into Lease Amendment; and (III) Providing Protections for Lessee; and (IV) Authorizing Chapter 11 Trustee to Execute Certain Documents Pursuant to Federal Rule of Civil Procedure 70*, entered in the Bankruptcy Case [Docket No. 128], prior to Closing without Buyer's written consent. In addition, the rights of the Sellers with respect to the check from Vistra Corporate Services Company ("**Vistra**") dated November 1, 2022, payable to the Sellers in the amount of $585,000 (the "**Check**"), shall be assigned to the Buyer and not negotiated by the Sellers; *provided* that if the Buyer elects to negotiate the Check (or any replacement or equivalent thereof from Vistra or its agents, whether in physical or electronic form, that purports to represent rent for the Property), the rent amount evidenced by such Check shall be prorated from November 1, 2022 through the date of Closing, with any such amounts received by the Buyer to be promptly remitted to the Sellers, but in no event later than three (3) calendar days following receipt of such funds; and

(e)     The delivery by the Trustee and Sellers, as applicable, of insurable and marketable title to the Property.

4.     PROPERTY: Sellers agree to sell to Buyer and Buyer agrees to purchase from Sellers the Property. Sellers and Buyer acknowledge and agree that the legal description for the Property technically may be legally insufficient for the purpose of supporting an action for enforcement of the Contract. Because the parties desire to execute the Contract to provide for the right of enforcement, Sellers and Buyer agree that: (i) they are experienced in transactions of this nature; (ii) they are familiar with the location of the Property; and (iii) each party waives any and all claims of an insufficient legal description, including, but not limited to, any and all claims under the Statute of Frauds.

5.     TITLE: The title to the Property shall be free and clear of all Encumbrances other than Encumbrances permitted under Section 3 of this Addendum, and further subject to the Exception Documents.

6.     CLOSING DATE: Following the satisfaction of each of the conditions set forth in Section 3 of this Addendum (the "**Closing Conditions**"), the Closing shall take place remotely, at Buyer's discretion, on the first Business Day following (i) the entry of the Sale Order, or (ii) the earlier to occur of (x) the passage of fourteen (14) calendar days from entry of the Sale Order, or (y) the date the Sale Order becomes a Final Order. For purposes hereof, "**Final Order**" shall mean with respect to the Sale Order that (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing (collectively, "**Appeal**") has expired and no Appeal has been timely filed, or (b) any Appeal that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further Appeal has been or can be taken or granted.

GSM

7.　　SURVEY: A current survey was previously provided by Sellers to Buyer.

8.　　INSPECTION:　Buyer may not perform any intrusive testing of the Property.　Buyer shall indemnify Sellers against all losses, damages, expenses, and claims that may arise by reason of any entry by Buyer or any agent, employee or contractor of Buyer into and upon and testing of the Property pursuant to this Section and shall repair any damage to the Property caused by such entry.

9.　　AS-IS, WHERE-IS:　Buyer has previously inspected the Property and, by executing the Contract, affirms that it has approved all aspects of the Property.　It is understood that Buyer will be relying solely on its independent inspections and evaluations of the Property in determining the Property's fitness for Buyer's intended use.　The Contract is an arms-length contract between the parties hereto.　THE PURCHASE PRICE WAS BARGAINED FOR ON THE BASIS OF AN "AS-IS, WHERE-IS, WITH ALL FAULTS" TRANSACTION AND REFLECTS THE CONTRACT OF THE PARTIES THAT THERE ARE NO REPRESENTATIONS, DISCLOSURES, OR EXPRESS OR IMPLIED WARRANTIES, EXCEPT THOSE IN THE CONTRACT AND THE CLOSING DOCUMENTS. AT CLOSING, BUYER WILL ACCEPT THE PROPERTY IN ITS THEN CURRENT CONDITION. BUYER IS NOT RELYING ON ANY REPRESENTATIONS, DISCLOSURES, OR EXPRESS OR IMPLIED WARRANTIES OTHER THAN THOSE EXPRESSLY CONTAINED IN THE CONTRACT AND THE CLOSING DOCUMENTS.　BUYER IS NOT RELYING ON ANY INFORMATION REGARDING THE PROPERTY PROVIDED BY ANY PERSON, OTHER THAN BUYER'S OWN INSPECTION AND THE REPRESENTATIONS AND WARRANTIES CONTAINED IN THE CONTRACT AND THE CLOSING DOCUMENTS.　IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT BUYER ACCEPTS THE CONDITION OF THE PROPERTY WITHOUT ANY IMPLIED REPRESENTATION, WARRANTY OR GUARANTEE AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE AS TO THE CONDITION, SIZE OR VALUE OF THE PROPERTY, EXCEPT ONLY AS MAY BE OTHERWISE EXPRESSLY PROVIDED IN THE CONTRACT, AND SELLERS HEREBY EXPRESSLY DISCLAIM ANY AND ALL SUCH IMPLIED REPRESENTATIONS, WARRANTIES OR GUARANTEES, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY, OR CONDITION OF THE PROPERTY BEING SOLD, (B) THE SUITABILITY OF THE PROPERTY FOR ANY ACTIVITIES THAT BUYER MAY CONDUCT THEREON, (C) THE COMPLIANCE OF THE PROPERTY WITH ANY LAWS, ORDINANCES, OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL ENTITY, (D) COMPLIANCE OF THE PROPERTY WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION, OR LAND USE LAWS, RULES, REGULATIONS, ORDERS, OR REQUIREMENTS, INCLUDING THE EXISTENCE IN OR THE PROPERTY OF HAZARDOUS MATERIALS, OR (E) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, EXCEPT AS SET FORTH IN THE CONTRACT.

10.　　REPRESENTATIONS:　Buyer acknowledges that neither Sellers nor any party on Sellers' behalf have made, nor do they hereby make, any representations as to the past, present or future condition, income, expenses, operation or any other matter or thing affecting or relating to the Property except as expressly set forth in this Purchase Agreement.

11.　　TERMINATION:　This Purchase Agreement may be terminated:

　　　　(a)　　by mutual consent of Sellers and Buyer;

　　　　(b)　　by Buyer (i) in accordance with Section 12 of this Addendum in the event of a Default by Sellers, (ii) upon the conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, (iii) if the Bankruptcy Court does not enter the Bid Procedures Order within two (2) Business Days



following the Stalking Horse Hearing, or (iv) if the Bankruptcy Court shall find damages to exist in connection with any Breach of Contract Claim in excess of the Limit; or

      (c)    by Sellers in accordance with Section 12 of this Addendum in the event of a Default by Buyer.

12.    <u>DEFAULT AND REMEDIES</u>: Sellers or Buyer shall be in default under this Purchase Agreement if either fails to comply with any material covenant, agreement or obligation within any time limits required by the Contract or this Addendum (a "<u>**Default**</u>" or "<u>**Defaults**</u>"). In the event of any purported Default by Sellers, Buyer must deliver a notice in writing to Sellers specifying the alleged default and affording Sellers five (5) Business Days to cure (the "<u>**Cure Period**</u>"). In the event of any purported Default by Buyer, Sellers must deliver a notice in writing to Buyer specifying the alleged default and affording Buyer the Cure Period to cure. Following Default by either party under this Purchase Agreement and the expiration of the applicable Cure Period, the non-defaulting party shall have the following remedies:

      (a)    If Sellers Default, Buyer may either (i) terminate this Purchase Agreement by written notice to Sellers, and receive (A) a full refund of the Earnest Money and payment of the Expense Reimbursement, and (B) in the event of a Default of the kind specified in Section 1(e) of this Addendum regarding the acceptance by the Trustee of an alternative bid, the Break-Up Fee, or (ii) if applicable, seek to enforce the Sale Order through the Bankruptcy Court.

      (b)    If Buyer Defaults, Sellers may terminate this Purchase Agreement by written notice to Buyer and retain the Earnest Money as liquidated damages as Sellers' sole remedy. The parties hereby acknowledge that it would be extremely difficult to ascertain the extent of actual damages caused by Buyer's Default and that the Earnest Money represents as fair an approximation of such actual damages as the parties can now determine.

13.    <u>DISPOSITION OF EARNEST MONEY AND OTHER FUNDS AND DOCUMENTS</u>: Upon entry of the Bid Procedures Order, the Earnest Money shall be released only as expressly set forth (i) in Section 12(a) of this Addendum, or (ii) in this Section 13, as follows:

      (a)    The Earnest Money shall be held in a segregated account by the Title Company until released as set forth in the Contract or this Addendum.

      (b)    If Buyer is not the Successful Bidder or the Back-Up Bidder (as shall be defined in the Bid Procedures), the Earnest Money shall be returned to Buyer no later than three (3) Business Days after the Sale Hearing.

      (c)    If Buyer is the Successful Bidder, upon delivery of the special warranty deed, as more particularly described in Section 9.B. of the Contract (the "<u>**Deed**</u>"), at Closing, the Earnest Money shall be credited against the Purchase Price.

      (d)    If Buyer is the Back-Up Bidder, the Earnest Money shall continue to be held by Sellers until the first to occur of (i) sixty (60) days after completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) Buyer's receipt of notice from Sellers of the release by Sellers of Buyer's obligations as Back-Up Bidder, at which time the Earnest Money shall be returned to Buyer. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved purchase of the Property because of a breach or failure to perform on part of such Successful Bidder or otherwise, Buyer will be deemed to be the new Successful Bidder, and Sellers will be authorized to consummate the Purchase with Buyer, at which time, upon delivery of the Deed at Closing, the Earnest Money shall be credited against the Purchase Price.

5



(e) For the avoidance of doubt, other than as expressly set forth in Section 12(b) of this Addendum, Buyer shall be entitled to the return of the Earnest Money in the event that the Purchase fails to close.

14. <u>REVERSAL ON APPEAL</u>. If Buyer is the Successful Bidder and pays the Purchase Price and if the Sale Order is reversed on Appeal and such reversal affects the validity of the sale to Buyer, then Buyer shall be entitled to a refund of the Purchase Price from Sellers in proportion to their ownership interests as set forth in the recitals hereto.

15. <u>NOTICES</u>: All notices required under this Purchase Agreement shall be deemed to be properly served if reduced to writing and sent by (i) certified or registered mail; (ii) Federal Express or similar overnight courier; (iii) electronic mail; or (iv) personal delivery and the date of such notice will be deemed to have been the date on which such notice is delivered or attempted to be delivered as shown by the certified mail return receipt or a commercial delivery service record, or in the case of electronic mail on the date of the transmission; <u>provided, however,</u> if the date for the performance of any action or obligation, or any time period specified hereunder occurs on a day other than a Business Day, then such date or time period shall be extended until the next Business Day. All notices shall be addressed as follows, unless otherwise specified in writing:

SELLERS:

Daryl Greg Smith
5826 Cooksey Lane
Waco, Texas 76706

With a Copy to:

c/o Gregory S. Milligan
Chapter 11 Trustee for Daryl Greg Smith
P.O. Box 90099
Austin, TX 78709
Email: gmilligan@harneypartners.com

and

Waller Lansden Dortch & Davis, LLP
c/o Morris Weiss
100 Congress Ave., Suite 1800
Austin, Texas 78701
Fax: (512) 685-6417
Email: Morris.Weiss@Wallerlaw.com

Darren Keith Reed
611 S. Llano
Whitney, Texas 76692
Email: dkeithreed@yahoo.com

With a Copy to:

R. Rene Escobedo
6800 Park Ten Blvd., Suite 135-E

BUYER:

R. Logan Owens
P.O. Box 830
Leander, Texas 78641

With a Copy to:

Kelley Drye & Warren LLP
c/o James S. Carr and Benjamin D. Feder
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Email: jcarr@kelleydrye.com
bfeder@kelleydrye.com

6



San Antonio, Texas 78213
Fax: (210) 223-3815
Email: rene.escobedo@rre-law.com

16.     <u>TIME AND EXACT PERFORMANCE ARE OF THE ESSENCE UNDER THE CONTRACT</u>. Buyer and Sellers hereby agree to perform each and every obligation hereunder in a prompt and timely manner; <u>provided, however,</u> if the date for the performance of any action or obligation, or any time period specified hereunder occurs on a day other than a Business Day, then the date or time period shall be extended until the next Business Day. As used herein "**<u>Business Day</u>**" shall mean any calendar day other than a Saturday, Sunday, or Texas or Federal legal holiday.

17.     <u>ADDITIONAL TERMS</u>:

       (a)     <u>Permits and Approvals</u>. Sellers shall reasonably cooperate with Buyer in verifying any existing governmental approvals and in seeking and making any inquiries related to the Property, as reasonably determined necessary by Buyer, provided such cooperation is at no cost or expense to Sellers. Sellers make no representations or warranties about the existence of or effectiveness of any governmental approvals.

       (b)     <u>Assignment</u>. Buyer may assign this Purchase Agreement to any entity formed by Buyer for the purpose of taking title to the Property, provided the assignee assumes, in writing, all obligations and liabilities of Buyer under this Purchase Agreement and has the same beneficial ownership as Buyer, and with approval of the Bankruptcy Court. Unless agreed to by Sellers, Buyer shall not be relieved of any liability hereunder upon such an assignment.

       (c)     <u>Miscellaneous</u>. This Addendum shall be governed by, and construed and interpreted under, the laws and judicial decisions of the State of Texas. This Addendum and all covenants, terms, conditions, warranties, and undertakings contained herein, and all amendments, modifications and extensions hereof, as applicable, shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and permitted assigns. This Addendum may be executed in multiple counterparts, each of which shall be deemed an original, but taken together shall constitute one instrument. Sole and exclusive jurisdiction over any disputes related to this Addendum and the Contract shall be in the Bankruptcy Court.

       (d)     <u>CONFLICTS OF PROVISIONS</u>. SELLERS AND BUYER HEREBY ACKNOWLEDGE AND AGREE THAT THE TERMS AND CONDITIONS OF THIS ADDENDUM SUPERSEDE ANY DIFFERENT OR INCONSISTENT PROVISIONS IN THE CONTRACT AND, AS A RESULT, IN THE EVENT OF ANY CONFLICT BETWEEN THE TERMS AND CONDITIONS OF THE CONTRACT AND THE TERMS AND CONDITIONS OF THIS ADDENDUM, THE TERMS AND CONDITIONS OF THIS ADDENDUM SHALL CONTROL.

18.     <u>ENTIRE AGREEMENT AND MANNER OF MODIFICATION</u>: This Purchase Agreement, and any attachments or addenda thereto, constitutes the complete agreement of the parties concerning the Property, and supersedes all other agreements and may be modified only by both parties initialing changes in the Contract or this Addendum, as applicable, or by written agreement. However, in the event of any conflict between this Purchase Agreement and the Sale Order, the terms of the Sale Order shall prevail.

19.     <u>NO RULE OF STRICT CONSTRUCTION</u>: Each party and its counsel has reviewed and jointly participated in the drafting of this Purchase Agreement and the attachments or addenda thereto. No rule of strict construction or presumption that ambiguities will be construed against any drafter will apply, and no presumptions will be made or inferences drawn because of the final inclusion of a term not contained in a prior draft or the final deletion of a term contained in a prior draft.

7



[Signatures on Following Page]

8

IN WITNESS WHEREOF, Sellers and Buyer execute this Addendum on the date(s) indicated below their respective signatures.

**SELLERS**:                                          **BUYER**:

R. LOGAN OWENS OR DESIGNEE

_____

GREGORY S. MILLIGAN, Chapter 11 Trustee     By:_____
for Daryl Greg Smith In Case No. 21-60162     Name:_____
before the United States Bankruptcy for the     Title:_____
Western District of Texas, Waco Division
                                                Date:_____

Date:_____


_____

DARREN KEITH REED

Date:_____

IN WITNESS WHEREOF, Sellers and Buyer execute this Addendum on the date(s) indicated below their respective signatures.

**SELLERS**:                                      **BUYER**:

_____        By: _____
GREGORY S. MILLIGAN, Chapter 11 Trustee   Name: _Logan Owens_____
for Daryl Greg Smith In Case No. 21-60162   Title: _____
before the United States Bankruptcy for the   Date: _1/9/23_____
Western District of Texas, Waco Division

Date:_____


_____
DARREN KEITH REED

Date:_____

## SCHEDULE 1

### Contracts or Leases to be Assumed by Buyer

1.    Angus Solar Lease

2.    Cattle Grazing Lease, dated August 17, 2020, originally between Caddoa Creek Ranch, LLC and Robert C. Heise, as amended

GSM

## EXHIBIT D

### 365 Contracts

| Counterparty | Contract | Proposed Cure Cost |
|---|---|---|
| Angus Solar, LLC | Ground Lease, dated October 31, 2017, originally between Caddoa Creek Ranch, LLC as Landlord and Angus Solar, LLC as Tenant, as amended | $0.00 |
| Robert C. Heise | Cattle Grazing Lease, dated August 17, 2020, originally between Caddoa Creek Ranch, LLC and Robert C. Heise, as amended | $0.00 |